08 C 862

JUDGE KENNELLY
MAGISTRATE JUDGE BROWN

# EXHIBIT A

## Part 10 of 14

Policy Number:

# Employee Benefits Excess Liability Coverage Form

---

**THIS INSURANCE PROVIDES CLAIMS-MADE COVERAGE.  PLEASE READ IT CAREFULLY.**

Various provisions in this policy restrict coverage.  Read the entire policy and any "underlying insurance" carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION III).

Other words and phrases that appear in quotation marks have special meaning.  Refer to DEFINITIONS (SECTION VII).

## SECTION I - COVERAGE

**1.  Insuring Agreement.**

   **a.**  We will pay those sums in excess of the amount payable under the terms of any "underlying insurance" that the insured becomes legally obligated to pay as damages because of injury to any "employee," caused by an "employee benefits incident" to which this insurance applies, or would have applied but for exhaustion of its applicable limits of insurance.

   This excess insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance" except with respect to any provisions to the contrary contained in this insurance.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS.

   **b.**  This excess insurance applies to an "employee benefits incident" only if:

     **1)**  The "employee benefits incident" takes place in the "coverage territory";

     **2)**  The "employee benefits incident" did not occur in whole or in part before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

     **3)**  A claim for damages because of the "employee benefits incident" is first made against any insured, in accordance with paragraph c. below, during the policy period or any EXTENDED REPORTING PERIODS (SECTION VI).

   **c.**  A claim caused by an "employee benefits incident" seeking damages excess of any "underlying insurance" will be deemed to have been made at the earlier of the following times:

     **1)**  When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

     **2)**  When we make settlement in accordance with paragraph 1. a. above.

All claims for damages because of injury to the same "employee," including damages claimed by any beneficiary or dependent, arising out of the same "employee benefits incident" will be deemed to have been made at the time the first of these claims is made against any insured.

**2.  Exclusions.**

This insurance does not apply to:

   **a.**  Any dishonest, fraudulent, criminal or malicious act.

   **b.**  Libel, slander, discrimination, or humiliation.

   **c.**  Bodily injury including humiliation, shock, mental anguish, mental injury, death, care and loss of services.

   **d.**  Property damage, including the loss of use of property.

**e.** Any claim for failure of performance of contract by any insurer

**.f.** Any claim based on any insured's failure to comply with any law concerning workers compensation, unemployment insurance, social security or disability benefits.

**g.** Any claim based on failure of stock or other investments to perform as represented by any insured.

**h.** Any claim based on advice given by any insured to participate in stock subscription plans.

**i.** Liability of a fiduciary Imposed by the Employee Retirement Income Security Act of 1974 (ERISA) as now or hereafter amended.

# SECTION II - DEFENSE AND SUPPLEMENTARY PAYMENTS

**1. Defense.**

**a.** We will have the right and duty to defend the insured against any "suit" seeking damages to which this insurance applies when the applicable limits of insurance of the "underlying insurance" and the applicable limits of insurance of any other insurance have been used up by payment of judgments or settlements.

When we have the duty to defend, we will pay all expenses we incur once our duty to defend begins. We will pay our expenses in addition to the applicable limit of insurance of this Coverage Part, subject to the provisions of paragraph 1. b. to e. below.

**b.** We have no duty to defend the insured against any "suit":

  **1)** For which any other insurer is obligated to provide a defense;

  **2)** For which "underlying insurance" or other insurance is unavailable or uncollectible because of:

    **a)** Bankruptcy or insolvency of the "underlying insurer" or other insurer; or

    **b)** Inability or failure of the "underlying insurer" or any other insurer to comply with any of its obligations under the underlying insurance" or other insurance; or

  **3)** For which "underlying insurance" is unavailable or uncollectible because you failed to maintain the "underlying insurance" in accordance with the Maintenance of Underlying Insurance condition under EMPLOYEE BENEFITS LIABILITY CONDITIONS (SECTION V).

When we have no duty to defend, we will, at our discretion, have the right to participate in defending the insured against any "suit" seeking damages to which this insurance applies.

If we exercise our right to defend when we have no duty to defend, we will do so at our expense. We will pay our expenses in addition to the applicable limit of insurance of this Coverage Part, subject to the provisions of paragraph 1. d. below.

**c.** If we provide a defense, we may, at our discretion, investigate any "employee benefits incident" and settle, within the applicable limit of insurance available, any claim or "suit" that may result.

**d.** Our right and duty to defend end when we have used up the applicable limit of insurance of this Coverage Part in the payment of judgments or settlements, as provided under LIMITS OF INSURANCE (SECTION IV). This applies both to claims and "suits" pending at that time and those filed after that time.

