**08 C 862**

**JUDGE KENNELLY**
**MAGISTRATE JUDGE BROWN**

# EXHIBIT D

KB-04154/NHE/esb    #34597
W:\Cases\04154kgb.Madden\Nmo\0825_amendedmsj.doc

STATE OF ILLINOIS    )
                     ) SS
COUNTY OF COOK       )

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
# COUNTY DEPARTMENT, LAW DIVISION

| | | |
|---|---|---|
| MICHAEL J. MADDEN and JEAN MADDEN, | ) | |
| plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 03 L 000433 |
| | ) | |
| F.H. PASCHEN, S.N. NIELSON, INC., | ) | |
| JACOBS FACILITIES, INC., CLIFFS AND | ) | |
| CABLES, LLC and VOA & ASSOCIATES, INC., | ) | |
| defendants. | ) | |

## SECOND AMENDED MOTION FOR SUMMARY JUDGMENT

NOW COMES the defendant, **VOA & ASSOCIATES, INC.**, by and through its attorneys, FRATERRIGO, BERANEK, FEIEREISEL & KASBOHM, and does hereby move this Honorable Court to enter an order granting summary judgment in its favor and against the plaintiffs, Michael J. Madden and Jean Madden. In support thereof, defendant states as follows:

## FACTS

On August 19, 2002, Plaintiff, Michael Madden, an employee of Alonzo Stagg High School (hereinafter ASTAGG@), District 230, 8015 West 111th Street, in the city of Palos Hills, County of Cook, State of Illinois, alleges that he was injured when he fell into the orchestra pit at the Performing Arts Center located at Stagg while he was engaged in the performance of his duties at or near the orchestra pit. Plaintiff alleges that he sustained injuries while he was engaged in the performance of his duties at or near a portion the orchestra pits, in the area commonly called the Performing Arts Theater. Subsequently, Plaintiff filed its Fourth Amended Complaint, directed at architects, VOA & Associates, Ltd., See Plaintiff=s Fourth Amended Complaint at law attached as *Exhibit A*. Plaintiff alleges that VOA was negligent in one or more of the following ways: placed the opening/pit in the floor in a location which created a danger for persons

]

in the area; failed to warn of the placement of the pit in the floor; failed to erect warning signs, barricades, or block off said area; failed to provide barricades or covers to prevent people from falling into a pit; failed to train employees to prevent the aforementioned; failed to have policies to prevent the aforementioned; failed to make reasonable inspection of the premises; failed to design the orchestra pit with a permanent or temporary cover; and permitted the owner to use its theater when there was no pit cover in place.

The evidence will show that on December 12, 1999, VOA and Sverdrup, now known as Jacob's Facilities, submitted a budget to the owner, District 230. This budget included orchestra pit covers, pit fillers, and pit lift pricing and design options for said orchestra pit, which was requested by the owner for the purpose of expanding the stage floor usage surrounding the pit. These pit cover options were rejected by the Owner for a savings of $95,000. See Paul Hansen's affidavit attached as ***Exhibit B.***

Consequently, Defendant VOA filed its answer to Plaintiff=s Fourth Amended Complaint at Law, in which they denied all of Plaintiff=s substantive allegations. See Defendant, VOA=s answer to Plaintiff=s Fourth Amended Complaint attached as ***Exhibit C***.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper when the pleadings, depositions and affidavits show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Savino v. Robertson, 273 Ill.App.3d 811, 652 N.E.2d 1240, 1243 (1st Dist. 1995). It is a means to avoid the expense and delay of trial where no genuine issue of fact exists. Rivan Die Mold Corp. v. Stewart Warner Corp., 26 Ill. App. 3d 637, 325 N.E. 2d 357. (1975). Although a complaint may purport to raise issues of material fact, if such issues are not supported by evidentiary facts through affidavits etc., summary judgment is appropriate, particularly when the moving party supplies facts uncontradicted by counter-affidavits, and which entitle the movant to a judgment as a matter of law. Carruthers v. B. C. Christopher, 57 Ill. 2d 376, 380, 313 N.E. 2d. 457 (1977).

