## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, | |
| Plaintiff, | Case No. 08 C 0862 |
| v. | Judge Kennelly |
| | Magistrate Judge Brown |
| VOA ASSOCIATES INC., LIBERTY INTERNATIONAL UNDERWRITERS, MICHAEL J.MADDEN and JEAN MADDEN, | |
| Defendants. | |

## VOA ASSOCIATES, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT FOR DECLARATORY JUDGMENT

Now Comes Defendant, VOA ASSOCATES, INC.("VOA"), by and through its attorneys, Schiff Hardin LLP, and for its Answer and Affirmative Defense to United States Fidelity and Guaranty Company's ("USF&G") Complaint for Declaratory Judgment, states as follows:

1.      This matter is an action for declaratory judgment action pursuant to 28 U.S.C. §2201, wherein United States Fidelity and Guaranty Company ("USF&G") seeks a declaration as to its rights and obligations to its insured, VOA & Associates ("VOA"), with respect to the matter titled *Michael J. Madden and Jean Madden v. P.H. Paschen; SN Nielson, Inc.; Jacobs Facilities, Inc.; Cliffs and Cables, LLC; and VOA & Associates; Schuler & Shook, Inc.*, No. 03 L 000433, Circuit Court of Cook County, Illinois ("the *Madden* Suit").

**ANSWER:**     VOA admits the allegations contained in paragraph 1.

2.      From June 20 to June 27, the underlying *Madden* Suit was tried and a verdict returned against the insured, VOA, on June 27, 2007 in the amount of $1,605,650.  USF&G, which has been providing and continues to provide a defense to VOA under a reservation of rights, seeks a declaration of no continuing defense obligation, no obligation to secure or post a bond and no indemnity obligation because such are not required under USF&G policy.

**ANSWER:**     VOA admits that from June 20 to June 27, the underlying *Madden* Suit was tried and a verdict returned against VOA on June 27, 2007 in the amount of $1,605,650.

VOA further admits that USF&G provided a defense, and continues to provide a defense, to VOA, and admits that since June 5, 2007 said defense was provided under a purported reservation of rights. VOA admits that USF&G seeks a declaration of no continuing defense obligation, no obligation to secure or post a bond and no indemnity obligation. VOA denies any remaining allegations contained in paragraph 2.

3.     USF&G also seeks restitution or reimbursement from Liberty, VOA's professional liability insurer, which should have defended VOA with respect to the underlying *Madden* Suit, but failed to do so and has been unjustly enriched by USF&G's defense of VOA.

**ANSWER:**   VOA admits that USF&G seeks restitution or reimbursement from Liberty, VOA's professional liability insurer. VOA denies the remaining allegations contained in paragraph 3.

## PARTIES

4.     Plaintiff, USF&G, is an insurance company organized and existing under the laws of the State of Maryland with its principal place of business in St. Paul, Minnesota.

**ANSWER:**   VOA lacks sufficient information to admit or deny the allegations contained in paragraph 4 and therefore denies them.

5.     Defendant, VOA & Associates, is a corporation organized under the laws of the State of Illinois and located in Cook County, Illinois.

**ANSWER:**   VOA denies the allegations contained in paragraph 5. VOA states that it is a Delaware corporation, and that one of its offices is located in Cook County, Illinois.

6.     On information and belief, Defendant Michael J. Madden is a citizen of the State of Illinois and resides in Cook County.

**ANSWER:**   VOA lacks sufficient information to admit or deny the allegations contained in paragraph 6 and therefore denies them.

7.     On information and belief, Defendant Jean Madden is a citizen of the State of Illinois and resides in Cook County.

**ANSWER:**     VOA lacks sufficient information to admit or deny the allegations contained in paragraph 7 and therefore denies them.

8.     On information and belief, Defendant Liberty is a corporation organized under the laws of the State of New York with its principal place of business in New York.

**ANSWER:**     VOA lacks sufficient information to admit or deny the allegations contained in paragraph 8 and therefore denies them.

## JURISDICTION AND VENUE

9.     Jurisdiction is proper in this Court, pursuant to 28 U.S.C. §1332(a), because the plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

**ANSWER:**     VOA admits the allegations contained in paragraph 9.

10.     Venue is proper in this District, pursuant to 28 U.S.C. §1391(a)(2), because a substantial part of the events or omissions giving rise to USF&G's claims for declaratory judgment occurred in this District.

**ANSWER:**     VOA admits the allegations contained in paragraph 10.

## THE USF&G POLICY

11.     USF&G issued policy No. BK01116165 to VOA, which was in effect May 1, 2002-2003.     The primary general liability coverage part has limits of liability of $1,000,000/accident and $2,000,000/aggregate.     The umbrella coverage part has liability limits of $5,000,000 (the "USF&G Policy").     A copy of the USF&G Policy is attached hereto as Exhibit A.

**ANSWER:**     VOA admits that USF&G issued policy No. BK01116165 to VOA, which was in effect May 1, 2002-2003, that the primary general liability coverage part has limits of liability of $1,000,000/accident and $2,000,000/aggregate, and that the umbrella coverage part has liability limits of $5,000,000. VOA admits that Exhibit A attached to the Complaint purports

to be a copy of the USF&G Policy.   VOA denies any remaining allegations contained in paragraph 11.

12.     The USF&G Policy is subject to all of its respective terms, conditions, limitations and exclusions.

**ANSWER:**     VOA denies the allegations contained in paragraph 12.

13.     The USF&G Policy contains Commercial General Liability Coverage Form (CL/BF 20 10 11 02), which provides that USF&G will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to which the insurance applies.

**ANSWER:**     VOA admits that Exhibit A attached to the Complaint purports to be a copy of the USF&G Policy, and that Exhibit A contains the provisions set forth in Paragraph 13. VOA denies any remaining allegations contained in Paragraph 13.

14.     The USF&G Policy contains a professional services exclusion in the primary coverage (Form CC/BF 23 92 10 01), which provides in pertinent part, that the insurance does not apply to:

I.     Professional Services

"Bodily injury," "property damage," "personal injury," or "advertising injury" due to rendering or failure to render any professional service by or on behalf of any insured. Professional service includes:

**\*\*\***

(2)     Architect, engineer, surveyor, construction contractor or construction management service, including:

(a)     Preparing, approving, or failing to prepare or approve any map, drawing, opinion, report, survey, change order, design, specification, recommendation, permit application, payment request, manual, instruction, computer program for design systems, or selection of a contractor or sub-contractor;
(b)     Any supervisory, inspection, or quality control service;
(c)     Any study, survey, assessment, evaluation, consultation, observation, scheduling, sequencing, training, or inspection, including those for job safety; and
(d)     Any monitoring, testing, or sampling service necessary to perform any of the services including in exclusion I.2(a), (b), or (c) above.

