# THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES FIDELITY AND<br>GUARANTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 0862 |
| | ) | |
| VOA ASSOCIATES, INC., LIBERTY<br>INTERNATIONAL UNDERWRITERS,<br>MICHAEL J. MADDEN and JEAN MADDEN, | ) | Judge Kennelly<br>Magistrate Judge Brown |
| | ) | |
| Defendants. | ) | |

## ANSWER AND AFFIRMATIVE DEFENSES OF
## LIBERTY INSURANCE UNDERWRITERS, INC.

Defendant Liberty Insurance Underwriters, Inc. (incorrectly sued as "Liberty International Underwriters"), hereinafter "Liberty," responds to the Complaint as follows:

### LIBERTY'S ANSWER TO COUNT I
(Declaratory Judgment)

1. This matter is an action for declaratory judgment action pursuant to 28 U.S.C. §2201, wherein United States Fidelity and Guaranty Company ("USF&G") seeks a declaration as to its rights and obligations to its insured, VOA & Associates ("VOA"), with respect to the matter titled *Michael J. Madden and Jean Madden v. P.H. Paschen; SN Nielson, Inc.; Jacobs Facilities, Inc.; Cliffs and Cables, LLC; and VOA & Associates; Schuler & Shook, Inc.*, No. 03 L 000433, Circuit Court of Cook County, Illinois ("the *Madden* Suit").

**ANSWER:**  Admitted.

2. From June 20 to June 27, the underlying *Madden* Suit was tried and a verdict returned against the insured, VOA, on June 27, 2007 in the amount of $1,605,650. USF&G, which has been providing and continues to provide a defense to VOA under a reservation of rights, seeks a declaration of no continuing defense obligation, no obligation to secure or post a bond and no indemnity obligation because such are not required under the USF&G policy.

**ANSWER:**  Liberty admits that the *Madden* Suit was tried and resulted in the

verdict as alleged and that USF&G has been defending VOA or paying for its

defense and, at times, under a purported reservation of right. Liberty denies the

remaining allegations of Paragraph 2.

3.  USF&G also seeks restitution or reimbursement from Liberty, VOA's professional liability insurer, which should have defended VOA with respect to the underlying *Madden* Suit, but failed to do so and has been unjustly enriched by USF&G's defense of VOA.

**ANSWER:**  Liberty admits that it is VOA's professional liability insurer and that

USF&G seeks restitution or reimbursement from it but denies the other allegations

of Paragraph 3.

4.  Plaintiff, USF&G, is an insurance company organized and existing under the laws of the State of Maryland with its principal place of business in St. Paul, Minnesota.

**ANSWER:**  Liberty lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 4.

5.  Defendant, VOA & Associates, is a corporation organized under the laws of the State of Illinois and located in Cook County, Illinois.

**ANSWER:**  Liberty lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 5.

6.  On information and belief, Defendant Michael J. Madden is a citizen of the State of Illinois and resides in Cook County.

**ANSWER:**  Liberty lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 6.

7.  On information and belief, Defendant Jean Madden is a citizen of the State of Illinois and resides in Cook County.

**ANSWER:**  Liberty lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 7.

8.  On information and belief, Defendant Liberty is a corporation organized under the laws of the State of New York with its principal place of business in New York.

**ANSWER:**  Admitted.

9.  Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332(a), because the plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

**ANSWER:**  Admitted.

10.  Venue is proper in this District, pursuant to 28 U.S.C. § 1391 (a)(2), because a substantial part of the events or omissions giving rise to USF&G's claims for declaratory judgment occurred in this District.

**ANSWER:**  Admitted.

11.  USF&G issued policy No. BK01116165 to VOA, which was in effect May 1, 2002-2003. The primary general liability coverage part has limits of liability of $1,000,000/accident and $2,000,000/aggregate. The umbrella coverage part has liability limits of $5,000,000 (the "USF&G Policy"). A copy of the USF&G Policy is attached hereto as Exhibit A.

**ANSWER:**  Liberty admits that USF&G has provided primary general liability and

umbrella liability insurance coverage to VOA for the period alleged and that Exhibit

A purports to be the policy. Liberty otherwise lacks knowledge or information

sufficient to form a belief as to the truth of the allegations of Paragraph 11.

12.  The USF&G Policy is subject to all of its respective terms, conditions, limitations and exclusions.

**ANSWER:**  Denied.

13.  The USF&G Policy contains Commercial General Liability Coverage Form (CL/BF 20 10 11 02), which provides that USF&G will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to which the insurance applies.

**ANSWER:** Liberty admits that Exhibit A, the alleged policy, contains such form

and provisions; Liberty denies any remaining allegations.

