# EXHIBIT 3, Part 2,

**to Answer and Affirmative Defenses of
Liberty Insurance Underwriters, Inc.**

**(consisting of Liberty Policy No. AEE196887-0105)**

## LIBERTY INSURANCE UNDERWRITERS, INC.

## ARCHITECTS, ENGINEERS & ENVIRONMENTAL SERVICES
## PROFESSIONAL LIABILITY INSURANCE POLICY

This is a **Claims Made and Reported** Policy.  Please Read it Carefully.

All words that are in bold face type have special meaning set forth in Section V., DEFINITIONS, of this Policy.

Throughout this Policy, the words, *you* and *your* refer to the Named Insured shown in the Declarations and any other individual or entity qualifying as an **Insured** under this Policy.  The words *we, us* and *our* refer to the Company providing this insurance as shown in the Declarations.

### I.    INSURING AGREEMENTS

We will pay on your behalf all sums in excess of the Deductible and up to the Limits of Liability stated in the Declarations which you become legally obligated to pay as **Damages** and **Claims Expenses** resulting from **Claims** first made against you during the **Policy Year**, as a result of a **Wrongful Act** or a **Pollution Incident** provided that:

A.    Such **Wrongful Act** was committed, or **Pollution Incident** took place, on or after the Retroactive Date stated in the Declarations and before the end of the **Policy Year**; and

B.    Prior to the **Knowledge Date** stated in the Declarations of this Policy, none of your directors, officers, principals, partners or insurance managers knew or could have reasonably expected that such **Wrongful Act** or **Pollution Incident** might give rise to a **Claim**.

As a condition precedent to coverage, you shall report all **Claims** in writing to us as soon as practicable, but in no event later than 60 days after expiration or termination of this Policy.

### II.    TERRITORY AND DEFENSE

A.    The coverage afforded by this Policy applies worldwide.

B.    We have the right and duty to defend any **Claim** made against you.  Defense counsel may be designated by us, or at our option, designated by you with our written consent and subject to our guidelines.

### III.    EXTENSION OF COVERAGE

Subject to all other terms and conditions, this Policy covers **Damages** and **Claims Expenses** that you become legally obligated to pay as a result of **Claims** arising out of:

A.    Your participation in a joint venture, but only for your legal liability arising out of **Professional Services** performed by the joint venture.

B.    Your unintentional disclosure of confidential or proprietary information.  This Extension of Coverage applies only if your disclosure of such information is made in conjunction with your performance of **Professional Services**.

IV .    **SUPPLEMENTAL PAYMENTS**

Payments made under this section are our costs, are not subject to the Deductible and are in addition to the Limits of Liability shown in the Declarations.

A.    Free Loss Prevention Assistance

If during the **Policy Year** you report a specific **Circumstance** in accordance with CONDITIONS A of this Policy, we will pay for all costs or expenses we incur, at our sole discretion, until the date a **Claim** is made, as a result of investigating such **Circumstance**.

B.    Disciplinary Proceedings

If a **Disciplinary Proceeding** is commenced against you and reported to us during the **Policy Year**, we will reimburse you for reasonable attorney's fees incurred in responding to such **Disciplinary Proceeding**. Our maximum payment pursuant to this Supplemental Payment shall be $10,000 for each **Policy Year** regardless of the number of **Disciplinary Proceedings**. We shall not pay **Damages** pursuant to this provision.

C.    Reimbursement of Expenses

If you are requested by us to attend hearings, depositions and trials relative to the defense of a **Claim**, we shall reimburse your actual loss of earnings and reasonable expenses due to such attendance up to $300 per day. The maximum payment we will make pursuant to this Supplemental Payment shall be $7,500 for each **Policy Year**.

