## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, | |
| Plaintiff, | Case No. 08 C 0862 |
| v. | Judge Kennelly<br>Magistrate Judge Brown |
| VOA ASSOCIATES INC., LIBERTY INTERNATIONAL UNDERWRITERS, MICHAEL J.MADDEN and JEAN MADDEN, | |
| Defendants. | |

## VOA ASSOCIATES, INC.'S ANSWER AND AFFIRMATIVE DEFENSES TO AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Now Comes Defendant, VOA ASSOCIATES, INC.("VOA"), by and through its attorneys, Schiff Hardin LLP, and for its Answer and Affirmative Defense to United States Fidelity and Guaranty Company's ("USF&G") Amended Complaint for Declaratory Judgment and Other Relief, states as follows:

1.      This matter is an action for declaratory judgment action pursuant to 28 U.S.C. §2201, wherein United States Fidelity and Guaranty Company ("USF&G") seeks a declaration as to its rights and obligations to its insured, VOA & Associates ("VOA"), with respect to the matter titled *Michael J. Madden and Jean Madden v. P.H. Paschen; SN Nielson, Inc.; Jacobs Facilities, Inc.; Cliffs and Cables, LLC; and VOA & Associates; Schuler & Shook, Inc.*, No. 03 L 000433, Circuit Court of Cook County, Illinois ("the *Madden* Suit").

**ANSWER:**      VOA admits the allegations contained in paragraph 1.

2.      From June 20 to June 27, the underlying *Madden* Suit was tried and a verdict returned against the insured, VOA, on June 27, 2007 in the amount of $1,605,650. USF&G, which has been providing and continues to provide a defense to VOA under a reservation of rights, seeks a declaration of no continuing defense obligation, no obligation to secure or post a bond and no indemnity obligation because such are not required under USF&G policy.

**ANSWER:**      VOA admits that from June 20 to June 27, the underlying *Madden* Suit was tried and a verdict returned against VOA on June 27, 2007 in the amount of $1,605,650.

VOA further admits that USF&G provided a defense, and continues to provide a defense, to VOA, and admits that since June 5, 2007 said defense was provided under a purported reservation of rights. VOA admits that USF&G seeks a declaration of no continuing defense obligation, no obligation to secure or post a bond and no indemnity obligation. VOA denies any remaining allegations contained in paragraph 2.

3.    USF&G seeks restitution or reimbursement from VOA for defense fees and costs after the dismissal of all but design claims in the underlying *Madden* Suit.

**ANSWER:**    VOA admits that USF&G seeks restitution or reimbursement from VOA for defense fees and costs after the dismissal of all but design claims in the underlying *Madden* Suit, but denies that USF&G is entitled to the relief it seeks.

4.    USF&G also seeks restitution or reimbursement from Liberty, VOA's professional liability insurer, which should have defended VOA with respect to the underlying *Madden* Suit, but failed to do so and has been unjustly enriched by USF&G's defense of VOA.

**ANSWER:**    VOA admits that USF&G seeks restitution or reimbursement from Liberty, VOA's professional liability insurer. VOA denies the remaining allegations contained in paragraph 4.

## PARTIES

5.    Plaintiff, USF&G, is an insurance company organized and existing under the laws of the State of Maryland with its principal place of business in St. Paul, Minnesota.

**ANSWER:**    VOA lacks sufficient information to admit or deny the allegations contained in paragraph 5 and therefore denies them.

6.    Defendant, VOA & Associates, is a corporation organized under the laws of the State of Illinois and located in Cook County, Illinois.

**ANSWER:**    VOA denies the allegations contained in paragraph 6. VOA states that it is a Delaware corporation, and that one of its offices is located in Cook County, Illinois.

7.     On information and belief, Defendant Michael J. Madden is a citizen of the State of Illinois and resides in Cook County.

**ANSWER:**   VOA lacks sufficient information to admit or deny the allegations contained in paragraph 7 and therefore denies them.

8.     On information and belief, Defendant Jean Madden is a citizen of the State of Illinois and resides in Cook County.

**ANSWER:**   VOA lacks sufficient information to admit or deny the allegations contained in paragraph 8 and therefore denies them.

9.     On information and belief, Defendant Liberty is a corporation organized under the laws of the State of New York with its principal place of business in New York.

**ANSWER:**   VOA lacks sufficient information to admit or deny the allegations contained in paragraph 9 and therefore denies them.

## JURISDICTION AND VENUE

10.     Jurisdiction is proper in this Court, pursuant to 28 U.S.C. §1332(a), because the plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

**ANSWER:**   VOA admits the allegations contained in paragraph 10.

11.     Venue is proper in this District, pursuant to 28 U.S.C. §1391(a)(2), because a substantial part of the events or omissions giving rise to USF&G's claims for declaratory judgment occurred in this District.

**ANSWER:**   VOA admits the allegations contained in paragraph 11.

## THE USF&G POLICY

12.     USF&G issued policy No. BK01116165 to VOA, which was in effect May 1, 2002-2003.   The primary general liability coverage part has limits of liability of $1,000,000/accident and $2,000,000/aggregate.   The umbrella coverage part has liability limits of $5,000,000 (the "USF&G Policy").   A copy of the USF&G Policy is attached to USF&G's Complaint, Docket No. 2 at Exhibit A.