**e.** Even when we have the duty to defend, but are prevented by law or otherwise from performing that duty, the insured shall make or arrange for any necessary investigation or defense. The insured shall make any settlement we agree to in writing. We will reimburse the

insured for any expenses incurred with our prior written consent.

**2.  Transfer Of Duties When A Limit Of Insurance Has Been Used Up.**

**a.**  If we conclude that, based upon "employee benefits incidents," claims or "suits" which have been reported to us and to which this insurance applies, the applicable limit of insurance of this Coverage Part is likely to be used up by payment of judgments or settlements, we will notify the first Named Insured in writing.

**b.**  When the applicable limit of insurance of this Coverage Part has been used up by payment of judgments or settlements:

**1)**  We will notify the first Named Insured as soon as practicable, in writing, that:

**a)**  Such a limit of insurance has been used up; and

**b)**  Our duty to defend the insured against "suits" seeking damages which are subject to that limit of insurance has ended.

**2)**  We will initiate, and cooperate in, the transfer of control to any appropriate insured of all claims or "suits" seeking damages which are subject to that limit of insurance and which are reported to us before that limit of insurance is used up. That insured must cooperate in the transfer and control of those claims or "suits."

We will take those steps we deem appropriate to avoid a default in, or continue defending the insured against, those "suits" until the transfer of control is completed, provided the appropriate insured cooperates in completing the transfer.

We will take no action with respect to any other insured involved in a "suit" seeking damages that would have been subject to the applicable limit of insurance of this Coverage Part, had it not been used up, if the

claim or "suit" is reported to us after that limit of insurance has been used up.

**3)**  The first Named Insured and any other insured involved in a "suit" seeking damages that would have been subject to the applicable limit of insurance of this Coverage Part shall arrange for defense of that "suit" as practicable.

**c.**  The first Named Insured will reimburse us for expenses we incur in taking those steps we deem appropriate in accordance with paragraph 2. b. 2) above.

The First Named Insured's duty to reimburse us will begin on:

**1)**  The date of which the applicable limit of insurance of this Coverage Part is used up, if we sent notice in accordance with paragraph 2. a. above; or

**2)**  The date on which we sent notice in accordance with paragraph 2. b. 1) above, if we failed to send notice in accordance with paragraph 2. a. above.

**d.**  The exhaustion of any limit of insurance of this Coverage Part by payment of judgments or settlements, and the resulting end of our duty to defend, shall not be affected by our failure to comply with any part of this paragraph 2.

**3.  Supplementary Payments.**

If we provide a defense, we will pay:

**a.**  All expenses we incur.

**b.**  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of liability of this Coverage Part. We do not have to furnish these bonds.

**c.**  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.

**d.** All costs taxed against the insured in the "suit" for sums in excess of the amount payable under the terms of any "underlying insurance" and to which this insurance applies.

**e.** Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on the period of time after the offer.

**f.** All interest on the full amount of the judgment within the limits of this insurance that accrues after the entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limits of insurance.

These payments will not reduce the limits of insurance.

## SECTION III - WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An Individual, you and your spouse are "insureds," but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an "insured." Your members, your partners and their spouses are also "insureds," but only with respect to the conduct of your business.

**c.** An organization other than a partnership or joint venture, you are an "insured." Your executive officers and directors are "insureds," but only with respect to their duties as your officers or directors. Your stockholders are also "insureds," but only with respect to their liability as stockholders.

**2.** Each of the following is also an "insured":

**a.** Your "employees" other than your executive officers, authorized to act in the administration of "employee benefits."

**b.** Your legal representative if you die, but only with respect to duties as such. That representative

will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is not similar insurance available to that organization. However:

**a.** Coverage under this provision Is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**b.** Coverage does not apply to an "employee benefits incident" that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION IV - LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** "Employees," or dependents or beneficiaries of "employees," making claims or bringing "suits."

**2.** The Aggregate Limit Is the most we will pay for all damages because of claims covered by this insurance.

**3.** The Each Claim Limit is the most we will pay for all damages because of any one claim. The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after the issuance for an additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION V - EMPLOYEE BENEFITS LIABILITY CONDITIONS

### 1. Bankruptcy.

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of An Employee Benefits Incident, Claim Or Suit.

**a.** You must see to it that we are notified as soon as practicable of any "employee benefits incident" which may result in a claim to which this Coverage Part applies. To the extent possible, notice should include:

    **(1)** How, when and where the "employee benefits incident" took place;

    **(2)** The names and addresses of the insured "employee," dependents or beneficiaries of any "employee," and witnesses; and

    **(3)** The nature and location of the injury caused by the "employee benefits incident."

Notice of an "employee benefits incident" is not notice of a claim.