2

## ARGUMENT

I. **DEFENDANT, VOA, AS ARCHITECT, HAD NO CONTRACTUAL DUTY TO INSURE THE SAFETY OF THE OWNER=S EMPLOYEE, AND AS SUCH HAD NO LEGAL DUTY TO SAFEGUARD THE OWNER'S EMPLOYEE FROM INJURY, WHEN ACTING IN ACCORDANCE WITH ITS CONTRACT.**

Generally, the duties and responsibilities of an architect are determined by the contract of employment. Miller v. DeWitt, 37 Ill. 2d. 273, 226 N.E. 2d 630. (1967). The construction of words and clauses in a contract is a question of law. Luterbach v. Mochon, Schutte, Hackworthy, Juerisson Inc. 267 N.W. 2d. 13 (1978). The employment of an architect is ordinarily a matter of contract between the parties, and the terms of the employment are therefore governed by the terms of the contract entered into, and absent a provision in the employment contract *charging* the architect with administration of the construction contract, control of methods or techniques of construction used, and the authority to stop the work when necessary, the architect cannot be charged with a duty to provide safety precautions or programs at the construction site. *Id, 284*.

In this case, VOA, architect, entered into a contract with Owner, Consolidated High School District 230 (District 230) which outlined VOA=s responsibilities, duties, and scope of employment. As enumerated in the contract in ***Exhibit D*** '2.2-2.6, VOA, architect has a duty to design the project and specifications related to the renovation of Stagg High School and shall submit certificates of substantial completion of those projects in a timely manner. Specifically, Athe architect shall review the program furnished by the Owner to ascertain the requirements of the project and shall arrive at a mutual understanding of such requirements with the Owner,@ '2.2.1. Moreover, based on the mutually agreed upon program, schedule and construction budget requirements, the architect shall prepare, for approval by Owner, schematic design documents consisting of drawings '2.2.4.

Furthermore, '2.6.6 of the contract between VOA and District 230 contained a provision related to safety precautions and measures which read:

3

> The architect shall <u>not</u> have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor=s responsibility under the Contract for Construction. The Architect shall not be responsible for the Contractors= schedules or failure to carry out the Work in accordance with the Contract Documents. The Architect shall not have control over or charge of acts or omissions of the Contractor, Subcontractors, or their agents or employees or of any other persons performing portions of the Work.

In keeping in accordance with the law and with the contract between VOA and District 230, VOA was therefore not required to erect safety rails or barricades, as they are not in the design specifications which were approved by the Owner. As illustrated by the contract, VOA did not acquire any additional duties to provide safety measures, precautions or programs as alleged by the Complaint, including failure to give warnings, failure to provide build or design additional parts or covers to the orchestra pit, or provide any railing, yellow tape or other devices after the drawings and specifications were approved by Owner.

Furthermore, VOA and its consultants were not retained to *continuously* inspect the premises where their designs were being constructed, or to provide safe work areas to employees on this project. Contrary to what is alleged in the Plaintiff=s Fourth Amended Complaint, VOA did not have Asupervision and control of the work,@... Aconstant participation in ongoing activities at the construction site, or responsibility for taking safety precautions at the job site. The contract between VOA and District 230 also stated that VOA shall visit the site at *intervals* appropriate to the stage of construction to Aobserve progress and quality of the work, and to determine if the work is proceeding in accordance with the Contract and construction schedules.@ Section 2.2.5 of the contract also specifies that the Architect shall not be required to make *exhaustive or continuous* onsite inspections.

VOA complied with these agreed upon terms and District 230 was at all times aware that it shall not have control over or charge of acts or omissions of the Contractor, Subcontractors, or their agents or employees performing portions of their work. '2.2.6. Please see affidavit of Al Migon attached as ***Exhibit E***.