**ANSWER:**    VOA admits that Exhibit A attached to the Complaint purports to be a copy of the USF&G Policy, and that Exhibit A contains the provisions and exclusions set forth in Paragraph 14. VOA denies any remaining allegations contained in Paragraph 14.

15.    The USF&G Policy also contains a professional services exclusion in the umbrella coverage (CL/UL 22 27 02 93), which provides in pertinent part:

> This insurance does not apply to "injury" arising out of rendering or failing to render any professional service by you or on your behalf, including:
>
> 1.    Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and
> 2.    Supervisory, inspection or engineering services.

**ANSWER:**    VOA admits that Exhibit A attached to the Complaint purports to be a copy of the USF&G Policy, and that Exhibit A contains the provisions and exclusions set forth in Paragraph 15. VOA denies any remaining allegations contained in Paragraph 15.

16.    The USF&G Policy also includes the following conditions:

> **2.    Duties In the Event Of Occurrence, Offense, Claim or "Suit"**
>
> a.    You must see it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. Notice should include:
>
> (1)    How, when and where the "occurrence" or offense took place;
>
> (2)    The names and addresses of any injured persons and witnesses; and
>
> (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> c.    You and any other involved insured must:
>
> (3)    Cooperate with us in the investigation, settlement or defense of the claim or "suit";
>
> **8.    Transfer Of Rights Of Recovery Against Others To Us**
>
> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**ANSWER:**    VOA admits that Exhibit A attached to the Complaint purports to be a copy of the USF&G Policy, and that Exhibit A contains the conditions set forth in Paragraph 16. VOA denies any remaining allegations contained in Paragraph 16.

17.    The USF&G Policy also includes the following provision:

**C.    Supplementary Payments**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1.    All expenses we incur.

2.    Up to $2,500 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Liability coverage for "bodily injury" applies. We do not have to furnish these bonds.

3.    The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Liability. We do not have to furnish these bonds.

4.    All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $500 a day because of time off from work.

5.    All costs taxed against the insured in the "suit."

6.    Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Liability, we will not pay any pre-judgment interest based on that period of time after the offer.

7.    All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Liability.

These payments are not subject to the Limits of Liability.

**ANSWER:**    VOA admits that Exhibit A attached to the Complaint purports to be a copy of the USF&G Policy, and that Exhibit A contains the provisions set forth in Paragraph 17. VOA denies any remaining allegations contained in Paragraph 17.

## FACTUAL BACKGROUND

18.    On information and belief, on or about June 29, 1998, VOA contracted with Consolidated High School #230 (the "District") to provide architectural services in connection

with the design and construction of Amos Alonzo Stagg High School (the "School"), including preparation of design drawings and specifications, assistance in the bidding and letting of construction contracts, and observation of the progress and quality of the work. A true and correct copy of the Contract is attached hereto as Exhibit B.

**ANSWER:** VOA admits that on June 29, 1998, it entered into a contract ("Contract")

with Consolidated High School #230 to provide architectural services for a Project which

included, among other things, the remodeling and repair of Amos Alonzo Stagg High School.

VOA refers to the Contract itself for a full description of its legal obligations and duties pursuant

to the Contract, and admits only those duties and obligations set forth therein. VOA further

admits that Exhibit B attached to the Complaint purports to be a copy of the Contract. VOA

denies any remaining allegations contained in paragraph 18.

19.    Madden alleges that, on or about May 20, 2002, with the exception of punch list items, the construction work had been completed and VOA issued a certificate of substantial completion.

**ANSWER:** VOA denies that Madden alleges in the Fourth Amended Complaint, of

which Exhibit C to the Complaint purports to be a copy, that "on or about May 20, 2002, with

the exception of punch list items, the construction work had been completed and VOA issued a

certificate of substantial completion." VOA denies any remaining allegations contained in

paragraph 19.

20.    Michael Madden alleges that, on or about August 19, 2002, he was injured while working at the School ("Madden Accident").

**ANSWER:** VOA admits the allegations contained in paragraph 20.

### THE *MADDEN* SUIT

21.    On or about January 13, 2003, Michael and Jean Madden filed a complaint at law against the general contractor (Paschen/Nielsen), the project manager (Jacobs),the theater design consultant (Schuler & Shook), subcontractor (Cliffs and Cables), and the architect, VOA. VOA was served with the Madden Lawsuit on August 26, 2004.

**ANSWER:**     VOA admits only that VOA was served with a Summons and the Third

Amended Complaint on or about August 26, 2004.   VOA denies the remaining allegations

contained in paragraph 21.

22.     On August 16, 2006, Madden filed a fourth amended complaint, a copy of which
is attached hereto as Exhibit C.

**ANSWER:**     VOA admits that on or about August 16, 2006, Madden filed a fourth

amended complaint, and further admits that Exhibit C attached to the Complaint purports to be a

copy of the Fourth Amended Complaint.   VOA denies any remaining allegations contained in

paragraph 22.

23.     The fourth amended complaint alleges that on August 19, 2002, Michael Madden,
a maintenance worker employed by the District, was installing a large screen on the auditorium
stage for an event that was to be held that evening and that, on that date, Madden allegedly fell
into the orchestra pit and was injured.

**ANSWER:**     VOA admits that the Fourth Amended Complaint alleges that on or about

August 19, 2002 Michael Madden was employed by the District and that he fell onto the

orchestra pit and/or hole in the floor and was injured.   VOA denies any remaining allegations

contained in paragraph 23.

24.     VOA filed a motion for summary judgment in the *Madden* Suit, arguing that it
had no responsibility for safety on the job site, that it had no duty to supervise or control
Madden's work and that it designed the project according to the owner's specifications, which
did not include an orchestra pit cover, which was rejected by the owner.   A copy of VOA's
second amended motion for summary judgment is attached hereto as Exhibit D.

**ANSWER:**     VOA admits that Fraterrigo, Beranek, Feiereisel & Kasbohm filed a

Second Amended Motion for Summary Judgment on behalf of VOA that argued, in part, that

VOA had no responsibility for safety on the job site, had no duty to supervise or control

Madden's work, and that it designed the project according to the owner's specifications, which

did not include an orchestra pit cover, which was rejected by the owner.  VOA admits that Exhibit D to the Complaint purports to be a partial copy of VOA's Second Amended Motion for Summary Judgment.  VOA denies any remaining allegations contained in paragraph 24.

25.    On or about March 6, 2007, the trial court granted VOA's motion for summary judgment as to any construction claims but denied the motion as to claims of negligent design. *See* March 6, 2007 Order, attached hereto as Exhibit E.