14. The USF&G Policy contains a professional services exclusion in the primary coverage (Form CC/BF 23 92 10 01), which provides in pertinent part, that the insurance does not apply to:

I. Professional Services

"Bodily injury," "property damage," "personal injury," or "advertising injury" due to rendering or failure to render any professional service by or on behalf of any insured. Professional service includes:

\*\*\*

(2)    Architect, engineer, surveyor, construction contractor or construction management service, including:

(a)    Preparing, approving, or failing to prepare or approve any map, drawing, opinion, report, survey, change order, design, specification recommendation, permit application, payment request, manual, instruction, computer program for design systems, or selection of a contractor or sub-contractor;

(b)    Any supervisory, inspection, or quality control service;

(c)    Any study, survey, assessment, evaluation, consultation, observation, scheduling, sequencing, training, or inspection, including those for job safety; and

(d)    Any monitoring, testing, or sampling service necessary to perform any of the services including in exclusion 1.2(a), (b), or (c) above.

**ANSWER:** Liberty admits that Exhibit A, the alleged policy, contains such form

and exclusion; Liberty denies any remaining allegations.

15. The USF&G Policy also contains a professional services exclusion in the umbrella coverage (CL/UL 22 27 02 93), which provides in pertinent part:

This insurance does not apply to "injury" arising out of rendering or failing to render any professional service by you or on your behalf including:

1.    Preparing, approving, or failing to prepare or approve maps,

drawings, opinions, reports, surveys, change orders, designs or specifications; and

2.    Supervisory, inspection or engineering services.

**ANSWER:**   Liberty admits that Exhibit A, the alleged policy, contains such form

and exclusion; Liberty denies any remaining allegations.

16.    The USF&G Policy also includes the following conditions:

2.    Duties In The Event Of Occurrence, Offense, Claim or "Suit"

a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. Notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

c.    You and any other involved insured must:

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit";

8.    Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**ANSWER:**   Liberty admits that Exhibit A, the alleged policy, contains such

conditions; Liberty denies any remaining allegations.

17.    The USF&G Policy also includes the following provision:

C.     Supplementary Payments

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1.     All expenses we incur.

2.     Up to $2,500 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Liability coverage for "bodily injury" applies. We do not have to furnish these bonds.

3.     The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Liability. We do not have to furnish these bonds.

4.     All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $500 a day because of time off from work.

5.     All costs taxed against the insured in the "suit."

6.     Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable Limit of Liability, we will not pay any pre-judgment interest based on that period of time after the offer.

7.     All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Liability.

These payments are not subject to the Limits of Liability.

**ANSWER:**  Liberty admits that Exhibit A, the alleged policy, contains such a

provision; Liberty denies any remaining allegations.

18.   On information and belief, on or about June 29, 1998, VOA contracted with Consolidated High School District #230 (the "District") to provide architectural services in connection with the design and construction of Amos Alonzo Stagg High School (the "School"), including preparation of design drawings and specifications,

assistance in the bidding and letting of construction contracts, and observation of the progress and quality of the work. A true and correct copy of the Contract is attached hereto as Exhibit B.

**ANSWER:**   Liberty admits that Exhibit B purports to be a contract between VOA

and the District. Liberty denies any allegations inconsistent with the terms of the

alleged contract.

    19.   Madden alleges that, on or about May 20, 2002, with the exception of punch list items, the construction work had been completed and VOA issued a certificate of substantial completion.

**ANSWER:**   Denied.

    20.   Michael Madden alleges that, on or about August 19, 2002, he was injured while working at the School ("Madden Accident").

**ANSWER:**   Admitted.

    21.   On or about January 13, 2003, Michael and Jean Madden filed a complaint at law against the general contractor (Paschen/Nielsen), the project manager (Jacobs), the theater design consultant (Schuler & Shook), subcontractor (Cliffs and Cables), and the architect, VOA. VOA was served with the Madden Lawsuit on August 26, 2004.

**ANSWER:**   Liberty admits that the Madden Lawsuit filed on January 13, 2003

sued the general contractor (Paschen/Nielsen). Liberty denies that VOA was sued in

the initial complaint. Liberty admits that VOA was first sued in, and was served

with, the Third Amended Complaint, on or about August 26, 2004. Liberty denies

the remaining allegations of Paragraph 21.

    22.   On August 16, 2006, Madden filed a fourth amended complaint, a copy of which is attached hereto as Exhibit C.

**ANSWER:**   Admitted.

    23.   The fourth amended complaint alleges that on August 19, 2002, Michael Madden, a maintenance worker employed by the District, was installing a large

screen on the auditorium stage for an event that was to be held that evening and that, on that date, Madden allegedly fell into the orchestra pit and was injured.