D.    A.D.A., F.F.H.A and O.S.H.A Expense Reimbursement

If as the result of a **Wrongful Act**, a regulatory or administrative action under the Americans with Disabilities Act of 1990 (A.D.A), the Federal Fair Housing Act (F.F.H.A.) or the Occupational Safety and Health Act (O.S.H.A.) is commenced directly against you and reported to us during the **Policy Year**, we will reimburse you for reasonable attorney's fees incurred in responding to such actions. The maximum we will pay pursuant to this Supplemental Payment shall be $10,000 for each **Policy Year**. We shall not pay **Damages** pursuant to this provision.

V.    **DEFINITIONS**

A.    **"Circumstance"** means an event reported during the **Policy Year** from which you reasonably expect a **Claim** may be made.

B.    **"Claim"** means a demand for money or services, naming you and alleging a **Wrongful Act** or **Pollution Incident**.

C.    **"Claims Expenses"** mean:

1.    Reasonable and necessary fees charged by an attorney(s) designated by us, or designated by you with our written consent, to defend a **Claim**; and

2.    All other fees, costs and charges, resulting from the investigation, adjustment, defense, and appeal of a **Claim**, if incurred by us, or by you with our written consent, including premiums on appeal bonds, provided that we shall not be obligated to apply for or furnish such appeal bonds.

Our determination of **Claims Expenses** shall be conclusive. **Claims Expenses** do not include your or our salary charges, wages or expenses of partners, principals, officers, directors, members or employees.

D.    **"Claims Made and Reported"** coverage applies to **Claims** that are first made against you during a **Policy Year** within the **Policy Period** shown in the Declarations and first reported to us within that **Policy Year**, or within 60 days after the end of that **Policy Year**.

E.    **"Contract"** means any agreement, whether express or implied, in fact or in law, written or oral, including, but not limited to, hold harmless and indemnity clauses, warranties, guarantees, certifications, or penalty clauses;

F.    **"Damages"** means compensatory monetary amounts for which you may be held legally liable including judgement (inclusive of any pre- or post- judgment interest), awards, or settlements negotiated with our approval. **Damages** do not include any return, withdrawal or reduction of professional fees, profits or other charges, or fines, sanctions, taxes, penalties or awards deemed uninsurable pursuant to any applicable law. **Damages** include punitive or exemplary damages or the multiple portion of any multiplied damage award unless such **Damages** are uninsurable pursuant to applicable law.

G.    **"Disciplinary Proceeding"** means any proceeding by a regulatory or disciplinary official, board or agency, to investigate charges of professional misconduct in the performance of **Professional Services**.

H.    **"Insured"** means the following

1.    The Named Insured designated in Item 1 of the Declarations, or by Endorsement to this Policy;

2.    Any person who is, was, or hereafter becomes a partner, principal, officer, director, member, or employee of the Named Insured, but only for **Professional Services** performed in such capacity on behalf of the Named Insured;

3.    Any temporary or leased personnel, but only for **Professional Services** performed while acting under the direct supervision and on behalf of the Named Insured;

4.    Your estate, heirs, executors, administrators, and legal representatives, in the event of your death, disability, incapacity, insolvency, or bankruptcy, but only to the extent you would have otherwise been provided coverage under this Policy.

5.    Your lawful spouse solely by reason of spousal status, or a spouse's ownership interest in property or assets that are sought as recovery. This shall not apply to the extent a **Claim** alleges any Wrongful Act by such spouse.

I.    **"Knowledge Date"** means the effective date of the first Architects, Engineers & Environmental Services Professional Liability Insurance Policy issued by us to the Named Insured and continuously renewed and maintained in effect to the inception of this **Policy Period**.

J.    **"Mediation"** means a non-binding process in which a neutral panel or individual assists the parties in reaching their own settlement.

K.    **"Personal Injury"** means false arrest, detention or imprisonment, or malicious prosecution; the publication or utterance of a libel or slander or other defamatory or disparaging material; a publication or utterance in violation of an individual's right of privacy; wrongful entry or eviction; or the invasion of the right of private occupancy.

L. **"Policy Period"** means the period specified in Item 2 of the Declarations, or any shorter period that may occur as a result of a cancellation or termination of this Policy.