**ANSWER:**   VOA admits that USF&G issued policy No. BK01116165 to VOA, which was in effect May 1, 2002-2003, that the primary general liability coverage part has limits of liability of $1,000,000/accident and $2,000,000/aggregate, and that the umbrella coverage part has liability limits of $5,000,000.  VOA admits that Docket No. 2 at Exhibit A. purports to be a copy of the USF&G Policy.  VOA denies any remaining allegations contained in paragraph 12.

13.     The USF&G Policy is subject to all of its respective terms, conditions, limitations and exclusions.

**ANSWER:**   VOA denies the allegations contained in paragraph 13.

14.     The USF&G Policy contains Commercial General Liability Coverage Form (CL/BF 20 10 11 02), which provides that USF&G will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to which the insurance applies.

**ANSWER:**   VOA admits that Exhibit A attached to the Amended Complaint purports to be a copy of the USF&G Policy, and that Exhibit A contains the provisions set forth in Paragraph 14.  VOA denies any remaining allegations contained in Paragraph 14.

15.     The USF&G Policy contains a professional services exclusion in the primary coverage (Form CC/BF 23 92 10 01), which provides in pertinent part, that the insurance does not apply to:

I.     Professional Services

"Bodily injury," "property damage," "personal injury," or "advertising injury" due to rendering or failure to render any professional service by or on behalf of any insured. Professional service includes:

                                          ***

(2)     Architect, engineer, surveyor, construction contractor or construction management service, including:

    (a)     Preparing, approving, or failing to prepare or approve any map, drawing, opinion, report, survey, change order, design, specification, recommendation, permit application, payment request, manual, instruction, computer program for design systems, or selection of a contractor or sub-contractor;
    (b)     Any supervisory, inspection, or quality control service;
    (c)     Any study, survey, assessment, evaluation, consultation, observation,

scheduling, sequencing, training, or inspection, including those for job safety; and

(d)   Any monitoring, testing, or sampling service necessary to perform any of the services including in exclusion I.2(a), (b), or (c) above.

**ANSWER:**   VOA admits that Docket No. 2 at Exhibit A purports to be a copy of the USF&G Policy, and that it contains the provisions and exclusions set forth in Paragraph 15. VOA denies any remaining allegations contained in Paragraph 15.

16.    The USF&G Policy also contains a professional services exclusion in the umbrella coverage (CL/UL 22 27 02 93), which provides in pertinent part:

This insurance does not apply to "injury" arising out of rendering or failing to render any professional service by you or on your behalf, including:

1.    Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; and
2.    Supervisory, inspection or engineering services.

**ANSWER:**   VOA admits that Docket No. 2 at Exhibit A purports to be a copy of the USF&G Policy, and that it contains the provisions and exclusions set forth in Paragraph 16. VOA denies any remaining allegations contained in Paragraph 16.

17.    The USF&G Policy also includes the following conditions:

**2.      Duties In the Event Of Occurrence, Offense, Claim or "Suit"**

(a)    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  Notice should include:

(1)    How, when and where the "occurrence" or offense took place;

(2)    The names and addresses of any injured persons and witnesses; and

(3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

(c)    You and any other involved insured must:

(3)    Cooperate with us in the investigation, settlement or defense of the claim or "suit";

**8.      Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us.  The insured must do nothing after loss to impair them.  At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**ANSWER:**   VOA admits that Docket No. 2 at Exhibit A purports to be a copy of the USF&G Policy, and that it contains the conditions set forth in Paragraph 17.  VOA denies any remaining allegations contained in Paragraph 17.

18.   The USF&G Policy also includes the following provision:

**C.   Supplementary Payments**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1.   All expenses we incur.

2.   Up to $2,500 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Liability coverage for "bodily injury" applies.  We do not have to furnish these bonds.

3.   The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Liability.  We do not have to furnish these bonds.

4.   All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $500 a day because of time off from work.

5.   All costs taxed against the insured in the "suit."

6.   Pre-judgment interest awarded against the insured on that part of the judgment we pay.  If we make an offer to pay the applicable Limit of Liability, we will not pay any pre-judgment interest based on that period of time after the offer.

7.   All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable Limit of Liability.

These payments are not subject to the Limits of Liability.

**ANSWER:**   VOA admits that Docket No. 2 at Exhibit A purports to be a copy of the USF&G Policy, and that it contains the provisions set forth in Paragraph 18.  VOA denies any remaining allegations contained in Paragraph 18.

## FACTUAL BACKGROUND

19.     On information and belief, on or about June 29, 1998, VOA contracted with Consolidated High School #230 (the "District") to provide architectural services in connection with the design and construction of Amos Alonzo Stagg High School (the "School"), including preparation of design drawings and specifications, assistance in the bidding and letting of construction contracts, and observation of the progress and quality of the work.   A true and correct copy of the Contract is attached to USF&G's Complaint, Docket No. 2 at Exhibit B.

**ANSWER:**   VOA admits that on June 29, 1998, it entered into a contract ("Contract") with Consolidated High School #230 to provide architectural services for a Project which included, among other things,  the remodeling and repair of Amos Alonzo Stagg High School. VOA refers to the Contract itself for a full description of its legal obligations and duties pursuant to the Contract, and admits only those duties and obligations set forth therein.   VOA further admits that Docket No. 2 at Exhibit B attached to the Complaint purports to be a copy of the Contract.  VOA denies any remaining allegations contained in paragraph 19.