**b.** If a claim Is received by any insured you must:

    **(1)** Immediately record the specifics of the claim and the date received; and

    **(2)** Notify us as soon as practicable.

**c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit";

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury to which this insurance may also apply.

**d.** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

### 3. Legal Action Against Us.

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant's legal representative.

### 4. Other Insurance.

This insurance is excess over any other valid and collectible insurance whether primary, excess, contingent or on any other basis, except other insurance written specifically to be excess over this insurance.

The other insurance will be deemed valid and collectible regardless of any defense asserted by any other insurer because of:

**1)** The insured's failure to comply with the terms of that other insurance.

**2)** The inability of the underlying insurer to pay by reason of bankruptcy or insolvency.

### 5. Premium Audit.

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium Is a deposit premium only. At the close of each audit period we will compute the earned premium for the period.

Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the number of "employees" employed during the policy period and send us this information annually, if this coverage is written for more than one year, or when requested for premium computation.

## 6. Representations.

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

## 7. Separation Of Insureds.

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this Insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each "insured" against whom claim is made or "suit" is brought.

## 8. Transfer Of Rights Of Recovery Against Others To Us.

If the "insured" has rights of recovery with respect to all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The "insured" must do nothing after the loss to impair them. At our request, the "insured" will bring "suit" or transfer those rights to us and help us enforce them.

## 9. When We Do Not Renew.

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## 10. Your Right To Claim And Employee Benefits Incident Information.

We will provide the first Named Insured shown in the Declarations the following information relating to this and any preceding Employee Benefits Liability Claims-Made Coverage Part we have issued to you during the previous three years a list or other record of each "employee benefits incident" not previously reported to any other insurer, of which we were notified in accordance with paragraph 2. a. of this Section. We will Include the date and brief description of the "employee benefits incident" if that information was in the notice we received.

If we cancel or elect not to renew this Coverage Part, we will provide such information no later than 30 days before the date of policy termination. In other circumstances, will provide this information only if we receive a written request from the first Named Insured within 60 days after the end of the policy period. In this case, we will provide this information within 45 days of receipt of the request.

We compile claim and "employee benefits incident" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or non-renewal will be effective even if we inadvertently provide inaccurate information.

## 11. Maintenance Of Underlying Insurance.

You agree to maintain the "underlying insurance" in full force and effect during the policy period of this policy, and to inform us within 30 days of any replacement of that "underlying insurance" by the same or another insurer.

Reduction or exhaustion of the aggregate limit of insurance of any "underlying insurance" by payment of judgments or settlements will not be a failure to maintain "underlying insurance" in full force and effect.

## SECTION VI - EXTENDED REPORTING PERIODS

1. We will provide one or more Extended Reporting Periods, as described below, if:

   a. This Coverage Part is canceled or not renewed; or

   b. We renew or replace this Coverage Part with insurance that has a Retroactive Date later than the date shown in the Declarations of the Coverage Part.

2. Extended Reporting Periods do not extend the policy period or change the scope of coverage provided. They apply only to claims for an "employee benefits incident" that occur after the Retroactive Date, if any, shown in the Declarations.

   Once in effect, Extended Reporting Periods may not be canceled.

3. A Basic Extended Reporting Period Is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:

   a. Five years for claims because of injury arising out of an "employee benefits incident" reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 2. a. of EMPLOYEE BENEFITS LIABILITY CONDITIONS (SECTION V); or

   b. Sixty days for all other claims.

   The Basic Extended Reporting Period does not apply to claims that are covered under any subsequent insurance you purchase, or that would be covered but

for exhaustion of the amount of insurance applicable to such claims.

4. A Supplemental Extended Reporting Period of unlimited duration is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in paragraph 3. above ends.

   You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

   We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

   a. The exposures insured;

   b. Previous types and amounts of insurance;

   c. Limits of insurance available under this Coverage Part for future payment of damages; and

   d. Other related factors.

   The additional premium will not exceed 200% of the annual premium for this Coverage Part.

   This endorsement shall set forth the terms, not inconsistent with this Section, applicable to the Supplementary Extended Reporting Period, including a provision to the effect that the insurance afforded for claims first received during such period is excess over any valid and collectible insurance available under policies in force after the Supplemental Extended Reporting period starts.

5. The Basic Extended Reporting Period does not reinstate or increase the Limits of Insurance.

6. If the Supplemental Extended Reporting Period is in effect, we will provide the separate aggregate limit of insurance described below, but only for claims first received and recorded during the Supplemental Extended Reporting Period.

The separate aggregate limit will be equal to the dollar amount shown in the Declarations in effect at Paragraph 2. of LIMITS OF INSURANCE (SECTION III) will be amended accordingly. The Each Claim Limit shown in the Declarations will then continue to apply, as set forth in paragraph 3. of that Section.