VOA, as architect, should be absolved of any liability in this matter, as the injury incurred by Mr. Madden may have been caused by circumstances beyond the control of the designer of the project. The safety of the conditions on or around the area of the site was not the responsibility of the architect; hence VOA had no duty to barricade the area around the orchestra pit, if it was found to be a safety hazard.

When the incident occurred, VOA had no control over the structure and could no longer change or correct defects, if any, even if it had acquired the duty to do so. VOA was not responsible for insuring safety at or near the orchestra pit while it was being constructed, the architect had no duty to do so by contract. In fact, VOA issued a certificate of substantial completion on May 21, 2002, which stated that the property would be turned over to its owner for its intended use. (See Certificate of Substantial Completion. ***Exhibit F.***.

In Kelly v. Northwest Community Hospital, the Circuit Court of Cook County granted and affirmed defendant-architect=s motion for summary judgment where the complaint charged the architect in failing to erect adequate guard rails, barricades or other devices to keep plaintiff=s decedent from falling. 66 Ill. App. 3d 679 (1978). The court argued that the architect in that case was not liable to the plaintiff as a matter of law. The court looked to the contract between the architect and the owner to construe the duties of the architect, directly pointing to the provision similar to the provision chief in this case.

Specifically, the contract in Kelly stated that the architect shall Amake periodic visits to the site to assess progress and quality and to determine if the work is proceeding according to contract.@ Id.,680. Additionally, the contract stated that Athe architect shall not be responsible for construction means, methods, techniques, sequences or procedures for safety precautions and programs in connection with the work in accordance with Contract Documents. Id, 680.

The court in Kelly relied on its progeny including the leading case of *McGovern v. Standish*, 33 Ill. App. 3d 717 (1975), which illustrates the notion that an architect is not the insurer of safety and summary judgment is proper when there is no evidence to show that the architect was negligent in its design. Here,

5

¶

since neither the contract nor any acts or omissions on behalf of VOA created such a duty to do so, summary judgment is proper. Id, 717.

Similarly, VOA=s contract also illustrates, that as architect, VOA was retained for the purpose of designing the project which was approved by the owner, District 230. They were not retained to construct barricades or railings or perform any electrical work including installing additional lighting in the auditorium as alleged in the Complaint. VOA, as architect, is not the insurer of safety and any attempt to charge them with such a duty is not only unsupported by fact, but it is unsupported by law. The contract related to our case in chief cites identical language to the contract language in Kelly, and according to that court=s interpretation it would be proper to rule that VOA bears no responsibility for Mr. Madden=s incident.

In our case in chief, VOA, Architect in Charge, Paul Hansen signed an affidavit attached as ***Exhibit B*** states that in December of 1999, VOA and its designers met with District 230's representatives to discuss design options and budgeting issues. VOA prepared design options and pricing for pit covers or pit fillers for the orchestra pit in question, but the pit cover options were rejected due to costs. Therefore, the pit cover never became part of the contract. (See affidavit of Paul Hansen attached as Exhibit B). By excluding pit covers per the request of the Owner, VOA and its designers maintained professional skill and care and fully abided by local and national building codes (See Affidavit and BOCA rule related to pit covers).

As an educational reference, this defendant is involved in a second litigation bearing similar facts, currently before Judge Kathy Flanagan in the Law Division of Cook County Court for a similar occurrence which occurred two months earlier. *Raul Regalado v. FH Paschen* 2004 L 013226. There, VOA, filed a motion for summary judgment which was granted in part on June 7, 2006, and subsequently granted in its entirety on September 18, 2006 after VOA's motion to reconsider. On June 7, 2006 the *Regalado* case, the court ruled that: See court orders attached as ***Exhibit G***.

*"there is nothing in VOA's contract, or in any evidence of the record, which places on it a duty with regard to worker safety. Further, neither the contract, nor any evidence in the records shows that VOA retained or exercised control over means and methods or operative details of the work."*[1]

II. **DEFENDANT, VOA DID NOT CONTROL OR SUPERVISE PLAINTIFF NOR DID VOA UNDERTAKE ANY DUTY TO CONTROL OR SUPERVISE PLAINTIFF=S WORK SO AS TO CREATE A DUTY.**

Since the Structural Work Act was repealed, '414 has controlled questions of liability in construction related injury cases states:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care. Restatement (Second) of Torts ' 414 at 387 (1965).