**ANSWER:**    VOA admits the allegations contained in paragraph 25.

26.    The Order of March 6, 2007 stated in pertinent part:

> This matter coming on to be heard on VOA's motion for summary judgment, due notice having been given and the court being fully advised in the premises,
>
> IT IS HEREBY ORDERED:
>
> For the reasons stated in the record:
>
> 1)    VOA's motion for summary judgment is granted as to §343 and §414 liability and its allegations set forth in the complaint, and
>
> 2)    VOA's motion for summary judgment is denied as to the plaintiff's allegations of negligent design/code violations.

**ANSWER:**    VOA admits the allegations contained in paragraph 26.

27.    On or about June 1, 2007, the court granted summary judgment in favor of all defendants other than VOA.

**ANSWER:**    VOA admits that summary judgment was granted in favor of all defendants other than VOA, but denies the remaining allegations contained in paragraph 27.

28.    On or about June 28, 2007, Madden filed a notice of appeal as to the March 6, 2007 and June 1, 2007 Orders in the *Madden* Suit.  A copy of the Notice of Appeal is attached hereto as Exhibit F.

**ANSWER:**    VOA admits the allegations contained in paragraph 28.

29.    On or about January 17, 2008, the Court ruled on all motions pending post trial, denying VOA's motion for a new trial.

**ANSWER:**    VOA admits the allegations contained in paragraph 29.

30.    Upon information and belief, VOA intends to file a notice of appeal in the *Madden* Suit and, pursuant to Supreme Court Rule 305, is required to post an appeal bond.

**ANSWER:**    VOA admits that it has filed a notice of appeal, and denied the remaining allegations contained in paragraph 30.

## VOA'S CONDUCT WITH REGARD TO THE *MADDEN* SUIT

31.    USF&G received its first notice of the Madden Accident on September 1, 2004.

**ANSWER:**    VOA lacks sufficient information to admit or deny the allegations contained in paragraph 31 and therefore denies them.

32.    After receiving the summons and complaint in the *Madden* Suit, USF&G agreed to defend VOA under a complete reservation of rights.  A true and correct copy of USF&G's reservation of rights letter is attached hereto as Exhibit G.

**ANSWER:**    VOA admits only that after USF&G received a copy of the Summons and Third Amended Complaint served on VOA, USF&G agreed to defend VOA and assigned VOA defense counsel. VOA denies the remaining allegations contained in paragraph 32.

33.    Upon information and belief, VOA tendered the *Madden* Suit to Liberty for defense and indemnity.

**ANSWER:**    VOA admits that Liberty received a copy of the Third Amended Complaint from VOA's broker on or about December 8, 2005.  VOA denies any remaining or inconsistent allegations.

34.    Liberty has failed and refused to defend VOA in the *Madden* Suit.

**ANSWER:**    VOA denies the allegations contained in paragraph 34.

35.    USF&G has requested that VOA provide information regarding VOA's professional liability insurance policy with Liberty, which VOA has failed to provide.

**ANSWER:**    VOA denies the allegations contained in paragraph 35.

36.    On September 28, 2007, USF&G sent a letter to VOA, following up on "repeated" requests for information regarding VOA's professional liability policy with Liberty, including a copy of the policy, again requesting that VOA provide information regarding the Liberty policy.  A true and correct copy of the September 28, 2007 letter is attached hereto as Exhibit H.

**ANSWER:**    VOA admits only that USF&G sent a letter to VOA on September 28, 2007, of which Exhibit H purports to be a copy, but denies the statements contained therein, including, but not limited to, the statement that as of September 2007, USF&G had made "repeated" requests for information regarding VOA's professional liability policy with Liberty. VOA further denies the characterization of the letter set forth in paragraph 36.  VOA denies any remaining allegations contained in paragraph 36.

37.    On November 1, 2007, USF&G sent a letter to counsel for VOA, again requesting that VOA provide information regarding the Liberty policy, including a copy of the policy.  A true and correct copy of the November 1, 2007 letter is attached hereto as Exhibit I.

**ANSWER:**    VOA admits that on November 1, 2007, USF&G sent a letter to counsel for VOA and admits that Exhibit I to the Complaint purports to be a copy. VOA denies the characterization of the letter as set forth in paragraph 37, and any remaining allegations contained in paragraph 37.

38.    On January 17, 2008, USF&G sent a letter to counsel for VOA, again requesting that VOA provide information regarding the Liberty policy, including a copy of the policy.  A true and correct copy of the January 17, 2008 letter is attached hereto as Exhibit J.

**ANSWER:**    VOA admits that on January 17, 2008, USF&G sent a letter to counsel for VOA and admits that Exhibit J to the Complaint purports to be a copy. VOA denies the characterization of the letter as set forth in paragraph 38, and any remaining allegations contained in paragraph 38.

39.    VOA has failed to respond to any of USF&G's requests for information.

**ANSWER:**    VOA denies the allegations contained in paragraph 39.

## COUNT I
## DECLARATORY JUDGMENT
## (THE USF&G POLICY)

40.    USF&G incorporates the allegations of Paragraphs 1 through 39 above as though fully set forth herein.

**ANSWER:**    VOA incorporates its answers to Paragraphs 1 through 39 above as though

fully set forth herein.

41.    USF&G requests that the Court determine and declare that it has no obligation under the USF&G Policy to post or secure VOA's appeal bond, continue to defend VOA or to indemnify VOA with respect to any potential liability in the *Madden* Suit.

**ANSWER:**    VOA denies that USF&G is entitled to the relief it seeks.

42.    USF&G requests that the Court determine and declare that it has no obligation to post an appeal bond because no such obligation exists under the USF&G Policy.

**ANSWER:**    VOA denies that USF&G is entitled to the relief it seeks.

43.    USF&G requests that the Court determine and declare that it has no obligation under the USF&G Policy to defend or indemnify VOA under the USF&G Policy, in connection with the *Madden* Suit because coverage is barred by virtue of the "professional services" exclusion.

**ANSWER:**    VOA denies that USF&G is entitled to the relief it seeks.

44.    USF&G requests that the Court determine and declare that it has no obligation under the USF&G Policy to defend or indemnify VOA under the USF&G Policy, in connection with the *Madden* Suit because coverage is barred by virtue of VOA's breach of the "cooperation" condition.

**ANSWER:**    VOA denies that USF&G is entitled to the relief it seeks.

45.    USF&G requests that the Court determine and declare that it has no obligation under the USF&G Policy to defend or indemnify VOA, or any other alleged insured under the

USF&G Policy, in connection with the *Madden* Suit because coverage is barred because VOA did not provide timely notice of the underlying "occurrence."