**ANSWER:**  Liberty admits that the Fourth Amended Complaint alleges that on or about August 19, 2002 Michael Madden was employed by the District and that he fell into the orchestra pit and/or hole in the floor and was injured. Liberty denies the remaining allegations of Paragraph 23.

24.   VOA filed a motion for summary judgment in the *Madden* Suit, arguing that it had no responsibility for safety on the job site, that it had no duty to supervise or control Madden's work and that it designed the project according to the owner's specifications, which did not include an orchestra pit cover, which was rejected by the owner. A copy of VOA's second amended motion for summary judgment is attached hereto as Exhibit D.

**ANSWER:**  Liberty admits that Fraterrigo, Beranek, Feiereisel & Kasbohm filed a Second Amended Motion for Summary Judgment on behalf of VOA that argued, in part, that VOA had no responsibility for safety on the job site, had no duty to supervise or control Madden's work, and that it designed the project according to the owner's specifications, which did not include an orchestra pit cover, which was rejected by the owner. Liberty admits that Exhibit D to the Complaint purports to be a partial copy of VOA's Second Amended Motion for Summary Judgment. Liberty denies any remaining allegations contained in paragraph 24.

25.   On or about March 6, 2007, the trial court granted VOA's motion for summary judgment as to any construction claims but denied the motion as to claims of negligent design. *See* March 6, 2007 Order, attached hereto as Exhibit E.

**ANSWER:**  Admitted.

26.   The Order of March 6, 2007 stated in pertinent part:

> This matter coming on to be heard on VOA's motion for summary judgment, due notice having been given and the court being fully

advised in the premises,

IT IS HEREBY ORDERED:

For the reasons stated in the record:

1)    VOA's motion for summary judgment is granted as to §343 &
      §414 liability and its allegations set forth in the complaint, and

2)    VOA's motion for summary judgment is denied as to the
      plaintiff's allegations of negligent design/code violations.

**ANSWER:**  Admitted.

27.   On or about June 1, 2007, the court granted summary judgment in favor
of all defendants other than VOA.

**ANSWER:**  Liberty admits that summary judgment was granted in favor of all

defendants other than VOA but denies the remaining allegations of Paragraph 27.

28.   On or about June 28, 2007, Madden filed a notice of appeal as to the
March 6,2007 and June 1, 2007 Orders in the *Madden* Suit. A copy of the Notice of
Appeal is attached hereto as Exhibit F.

**ANSWER:**  Admitted.

29.   On or about January 17, 2008, the Court ruled on all motions pending
post trial, denying VOA's motion for a new trial.

**ANSWER:**  Admitted.

30.   Upon information and belief, VOA intends to file a notice of appeal in
the *Madden* Suit and, pursuant to Supreme Court Rule 305, is required to post an
appeal bond.

**ANSWER:**  Liberty admits that VOA has filed a notice of appeal. Liberty denies

that there is any procedural requirement to post an appeal bond.

31.   USF&G received its first notice of the Madden Accident on September 1,
2004.

**ANSWER:**  Liberty lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 31.

32.   After receiving the summons and complaint in the *Madden* Suit, USF&G agreed to defend VOA under a complete reservation of rights. A true and correct copy of USF&G's reservation of rights letter is attached hereto as Exhibit G.

**ANSWER:**   Liberty lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 32.

33.   Upon information and belief, VOA tendered the *Madden* Suit to Liberty for defense and indemnity.

**ANSWER:**   Liberty admits only that it received a copy of the Third Amended

Complaint from VOA's broker on or about December 8, 2005. Liberty denies any

remaining or inconsistent allegations.

34.   Liberty has failed and refused to defend VOA in the *Madden* Suit.

**ANSWER:**   Denied.

35.   USF&G has requested that VOA provide information regarding VOA's professional liability insurance policy with Liberty, which VOA has failed to provide.

**ANSWER:**   Liberty lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 35.

36.   On September 28, 2007, USF&G sent a letter to VOA, following up on "repeated" requests for information regarding VOA's professional liability policy with Liberty, including a copy of the policy, again requesting that VOA provide information regarding the Liberty policy. A true and correct copy of the September 28, 2007 letter is attached hereto as Exhibit H.

**ANSWER:**   Liberty lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 36.

37.   On November 1, 2007, USF&G sent a letter to counsel for VOA, again requesting that VOA provide information regarding the Liberty policy, including a copy of the policy. A true and correct copy of the November 1, 2007 letter is attached

hereto as Exhibit I.