M. **"Policy Year"** means each consecutive twelve (12) months beginning on the effective date of the **Policy Period** shown in the Declarations. However, if a **Policy Year** within a **Policy Period** is modified by an endorsement, then that modified period will be deemed a **Policy Year** for the purpose of determining the aggregate limit and any aggregate deductible.

N. **"Pollution Incident"** means the actual or alleged discharge, dispersal, seepage, migration, release or escape of "pollutants" into or upon land, the atmosphere or any watercourse or body of water, which results in bodily injury or property damage arising from the performance of **Professional Services**.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" does not mean heat, smoke, vapor, soot or fumes from a hostile fire or explosion.

O. **"Professional Services"** means those services that you perform for others in your practice as an architect, engineer, land surveyor, interior designer, landscape architect, construction manager, scientist, technical consultant or as otherwise defined by endorsement to this Policy.

P. **"Wrongful Act"** means any actual or alleged act, error or omission, or **Personal Injury**, in the performance of **Professional Services** by you or by any entity or person for whom you are legally liable.

## VI.  EXCLUSIONS

This Policy does not apply to and we shall not be liable for **Damages** and/or **Claims Expenses** resulting from any **Claim** or **Circumstance** made against you:

A. for, based upon, or arising from your actual dishonest, criminal, malicious or fraudulent act or omission; however, this Exclusion shall not apply to **Claims Expenses** or our duty to defend any such **Claim** unless or until a judgment or a final adjudication adverse to you establishes that you committed such dishonest, fraudulent, criminal or malicious act or omission. This exclusion shall not apply to you if you did not commit, participate in, or have knowledge of any dishonest, fraudulent, criminal or malicious act or omission;

B. by or on behalf of or with the assistance of:

   1. Any other **Insured**; or

   2. Entity (or its subrogees or assignees) that:

      a. wholly or partly owns, operates, manages or controls you; or

      b. that you operate, manage or control; or

      c. that you have an ownership interest of greater than 49%;

C. for, based upon, or arising from your actual or alleged discrimination, humiliation, harassment, or misconduct because of race, creed, color, age, gender, sex, sexual

preference or orientation, national origin, religion, disability, handicap, or marital status; however, this exclusion shall not apply to Americans with Disabilities Act (ADA) claims;

D.    for, based upon, or arising from liability assumed by you under any **Contract**. This exclusion does not apply if you would have been liable in the absence of that **Contract**.

E.    for, based upon, or arising from actual construction performed by you, your agent, or your subcontractor, including, but not limited to, performing construction, erection, fabrication, installation, assembly, manufacture, demolition, dismantling, drilling, excavation, dredging, remediation, or supplying any materials, parts, or equipment, except for supplying furnishings as a part of interior design services.

This exclusion does not apply to drilling, excavation, or other sampling or testing procedures necessary to perform your **Professional Services** or to a **Pollution Incident** that is caused by construction, remediation or operational activities performed by you, your agent, or your subcontractor;

F.    for, based upon, or arising from any product developed by you for multiple sale or mass distribution, including, but not limited to, computer programs and software;

G.    for, based upon, or arising from your employees' **Personal Injury**, bodily injury, sickness, disease, emotional distress, mental anguish, outrage, humiliation or death arising out of and in the course of his or her employment by you; or any obligation for which you or any carrier as your insurer may be liable under any Workers' Compensation, Unemployment Compensation, Employer's Liability, Disability Benefits or any similar law;

H.    for, based upon, or arising from the actual, alleged, or threatened exposure to nuclear source material, nuclear by-product materials, nuclear waste activities, nuclear incident, or extraordinary nuclear occurrence, as defined in the Atomic Energy Act of 1954 or as amended;

I.    for, based upon, or arising from the failure to maintain, obtain, recommend, or require any form of insurance, suretyship, or bond, either with respect to an **Insured** or others;

J.    for, based upon, or arising from your ownership, rental, or leasing of any real property or personal property. Personal property includes, but is not limited to, automobiles, aircraft, watercraft, and other kinds of conveyances.