20.     Madden alleges that, on or about May 20, 2002, with the exception of punch list items, the construction work had been completed and VOA issued a certificate of substantial completion.

**ANSWER:**   VOA denies that Madden alleges in the Third or Fourth Amended Complaint that on or about May 20, 2002, with the exception of punch list items, the construction work had been completed and VOA issued a certificate of substantial completion. VOA denies any remaining allegations contained in paragraph 20.

21.     Michael Madden alleges that, on or about August 19, 2002, he was injured while working at the School ("Madden Accident").

**ANSWER:**   VOA admits the allegations contained in paragraph 21.

## THE *MADDEN* SUIT

22.     On or about January 13, 2003, Michael and Jean Madden filed a complaint at law against the general contractor (Paschen/Nielsen), the project manager (Jacobs), the theater design consultant (Schuler & Shook), subcontractor (Cliffs and Cables), and the architect, VOA.

**ANSWER:**   VOA lacks sufficient knowledge to admit or deny that it was named as a defendant in a complaint at law filed by Michael and Jean Madden on January 13, 2003, and therefore denies it. Further answering, VOA states that it was not served with a Summons or Complaint at Law filed by Michael and Jean Madden on or about January 13, 2003.  Further answering, VOA denies that it had any knowledge of or was ever served with any complaint related to the Madden accident prior to being served with the Third Amended Complaint on or about August 26, 2004.

23.   VOA was served with the Madden Lawsuit on August 26, 2004.

**ANSWER:**   VOA admits only that VOA was served with a Summons and the Third Amended Complaint on or about August 26, 2004.   VOA denies the remaining allegations contained in paragraph 23.

24.   On August 19, 2004, the Underlying Plaintiffs filed their Third Amended Complaint, adding VOA as a defendant for the first time.   A copy of the Third Amended Complaint is attached hereto as Exhibit 1.

**ANSWER:**   VOA admits the allegations contained in paragraph 24.

25.   The Third Amended Complaint alleged the following against VOA:

1.   That on or about and before August 19, 2002, the defendant, VOA & ASSOCIATES, who individually and by and through agents, servants and employees, owned and/or was in charge of the erection, construction, repairs, alteration, removal and/or painting of a certain orchestra pit and/or hole in the stage located at the aforementioned location.

2.   That on and before August 19, 2002, Defendant, VOA & ASSOCIATES, through its various agents, employees and servants, served as the architect for a Performing Arts Theater at the aforementioned location.

3.   That on or approximately August 19, 2002, plaintiff, MICHAEL MADDEN, was an employee of Amos Alonzo Stagg High School District 230 and was engaged in the performance of his duties at or near a portion of the aforementioned certain orchestra pit and/or hole.

4.     That at the aforementioned time and place, there was in force and effect a contract between the defendant, VOA & ASSOCIATES and Amos Alonzo Stagg High School District 230.

5.     That at the aforesaid time and place and prior thereto, the defendant, individually and through his agents, servants and employees, was present during the course of such erection, construction, repairs, alteration, removal, and/or painting.    Further, the defendant, individually and through agents, servants and employees, participating in coordinating the work being done and designated various work methods, maintained and check work progress and participated in the scheduling of the work and the inspection of the work, and were likewise responsible for the work being performed pursuant to Section 1926.16 of the Occupational, Safety & Health Administration.    In addition thereto, at that time and place, the defendant, individually and through agents, servants and employees, had the authority to stop the work, refuse the work and materials and order changes in the work, in the event the work was being performed in a dangerous manner or for any other reason.    Furthermore, at that time and place, the defendant, individually and through agents, servants and employees, had supervision and control of the work, retention of the right to supervise and control the work, constant participation in ongoing activities at the construction site, supervision and coordination of subcontractors, responsibility for taking safety precautions at the job site, authority to issue change orders, the right to stop work, ownership of the equipment at the job site, familiarity with construction customs and practices and had been in a position to assure worker safety or alleviate equipment deficiencies or improper work habits.

6.     That at the aforesaid time and place, and prior thereto, the defendant, individually and through agents, servants and employees, erected, constructed, placed or operated, or caused to be erected, constructed, placed or operated, a certain orchestra pit in the stage floor, to facilitate and be used in the aforesaid erection construction, repairs, alteration, removal, and/or painting.

**ANSWER:**     VOA admits that the Third Amended Complaint alleges, in part, the

allegations sets forth above.  VOA refers to the Third Amended Complaint, attached as Exhibit

1, itself for a full description of the allegations made against it by the Maddens.

26.     On August 16, 2006, Madden filed a Fourth Amended Complaint, a copy of which is attached to USF&G's Complaint, Docket No. 2 at Exhibit C.

**ANSWER:**     VOA admits that on or about August 16, 2006, Madden filed a Fourth

Amended Complaint, and further admits that Docket No. 2 at Exhibit C purports to be a copy of

the Fourth Amended Complaint.  VOA denies any remaining allegations contained in paragraph

26.

27.    The Fourth Amended Complaint alleges that on August 19, 2002, Michael Madden, a maintenance worker employed by the District, was installing a large screen on the auditorium stage for an event that was to be held that evening and that, on that date, Madden allegedly fell into the orchestra pit and was injured.