## SECTION VII - DEFINITIONS

1.  "Coverage territory" means anywhere in the world.

2.  "Employee" means a prospective, present or former employee of the Named Insured.

3.  "Employee benefits incident" means an act, error or omission in:

    a.  Giving counsel to an "employee" with respect to "employee benefits";

    b.  Interpreting "employee benefits";

    c.  Handling of records in connection with "employee benefits";

    d.  Effecting enrollment, termination or cancellation of "employees" under "employee benefits";

    performed by a person authorized by the Named Insured to perform activities listed In a. through d. above.

4.  "Employee benefits" means:

    a.  Group life insurance;

    b.  Group accident and health insurance;

    c.  Profit sharing plans;

    d.  Pension plans;

    e.  "Employee" stock subscriptions;

the end of the policy period.

    f.  Workers compensation;

    g.  Unemployment insurance;

    h.  Social security;

    i.  Disability benefits insurance; and

    j.  Travel, savings or vacation plans.

5.  "Suit" means a civil proceeding in which damages because of an injury caused by an "employee benefits incident" to which this insurance applies is alleged. "Suit" includes:

    a.  An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our written consent; or

    b.  Any other alternative dispute resolution proceeding in which damages are claimed and to which you submit with our written consent.

6.  "Underlying Insurance" means the liability insurance provided under policies shown in the Schedule of Underlying Insurance, for the limits of insurance and policy periods indicated. "Underlying Insurance" includes any policies issued to replace those policies during the policy period of this Coverage Part that provide:

    a.  At least the same limits of insurance; and

    b.  Employee Benefits Liability Insurance for the same hazards insured against, except those we agree to in writing.

7.  "Underlying insurer" means any insurer which issues a policy of "underlying insurance."

Policy Number:

# Illinois Changes
**PREJUDGMENT INTEREST**

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART.

Paragraph 3. g. of DEFENSE AND SUPPLEMENTARY PAYMENTS (SECTION II) does not apply.

CL/UL 01 02 02 93

Policy Number:

# Lead
EXCLUSION

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART.

This insurance does not apply to:

1. "Injury" arising out of the actual, alleged or threatened exposure to lead, paint containing lead, or any other material or substance containing lead; or

2. Any loss, cost or expense arising out of any:

   a. Request, demand or order that any insured or others test for, monitor, clean up, remove or contain, or in any way respond to, or assess the effects of lead, paint containing lead, or any other material or substance containing lead; or

   b. Claim or "suit" by or on behalf of any person, organization or governmental authority for damages because of testing for, monitoring, cleaning up, removing or containing, or in any way responding to, or assessing the effects of lead, paint containing lead, or any other material or substance containing lead.

Policy Number: BK01116165

# Professional Liability

Exclusion

---

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART.

The following is added to Section 2. **Exclusions** of **SECTION I – COVERAGE**:

This insurance does not apply to "injury" arising out of any act, error, or omission in the rendering or failing to render any professional service. Professional service includes:

1. Legal, accounting, advertising, real estate, travel, or consulting service;

2. Architect, engineer, surveyor, construction contractor or construction management service, including:

   a. Preparing, approving, or failing to prepare or approve any map, drawing, opinion, report, survey, change order, design, specification, recommendation, permit application, payment request, manual, instruction, computer program for design systems, or selection of a contractor or sub-contractor;

   b. Any supervisory, inspection, or quality control service;

   c. Any study, survey, assessment, evaluation, consultation, observation, scheduling, sequencing, training or inspection, including those for job site safety; and

   d. Any monitoring, testing, or sampling service necessary to perform any of the services included in Exclusion I.2.a, b, or c above;

3. Supervisory, claim, investigation, adjustment, appraisal, survey, audit, or inspection service;

4. Medical, surgical, dental, x-ray or nursing service, treatment, advice or instruction;

5. Any health or therapeutic service, treatment, advice or instruction;

6. Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming;

7. Optometry or optical or hearing aid service, including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses or any similar product or hearing aid device;

8. Body piercing service;

9. Service in the practice of pharmacy; but this exclusion does not apply if you are a retail druggist or your operations are those of a retail drugstore;

10. Law enforcement or fire-fighting service; and

11. Handling, embalming, disposal, burial, cremation or disinterment of a dead body.

All other terms of this policy remain the same.

Policy Number:  BK01116165

# Amendment of Insuring Agreement and Who Is An Insured

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM.

1. **SECTION I – COVERAGE 1. Insuring Agreement** is amended to include the following:

   Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

2. **SECTION III – WHO IS AN INSURED 1.** is amended to include the following:

   **d)**  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers. This section also applies to any Employee Benefits Liability Additional Coverage endorsement that is part of this policy.