Here, Plaintiff=s Fourth Amended Complaint alleged that VOA was undertaking and performing construction and installation on the premises. This allegation is unfounded as VOA was retained to perform the duties of an architect of the project including design, cost assessment, construction scheduling and budget, approval shop drawings. (See Contract between Consolidated 230 and VOA attached as Exhibit D.) Thus any allegations that the architect on site failed to provide safety precautions and construct barricades are factually insufficient.

Pertinent to the design work performed at Stagg High School, Article 2.6.6 of the VOA & ASSOCIATES= agreement with Consolidated High School District states:

> **The architect shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these solely the Contractor=s responsibility under the Contract for Construction. The Architect shall not be responsible for the Contractors= schedules or failure to carry out the Work in accordance with the Contract Documents. The Architect shall not have control over or charge of acts or omissions of the Contractor, Subcontractors, or their agents or employees or of any other persons performing portions of the Work.**

---

[1] This matter was before Judge Flanagan for our Motion to Reconsider the court's Ruling related to issue of improper design, set for ruling on September 18, 2006. In that case, this defendant reminded the court that the issue of failing to design a pit cover was not pleaded in plaintiff's complaint. Moreover, the contract did not call for a pit cover because the Owner, rejected any cover options offered by VOA due to cost concerns when the contract was finalized. The pit designed without a cover was not in violation of any local ordinances.

7

In <u>Luterbach</u>, an architectural firm entered into an agreement with the Board of Education and local school district to perform architectural design services in connection with the erection of an addition to a high school. At the construction site a carpenter fell 24 feet deep and was severely injured when a cave-in occurred after an excavation. The contract between that architectural firm and the school district stated:

> The architect shall make periodic visits to the site to familiarize himself generally with the progress and quality of the work and to determine in general if work is proceeding in accordance with the contract...The architect shall not be responsible for construction means, methods, techniques, sequences or procedures, or for *safety precautions* in connection with the work. <u>Luterbach v. Mochon, Schutte, Hackworthy, Juerisson, Inc.</u>, 267 N.W. 2d. 13 (1978).

The architect in <u>Luterbach</u> filed a motion for summary judgment and the court granted and affirmed the architect=s motion, holding that the carpenter=s allegations that the architect proximately caused his injuries in failing to supervise the construction site and failing to take steps to maintain the site in a safe manner, were without merit. <u>Id</u>, 14. The court affirmed that the architect had no contractual duties to insure safety on the construction site; <u>Id</u>. 14.

Additionally, the general supervisory powers noted in the owner-contractor agreement could not camouflage the limited nature of the architect=s supervisory duties as set forth in the owner-architect agreement. <u>Id</u>. 13.

Similarly, in our case, VOA=s status was not broadened to expose it to liability for safety of a sub-contractor=s employee. To hold otherwise would make the architect the general safety supervisor at the site, a job which would require the architect=s Acontinuous presence@ in disregard of the express language of the contract. <u>Id</u>. 14. VOA merely designed the orchestra pit where the incident occurred and maintained its employment at Stagg by contract. VOA should not be held liable to Mr. Madden as a matter of law. The case law is clear. Absent a provision in the employment contract charging the architect with providing safety methods, precautions, and procedures, there is no basis to hold the architect liable for the failing to provide safety at or near the orchestra pit.

### III. VOA DESIGNED THE PROJECT ACCORDING TO ITS CONTRACT WITH THE OWNER AND PURSUANT TO THE OWNER'S SPECIFICATIONS, WHICH DID NOT INCLUDE AN ORCHESTRA PIT COVER BECAUSE IT WAS REJECTED BY DISTRICT 230 DUE TO COST.