> **ANSWER:**    VOA denies that USF&G is entitled to the relief it seeks.

46.    USF&G's investigation is ongoing, and USF&G reserves the right to raise any and all additional defenses to coverage as are warranted by the facts and the law.

> **ANSWER:**    VOA denies that USF&G is entitled to raise any defenses to coverage.

WHEREFORE, Plaintiff, USF&G, prays for judgment as follows:

(a)    Declaring that Plaintiff has no obligation to defend VOA with respect to the Underlying Litigation under the USF&G Policy;

(b)    Declaring that Plaintiff has no obligation to post or secure an appeal bond for VOA with respect to the *Madden* Suit;

(c)    Declaring that Plaintiff has no obligation to indemnify VOA with respect to the *Madden* Suit under the USF&G Policy;

(d)    Awarding Plaintiff's attorneys fees and costs incurred in prosecuting this lawsuit; and

(e)    Awarding Plaintiff such other and further relief as the Court may deem appropriate and just.

> **ANSWER:**    VOA denies that USF&G is entitled to the requested relief or any other.

## COUNTS II-VII

VOA makes no response to the allegations contained in Counts II-VII, as those counts are not directed against VOA.

## FIRST AFFIRMATIVE DEFENSE

### Estoppel- Failure to Reserve Rights

1.      VOA was first sued by Michael and Jean Madden in their Third Amended Complaint, filed August 17, 2004 and served on VOA on or about August 26, 2004.  A copy of the Third Amended Complaint is attached hereto as Exhibit 1.

2.      VOA tendered the claim to USF&G on or about August 31, 2004, and USF&G undertook the defense of VOA against the allegations of the Third Amended Complaint on or about September 1, 2004, pursuant to its obligations under policy  No. BK01116165 ("Policy"), and shortly thereafter retained the law firm of Fraterrigo, Beranek, Feiereisel & Kasbohm to defend VOA.

3.      Despite the fact that USF&G knew the date of Michael Madden's accident ("Occurrence") upon receipt of the Third Amended Complaint,  USF&G did not advise VOA at the time that it undertook VOA's defense that it was providing a defense under a reservation of rights, and specifically did not advise VOA that it was reserving its right to deny coverage based on VOA's failure to provide proper or timely notice of the Occurrence.

4.      USF&G is estopped to assert VOA's alleged lack of timely or proper notice of the Occurrence as a defense to coverage of the Madden Suit.

5.      On or about August 16, 2006, Michael and Jean Madden filed their Fourth Amended Complaint, attached to the Complaint as Exhibit C. (The Third and Fourth Amended Complaints are hereinafter referred to collectively as the "Madden Suit.")  Among other things, the Fourth Amended Complaint added allegations of negligent design against VOA.  Following the filing of the Fourth Amended Complaint, USF&G continued to defend VOA against all claims set forth in the Madden Suit, including the design claims.

6.    USF&G did not advise VOA that it was providing a defense under a reservation rights, and at no time prior to June 5, 2007 did USF&G advise VOA that the allegations of negligent design set forth in the Fourth Amended Complaint were excluded under the Policy. USF&G did not disclaim any obligation to defend or indemnify against the design claims until June 5, 2007, ten days before the case was set for trial.

7.    USF&G failed to properly reserve its right to deny coverage as to the design claims, and as a result, VOA reasonably expected that the defense costs as well as any judgment resulting from the Madden Suit would be covered by the Policy, and relied on the continued defense provided by USF&G and on USF&G's silence as to the design claims.

8.    USF&G is estopped to assert the professional services exclusion in the Policy as a defense to coverage of the Madden Suit.

## SECOND AFFIRMATIVE DEFENSE
### Estoppel- Failure to Advise Regarding Conflict Of Interest

1.    VOA adopts and realleges Paragraphs 1-8 of its First Affirmative Defense as though fully set forth herein.

2.    When USF&G continued defending VOA after the filing of the Fourth Amended Complaint, it had a possible conflict of interest with VOA in that the claims against VOA included ones that were potentially covered and ones that were not.

3.    In particular, the construction related claims against VOA from the Third Amended Complaint were repeated in the Fourth Amended Complaint, and these claims were potentially covered by the USF&G policy. On the other hand, the newly added design claims of the Fourth Amended Complaint were subject to the professional services exclusions of the USF&G policy.

4.    To fully protect its interest, USF&G had only to defeat the potentially covered construction claims.  To fully protect VOA's interest, however, USF&G had to defeat all of Madden's claims, both the construction claims and the design claims.

5.    Despite this possible conflict of interest, USF&G did not advise VOA of the possibility of a conflict of interest, and did not relinquish control of VOA's defense.

6.    As a result of USF&G's failure to advise VOA of this possible conflict of interest, USF&G is estopped to assert the professional services exclusion in the Policy as a defense to coverage of the Madden Suit.

VOA ASSOCIATES INC.

By:    / Amy R. Skaggs
By Its Attorneys

Paul M. Lurie
Amy R. Skaggs
SCHIFF HARDIN LLP
6600 Sears Tower, 233 South Wacker Drive
Chicago, IL  60606-6473
(312) 258-5500
Firm ID #90219

Dated: April 18, 2008

CHI\5616274.1

| | |
|---|---|
| 2120-Served | 2121-Served |
| 2220-Not Served | 2221-Not Served |
| 2320-Served by Mail | 2320-Served by Mail |
| 2420-Served by Publication | 2420-Served by Publication |
| SUMMONS | ALIAS SUMMONS                     2-81) CCG-1 |

STATE OF ILLINOIS    )
                     ) SS
COUNTY OF COOK       )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

MICHAEL J. MADDEN and JEAN MADDEN, )
                                   )
                 Plaintiffs,       )NO. 03 L 000433
                                   )
        vs.                        )
                                   )**PLEASE SERVE:**
F.H. PASCHEN, S.N. NIELSON, INC.,  )VOA ASSOCIATES INCORPORATED
JACOBS FACILITIES, INC.,CLIFFS AND )C/O Registered Agent, Lora Martyn
CABLES, LLC and VOA & ASSOCIATES,  )224 S. Michigan Ave., Suite 1400
                                   )Chicago, IL 60604
                 Defendants.       )

### SUMMONS

To each defendant:

    YOU ARE SUMMONED and required to file an answer in this case, or
otherwise file your appearance in the office of the clerk of this court
(located in the Richard J. Daley Center, Room 801, Chicago, Illinois
60602), within 30 days after service of this summons, not counting the
day of service. **IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE
TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH
IS HERETO ATTACHED.**

To the officer:
    This summons must be returned by the officer or other person to whom it was given for service,
with indorsement of service and fees, if any, immediately after service. If service cannot be made,
this summons shall be returned to indorsed. This summons may not be served later than 30 days after
its date.