**ANSWER:**   Liberty lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 37.

38.   On January 17, 2008, USF&G sent a letter to counsel for VOA, again requesting that VOA provide information regarding the Liberty policy, including a copy of the policy. A true and correct copy of the January 17, 2008 letter is attached hereto as Exhibit J.

**ANSWER:**   Liberty lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 38.

39.   VOA has failed to respond to any of USF&G's requests for information.

**ANSWER:**   Liberty lacks knowledge or information sufficient to form a belief as to

the truth of the allegations of Paragraph 39.

40.   USF&G incorporates the allegations of Paragraphs 1 through 39 above as though fully set forth herein.

**ANSWER:**   Liberty incorporates its answers to Paragraphs 1 through 39 above as

though fully set forth herein.

41.   USF&G requests that the Court determine and declare that it has no obligation under the USF&G Policy to post or secure VOA's appeal bond, continue to defend VOA or to indemnify VOA with respect to any potential liability in the *Madden* Suit.

**ANSWER:**   Liberty denies that USF&G is entitled to the relief it seeks.

42.   USF&G requests that the Court determine and declare that it has no obligation to post an appeal bond because no such obligation exists under the USF&G Policy.

**ANSWER:**   Liberty denies that USF&G is entitled to the relief it seeks.

43.   USF&G requests that the Court determine and declare that it has no obligation under the USF&G Policy to defend or indemnify VOA under the USF&G Policy, in connection with the *Madden* Suit because coverage is barred by virtue of

the "professional services" exclusion.

**ANSWER:**    Liberty denies that USF&G is entitled to the relief it seeks.

44.    USF&G requests that the Court determine and declare that it has no obligation under the USF&G Policy to defend or indemnify VOA under the USF&G Policy, in connection with the *Madden Suit* because coverage is barred by virtue of VOA's breach of the "cooperation" condition.

**ANSWER:**    Liberty denies that USF&G is entitled to the relief it seeks.

45.    USF&G requests that the Court determine and declare that it has no obligation under the USF&G Policy to defend or indemnify VOA, or any other alleged insured under the USF&G Policy, in connection with the *Madden* Suit because coverage is barred because VOA did not provide timely notice of the underlying "occurrence."

**ANSWER:**    Liberty denies that USF&G is entitled to the relief it seeks.

46.    USF&G's investigation is ongoing, and USF&G reserves the right to raise any and all additional defenses to coverage as are warranted by the facts and the law.

**ANSWER:**    Liberty denies that USF&G is entitled to raise any defenses to

coverage.

WHEREFORE, Plaintiff, USF&G, prays for judgment as follows:

(a)    Declaring that Plaintiff has no obligation to defend VOA with respect to the Underlying Litigation under the USF&G Policy;

(b)    Declaring that Plaintiff has no obligation to post or secure an appeal bond for VOA with respect to the *Madden* Suit;

(c)    Declaring that Plaintiff has no obligation to indemnify VOA with respect to the *Madden* Suit under the USF&G Policy;

(d)    Awarding Plaintiff's attorneys fees and costs incurred in prosecuting this lawsuit; and

(e)    Awarding Plaintiff such other and further relief as the Court may deem appropriate and just.

**ANSWER:**   Liberty denies that USF&G is entitled to the requested relief or any other.

## LIBERTY'S AFFIRMATIVE DEFENSES TO COUNT I

### First Affirmative Defense
(Failure to reserve rights as to notice of "occurrence")

1.     VOA was first sued by Michael and Jean Madden in their Third Amended Complaint, filed August 17, 2004 and served on VOA on or about August 26, 2004.  A copy of the Third Amended Complaint is attached hereto as Exhibit 1.

2.     On or about September 1, 2004, USF&G undertook the defense of VOA against the allegations of the Third Amended Complaint pursuant to USF&G policy No. BK01116165. Shortly thereafter, USF&G retained the law firm of Fraterrigo, Beranek, Feiereisel & Kasbohm to defend VOA.

3.     Although USF&G alleges (in Paragraph 45 of Count I) that it did not receive timely notice of the "occurrence," USF&G undertook VOA's defense in the *Madden* suit without reserving its rights in this regard or otherwise raising the notice of "occurrence" as a potential coverage defense.

4.     USF&G is estopped from asserting the notice of "occurrence" condition of its policy.

### Second Affirmative Defense
(Failure to reserve rights as to the design claim in the Fourth Amended Complaint)

1.   Liberty adopts and realleges Paragraphs 1 through 4 of its First Affirmative Defense, above, as though fully set forth herein.

2.   On August 16, 2006, the Maddens filed their Fourth Amended Complaint and served it on the Fraterrigo firm, the attorneys retained by USF&G to defend VOA.