## VII. CONDITIONS

A.    Reporting of **Circumstances** That May Give Rise To A **Claim**

If during the **Policy Year** you become aware of a **Circumstance** that may reasonably be expected to give rise to a **Claim** against you, and if you report such **Circumstance** to us during the **Policy Year** in writing, then any **Claim** subsequently arising from such **Circumstance** duly reported in accordance with this paragraph shall be deemed under this Policy to be a **Claim** made during the **Policy Year**. Such written notice to us shall include:

1.    particulars as to the reasons for anticipating such a **Claim**; and

2.    the nature and dates of the alleged **Circumstance**; and

3.    the alleged injuries or **Damages** sustained; and

4.    the names of potential claimants, if available; and

     5.  the manner in which you first became aware of the specific **Circumstance.**

B.  Notice

In the event of a **Claim**, you shall:

1.  Promptly notify us pursuant to Item 8 of the Declarations in writing of any **Claim**.

2.  Immediately forward to us every demand, notice, summons or other process including institution of arbitration proceedings that you receive.

3.  Provide particulars sufficient to identify you and the claimant and full information with respect to the time, place and circumstances of the event complained of, and the names and addresses of the injured, and of available witnesses to us as soon as practicable.

C.  Cooperation and Settlement

You shall fully cooperate with us or our designee in the defense of a **Circumstance** or **Claim**, including but not limited to assisting us in the conduct of suits or other proceedings, settlement negotiations, and the enforcement of any right of contribution or indemnity against another who may be liable to you.  You shall attend hearings and trials and assist in securing evidence and obtaining the attendance of witnesses. If after a **Circumstance** or **Claim** is made against you and reported to us, and you have the right under any **Contract** to either reject or demand arbitration or other alternative dispute resolution process, you shall only do so with our written consent.

We will not settle any **Claim** without the written consent of the first Named Insured shown in Item 1 of the Declarations.  If, however, consent to any settlement recommended by us is withheld and you elect to contest or to continue to contest that **Claim,** then our liability for that **Claim** will not exceed the amount for which that **Claim** could have been settled plus **Claims Expenses** up to the date consent was withheld.

D.  Limits of Liability

1.  The Limits of Liability, shown in Item 3 of the Declarations, and described below, are the most we will pay regardless of the number of **Insureds**, **Claims**, individuals or entities making **Claims**.

2.  The Limits of Liability shown in Item 3 of the Declarations, will apply as follows:

    a.  The limit for each **Claim** shown in Item 3A of the Declarations, is the most we will pay for the sum of all **Damages** and **Claims Expenses** arising out of any single **Claim**.

    b.  The aggregate limit shown in Item 3B of the Declarations is the most we will pay for the sum of all **Damages** and **Claims Expenses** for all **Claims Made and Reported** during each **Policy Year**.

The payment of **Damages** and / or **Claims Expenses** will reduce the Limits of Liability available to pay **Claims**.

3. Two or more **Claims** alleging, based upon, arising out of or attributable to the same or related **Wrongful Act(s)** or **Pollution Incident(s)**, shall be considered and treated as a single **Claim** regardless of whether made against one or more than one **Insured**. This Policy shall only apply if the first or earliest **Claim** arising from such **Wrongful Act(s)** or **Pollution Incident(s)** is made during the **Policy Year**.

All **Claims** arising out of the same or related **Wrongful Act(s)** or **Pollution Incident(s)** shall be considered first made within the **Policy Year** in which the earliest of such **Claims** was first made, or deemed to be made pursuant to CONDITIONS A of this Policy, and all such **Claims** shall be subject to one such Limit of Liability as set forth in Item 3A of the Declarations.

4. The Limits of Liability shown in Item 3A of the Declarations apply in excess of the Deductible described in E below.

E. Deductible

As stated in Item 4 of the Declarations, you must pay the Deductible obligation for **Damages** and **Claims Expenses** before we are obligated to pay. You must pay the Deductible obligation upon written request. We will determine the reasonableness of **Claims Expenses** that qualify in satisfaction of the Deductible.