**ANSWER:**    VOA admits that the Fourth Amended Complaint alleges that on or about August 19, 2002 Michael Madden was employed by the District and that he fell onto the orchestra pit and/or hole in the floor and was injured.  VOA denies any remaining allegations contained in paragraph 27.

28.    The Fourth Amended Complaint alleged the following against VOA:

2.    That on and before August 19, 2002, Defendant, VOA & ASSOCIATES, through its various agents, employees and servants, served as the architect for a Performing Arts Theater at the aforementioned location.

3.    That on or approximately August 19, 2002, plaintiff, MICHAEL MADDEN, was an employee of Amos Alonzo Stagg High School District 230 and was engaged in the performance of his duties at or near a portion of the aforementioned certain orchestra pit and/or hole.

4.    That at the aforementioned time and place, there was in force and effect a contract between the defendant, VOA & ASSOCIATES and Amos Alonzo Stagg High School District 230.

5.    That at the aforesaid time and place and prior thereto, the defendant, individually and through his agents, servants and employees, was present during the course of such erection, construction, repairs, alteration, removal, and/or painting.   Further, the defendant, individually and through agents, servants and employees participated in coordinating the work being done and designated various work methods, maintained and check work progress and participated in the scheduling of the work and the inspection of the work, and were likewise responsible for the work being performed pursuant to Section 1926.16 of the Occupational, Safety & Health Administration.   In addition thereto, at that time and place, the defendant, individually and through agents, servants and employees, had the authority to stop the work, refuse the work and materials and order changes in the work, in the event the work was being performed in a dangerous manner or for any other reason.   Furthermore, at that time and place, the defendant, individually and through agents, servants and employees, had supervision and control of the work, retention of the right to supervise and control the work, constant participation in ongoing activities at the construction site, supervision and coordination of subcontractors, responsibility for taking safety precautions at the job site, authority to issue change orders, the right to stop work, ownership of the equipment at the job site,

familiarity with construction customs and practices and had been in a position to assure worker safety or alleviate equipment deficiencies or improper work habits.

6.     That at the aforesaid time and place, and prior thereto, the defendant, individually and through agents, servants and employees, erected, constructed, placed or operated, or caused to be erected, constructed, placed or operated, a certain orchestra pit or hole in the stage floor, to facilitate and be used in the aforesaid erection, construction, repairs, alteration, removal, and/or painting.

7.     That at all times herein relevant, the defendant, VOA & ASSOCIATES, had a duty to exercise reasonable care for the safety of workers lawfully upon the premises.

**ANSWER:**     VOA admits that the Fourth Amended Complaint alleges, in part, the

allegations sets forth above.  VOA refers to the Fourth Amended Complaint, Docket No. 2 at

Exhibit C,  itself for a full description of the allegations made against it by the Maddens.

29.     On information and belief, Liberty had actual or constructive notice of the Fourth Amended Complaint.

**ANSWER:**     VOA admits that at some point in time, Liberty had actual notice of the

Fourth Amended Complaint.   VOA does not respond to the legal conclusion contained in

paragraph 29 related to "constructive notice."   VOA denies any remaining or inconsistent

allegations contained in paragraph 29.

30.     VOA filed a motion for summary judgment in the *Madden* Suit, arguing that it had no responsibility for safety on the job site, that it had no duty to supervise or control Madden's work and that it designed the project according to the owner's specifications, which did not include an orchestra pit cover, which was rejected by the owner.  A copy of VOA's second amended motion for summary judgment is attached to USF&G's Complaint, Docket No. 2 at Exhibit D.

**ANSWER:**     VOA admits that Fraterrigo, Beranek, Feiereisel & Kasbohm filed a

Second Amended Motion for Summary Judgment on behalf of VOA that argued, in part, that

VOA had no responsibility for safety on the job site, had no duty to supervise or control

Madden's work, and that it designed the project according to the owner's specifications, which

did not include an orchestra pit cover, which was rejected by the owner.   VOA admits that

Docket 2 at Exhibit D purports to be a partial copy of VOA's Second Amended Motion for Summary Judgment. VOA denies any remaining allegations contained in paragraph 30.

31.     On or about March 6, 2007, the trial court granted VOA's motion for summary judgment as to any construction claims but denied the motion as to claims of negligent design. *See* March 6, 2007 Order, attached to USF&G's Complaint, Docket 2 at Exhibit E.

**ANSWER:**   VOA admits only that the Order of March 6, 2007 stated that (1) VOA's motion for summary judgment is granted as to §343 and §414 liability and its allegations set forth in the complaint, and (2) VOA's motion for summary judgment is denied as to the plaintiff's allegations of negligent design/code violations. VOA denies any remaining or inconsistent allegations.

32.     The Order of March 6, 2007 stated in pertinent part:

> This matter coming on to be heard on VOA's motion for summary judgment, due notice having been given and the court being fully advised in the premises,

> IT IS HEREBY ORDERED:

> For the reasons stated in the record:

> 1)     VOA's motion for summary judgment is granted as to §343 and §414 liability and its allegations set forth in the complaint, and

> 2)     VOA's motion for summary judgment is denied as to the plaintiff's allegations of negligent design/code violations.