All other terms of this policy remain the same.

Policy Number:

## "Bodily Injury" Definition Amendment
Amendment

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART.

**SECTION VI. 3.** is replaced by the following:

   **"Bodily injury"** means any physical harm, including sickness or disease, to the physical health of other persons. It includes any of the following that results at any time from such physical harm, sickness, or disease:

**(1)**   Mental anguish, injury, or illness; and,

**(2)**   Emotional distress.

Policy Number:

# Employment Related Practices Exclusion
Exclusion

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART.

This insurance does not apply to "bodily injury", "personal injury" or "advertising injury" arising out of any:

   **(1)** Refusal to employ;

   **(2)** Termination of employment;

   **(3)** Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

   **(4)** Consequential "bodily injury", "personal injury" or "advertising injury" as a result of paragraphs (1) through (3) above.

This exclusion applies to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

Policy Number:

# Nuclear Energy Liability (Broad Form)
EXCLUSION

---

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART.

**I.**  This insurance does not apply to:

  **a.**  "Bodily injury" or "property damage":

  **1)**  With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of insurance; or

  **2)**  Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

  **b.**  "Bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material," if:

  **1)**  The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

  **2)**  The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

  **3)**  The "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property threat.

**2.**  As used in this endorsement:

"Hazardous properties" include radioactive, toxic or explosive properties.

"Nuclear material" means "source material," "special nuclear material" or "by-product material."

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any

"nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:

**a)** Any "nuclear reactor,"

**b)** Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel," or (3) handling, processing or packaging "waste,"

**c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

CL/UL 21 99 02 93

Policy Number: BK01116165

# Professional Liability – Engineers, Architects Or Surveyors
EXCLUSION

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY COVERAGE PART.

This insurance does not apply to "injury," arising out of rendering or failing to render any professional services by you or on your behalf, including:

1.   Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and

2.   Supervisory, inspection or engineering services.

Policy Number: BK01116165

# Broadened Commercial Umbrella Coverage Endorsement
## ARCHITECTS AND ENGINEERS

---

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE PART.

The following changes are made to the COMMERCIAL UMBRELLA LIABILITY COVERAGE PART.

1. Paragraph 1.b. of SECTION III. - WHO IS AN INSURED is replaced by the following:

   A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business. You are an insured for your participation in any past or present "unnamed joint venture" if there is no other similar insurance available to that organization. This protection does not apply if the "unnamed joint venture" has direct employees; or owns, rents, or leases any real or personal property. Nor does it apply to any other member of the "unnamed joint venture."

2. The following is added to paragraph 2. of SECTION III. - WHO IS AN INSURED:

   i. If you are required to add another person or organization as an insured under this policy by a written work contract or agreement which is in effect during the policy period and a certificate of insurance has been issued listing that person or organization as an Additional Insured, that person or organization is an insured. Such person or organization is referred to in this Coverage Part as an Additional Insured.

3. The final paragraph in SECTION III - WHO IS AN INSURED is replaced by the following:

   No person or organization is an insured with respect to the conduct of any current or past partnership or limited liability company that is not shown as a Named Insured in the Declarations.

4. With respect to 2.i. above the following additional provision applies:

   SECTION V.6. Other Insurance is replaced by the following:

   6. Other Insurance

   The insurance afforded by this Coverage Part is primary insurance and we will not seek contribution from any other insurance available to the insured unless the other insurance is provided by a contractor. Then we will share with that other insurance by the method described below.

   If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

   If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. The following are added to SECTION VI - DEFINITIONS

   "Unnamed joint venture" means any joint venture with other architects or engineers that is not named in the Liability Coverage Part Declaration.

All other terms of the policy remain the same.

CL/UL 21 83 04 01

# The St. Paul Business Foundation Series

Change Endorsement



United States Fidelity and Guaranty Company
5801 Smith Avenue
Baltimore, Maryland 21209

---

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| Change Number: | Change(s) Effective: | Policy Number: | Policy Expiration: |
|---|---|---|---|
| 1 | 05/13/2002 | BK01116165 | 05/01/2003 |

---

**Named Insured**

VOA ASSOCIATES INCORPORATED
VOA & OWP&P DESIGN COLLABORATIVE FOR NORTHWESTERN
MEMORIAL HOSPITAL
224 S MICHIGAN AVE STE #1400
CHICAGO, IL 60604

Client Number: 0001614656

**Your Agent**

AVA INSURANCE AGENCY
425 N MARTINGALE RD STE 1100
SCHAUMBURG, IL 60173

Agent Code: 120853

---

**Change(s)**

* Additional Interest: Loss Payee is Added to Premises Number 1
* Additional Interest: Loss Payee is Added to Premises Number 2
* Additional Interest: Loss Payee is Added to Premises Number 5

| Form | Description |
|---|---|
| CL/BF 00 45 03 95 | Change Endorsement |
| CL/BF 00 40 04 97 | Schedule of Premises |
| CL/BF 10 05 09 99 | Property Coverage Part Declarations |
| CL/BF 11 65 06 98 | Loss Payable Provisions |