In Kelly v. Northwest Community Hospital, the court generally held that an architect's duties are specified in its contract with the Owner, Id. 14. Therefore, the architect must abide by its duties in the terms of the contract and nothing more; otherwise the architect can be held in breach of contract.

In December of 1999, VOA submitted a budget to District 230 which included estimated costs for orchestra pit covers, lifts, and fillers. The Affidavit of Paul Hansen, Principal in Charge of the Higher Education Group at VOA, Exhibit B. VOA and its' theater consultants, Schuler & Shook prepared designs and submitted proposal to District 230 for pit covers and filler for the purpose of expanding the stage floor surrounding the pit, and to cover the pit when the pit was not being used. (Exhibit D). Pit covers, pit lifts, or pit fillers serve a purpose to expand stage floors, they are not necessary a safety feature. (Deposition of Al Migon *Exhibit H*.)

District 230, through its' agents and representatives, particularly Bob Hughes and Tim Brown, rejected the pit covers, pit fillers, or pit lifts to minimize costs due to budgeting concerns. (Exhibit B). According to Paul Hansen's affidavit, District 230 saved approximately $95,000.00. When the contract between District 230 and VOA was finalized, the pit was designed to code, absent a pit cover, per the owner's specifications. When the pit cover was excluded, VOA and its designers relied on the Building Code section 1005.5, which stated that guards are not required for "the auditorium side of stages or raised platforms, or at vertical openings in the performance area of stages and platforms. (See BOCA code attached as *Exhibit I*).

Plaintiff alleged that VOA placed the orchestra pit in the floor in a location which created a danger. The orchestra pit was placed on a stage in an auditorium, which is where orchestra pits are intended to be placed and used in this industry. VOA was requested to submit its Certificate of Substantial Completion

9

FH Paschen and Jacob's Facilities when the area was substantially complete and able to be occupied. (See Al Migon deposition.)

## CONCLUSION

VOA is entitled to summary judgment as a matter of law because plaintiff=s allegations against it are unsupported by factual evidence, and the complaint fails to establish a duty under the four corners of the contract. VOA entered into a contract with District 230 to provide design services and limited administration. VOA did not have a responsibility for construction, installation, or construction safety at the project. Moreover, the contract did not impose a duty to inspect the construction to ensure its safety or to create an inspection plan. VOA had no authority to stop the work, had no control of construction methods or techniques, was not responsible for safety precautions and programs, and was not assigned any continuous supervision duties. VOA=s right to administrate the contract, together with any ancillary duty to inspect the site, was simply duties to see that the contract specifications were met. VOA's contract did not charge the designer of the project with construction safety, and VOA never voluntarily undertook any liability for Mr. Madden's safety. This incident occurred over three months after the premises had already been turned over to its' owner, District 230. This defendant was not in possession of said premises, and District 230 had a right to occupy the property after VOA issued a certificate of substantial completion in May 15, 2002. The Suburban Cook County Regional Office of Education inspected the school, and subsequently issued a temporary occupancy permit as well.

Additionally, after District 230 rejected the pit cover options due to cost, VOA did not incorporate the pit cover or pit filler options into its contract. More importantly, under the attached BOCA rules, vertical openings surrounding a stage do not require that an orchestra pit is covered, even when the pit is not in use.

Under the contract and under the law, there is no factual or legal basis for which to find VOA liable for the injuries incurred by Mr. Madden.

WHEREFORE Defendant, **VOA & ASSOCIATES, INC.**, prays that this Honorable Court enter an order granting it summary judgment since there is no genuine of issue of material fact.

                Respectfully submitted:

                _____
                Kurt G. Beranek
                Naderh H. Elrabadi,
                Attorneys for Defendant,
                **VOA & ASSOCIATES, INC.**

**FRATERRIGO, BERANEK,
FEIEREISEL & KASBOHM**
55 West Monroe Street, Suite 3400
Chicago, Illinois 60603-5081
Phone: 312-782-9255
Fax: 312-782-4537
Firm #34597