                                                            **AUG 19 2004**

                                     WITNESS_____, 20____

                                            Clerk of Court **DOROTHY BROWN**
                  Date of service:_____ 8·26·04  *CLERK OF CIRCUIT COURT*
         (To be inserted by officer on copy left with  defendant or other person)

Atty No. 36573
Name:  HARMAN, FEDICK & O'CONNOR, LTD.
Attorney for Plaintiff
Address:  222 North LaSalle Street
City:  Chicago, Illinois  60601
Telephone:  (312) 263-6452
        DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY
Law Division Room 801
Chancery-Divorce Division Room 802
County Division Room 801
Probate Division Room 1202

**EXHIBIT**

1

```
2120-Served                           2121-Served
2220-Not Served                       2221-Not Served
2320-Served by Mail                   2320-Served by Mail
2420-Served by Publication            2420-Served by Publication
SUMMONS                               ALIAS SUMMONS              2-81) CCG-1
```

STATE OF ILLINOIS     )
                      )  SS
COUNTY OF COOK        )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

MICHAEL J. MADDEN and JEAN MADDEN, )
                                   )
                    Plaintiffs,    ) NO. 03 L 000433
                                   )
        vs.                        )
                                   ) **PLEASE SERVE:**
F.H. PASCHEN, S.N. NIELSON, INC.,  ) VOA ASSOCIATES INCORPORATED
JACOBS FACILITIES, INC.,CLIFFS AND ) C/O Registered Agent, Lora Martyn
CABLES, LLC and VOA & ASSOCIATES,  ) 224 S. Michigan Ave., Suite 1400
                                   ) Chicago, IL 60604
                    Defendants.    )

## SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer in this case, or otherwise file your appearance in the office of the clerk of this court (located in the Richard J. Daley Center, Room 801, Chicago, Illinois 60602), within 30 days after service of this summons, not counting the day of service. **IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.**

To the officer:
        This summons must be returned by the officer or other person to whom it was given for service, with indorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned to indorsed. This summons may not be served later than 30 days after its date.

WITNESS_____, 20___

                                        AUG 19 2004
                                        DOROTHY BROWN
                                        CLERK OF CIRCUIT COURT
                        Clerk of Court

            Date of service:  8·26·04              20___
        (To be inserted by officer on copy left with defendant or other person)

                                                    (SEAL)

Atty No. 36573
Name:  HARMAN, FEDICK & O'CONNOR, LTD.
Attorney for Plaintiff
Address:  222 North LaSalle Street
City:  Chicago, Illinois  60601
Telephone:  (312) 263-6452
        DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY
Law Division Room 801
Chancery-Divorce Division Room 802
County Division Room 801
Probate Division Room 1202

STATE OF ILLINOIS    )
                     )  SS
COUNTY OF COOK       )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

MICHAEL J. MADDEN and JEAN MADDEN, )
                                   )
                Plaintiffs,        )
                                   )
        vs.                        )   NO. 03 L 000433
                                   )
F.H. PASCHEN, S.N. NIELSON, INC.,  )
JACOBS FACILITIES, INC.,CLIFFS AND )
CABLES, LLC and VOA & ASSOCIATES,  )
                                   )
                Defendants.        )

**PLAINTIFF'S THIRD AMENDED COMPLAINT**

**COUNT I**
**NEGLIGENCE- F.H. PASCHEN, S.N. NIELSON, INC.**

NOW COMES the plaintiff, MICHAEL MADDEN, by his attorneys, HARMAN, FEDCIK & O'CONNOR, LTD. and complaining of the defendant, F.H. PASCHEN, S.N. NIELSON, INC., (hereinafter referred to as "PASCHEN"), states as follows:

1.    That on or about and before August 19, 2002, the defendant, PASCHEN, was a general contractor, who individually and by and through agents, servants and employees, owned and/or was in charge of the erection, construction, repairs, alteration, removal, and/or painting of a certain orchestra pit and/or hole in the stage located at Amos Alonzo Stagg High School District 230, 8015 West 111th Street, in the City of Palos Hills, County of Cook, and State of Illinois.

2.    That on or about August 19, 2002, plaintiff, MICHAEL MADDEN, was an employee of Amos Alonzo Stagg High School District 230 and was engaged in the performance of his duties at or near a

portion of the aforementioned certain orchestra pit and/or hole.

3. That at the aforementioned time and place, there was in force and effect a contract between the defendant, PASCHEN, and Amos Alonzo Stagg High School District 230.

4. That at the aforesaid time and place and prior thereto, the defendant, individually and through his agents, servants and employees, was present during the course of such erection, construction, repairs, alteration, removal, and/or painting. Further, the defendant, individually and through agents, servants and employees, participated in coordinating the work being done and designated various work methods, maintained and check work progress and participated in the scheduling of the work and the inspection of the work, and were likewise responsible for the work being performed pursuant to Section 1926.16 of the Occupational, Safety & Health Administration. In addition thereto, at that time and place, the defendant, individually and through agents, servants and employees, had the authority to stop the work, refuse the work and materials and order changes in the work, in the event the work was being performed in a dangerous manner or for any other reason. Furthermore, at that time and place, the defendant, individually and through agents, servants and employees, had supervision and control of the work, retention of the right to supervise and control the work, constant participation in ongoing activities at the construction site, supervision and coordination of subcontractors, responsibility for taking safety precautions at the job site, authority to issue change orders, the right to stop work,

2

ownership of the equipment at the job site, familiarity with construction customs and practices and had been in a position to assure worker safety or alleviate equipment deficiencies or improper work habits.

5.   That at the aforesaid time and place, and prior thereto, the defendant, individually and through agents, servants, employees, erected, constructed, placed or operated, or caused to be erected, constructed, placed or operated, a certain orchestra pit or hole in the stage floor, to facilitate and be used in the aforesaid erection, construction, repairs, alteration, removal, and/or painting.

6. That at all times herein relevant, the defendant, PASCHEN, had a duty to exercise reasonable care for the safety of workers lawfully upon the premises.

7.   That notwithstanding said duty, the defendant, PASCHEN, was then and there guilty of one or more of the following negligent acts or omissions:

    (a)   Placed the opening/pit in the floor in a location which created a danger for persons in the area;

    (b)   Failed to warn of the placement of opening/pit in the floor in a location which created a danger for persons in the area;

    (c)   Failed to erect warning signs, barricades, or block off said area;

    (d)   Failed to barricade or cover the opening/pit in the floor when they knew individuals were working and/or walking in that area;

    (e)   Failed to provide a barricade or cover or other device to prevent people from falling into the pit;

(f)  Failed to take adequate measures to prevent people from falling into the pit;

(g)  Failed to adequately train employees to correct, maintain, prevent the aforementioned;

(h)  Failed to have an adequate policy to correct, maintain, prevent the aforementioned.