3.   The Fourth Amended Complaint added allegations of negligent design against VOA.

4.   Following the filing of the Fourth Amended Complaint, USF&G continued to defend VOA, including against the newly added design claims.

5.   Following the filing of the Fourth Amended Complaint, USF&G did not advise VOA that the design claims were excluded under its policy, disclaim any obligation to defend or indemnify against the design claims, or provide any reservation of rights to VOA until June 5, 2007, ten days before the case was set for trial.

6.   VOA reasonably expected that the *Madden* suit would be covered by USF&G and relied on the continued defense by USF&G and the Fraterrigo firm and on their silence as to any coverage ramifications of the newly added design allegations in the Fourth Amended Complaint.

7.   USF&G is estopped from asserting the professional services exclusions in its policy.

### Third Affirmative Defense
(Conflict of interest)

1.   Liberty adopts and realleges Paragraphs 1 through 7 of its Second Affirmative Defense, above, as though fully set forth herein.

2.    When USF&G continued defending VOA after the filing of the Fourth Amended Complaint, it had a conflict of interest with VOA in that the claims against VOA included ones that were potentially covered and ones that were not.

3.    In particular, the construction related claims against VOA from the Third Amended Complaint were repeated in the Fourth Amended Complaint, and these were potentially covered. On the other hand, the newly added design claims of the Fourth Amended Complaint were potentially subject to the professional services exclusions of USF&G's policy and, thus, not covered.

4.    To fully protect its interest, USF&G had only to defeat the potentially covered construction claims. To fully protect VOA's interest, however, USF&G had to defeat all of Madden's claims, both the construction claims and the design claims.

5.    Despite its conflict of interest, USF&G did not advise VOA of the conflict and did not relinquish control of the defense but continued defending VOA through its chosen counsel, the Fraterrigo firm.

6.    Thereafter, USF&G and the Fraterrigo firm put USF&G's interests ahead of VOA's and obtained summary judgment on the construction related claims, leaving the design claims to proceed to trial and to result in a verdict against VOA in the amount of $1,605,650.

7.    VOA was prejudiced by USF&G's and Fraterrigo's control of its defense, and USF&G is now estopped from asserting the professional services exclusions in its policy.

### LIBERTY'S ANSWER TO COUNT II
#### (Unjust Enrichment / Restitution)

47.   USF&G incorporates by reference the allegations of Paragraphs 1 through 39 above as though fully set forth herein.

**ANSWER:**   Liberty incorporates by reference its answers to Paragraphs 1 through

39 of Count I above as though fully set forth herein.

48.   On information and belief, Liberty issued a "claims made" policy of professional liability insurance to VOA under Policy No. AEE1968870104, effective December 5, 2004 to December 5, 2005, with limits of liability of $2 million per occurrence and $4 million in the aggregate ("the Liberty Policy"), which makes Liberty obligated to defend and indemnify its insured, VOA, with regard to the *Madden* Suit.

**ANSWER:**   Liberty admits that it issued the policy alleged but denies that it is

obligated under that policy to defend or indemnity VOA with regard to the *Madden*

Suit.

49.   Liberty has refused USF&G's requests that it provide USF&G with a copy of the Liberty Policy or of its coverage position with regard to the *Madden* Suit.

**ANSWER:**   Liberty denies that it has received a request (from anyone) to provide

USF&G with a copy of Policy No. AEE1968870104 or any other policy that it issued

to VOA. Liberty has in fact provided its coverage position to USF&G's counsel.

Liberty denies any remaining allegations of Paragraph 49.

50.   Liberty owes a primary duty to defend and indemnify VOA with respect to the allegations of the *Madden* Suit alleging negligently performed "professional services."

**ANSWER:**   Denied.

51.   Liberty has failed to provide a defense to VOA with respect to the *Madden* Suit.

**ANSWER:**   Liberty denies that it has been called upon by VOA to provide it with a

defense in the *Madden* Suit and otherwise denies the allegations of Paragraph 51.

52.   Liberty has refused to reimburse USF&G any of the monies that USF&G has paid for the defense of VOA.

**ANSWER:**   Liberty admits that it has refused to reimburse USF&G for the monies

paid for VOA's defense but denies that USF&G is entitled to any such

reimbursement.

53.   Liberty has been unjustly enriched in that it benefited from USF&G's provision of a defense to VOA, and it would be inequitable for Liberty to retain that benefit.

**ANSWER:**   Denied.

54.   On or about September 6, 2007, Liberty, through its Senior Claims Specialist, George A. Ammon, agreed to post its policy as VOA's appeal bond with respect to the *Madden* Suit.

**ANSWER:**   Admitted.

55.   Upon information and belief, as of the filing of this action, Liberty has reneged on its agreement to post its policy as the appeal bond.