The Deductible applies separately to each **Claim** whether this insurance is primary or excess. The Deductible for each **Claim** shown in Item 4A of the Declarations is the most you must pay as a Deductible of all **Damages** and **Claims Expenses** arising out of any single **Claim**. The Aggregate Deductible shown in Item 4B of the Declarations is the most you must pay as a Deductible for the sum of all **Damages** and **Claims Expenses** for all **Claims Made and Reported** during each **Policy Year**.

F. Mediation of Claims Deductible Credit

If you and the Company agree to use **Mediation** and the **Claim** is fully and finally resolved by **Mediation**, the Named Insured's Deductible obligation will be reduced by 50% subject to a maximum reduction of $15,000.

G. Notice of Cancellation

This Policy may be canceled by the first Named Insured identified in the Declarations, by surrender of this Policy to us or our authorized representative or by giving us written notice stating when thereafter such cancellation shall be effective.

We will not cancel this Policy except for non-payment of premium, fraud or material misrepresentation in procuring this insurance or in relation to any **Claim**, or changes in law affecting this Policy. If we cancel this Policy, we will mail or deliver to the first Named Insured, on behalf of all **Insureds**, written notice of cancellation. We will provide at least ten (10) days notice before the effective date of cancellation if we cancel for non-payment of premium. If we cancel for any other reason we will provide at least sixty (60) days notice before the effective date of cancellation.

If this Policy is canceled, we will send the first Named Insured any premium refund due. The refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

We will give you written notice sixty (60) days prior to the expiration of this Policy if we do not intend to renew this insurance subject to any state requirements. The notice will include our reason for non-renewal.

If notice is mailed, proof of mailing will be sufficient proof of notice.

H.    Other Insurance

If there is other collectible insurance, including but not limited to project specific insurance, that applies to a **Claim** covered by this Policy, the other insurance must pay first and this Policy is excess over the other insurance. This Policy applies to the amount of the **Claim** that exceeds the available limits of liability and any deductibles or retention amounts of the other insurance.

I.    Subrogation

In the event of any payment under this Policy, we shall be subrogated to all of your rights of recovery against any person or organization, and you shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. You shall do nothing after a **Claim** is made to prejudice such rights. We hereby waive our subrogation rights against a client of yours to the extent that you had, prior to a **Claim**, or **Circumstance**, entered into a written agreement to waive such rights.

Any amount recovered upon the exercise of such rights of subrogation shall first be applied to the repayment of expenses incurred by us toward subrogation, second toward reimbursement of any payments made by you pursuant to your Deductible, and any remaining balance shall be ours.

J.    Alteration and Assignment

No change in, modification of, or assignment of interest under this Policy, shall be effective except when made by written Endorsement or signed by our authorized representative.

K.    First Named Insured As Sole Agent

The first Named Insured shall be the sole agent of all **Insureds** hereunder for the purpose of effecting or accepting any amendments to or cancellation of this Policy, for the purpose of receiving such notices as may be required by law and/or any provision(s) of this Policy, for the completing of any Application and the making of any representations, for the payment of any premium and the receipt of any return premium that may become due under this Policy, for the payment of any Deductible obligations that may become due under this Policy, and the exercising or declining to exercise any right under this Policy.

L.    You or your estate's bankruptcy or insolvency will not relieve us of our obligations under this Policy.

M.    Legal Action Against Us

No individual or entity has a right under this Policy to join us as a party or otherwise bring us into a suit seeking **Damages** from you, or to sue us unless all of the terms of this Policy have been met.

N.    Liberalization

If we file with the appropriate regulator, general revisions to the terms and conditions of this policy form to provide more coverage without an additional premium charge, then your Policy will automatically provide this additional coverage as of the date the filed revision is effective in the state shown in the mailing address of the first Named Insured.

IN WITNESS WHEREOF, we have caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned on the Declarations page by our duly authorized representative.

President

Secretary