**ANSWER:**   VOA admits the allegations contained in paragraph 32.

33.     On or about June 1, 2007, the court granted summary judgment in favor of all defendants other than VOA.

**ANSWER:**   VOA admits that summary judgment was granted in favor of all defendants other than VOA, but denies the remaining allegations contained in paragraph 33.

34.     On or about June 1, 2007, there were no claims pending against VOA with the exception of allegations of negligent design/code violations.

**ANSWER:**   VOA admits only that pursuant to the Court Order of March 6, 2007, the claims against VOA of §343 and §414 liability and the allegations related to those claims as set forth in the complaint were dismissed.  VOA states that all other allegations and claims against VOA contained in the Fourth Amended Complaint remained.  VOA denies any remaining or inconsistent allegations.

35.   On or about June 1, 2007, VOA was aware that the only claims pending against it in the *Madden* Suit were negligent design/code violations.

**ANSWER:**   VOA admits only that pursuant to the Court Order of March 6, 2007, the claims against VOA of §343 and §414 liability and the allegations related to those claims as set forth in the complaint were dismissed.  VOA states that all other allegations and claims against VOA contained in the Fourth Amended Complaint remained.  VOA denies that it had specific knowledge of the Court's March 6, 2007 Order on or about June 1, 2007.  VOA denies any remaining or inconsistent allegations.

36.   By letter dated September 28, 2007, USF&G requested that VOA release USF&G from funding the defense of the *Madden* Suit based on the professional services exclusion in the USF&G policy.

**ANSWER:**   VOA admits the allegations contained in paragraph 36.

37.   VOA refused to withdraw its request for defense despite the remainder of the lawsuit involved only clearly noncovered professional services, i.e., architectural/design claims.

**ANSWER:**   VOA denies the allegations contained in paragraph 37.

38.   On or about June 28, 2007, Madden filed a notice of appeal as to the March 6, 2007 and June 1, 2007 Orders in the *Madden* Suit.

**ANSWER:**   VOA admits the allegations contained in paragraph 38.

39.   On or about January 17, 2008, the Court in the Madden Suit ruled on all motions pending post trial, denying VOA's motion for a new trial.

**ANSWER:**   VOA admits the allegations contained in paragraph 39.

40.     On February 14, 2008, VOA filed its notice of appeal in the *Madden* Suit.

**ANSWER:**   VOA admits the allegations contained in paragraph 40.

41.     Pursuant to Supreme Court Rule 305, VOA was required to post an appeal bond.

**ANSWER:**   VOA admits that an appeal bond was posted, and denies the remaining allegations contained in paragraph 41.

42.     On information and belief, Liberty has posted or otherwise secured the appeal bond on behalf of VOA.

**ANSWER:**   VOA admits the allegations contained in paragraph 42.

43.     USF&G continues to solely fund the defense of VOA on appeal.

**ANSWER:**   VOA admits the allegations contained in paragraph 43.

## VOA'S CONDUCT WITH REGARD TO THE *MADDEN* SUIT

44.     On August 31, 2004, VOA reported the Third Amended Complaint to its insurance agent, HRH/AVA Insurance Company ("AVA").

**ANSWER:**   VOA admits the allegations contained in paragraph 44.

45.     USF&G received its first notice of the Madden Accident on September 1, 2004.

**ANSWER:**   VOA lacks sufficient information to admit or deny the allegations contained in paragraph 45 and therefore denies them.

46.     On or about August 31, 2004, AVA reported the Third Amended Complaint to USF&G.

**ANSWER:**   VOA admits the allegations contained in paragraph 46.

47.     Initially, VOA instructed USF&G's claim handler, Iris Robinson, that VOA was not requesting coverage under the USF&G Policy for the *Madden* Suit.

**ANSWER:**     VOA denies the allegations contained in paragraph 47.

48.     On September 17, 2004, VOA advised Iris Robinson of USF&G that VOA had already retained an attorney for the underlying *Madden* Suit.

**ANSWER:**     VOA denies the allegations contained in paragraph 48.

49.     On information and belief, on or about September, 2004, a motion for default judgment had been filed against VOA in the underlying *Madden* Suit.

**ANSWER:**     VOA denies the allegations contained in paragraph 49.

50.     On or about November 3, 2004, USF&G for the first time learned that VOA was mistaken in earlier instructions and was in fact requesting a defense from USF&G for the Third Amended Complaint.

**ANSWER:**     VOA denies the allegations contained in paragraph 50.

51.     On or about November 3, 2004, USF&G advised VOA that there was coverage issues with respect to the *Madden* Suit.

**ANSWER:**     VOA denies the allegations contained in paragraph 51.

52.     On or about November 3, 2004, USF&G requested that VOA tender the *Madden* Suit to its professional liability carrier.

**ANSWER:**     VOA denies the allegations contained in paragraph 52.

53.     VOA relied on its broker, AVA, to determine which of VOA's insurers the *Madden* Suit should be tendered.

**ANSWER:**     VOA admits only that pursuant to its normal custom and practice, VOA reported the *Madden Suit* to its broker with the expectation that the broker would put all of VOA's potential carriers on notice, and that the carriers would promptly notify VOA and its

broker of their intent to defend the claim, deny the claim, or to reserve their rights as to the

claim.  VOA denies any remaining or inconsistent allegations.


54.     VOA's broker, AVA, advised VOA that no coverage was available under the Liberty professional liability policy for the Third Amended Complaint.