---

**Additional Premium: WAIVED**

Date Issued: 05/04/2005

Authorized Representative

INSURED
CL/BF 00 45 03 95
Print Date: 05/04/2005

Direct Bill Number
4400031464
Prepaid

Page 1 of 1

# The St. Paul Business Foundation Series



Schedule Of Premises

**United States Fidelity and Guaranty Company**
**5801 Smith Avenue**
**Baltimore, Maryland  21209**

Change(s) Effective:  05/13/2002

| Policy Number: | Reason For Issuance: |
|---|---|
| BK01116165 | Endorsement Number: 1 |

**Description of Premises:**

| Premises Number | Location/ Occupancy | Construction |
|---|---|---|
| 0001 | 224 S MICHIGAN AVE STE #1400  CHICAGO IL 60604 | Fire Resistive |

Customer Reference:01

> BLDG:    Primary Class:    (Not Covered)
>          Secondary Class:    (Not Covered)
> BPP:     Primary Class: 871205-Architects, Engineers, and Draftsmen
>          Secondary Class:    (Not Covered)

| | | |
|---|---|---|
| 0002 | 21 DUPONT CIRCLE NW  WASHINGTON DC 20045 | Masonry Non-Combustible |

Customer Reference:01

> BLDG:    Primary Class:    (Not Covered)
>          Secondary Class:    (Not Covered)
> BPP:     Primary Class: 871205-Architects, Engineers, and Draftsmen
>          Secondary Class:    (Not Covered)

| | | |
|---|---|---|
| 0003 | 1722 HENDRICKS AVE  JACKSONVILLE FL 32207 | Masonry Non-Combustible |

Customer Reference:01

> BLDG:    Primary Class:    (Not Covered)
>          Secondary Class:    (Not Covered)
> BPP:     Primary Class: 871205-Architects, Engineers, and Draftsmen
>          Secondary Class:    (Not Covered)

| | | |
|---|---|---|
| 0004 | 801 BRICKELL AVE STE #900  MIAMI FL 33131 | Fire Resistive |

Customer Reference:01

> BLDG:    Primary Class:    (Not Covered)
>          Secondary Class:    (Not Covered)
> BPP:     Primary Class: 871205-Architects, Engineers, and Draftsmen
>          Secondary Class:    (Not Covered)

| | | |
|---|---|---|
| 0005 | 1030 N ORANGE STE #200  ORLANDO FL 32801 | Fire Resistive |

Customer Reference:01

> BLDG:    Primary Class:    (Not Covered)
>          Secondary Class:    (Not Covered)
> BPP:     Primary Class: 871205-Architects, Engineers, and Draftsmen
>          Secondary Class:    (Not Covered)

| | | |
|---|---|---|
| 0006 | 2200 WILSON BLVD SUITE 850  ARLINGTON VA 22201 | Masonry Non-Combustible |

Customer Reference:01

CL/BF 00 40 04 97

# The St. Paul Business Foundation Series

Schedule Of Premises

Change(s) Effective: 05/13/2002

| Premises Number | Location/ Occupancy | | | Construction |
|---|---|---|---|---|
| | BLDG: | Primary Class: | (Not Covered) | |
| | | Secondary Class: | (Not Covered) | |
| | BPP: | Primary Class: 871205-Architects, Engineers, and Draftsmen | | |
| | | Secondary Class: | (Not Covered) | |
| 0007 | 259 EAST ERIE STREET  CHICAGO IL 60611 | | | Frame |
| Customer Reference:01 | | | | |
| | BLDG: | Primary Class: | (Not Covered) | |
| | | Secondary Class: | (Not Covered) | |
| | BPP: | Primary Class: 871205-Architects, Engineers, and Draftsmen | | |
| | | Secondary Class: | (Not Covered) | |

# The St. Paul Business Foundation Series



Property Coverage Part Declarations

**United States Fidelity and Guaranty Company**
**5801 Smith Avenue**
**Baltimore, Maryland 21209**

Change(s) Effective: 05/13/2002

| Policy Number: | Reason For Issuance: |
|---|---|
| BK01116165 | Endorsement Number: 1 |

**Limits of Insurance:**

| | | |
|---|---|---|
| $ | 25,000 | Depositor's Forgery |
| $ | 200,000 | Employee Dishonesty |
| | | Name of Plans: |
| $ | 25,000 | Fine Arts |
| $ | 40,000 | Property Off Premises |
| | | Money and Securities: |
| $ | 10,000 | Inside the Premises |
| $ | 5,000 | Outside the Premises |
| $ | 1,565,000 | Valuable Records |

**Deductible:** $500

(The Deductible does not apply to coverage for Accounts Receivable, "Business Income," Extended Business Income, "Extra Expense," Action By Civil Authority and "Expediting Expense," Counterfeit Currency and Money Orders, and Fire Department Service Charge.)