(i)  Failed to provide the Plaintiff with a safe work area.

(j)  Failed to make a reasonable inspection of the premises.

8. That at said time and place and as a result of the aforementioned, plaintiff, MICHAEL MADDEN, was injured when he fell into the orchestra pit and/or hole in the floor.

9. That as a proximate result of the conduct of the defendant, PASCHEN, as aforesaid, the plaintiff, MICHAEL MADDEN, was thereby injured internally, externally and otherwise, both temporarily and permanently; and plaintiff thereby became sick, sore, lame, diseased and disordered and so remained for a long time, to wit: from thence hitherto, during all of which time he suffered or will suffer great pain and was hindered and prevented from attending to his business and affairs, and thereby sustained the loss of divers earnings, gains or profits; and plaintiff was or will be thereby compelled to pay out, expend and become liable for divers large sums of money in and about endeavoring to be cured of his injuries, as aforesaid.

WHEREFORE, the plaintiff, MICHAEL MADDEN, prays for judgment against the defendant, PASCHEN, in a sum in excess of Fifty Thousand Dollars ($50,000.00) plus the cost of this action.

## COUNT II

### LOSS OF CONSORTIUM- F.H. PASCHEN, S.N. NIELSON, INC.

NOW COMES the plaintiff, JEAN MADDEN, by and through her attorneys, HARMAN, FEDICK & O'CONNOR, LTD., and in complaining against the defendant, F.H. PASCHEN, S.N. NIELSON, INC., states as follows:

1.    That the plaintiff, JEAN MADDEN, realleges and incorporates paragraphs 1 through 9 of Count I as and for her paragraphs 1 through 9 in Count II.

10.    That the plaintiff, JEAN MADDEN, is the wife of MICHAEL MADDEN, and as a result of the injuries to MICHAEL MADDEN, the plaintiff, JEAN MADDEN, was deprived of his services, society, affection and consortium.

WHEREFORE, the plaintiff, JEAN MADDEN, prays for judgment against the defendant, F.H. PASCHEN, S.N. NIELSON, INC., in an amount within the jurisdiction of the Circuit Court of Cook County, Illinois.

## COUNT III

### NEGLIGENCE- JACOBS FACILITIES

NOW COMES the plaintiff, MICHAEL MADDEN, by his attorneys, HARMAN, FEDICK & O'CONNOR, LTD., and complaining of the defendant, JACOBS FACILITIES, INC., alleges as follows:

1. That on or about and before August 19, 2002, the defendant, JACOBS FACILITIES, INC., who individually and by and through agents, servants and employees, owned and/or was in charge of the erection, construction, repairs, alteration, removal, and/or

5

painting of a certain orchestra pit and/or hole in the stage located at the aforementioned location.

2. That on or about and before August 19, 2002, the defendant, JACOBS FACILITIES, INC., served as the project manager and/or construction manager for the work at and near the orchestra pit and/or hole in the stage located at the aforementioned location.

3. That on or about August 19, 2002, plaintiff, MICHAEL MADDEN, was an employee of Amos Alonzo Stagg High School District 230 and was engaged in the performance of his duties at or near a portion of the aforementioned certain orchestra pit and/or hole.

4. That at the aforementioned time and place, there was in force and effect a contract between the defendant, JACOBS FACILITIES, INC. and Amos Alonzo Stagg High School District 230.

5. That at the aforesaid time and place and prior thereto, the defendant, individually and through his agents, servants and employees, was present during the course of such erection, construction, repairs, alteration, removal, and/or painting. Further, the defendant, individually and through agents, servants and employees, participated in coordinating the work being done and designated various work methods, maintained and check work progress and participated in the scheduling of the work and the inspection of the work, and were likewise responsible for the work being performed pursuant to Section 1926.16 of the Occupational, Safety & Health Administration. In addition thereto, at that time and place, the defendant, individually and through agents, servants and employees, had the authority to stop the work, refuse the work and

6

materials and order changes in the work, in the event the work was being performed in a dangerous manner or for any other reason. Furthermore, at that time and place, the defendant, individually and through agents, servants and employees, had supervision and control of the work, retention of the right to supervise and control the work, constant participation in ongoing activities at the construction site, supervision and coordination of subcontractors, responsibility for taking safety precautions at the job site, authority to issue change orders, the right to stop work, ownership of the equipment at the job site, familiarity with construction customs and practices and had been in a position to assure worker safety or alleviate equipment deficiencies or improper work habits.

6.    That at the aforesaid time and place, and prior thereto, the defendant, individually and through agents, servants and employees, erected, constructed, placed or operated, or caused to be erected, constructed, placed or operated, a certain orchestra pit or hole in the stage floor, to facilitate and be used in the aforesaid erection, construction, repairs, alteration, removal, and/or painting.

7. That at all times herein relevant, the defendant, JACOBS FACILITIES, INC., had a duty to exercise reasonable care for the safety of workers lawfully upon the premises.

8.    That notwithstanding said duty, the defendant, JACOBS FACILITIES, INC., was then and there guilty of one or more of the following negligent acts or omissions:

7

persons in the area;

(a) Placed the opening/pit in the floor in a location which created a danger for persons in the area;

(b) Failed to warn of the placement of opening/pit in the floor in a location which created a danger for persons in the area;

(c) Failed to erect warning signs, barricades, or block off said area;

(d) Failed to barricade or cover the opening/pit in the floor when they knew individuals were working and/or walking in that area;

(e) Failed to provide a barricade or cover or other device to prevent people from falling into the pit;

(f) Failed to take adequate measures to prevent people from falling into the pit;

(g) Failed to adequately train employees to correct, maintain, prevent the aforementioned;

(h) Failed to have an adequate policy to correct, maintain, prevent the aforementioned.

(i) Failed to provide the Plaintiff with a safe work area.

(j) Failed to make a reasonable inspection of the premises.

9. That at said time and place and as a result of the aforementioned, plaintiff, MICHAEL MADDEN, was injured when he fell into the orchestra pit and/or hole in the floor.