**ANSWER:**   Denied. Subject to a reservation of rights provided to counsel for VOA,

Liberty obtained an appeal bond for VOA. Said bond was approved by the trial court

in the *Madden* Suit and filed on March 27, 2008. USF&G has agreed to pay the

premium for the appeal bond.

56.   Liberty's conduct of agreeing to post its policy as the appeal bond and its resultant reneging on that promise is a continuation of its abandonment of its insured and a further breach of its duties to its insured under its policy.

**ANSWER:**   Denied.

WHEREFORE, Plaintiff, USF&G, prays for judgment as follows:

(a)   Declaring that USF&G has no obligation to defend or indemnify VOA under the USF&G Policy;

(b)    Declaring that Liberty owes a primary duty to defend and indemnify VOA under its policy;

(c)    Awarding USF&G that which it has paid defending VOA, and prejudgment interest thereon, in the *Madden* Suit that should have been paid by Liberty;

(d)    Awarding USF&G attorney's fees and costs incurred in prosecuting this lawsuit; and

(e)    Awarding USF&G such other and further relief as the Court may deem appropriate and just.

**ANSWER:**  Liberty denies that USF&G is entitled to the requested relief or any

other.

## LIBERTY'S ANSWER TO COUNT III
(Equitable Contribution)

57.    USF&G incorporates the allegations of Paragraphs 1 through 56 above as though fully set forth herein.

**ANSWER:**  Liberty incorporates by reference its answers to Paragraphs 1 through

56 of Counts I and II, above, as though fully set forth herein.

58.    This count is pled in the alternative and without prejudice to USF&G's other claims herein.

**ANSWER:**  If any answer should be necessary, Liberty denies the allegations of

this Paragraph.

59.    To the extent that USF&G owes coverage to VOA with respect to the *Madden* Suit which USF&G denies, USF&G and Liberty are coinsurers with respect to the *Madden* Suit.

**ANSWER:**  Liberty denies that it is a coinsurer with USF&G with respect to the

*Madden* Suit.

60.    USF&G has paid the entirety of the fees incurred for the defense of VOA

with respect to the *Madden* Suit, and has therefore paid greater than its share of the loss.

**ANSWER:**  Liberty lacks knowledge or information sufficient to form a belief as to

whether USF&G has paid the entirety of the fees incurred for the defense of VOA in

the *Madden* Suit. Liberty denies that USF&G has paid greater than its share of the

loss.

61.  USF&G is entitled to equitable contribution from its coinsurer, Liberty, which has failed to pay its share of the defense fees incurred on behalf of VOA with respect to the *Madden* Suit.

**ANSWER:**  Denied.

WHEREFORE, Plaintiff, USF&G, prays for judgment as follows:

(a)  Declaring that USF&G has no obligation to defend or indemnify VOA under the USF&G Policy;

(b)  Declaring that Liberty owes a primary duty to defend and indemnify VOA under its policy;

(c)  Awarding USF&G that which it has paid defending VOA, and prejudgment interest thereon, in the *Madden* Suit that should have been paid by Liberty;

(d)  Awarding USF&G attorney's fees and costs incurred in prosecuting this lawsuit; and

(e)  Awarding USF&G such other and further relief as the Court may deem appropriate and just.

**ANSWER:**  Liberty denies that USF&G is entitled to the requested relief or any

other.

## LIBERTY'S ANSWER TO COUNT IV
(Equitable Subrogation)

62.  USF&G incorporates the allegations of Paragraphs 1 through 56 above as though fully set forth herein.

**ANSWER:** Liberty incorporates by reference its answers to Paragraphs 1 through

56 of Counts I and II, above, as though fully set forth herein.

63. This count is pled in the alternative and without prejudice to USF&G's
other claims herein.

**ANSWER:** If any answer should be necessary, Liberty denies the allegations of

this Paragraph.

64. Liberty is primarily liable to VOA with respect to the *Madden* Suit
under the Liberty Policy described herein, yet refused to honor this obligation by
failing to defend VOA.

**ANSWER:** Denied.

65. To the extent USF&G has any coverage obligations to VOA with respect
to the *Madden* Suit which it denies, USF&G is secondarily liable to VOA with
respect to the *Madden* Suit under the USF&G Policy.

**ANSWER:** Denied.

66. By providing VOA with a defense in the *Madden* Suit USF&G has
incurred liability to VOA with respect to the *Madden* Suit.