**ANSWER:**     VOA denies the allegations contained in paragraph 54.


55.     On December 16, 2004, USF&G retained the law firm of Fratterigo, Beranek, Feiereisel & Kasbohm to vacate any default judgment and otherwise represent the interests of VOA.

**ANSWER:**     VOA admits the allegations contained in paragraph 55.


56.     USF&G funded a defense for VOA under reservation of rights.  See Letter from Iris Robinson to VOA Associates, Inc., attached hereto as Exhibit 2.

**ANSWER:**     VOA denies the allegations contained in paragraph 56.


57.     On January 14, 2005, Schiff Hardin, LLP, by attorney Paul M. Lurie, entered its appearance in the Madden Suit on behalf of VOA.

**ANSWER:**     VOA admits the allegations contained in paragraph 57.


58.     On March 24, 2005, Schiff Hardin filed its Motion For Leave To Withdraw, which stated that Schiff Hardin entered its appearance in the matter at the request of VOA and that VOA had no objection to Schiff Hardin's withdrawal of appearance.

**ANSWER:**     VOA admits the allegations contained in paragraph 58.


59.     Liberty received the Third Amended Complaint on or about December 8, 2005 from VOA's broker, AVA.

**ANSWER:**     VOA lacks sufficient information to admit or deny the allegations

contained in paragraph 59.


60.     Beginning in and around November 2004 and continuing thereafter, USF&G requested that VOA provide information regarding VOA's professional liability insurer, which VOA failed to provide.

**ANSWER:**   VOA denies the allegations contained in paragraph 60.

61.   On September 28, 2007, USF&G sent a letter to VOA, following up on "repeated" requests for information regarding VOA's professional liability policy with Liberty, including a copy of the policy, again requesting that VOA provide information regarding the Liberty policy.  A true and correct copy of the September 28, 2007 letter is attached to USF&G's Complaint, Docket No. 2 at Exhibit H.

**ANSWER:**   VOA admits that on September 28, 2007, USF&G sent a letter to counsel for VOA and admits that Docket 2 at Exhibit H purports to be a copy. VOA denies the characterization of the letter as set forth in paragraph 61, and any remaining allegations contained in paragraph 61.

62.   On November 1, 2007, USF&G sent a letter to counsel for VOA, again requesting that VOA provide information regarding the Liberty policy, including a copy of the policy.  A true and correct copy of the November 1, 2007 letter is attached to USF&G's Complaint, Docket No. 2 at Exhibit I.

**ANSWER:**   VOA admits that on November 1, 2007, USF&G sent a letter to counsel for VOA and admits that Docket 2 at Exhibit I purports to be a copy. VOA denies the characterization of the letter as set forth in paragraph 62, and any remaining allegations contained in paragraph 62.

63.   On January 17, 2008, USF&G sent a letter to counsel for VOA, again requesting that VOA provide information regarding the Liberty policy, including a copy of the policy.  A true and correct copy of the January 17, 2008 letter is attached to USF&G's Complaint, Docket No. 2 at Exhibit J.

**ANSWER:**   VOA admits that on January 17, 2008, USF&G sent a letter to counsel for VOA and admits that Docket 2 at Exhibit J purports to be a copy. VOA denies the characterization of the letter as set forth in paragraph 63, and any remaining allegations contained in paragraph 63.

64.   VOA failed to respond to any of USF&G's requests for information.

**ANSWER:**   VOA denies the allegations contained in paragraph 64.

## LIBERTY'S CONDUCT WITH REGARD TO THE *MADDEN* SUIT

65.   Liberty received the Third Amended Complaint in the *Madden* Suit on or about December 8, 2005 from VOA's broker, AVA.

**ANSWER:**   VOA admits the allegations contained in paragraph 65.

66.   Liberty failed and refused to defend or indemnify VOA against the Third Amended Complaint.

**ANSWER:**   VOA admits only that Liberty had knowledge of the Third Amended Complaint and assigned a claim number for the *Madden* Suit in December 2005, but did not assign defense counsel to VOA because, upon information and belief, Liberty learned that USF&G was defending and indemnifying VOA against the Third Amended Complaint.   VOA denies any remaining or inconsistent allegations.

67.   With regard to the Third Amended Complaint, Liberty did not issue a reservation of rights letter until June 21, 2007.

**ANSWER:**   VOA admits that Liberty first sent a letter related to the *Madden Suit* to VOA on June 21, 2007 and refers to the letter itself for its contents, and denies any allegations or characterizations of it that are not consistent with the language contained therein.   VOA denies any remaining or inconsistent allegations.

68.   Liberty's position with regard to Third Amended Complaint is that it does not contain professional services allegations but rather construction or general liability allegations and thus, does not allege a "claim" as defined in the Liberty policies sufficient to trigger any Liberty policy of insurance issued to VOA.

**ANSWER:**   VOA admits only that it understands Liberty's position with regard to the Third Amended Complaint to be that which Liberty set forth in the June 21, 2007 letter, the

February 8, 2008 letter, and Liberty's Answer to the Complaint. VOA denies any remaining or inconsistent allegations.