**If Building Coverage exists, Property Value Guard Automatic Increase:** 4%   - IL
**If Business Personal Property Coverage exists, Property Value Guard Automatic Increase:** 3%   - IL
**Business Income and Extra Expense Covered Time Period:** 12 Months

| Premises Number | Building Limit of Insurance | Building Valuation | Business Personal Property Limit of Insurance | Business Personal Property Valuation |
|---|---|---|---|---|
| 0001 | Not Covered | Not Covered | $ 2,262,872 | Repl. Cost |

# The St. Paul Business Foundation Series

Property Coverage Part Declarations

Change(s) Effective: 05/13/2002

| Premises Number | Building Limit of Insurance | Building Valuation | Business Personal Property Limit of Insurance | Business Personal Property Valuation | | |
|---|---|---|---|---|---|---|
| | | | Accounts Receivable Limit of Insurance | | $ | 425,000 |
| | | | Debris Removal Additional Limit of Insurance | | $ | 15,000 |
| | | | Demolition Cost and Increased Cost of Construction | | | |
| | | | Outdoor Trees, Shrubs, Plants and Lawns: | | $ | 3,000 |
| | | | Seasonal Automatic Increase In Business Personal Property | | | 25% |
| | | | Sewer or Drain Backup | | $ | 25,000 |
| | | | Mortgagee: | | | |
| 0002 | Not Covered | Not Covered | $ 137,367 | Repl. Cost | | |
| | | | Accounts Receivable Limit of Insurance | | $ | 35,000 |
| | | | Debris Removal Additional Limit of Insurance | | $ | 15,000 |
| | | | Demolition Cost and Increased Cost of Construction | | | |
| | | | Outdoor Trees, Shrubs, Plants and Lawns: | | $ | 3,000 |
| | | | Seasonal Automatic Increase In Business Personal Property | | | 25% |
| | | | Sewer or Drain Backup | | $ | 25,000 |
| | | | Mortgagee: | | | |
| 0003 | Not Covered | Not Covered | $ 51,500 | Repl. Cost | | |
| | | | Accounts Receivable Limit of Insurance | | $ | 35,000 |
| | | | Debris Removal Additional Limit of Insurance | | $ | 15,000 |
| | | | Demolition Cost and Increased Cost of Construction | | | |
| | | | Outdoor Trees, Shrubs, Plants and Lawns: | | $ | 3,000 |
| | | | Seasonal Automatic Increase In Business Personal Property | | | 25% |
| | | | Sewer or Drain Backup | | $ | 25,000 |
| | | | Mortgagee: | | | |
| 0004 | Not Covered | Not Covered | $ 51,809 | Repl. Cost | | |

# The St. Paul Business Foundation Series

Property Coverage Part Declarations



Change(s) Effective: 05/13/2002

| Premises Number | Building Limit of Insurance | Building Valuation | Business Personal Property Limit of Insurance | Business Personal Property Valuation | | |
|---|---|---|---|---|---|---|
| | Accounts Receivable Limit of Insurance | | | | $ | 35,000 |
| | Debris Removal Additional Limit of Insurance | | | | $ | 15,000 |
| | Demolition Cost and Increased Cost of Construction | | | | | |
| | Outdoor Trees, Shrubs, Plants and Lawns: | | | | $ | 3,000 |
| | Seasonal Automatic Increase In Business Personal Property | | | | | 25% |
| | Sewer or Drain Backup | | | | $ | 25,000 |
| | Mortgagee: | | | | | |
| 0005 | Not Covered | Not Covered | $ 1,068,151 | Repl. Cost | | |
| | Accounts Receivable Limit of Insurance | | | | $ | 200,000 |
| | Debris Removal Additional Limit of Insurance | | | | $ | 15,000 |
| | Demolition Cost and Increased Cost of Construction | | | | | |
| | Outdoor Trees, Shrubs, Plants and Lawns: | | | | $ | 3,000 |
| | Seasonal Automatic Increase In Business Personal Property | | | | | 25% |
| | Sewer or Drain Backup | | | | $ | 25,000 |
| | Mortgagee: | | | | | |
| 0006 | Not Covered | Not Covered | $ 128,750 | Repl. Cost | | |
| | Accounts Receivable Limit of Insurance | | | | $ | 35,000 |
| | Debris Removal Additional Limit of Insurance | | | | $ | 15,000 |
| | Demolition Cost and Increased Cost of Construction | | | | | |
| | Outdoor Trees, Shrubs, Plants and Lawns: | | | | $ | 3,000 |
| | Seasonal Automatic Increase In Business Personal Property | | | | | 25% |
| | Sewer or Drain Backup | | | | $ | 25,000 |
| | Mortgagee: | | | | | |
| 0007 | Not Covered | Not Covered | $ 5,000 | Repl. Cost | | |