10. That as a proximate result of the conduct of the defendant, JACOBS FACILITIES, INC., as aforesaid, the plaintiff, MICHAEL MADDEN, was thereby injured internally, externally and otherwise, both temporarily and permanently; and plaintiff thereby became sick, sore, lame, diseased and disordered and so remained for a long time, to wit: from thence hitherto, during all of which

8

time he suffered or will suffer great pain and was hindered and prevented from attending to his business and affairs, and thereby sustained the loss of divers earnings, gains or profits; and plaintiff was or will be thereby compelled to pay out, expend and become liable for divers large sums of money in and about endeavoring to be cured of his injuries, as aforesaid.

WHEREFORE, the plaintiff, MICHAEL MADDEN, prays for judgment against the defendant, JACOBS FACILITIES, INC. , in a sum in excess of Fifty Thousand Dollars ($50,000.00) plus the cost of this action.

## COUNT IV

### LOSS OF CONSORTIUM- JACOBS FACILITIES, INC.

NOW COMES the plaintiff, JEAN MADDEN, by and through her attorneys, HARMAN, FEDICK & O'CONNOR, LTD., and in complaining against the defendant, JACOBS FACILITIES, INC., states as follows:

1. That the plaintiff, JEAN MADDEN, realleges and incorporates paragraphs 1 through 10 of Count III as and for her paragraphs 1 through 10 in Count IV.

11. That the plaintiff, JEAN MADDEN, is the wife of MICHAEL MADDEN, and as a result of the injuries to MICHAEL MADDEN, the plaintiff, JEAN MADDEN, was deprived of his services, society, affection and consortium.

WHEREFORE, the plaintiff, JEAN MADDEN, prays for judgment against the defendant, JACOBS FACILITIES, INC., in an amount within the jurisdiction of the Circuit Court of Cook County, Illinois.

9

## COUNT V

### NEGLIGENCE- CLIFFS AND CABLES, LLC.

NOW COMES the plaintiff, MICHAEL MADDEN, by his attorneys, HARMAN, FEDICK & O'CONNOR, LTD., and complaining of the defendant, CLIFFS AND CABLES, LLC., alleges as follows:

1. That on or about and before August 19, 2002, the defendant, CLIFFS AND CABLES, LLC., who individually and by and through agents, servants and employees, owned and/or was in charge of the erection, construction, repairs, alteration, removal, and/or painting of a certain orchestra pit and/or hole in the stage located at the aforementioned location.

2. That on or about and before August 19, 2002, the defendant, CLIFFS & CABLES, LLC., served as a sub-contractor for the work at and near the orchestra pit and/or hole in the stage located at the aforementioned location.

3. That on or about August 19, 2002, plaintiff, MICHAEL MADDEN, was an employee of Amos Alonzo Stagg High School District 230 and was engaged in the performance of his duties at or near a portion of the aforementioned certain orchestra pit and/or hole.

4. That at the aforementioned time and place, there was in force and effect a contract between the defendant, CLIFFS AND CABLES, LLC. and Amos Alonzo Stagg High School District 230.

5. That at the aforesaid time and place and prior thereto, the defendant, individually and through his agents, servants and employees, was present during the course of such erection,

10

construction, repairs, alteration, removal, and/or painting. Further, the defendant, individually and through agents, servants and employees, participated in coordinating the work being done and designated various work methods, maintained and check work progress and participated in the scheduling of the work and the inspection of the work, and were likewise responsible for the work being performed pursuant to Section 1926.16 of the Occupational, Safety & Health Administration. In addition thereto, at that time and place, the defendant, individually and through agents, servants and employees, had the authority to stop the work, refuse the work and materials and order changes in the work, in the event the work was being performed in a dangerous manner or for any other reason. Furthermore, at that time and place, the defendant, individually and through agents, servants and employees, had supervision and control of the work, retention of the right to supervise and control the work, constant participation in ongoing activities at the construction site, supervision and coordination of subcontractors, responsibility for taking safety precautions at the job site, authority to issue change orders, the right to stop work, ownership of the equipment at the job site, familiarity with construction customs and practices and had been in a position to assure worker safety or alleviate equipment deficiencies or improper work habits.

6.    That at the aforesaid time and place, and prior thereto, the defendant, individually and through agents, servants and

11

employees, erected, constructed, placed or operated, or caused to be erected, constructed, placed or operated, a certain orchestra pit or hole in the stage floor, to facilitate and be used in the aforesaid erection, construction, repairs, alteration, removal, and/or painting.

7. That at all times herein relevant, the defendant, CLIFFS AND CABLES, LLC., had a duty to exercise reasonable care for the safety of workers lawfully upon the premises.

8. That notwithstanding said duty, the defendant, CLIFFS AND CABLES, LLC., was then and there guilty of one or more of the following negligent acts or omissions:

(a) Placed the opening/pit in the floor in a location which created a danger for persons in the area;

(b) Failed to warn of the placement of opening/pit in the floor in a location which created a danger for persons in the area;

(c) Failed to erect warning signs, barricades, or block off said area;

(d) Failed to warn of the opening/pit in the floor;

(e) Failed to barricade or cover the opening/pit in the floor when they knew individuals were working and/or walking in that area;

(f) Failed to provide a barricade or cover or other device to prevent people from falling into the pit;

(g) Failed to take adequate measures to prevent people from falling into the pit;

(h) Failed to adequately train employees to correct, maintain, prevent the aforementioned;

(i) Failed to have an adequate policy to correct, maintain, prevent the aforementioned.

12

(j)  Failed to provide the Plaintiff with a safe work area.

(k)  Failed to make a reasonable inspection of the premises.

9. That at said time and place and as a result of the aforementioned, plaintiff, MICHAEL MADDEN, was injured when he fell into the orchestra pit and/or hole in the floor.

10.  That as a proximate result of the conduct of the defendant, CLIFFS AND CABLES, LLC., as aforesaid, the plaintiff, MICHAEL MADDEN, was thereby injured internally, externally and otherwise, both temporarily and permanently; and plaintiff thereby became sick, sore, lame, diseased and disordered and so remained for a long time, to wit: from thence hitherto, during all of which time he suffered or will suffer great pain and was hindered and prevented from attending to his business and affairs, and thereby sustained the loss of divers earnings, gains or profits; and plaintiff was or will be thereby compelled to pay out, expend and become liable for divers large sums of money in and about endeavoring to be cured of his injuries, as aforesaid.

WHEREFORE, the plaintiff, MICHAEL MADDEN, prays for judgment against the defendant, CLIFFS AND CABLES, LLC. , in a sum in excess of Fifty Thousand Dollars ($50,000.00) plus the cost of this action.