**ANSWER:** Liberty does not comprehend the allegation of Paragraph 66 and, thus,

is unable to admit or deny it as phrased. If the allegation is deemed to be simply a

legal conclusion, no response by Liberty is required. If the allegation is construed to

mean that USF&G conducted a proper defense of VOA, it is denied. To the contrary,

USF&G incurred potential liability to VOA by conducting a defense without a

proper reservation of rights, while subject to a conflict of interest, and without

adequate communications to its insured.

67. USF&G is entitled to equitable subrogation to recover from Liberty
those sums that it has paid for the defense of VOA with respect to the *Madden* Suit
that should have been paid by Liberty.

**ANSWER:**  Denied.

WHEREFORE, Plaintiff, USF&G, prays for judgment as follows:

(a)     Declaring that USF&G has no obligation to defend or indemnify VOA under the USF&G Policy;

(b)     Declaring that Liberty owes a primary duty to defend and indemnify VOA under its policy;

(c)     Awarding USF&G that which it has paid defending VOA, and prejudgment interest thereon, in the *Madden* Suit that should have been paid by Liberty;

(d)     Awarding USF&G attorney's fees and costs incurred in prosecuting this lawsuit; and

(e)     Awarding USF&G such other and further relief as the Court may deem appropriate and just.

**ANSWER:**  Liberty denies that USF&G is entitled to the requested relief or any

other.

## LIBERTY'S ANSWER TO COUNT V
(Express Subrogation)

68.   USF&G incorporates the allegations of Paragraphs 1 through 56 above as though fully set forth herein.

**ANSWER:**   Liberty incorporates by reference its answers to Paragraphs 1 through

56 of Counts I and II, above, as though fully set forth herein.

69.   This count is pled in the alternative and without prejudice to USF&G's other claims herein.

**ANSWER:**   If any answer should be necessary, Liberty denies the allegations of

this Paragraph.

70.   Liberty is liable to VOA with respect to the *Madden* Suit under the Liberty Policy described herein.

**ANSWER:**  Denied.

71.    VOA is entitled to recover against Liberty for Liberty's failure to meet its defense obligations to VOA with respect to the *Madden* Suit under the Liberty Policy described herein.

**ANSWER:**  Denied.

72.    USF&G is entitled to and subrogated to VOA's rights of recovery against Liberty pursuant to the "Transfer of Rights" condition of the USF&G Policy.

**ANSWER:**  Denied.

73.    Pursuant to its policy, USF&G is entitled to recover from Liberty those sums that it has paid for the defense of VOA with respect to the *Madden* Suit that should have been paid by Liberty.

**ANSWER:**  Denied.

WHEREFORE, Plaintiff, USF&G, prays for judgment as follows:

(a)    Declaring that USF&G has no obligation to defend or indemnify VOA under the USF&G Policy;

(b)    Declaring that Liberty owes a primary duty to defend and indemnify VOA under its policy;

(c)    Awarding USF&G that which it has paid defending VOA, and prejudgment interest thereon, in the *Madden* Suit that should have been paid by Liberty;

(d)    Awarding USF&G attorney's fees and costs incurred in prosecuting this lawsuit; and

(e)    Awarding USF&G such other and further relief as the Court may deem appropriate and just.

**ANSWER:**  Liberty denies that USF&G is entitled to the requested relief or any other.

## LIBERTY'S ANSWER TO COUNT VI
### (Quantum Meruit)

74.   USF&G incorporates the allegations of Paragraphs I through 56 above as though fully set forth herein.

**ANSWER:**   Liberty incorporates by reference its answers to Paragraphs 1 through

56 of Counts I and II, above, as though fully set forth herein.

75.   This count is pled in the alternative and without prejudice to USF&G's other claims herein.

**ANSWER:**   If any answer should be necessary, Liberty denies the allegations of

this Paragraph.

76.   By paying for the defense of VOA in the *Madden* Suit, USF&G has provided a service that has benefited Liberty.

**ANSWER:**   Denied.

77.   USF&G's payment of the fees incurred for the defense of VOA with respect to the *Madden* Suit was not gratuitous.

**ANSWER:**   Admitted; USF&G owed the payment of those fees pursuant to its

policy.

78.   By failing to contribute to the payment of the fees incurred for the defense of VOA with respect to the *Madden* Suit, Liberty has accepted the service provided by USF&G.

**ANSWER:**   Denied.

79.   There is no contract in existence that requires USF&G to provide the aforementioned services to Liberty.

**ANSWER:**   Denied; USF&G's policy required it to make the payments alleged.

Liberty further denies that the payments were services rendered to Liberty.

80.   USF&G is entitled to reimbursement from Liberty for the amounts expended by USF&G for the defense of VOA with respect to the *Madden* Suit.