69.    On or about August 15, 2008, the Fourth Amended Complaint was filed in the *Madden* Suit.

**ANSWER:**    VOA denies the allegations contained in paragraph 69.

70.    The Fourth Amended Complaint contains design or professional liability allegations against VOA.

**ANSWER:**    VOA admits that the Fourth Amended Complaint contains, among other claims and allegations, design or professional liability allegations against VOA. VOA denies any remaining allegations contained in paragraph 70.

71.    Liberty contends that it did not receive a copy of the Fourth Amended Complaint until June 13, 2007.

**ANSWER:**    VOA admits the allegations contained in paragraph 71.

72.    On June 21, 2007, Liberty reserved its rights with regard to the Fourth Amended Complaint.

**ANSWER:**    VOA admits that Liberty sent a letter to VOA on June 21, 2007 and refers to the letter itself for its contents, and denies any allegations or characterizations of it that are not consistent with the language contained therein. VOA denies any remaining or inconsistent allegations.

73.    Liberty did not defend or indemnify VOA against the Fourth Amended Complaint.

**ANSWER:**    VOA admits that Liberty had knowledge of and assigned a claim number to the *Madden Suit* in December 2005, but did not assign defense counsel to VOA because, upon information and belief, Liberty learned that USF&G was defending and indemnifying for the

*Madden Suit.* VOA further admits that Liberty did not assign defense counsel or agree to pay defense costs upon the filing of the Fourth Amended Complaint. VOA denies any remaining or inconsistent allegations.

74. On June 27, 2007, a judgment was entered against VOA in the *Madden* Lawsuit.

**ANSWER:** VOA admits the allegations contained in paragraph 74.

75. Prior to the entry of judgment in the *Madden* Suit, Liberty never: a) agreed to defend or indemnify VOA; or b) file a declaratory action.

**ANSWER:** VOA admits the allegations contained in paragraph 75.

76. Liberty's position is that the Fourth Amended Complaint alleges a claim sufficient to trigger a Liberty policy of insurance issued to VOA, but it was not timely reported to Liberty within the appropriate policy period or extended reporting period and therefore, Liberty has no coverage obligation.

**ANSWER:** VOA admits only that it understands Liberty's position to be that which Liberty set forth in the June 21, 2007 letter, the February 8, 2008 letter, and Liberty's Answer to the Complaint. VOA denies any remaining or inconsistent allegations.

77. On information and belief, Liberty has never advised VOA directly in writing of its coverage position with regard to the Fourth Amended Complaint, i.e., that the Fourth Amended Complaint was not timely reported under any Liberty policy.

**ANSWER:** VOA admits that the only written indication of Liberty's position with regard to the Fourth Amended Complaint is contained in the June 21, 2007 letter to Paul Hansen, the February 8, 2008 letter from James Nyeste and Liberty's Answer to the Complaint. VOA denies any remaining or inconsistent allegations.

78. On September 6, 2007, Liberty agreed to post its policy as the appeal bond for the judgment in the *Madden* Suit.

**ANSWER:**   VOA lacks sufficient information to admit or deny the allegations contained in paragraph 78.

**COUNT I**
**DECLARATORY JUDGMENT**
**(THE USF&G POLICY)**

VOA makes no response to the allegations contained in Counts I, as this count is not directed against VOA.

**COUNT II**
**UNJUST ENRICHMENT / RESTITUTION**
**(VOA)**

89.    USF&G incorporates by reference the allegations of Paragraphs 1 through 88 above as though fully set forth herein.

**ANSWER:**   VOA incorporates by reference its answers to the allegations contained in paragraphs 1 through 88 as though fully set forth herein.

90.    On March 6, 2007, an order on summary judgment was entered in the Underlying Lawsuit ruling that construction claims against VOA were dismissed, leaving only design allegations pending for trial.  (See Complaint at Ex. E. Docket No. 2.)

**ANSWER:**   VOA admits only that pursuant to the Court Order of March 6, 2007, the claims against VOA of §343 and §414 liability and the allegations related to those claims as set forth in the complaint were dismissed.  VOA states that all other allegations and claims against VOA contained in the Fourth Amended Complaint remained.  VOA denies any remaining or inconsistent allegations.

91.    On September 28, 2007, USF&G sent correspondence to VOA requesting VOA to withdraw its claim for coverage under the USF&G general liability policy because the only remaining design claims pending against VOA were excluded by the professional services exclusion.  (See Complaint at Ex. H, Docket No. 2.).

**ANSWER:**   VOA admits only that on September 28, 2007, USF&G sent a letter to counsel for VOA and admits that Docket 2 at Exhibit H purports to be a copy.  VOA denies any allegations contained in paragraph 91 that are inconsistent with the language contained therein. VOA further denies the specific allegations contained in the September 28, 2007 letter, and any remaining allegations contained in paragraph 91.

92.   VOA refused to withdraw its request for coverage for claims that are clearly not covered under the USF&G Policy.

**ANSWER:**   VOA denies the allegations contained in paragraph 92.

93.   USF&G has expended significant amounts in funding a defense for VOA since March 7, 2007, which constituted a benefit to VOA for which it was not entitled.

**ANSWER:**   VOA denies the allegations contained in paragraph 93.

94.   USF&G has been unjustly enriched to its detriment by continuing to fund the defense of VOA.

**ANSWER:**   VOA denies the allegations contained in paragraph 94.

95.   VOA's continued retention of the benefit of USF&G's funding of VOA's defense since March 7, 2007 violates principles of justice, equity and good conscience.