CL/BF 10 05 09 99

# The St. Paul Business Foundation Series

Property Coverage Part Declarations

Change(s) Effective: 05/13/2002

| Premises Number | Building Limit of Insurance | Building Valuation | Business Personal Property Limit of Insurance | Business Personal Property Valuation | | |
|---|---|---|---|---|---|---|
| | Accounts Receivable Limit of Insurance | | | | $ | 25,000 |
| | Debris Removal Additional Limit of Insurance | | | | $ | 15,000 |
| | Demolition Cost and Increased Cost of Construction | | | | | |
| | Outdoor Trees, Shrubs, Plants and Lawns: | | | | $ | 3,000 |
| | Seasonal Automatic Increase In Business Personal Property | | | | | 25% |
| | Sewer or Drain Backup | | | | $ | 25,000 |
| | Mortgagee: | | | | | |

**Forms and Endorsements Applicable to This Coverage Part:**

See attached Schedule of Forms and Endorsements CL/BF 00 35.

CL/BF 10 05 09 99

Policy Number: BK01116165

# Loss Payable Provisions

Change(s) Effective: 05/13/2002

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

PROPERTY COVERAGE PART.

## Schedule

| Premises Number | Description of Property | Loss Payee (Name and Address) |
|---|---|---|
| 0001 | CONTENTS | LASALLE NATIONAL BANK<br>120 S LASALLE<br>CHICAGO, IL 60603 |

1. The following is added to SECTION IV. A. 5. Loss Payment:

   Loss Payable.

   For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

   **a.** Adjust losses with you; and

   **b.** Pay any claim for loss jointly to you and the Loss Payee, as interests may appear.

2. The following is added to SECTION IV. B. 5. Other Insurance:

   For Covered Property that is the subject of a contract of sale, the word "you" includes the "Loss Payee."

3. The following is added to SECTION V. Definitions:

   "Loss Payee" includes a person or organization you have entered a contract with for the sale of Covered Property.

CL/BF 11 05 06 98          Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1984, 1985

Policy Number: BK01116165

## Loss Payable Provisions

Change(s) Effective: 05/13/2002

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

PROPERTY COVERAGE PART.

## Schedule

| Premises Number | Description of Property | Loss Payee (Name and Address) |
|---|---|---|
| 0001 | CONTRACT #001-00897482-001(CANON COLOR COPIER) | CANON FINANCIAL SERVICES,INC. 15325 SOUTHEAST 30TH PLACE STE #100 BELLVIEW, WA 98007 |

**1.** The following is added to SECTION IV. A. 5. Loss Payment:

Loss Payable.

For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

**a.** Adjust losses with you; and

**b.** Pay any claim for loss jointly to you and the Loss Payee, as interests may appear.

**2.** The following is added to SECTION IV. B. 5. Other Insurance:

For Covered Property that is the subject of a contract of sale, the word "you" includes the "Loss Payee."

**3.** The following is added to SECTION V. Definitions:

"Loss Payee" includes a person or organization you have entered a contract with for the sale of Covered Property.

CL/BF 11 65 06 98       Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1984, 1985

Policy Number: BK01116165

## Loss Payable Provisions

Change(s) Effective: 05/13/2002

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

PROPERTY COVERAGE PART.

## Schedule

| Premises Number | Description of Property | Loss Payee (Name and Address) |
|---|---|---|
| 0001 | LEASE #001-07107-01 & 327929001 | GE CAPITAL COLONIAL PACIFIC LEASING<br>PO BOX 23185<br>PORTLAND, OR 97281-3185 |

1. The following is added to SECTION IV. A. 5. Loss Payment:

   Loss Payable.

   For Covered Property in which both you and a Loss Payee shown in the Schedule have an insurable interest, we will:

   a. Adjust losses with you; and

   b. Pay any claim for loss jointly to you and the Loss Payee, as interests may appear.

2. The following is added to SECTION IV. B. 5. Other Insurance:

   For Covered Property that is the subject of a contract of sale, the word "you" includes the "Loss Payee."

3. The following is added to SECTION V. Definitions:

   "Loss Payee" includes a person or organization you have entered a contract with for the sale of Covered Property.

CL/BF 11 65 06 98     Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1984, 1985