## COUNT VI

### LOSS OF CONSORTIUM- CLIFFS & CABLES, LLC.

NOW COMES the plaintiff, JEAN MADDEN, by and through her

13

attorneys, HARMAN, FEDICK & O'CONNOR, LTD., and in complaining against the defendant, CLIFFS & CABLES, LLC., states as follows:

1.    That the plaintiff, JEAN MADDEN, realleges and incorporates paragraphs 1 through 10 of Count V as and for her paragraphs 1 through 10 in Count VI.

11.    That the plaintiff, JEAN MADDEN, is the wife of MICHAEL MADDEN, and as a result of the injuries to MICHAEL MADDEN, the plaintiff, JEAN MADDEN, was deprived of his services, society, affection and consortium.

WHEREFORE, the plaintiff, JEAN MADDEN, prays for judgment against the defendant, CLIFFS & CABLES, LLC., in an amount within the jurisdiction of the Circuit Court of Cook County, Illinois.

## COUNT VII

### NEGLIGENCE- VOA & ASSOCIATES

NOW COMES the plaintiff, MICHAEL MADDEN, by his attorneys, HARMAN, FEDICK & O'CONNOR, LTD., and complaining of the defendant, VOA & ASSOCIATES, alleges as follows:

1. That on or about and before August 19, 2002, the defendant, VOA & ASSOCIATES, who individually and by and through agents, servants and employees, owned and/or was in charge of the erection, construction, repairs, alteration, removal, and/or painting of a certain orchestra pit and/or hole in the stage located at the aforementioned location.

2. That on and before August 19, 2002, Defendant, VOA & ASSOCIATES, through its various agents, employees and servants, served as the architect for a Performing Arts Theater at the

14

aforementioned location.

3. That on or approximately August 19, 2002, plaintiff, MICHAEL MADDEN, was an employee of Amos Alonzo Stagg High School District 230 and was engaged in the performance of his duties at or near a portion of the aforementioned certain orchestra pit and/or hole.

4. That at the aforementioned time and place, there was in force and effect a contract between the defendant, VOA & ASSOCIATES and Amos Alonzo Stagg High School District 230.

5. That at the aforesaid time and place and prior thereto, the defendant, individually and through his agents, servants and employees, was present during the course of such erection, construction, repairs, alteration, removal, and/or painting. Further, the defendant, individually and through agents, servants and employees, participated in coordinating the work being done and designated various work methods, maintained and check work progress and participated in the scheduling of the work and the inspection of the work, and were likewise responsible for the work being performed pursuant to Section 1926.16 of the Occupational, Safety & Health Administration. In addition thereto, at that time and place, the defendant, individually and through agents, servants and employees, had the authority to stop the work, refuse the work and materials and order changes in the work, in the event the work was being performed in a dangerous manner or for any other reason. Furthermore, at that time and place, the defendant, individually and through agents, servants and employees, had supervision and

15

control of the work, retention of the right to supervise and control the work, constant participation in ongoing activities at the construction site, supervision and coordination of subcontractors, responsibility for taking safety precautions at the job site, authority to issue change orders, the right to stop work, ownership of the equipment at the job site, familiarity with construction customs and practices and had been in a position to assure worker safety or alleviate equipment deficiencies or improper work habits.

    6.    That at the aforesaid time and place, and prior thereto, the defendant, individually and through agents, servants and employees, erected, constructed, placed or operated, or caused to be erected, constructed, placed or operated, a certain orchestra pit or hole in the stage floor, to facilitate and be used in the aforesaid erection, construction, repairs, alteration, removal, and/or painting.

    7. That at all times herein relevant, the defendant, VOA & ASSOCIATES, had a duty to exercise reasonable care for the safety of workers lawfully upon the premises.

    8.    That notwithstanding said duty, the defendant, VOA & ASSOCIATES, was then and there guilty of one or more of the following negligent acts or omissions:

    (a)    Placed the opening/pit in the floor in a location which created a danger for persons in the area;

    (b)    Failed to warn of the placement of opening/pit in the floor in a location which created a danger for persons in the area;

    (c)    Failed to erect warning signs, barricades, or block

16

off said area;

(d)  Failed to barricade or cover the opening/pit in the floor when they knew individuals were working and/or walking in that area;

(e)  Failed to provide a barricade or cover or other device to prevent people from falling into the pit;

(f)  Failed to take adequate measures to prevent people from falling into the pit;

(g)  Failed to adequately train employees to correct, maintain, prevent the aforementioned;

(h)  Failed to have an adequate policy to correct, maintain, prevent the aforementioned.

(i)  Failed to make a reasonable inspection of the premises.

9. That at said time and place and as a result of the aforementioned, plaintiff, MICHAEL MADDEN, was injured when he fell into the orchestra pit and/or hole in the floor.

10. That as a proximate result of the conduct of the defendant, VOA & ASSOCIATES, as aforesaid, the plaintiff, MICHAEL MADDEN, was thereby injured internally, externally and otherwise, both temporarily and permanently; and plaintiff thereby became sick, sore, lame, diseased and disordered and so remained for a long time, to wit: from thence hitherto, during all of which time he suffered or will suffer great pain and was hindered and prevented from attending to his business and affairs, and thereby sustained the loss of divers earnings, gains or profits; and plaintiff was or will be thereby compelled to pay out, expend and become liable for divers large sums of money in and about endeavoring to be cured of his injuries, as aforesaid.

WHEREFORE, the plaintiff, MICHAEL MADDEN, prays for judgment

17

against the defendant, VOA & ASSOCIATES, in a sum in excess of Fifty Thousand Dollars ($50,000.00) plus the cost of this action.

## COUNT VIII

### LOSS OF CONSORTIUM - VOA & ASSOCIATES

NOW COMES the plaintiff, JEAN MADDEN, by and through her attorneys, HARMAN, FEDICK & O'CONNOR, LTD., and in complaining against the defendant, VOA & ASSOCIATES, states as follows:

1.    That the plaintiff, JEAN MADDEN, realleges and incorporates paragraphs 1 through 10 of Count VII as and for her paragraphs 1 through 10 in Count VIII.

11.    That the plaintiff, JEAN MADDEN, is the wife of MICHAEL MADDEN, and as a result of the injuries to MICHAEL MADDEN, the plaintiff, JEAN MADDEN, was deprived of his services, society, affection and consortium.

WHEREFORE, the plaintiff, JEAN MADDEN, prays for judgment against the defendant, VOA & ASSOCIATES, in an amount within the jurisdiction of the Circuit Court of Cook County, Illinois.

HARMAN, FEDICK & O'CONNOR, LTD.

BY: _____

KEVIN W. O'CONNOR

HARMAN, FEDICK & O'CONNOR, LTD. #36573
Attorneys for Plaintiff
222 North LaSalle Street, Suite 430
Chicago, Illinois  60601
(312) 263-6452

18