**ANSWER:**  Denied.

WHEREFORE, Plaintiff, USF&G, prays for judgment as follows:

(a)     Declaring that USF&G has no obligation to defend or indemnify VOA under the USF&G Policy;

(b)     Declaring that Liberty owes a primary duty to defend and indemnify VOA under its policy;

(c)     Awarding USF&G that which it has paid defending VOA, and prejudgment interest thereon, in the *Madden* Suit that should have been paid by Liberty;

(d)     Awarding USF&G attorney's fees and costs incurred in prosecuting this lawsuit; and

(e)     Awarding USF&G such other and further relief as the Court may deem appropriate and just.

**ANSWER:**  Liberty denies that USF&G is entitled to the requested relief or any

other.

## LIBERTY'S ANSWER TO COUNT VII
### (Estoppel)

81.    USF&G incorporates the allegations of Paragraphs I through 56 above as though frilly set forth herein.

**ANSWER:**  Liberty incorporates by reference its answers to Paragraphs 1 through

56 of Counts I and II, above, as though fully set forth herein.

82.    This count is pled in the alternative and without prejudice to USF&G's other claims herein.

**ANSWER:**  If any answer should be necessary, Liberty denies the allegations of

this Paragraph.

83.    Liberty owes a primary duty to defend VOA with respect to the *Madden* Suit.

**ANSWER:**  Denied.

84.   Liberty has failed to defend VOA with respect to the *Madden* Suit and has therefore breached its duty.

**ANSWER:**  Denied.

85.   Based on its breach of its duties to VOA, Liberty is estopped from raising defenses to coverage with respect to the *Madden* Suit.

**ANSWER:**  Denied.

WHEREFORE, Plaintiff, USF&G, prays for judgment as follows:

(a)    Declaring that Plaintiff has no obligation to defend or indemnify VOA under the USF&G Policy;

(b)    Declaring that Liberty owes a duty to defend and indemnify VOA under its policy;

(c)    Awarding USF&G that which it has paid defending VOA, and prejudgment interest thereon, in the *Madden* Suit that should have been paid by Liberty;

(d)    Declaring that Liberty is estopped from raising coverage defenses against VOA with respect to the *Madden* Suit;

(e)    Awarding Plaintiff's attorneys fees and costs incurred prosecuting this lawsuit; and

(f)    Awarding Plaintiff such other and further relief as the Court may deem appropriate and just.

**ANSWER:**  Liberty denies that USF&G is entitled to the requested relief or any

other.

## LIBERTY'S AFFIRMATIVE DEFENSES TO COUNTS II TO VII

### Fourth Affirmative Defense
(Policy No. AEE196887-0104, December 5, 2004 to December 5, 2005)

1.      A true and correct copy of Policy No. AEE196887-0104 is attached hereto as Exhibit 2.

2.      Under this "claims made and reported" professional liability policy issued by Liberty to VOA, no claim alleging a wrongful act in the performance of professional services was made by the Maddens against VOA within the policy period in that the allegations of negligent design were first made in the Fourth Amended Complaint which was not filed until August 16, 2006.

### Fifth Affirmative Defense
(Policy No. AEE196887-0105, December 5, 2005 to December 5, 2006)

1.      A true and correct copy of Policy No. AEE196887-0105 is attached hereto as Exhibit 3.

2.      Although a claim alleging a wrongful act in the performance of professional services was made by the Maddens against VOA within the period of this "claims made and reported" policy, the claim was not reported to Liberty within the policy period in that Liberty did not receive notice of the design claim until June, 2007.

### Sixth Affirmative Defense
(Policy No. AEE196887-0106, December 5, 2006 to December 5, 2007)

1.      A true and correct copy of Policy No. AEE196887-0106 is attached hereto as Exhibit 4.

2.    Although the Maddens' professional liability claim against VOA was reported to Liberty within the period of this "claims made and reported" policy, the claim was not first made against VOA within this policy period because the claim was made with the filing and service of the Fourth Amended Complaint on or about August 16, 2006.

Respectfully submitted,
Liberty Insurance Underwriters, Inc.

By: /s/ James T. Nyeste
       Its Attorney

James T. Nyeste
Attorney at Law
33 N. LaSalle Street, Suite 3350
Chicago, IL 60602
Tel: 312-223-1699 ext. 209
IL ARDC# 3125383

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 21, 2008, he electronically filed the foregoing *Answer and Affirmative Defenses of Liberty Insurance Underwriters, Inc.* with the Clerk of the Court using the CMF/ECF filing system, which sent notice of such filing to all counsel of record (there being no party or counsel who is not a CMF/ECF user).

/s/ James T. Nyeste
Attorney for Liberty Insurance Underwriters, Inc.

Dated: Chicago, Illinois April 21, 2008