**ANSWER:**   VOA denies the allegations contained in paragraph 95.

WHEREFORE, Plaintiff, USF&G, prays for judgment as follows:

(a)   Declaring that Plaintiff has no obligation to defend VOA with respect to the Underlying Litigation under the USF&G Policy;

(b)   Declaring that Plaintiff has no obligation to post or secure an appeal bond for VOA with respect to the *Madden* Suit;

(c)   Declaring that Plaintiff has no obligation to reimburse Liberty for the costs associated with securing an appeal bond on VOA's behalf;

(d)   Declaring that Plaintiff has no obligation to indemnify VOA with respect to the *Madden* Suit under the USF&G Policy;

(e)     Declaring that Plaintiff is entitled to reimbursement from VOA for defense fees and costs incurred since March 6, 2007;

(f)     Awarding Plaintiff's attorneys fees and costs incurred in prosecuting this lawsuit; and

(g)     Awarding Plaintiff such other and further relief as the Court may deem appropriate and just.

**ANSWER:**     VOA denies that USF&G is entitled to the requested relief or any other.

## COUNTS III-VII

VOA makes no response to the allegations contained in Counts III-VII, as those counts are not directed against VOA.

## FIRST AFFIRMATIVE DEFENSE

### Estoppel- Failure to Reserve Rights

1.      VOA was first sued by Michael and Jean Madden in their Third Amended Complaint, filed August 17, 2004 and served on VOA on or about August 26, 2004.  A copy of the Third Amended Complaint is attached to VOA's Answer to the Complaint as Exhibit 1.

2.      VOA tendered the claim to USF&G on or about August 31, 2004, and USF&G undertook the defense of VOA against the allegations of the Third Amended Complaint on or about September 1, 2004, pursuant to its obligations under policy  No. BK01116165 ("Policy"), and shortly thereafter retained the law firm of Fraterrigo, Beranek, Feiereisel & Kasbohm to defend VOA.

3.      Despite the fact that USF&G knew the date of Michael Madden's accident ("Occurrence") upon receipt of the Third Amended Complaint,  USF&G did not advise VOA at the time that it undertook VOA's defense that it was providing a defense under a reservation of rights, and specifically did not advise VOA that it was reserving its right to deny coverage based on VOA's failure to provide proper or timely notice of the Occurrence.

4.      USF&G is estopped to assert VOA's alleged lack of timely or proper notice of the Occurrence as a defense to coverage of the Madden Suit.

5.      On or about August 16, 2006, Michael and Jean Madden filed their Fourth Amended Complaint, attached to the Complaint as Exhibit C. (The Third and Fourth Amended Complaints are hereinafter referred to collectively as the "Madden Suit.")  Among other things, the Fourth Amended Complaint added allegations of negligent design against VOA.  Following the filing of the Fourth Amended Complaint, USF&G continued to defend VOA against all claims set forth in the Madden Suit, including the design claims.

6.    USF&G did not advise VOA that it was providing a defense under a reservation rights, and at no time prior to June 5, 2007 did USF&G advise VOA that the allegations of negligent design set forth in the Fourth Amended Complaint were excluded under the Policy. USF&G did not disclaim any obligation to defend or indemnify against the design claims until June 5, 2007, ten days before the case was set for trial.

7.    USF&G failed to properly reserve its right to deny coverage as to the design claims, and as a result, VOA reasonably expected that the defense costs as well as any judgment resulting from the Madden Suit would be covered by the Policy, and relied on the continued defense provided by USF&G and on USF&G's silence as to the design claims.

8.    USF&G is estopped to assert the professional services exclusion in the Policy as a defense to coverage of the Madden Suit.

## SECOND AFFIRMATIVE DEFENSE

### Estoppel- Failure to Advise Regarding Conflict Of Interest

1.    VOA adopts and realleges Paragraphs 1-8 of its First Affirmative Defense as though fully set forth herein.

2.    When USF&G continued defending VOA after the filing of the Fourth Amended Complaint, it had a possible conflict of interest with VOA in that the claims against VOA included ones that were potentially covered and ones that were not.

3.    In particular, the construction related claims against VOA from the Third Amended Complaint were repeated in the Fourth Amended Complaint, and these claims were potentially covered by the USF&G policy. On the other hand, the newly added design claims of the Fourth Amended Complaint were subject to the professional services exclusions of the USF&G policy.

4.     To fully protect its interest, USF&G had only to defeat the potentially covered construction claims.   To fully protect VOA's interest, however, USF&G had to defeat all of Madden's claims, both the construction claims and the design claims.

5.     Despite this possible conflict of interest, USF&G did not advise VOA of the possibility of a conflict of interest, and did not relinquish control of VOA's defense.

6.     As a result of USF&G's failure to advise VOA of this possible conflict of interest, USF&G is estopped to assert the professional services exclusion in the Policy as a defense to coverage of the Madden Suit.


                              VOA ASSOCIATES INC.


                              By:    /s/  Amy R. Skaggs
                                     One of Its Attorneys

Paul M. Lurie
Amy R. Skaggs
SCHIFF HARDIN LLP
6600 Sears Tower, 233 South Wacker Drive
Chicago, IL  60606-6473
(312) 258-5500
Firm ID #90219

Dated: December 16, 2008

CHI\6081126.1