THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 08 C 0862 |
| VOA ASSOCIATES, INC., LIBERTY INTERNATIONAL UNDERWRITERS, MICHAEL J. MADDEN and JEAN MADDEN, | ) ) ) ) | Judge Kennelly Magistrate Judge Brown |
| Defendants. | ) ) | |

**Defendant Liberty's Memorandum of Law in Support of its Motion for Summary Judgment on Counts III through VII of Plaintiff's Amended Complaint**

Defendant Liberty Insurance Underwriters, Inc. (incorrectly sued as "Liberty International Underwriters"), hereinafter "Liberty," moves for summary judgment on Counts III through VII of Plaintiff's Amended Complaint.[1] In those counts, Plaintiff USF&G seeks a declaratory judgment that, under one or more of Liberty's professional liability insurance policies, Liberty owes a primary duty to defend and indemnify VOA against the underlying *Madden* suit. USF&G further seeks monetary reimbursement from Liberty, under various theories, for what USF&G has paid thus far to defend VOA in *Madden*.[2]

None of USF&G's counts against Liberty can succeed because Liberty's policies are "claims made and reported" policies, and there was no professional liability claim in *Madden*

---

[1] The counts in the Amended Complaint are numbered incorrectly. In particular, there are two counts that are captioned Count "III."

[2] In addition to the declaratory and monetary relief against Liberty, the prayers for relief in Counts III through VII seek declarations that USF&G has no obligations under its own policy of insurance with VOA and that USF&G is entitled to reimbursement from VOA. Liberty construes these aspects of the prayers for relief in Counts III through VII to be carryovers from Count I ("Declaratory Judgment – The USF&G Policy") and Count II ("Unjust Enrichment / Restitution – VOA") and does not address those claims in this Memorandum. In any event, Liberty has joined in VOA's motion for summary judgment on Counts I and II and contends that USF&G must defend and indemnify VOA.

-1-

that was both first made against VOA and reported to Liberty in the same policy period or within sixty days thereafter. The "claims made and reported" preconditions are elemental to Liberty's coverage and have not been met. Accordingly, Liberty has no duty to defend or indemnify VOA and no duty to reimburse USF&G.

Further, irrespective of the "claims made and reported" threshold conditions, the notice given to Liberty in June 2007 of the negligent design claim that was made against VOA did not occur until the eve of trial in *Madden* and was unreasonably late and unduly prejudicial as a matter of law.

Both VOA and USF&G have acknowledged that Liberty's policies do not apply. VOA has stated that, as of June 2007, "[I]t was too late for VOA to . . . seek coverage under its professional liability insurance [Liberty's coverage], which is a claims made and reported policy." VOA's Answers to Plaintiff's Interrogatories, No. 13 (Liberty Appendix, Ex. 17). USF&G was even going to voluntarily dismiss Liberty from this case. On January 22, 2009, when USG&G presented its motion to voluntarily dismiss Liberty, USF&G's counsel advised the court:

> And what happened here is we have taken discovery. We filed a duty to defend lawsuit and believe that Liberty had a defense obligation, and through the course of discovery, we have determined that they don't have a defense obligation. Frankly, your Honor, the fact that they [Liberty] don't want to be dismissed from the case is somewhat surprising.

Transcript of Proceedings, January 22, 2009 (Liberty Appendix, Ex. 26).[3] Liberty would be glad to be dismissed but desires a ruling on the merits that will be collateral estoppel or *res judicata* if Liberty gets dragged into another coverage suit concerning the *Madden* matter. Based on the applicable law concerning "claims made and reported" policies and the undisputed facts in this matter, Liberty is entitled to judgment as a matter of law.

---

[3] Liberty objected to USF&G's motion to voluntarily dismiss, and USF&G withdrew the motion.

## The Liberty policies

Liberty issued five "Architects, Engineers & Environmental Services Professional Liability Insurance" policies to VOA for the following consecutive policy periods:[4]

    12/5/2003 to 12/5/2004
    12/5/2004 to 12/5/2005
    12/5/2005 to 12/5/2006
    12/5/2006 to 12/5/2007
    12/5/2007 to 12/5/2008

Each of these policies is built around Form No. AEE002 (05/2002), which on its fourth line provides, "This is a **Claims Made and Reported** Policy. Please Read it Carefully." The bolded term "Claims Made and Reported" is defined as follows:

> **"Claims Made and Reported"** coverage applies to Claims that are first made against you during a Policy Year within the Policy Period shown in the Declarations and first reported to us within that Policy Year, or within 60 days after the end of that Policy Year.

The policies issued by Liberty to VOA have twelve-month periods, making the Policy Years and Policy Periods the same, so we will just refer to the policy period. To trigger the policy, a claim must be both first made against VOA *and* first reported to Liberty during the same policy period, or within sixty days thereafter. The timely reporting of claims is not an aspiration; it is a precondition to coverage. The "Insuring Agreement" of the policy expressly provides:

> As a condition precedent to coverage, you shall report all Claims in writing to us as soon as practicable, but in no event later than 60 days after termination of this Policy.

With respect to the underlying *Madden* litigation, there was no claim that was both first made against VOA and first reported to Liberty in the same policy period or within sixty days thereafter.

---

[4] Only the first three policies are alleged in the Amended Complaint.

**Timeline of pertinent events in *Madden***

- 8/19/02 Madden falls into orchestra pit and is injured

- 1/13/03 Madden files suit (VOA not included)

12/5/03 to 12/5/04 first Liberty policy period

- 8/17/04 Third Amended Complaint filed (adds VOA); 826/04 VOA served
- 8/31/04 Third Amended Complaint reported to USF&G

12/5/04 to 12/5/05 second Liberty policy period

12/5/05 to 12/5/06 third Liberty policy period
- 12/8/05 Third Amended Complaint reported to Liberty

- 8/16/06 Fourth Amended Complaint filed (adds negligent design allegations against VOA)

12/5/06 to 12/5/07 fourth Liberty policy period

- 6/7/07 letter from Beranek to Liberty; 6/13/07 Fourth Amended Complaint sent to Liberty; 6/20/07 – 6/27/07 case tried; judgment entered on verdict of $1,605,650

12/5/07 to 12/5/08 fifth Liberty policy period

- 2/8/08 This action filed by USF&G
- 2/14/08 VOA's Notice of Appeal filed in *Madden*

**No claim both made and reported within any policy period**

The Third Amended Complaint was the first claim *of any sort* by Madden against VOA. No one has pointed to any prior claim letter or other demand by Madden to VOA. The Third Amended Complaint was filed on August 17, 2004 and served on VOA a few days later, within the first policy period (12/5/03 to 12/5/04). Liberty does not construe the allegations of the Third Amended Complaint to charge VOA with a wrongful act in the performance of professional services so as to amount to the type of claim covered by Liberty's professional liability policies.

Liberty construes it as alleging negligent construction practices instead. But that view is not crucial. Regardless whether or not the Third Amended Complaint is construed to include a professional liability claim against VOA, the Third Amended Complaint was not reported to Liberty within the first policy period, nor even within the second. The Third Amended Complaint was not reported to Liberty until December 8, 2005, at the beginning of the *third* policy period (12/5/05 to 12/5/06). Because it was not reported within the same period in which it was made, the Third Amended Complaint did not trigger any Liberty policy.

Madden amended his case against VOA by filing a Fourth Amended Complaint on August 16, 2006 during the third Liberty policy period. All parties here agree that the Fourth Amended Complaint includes a claim against VOA for negligent design of the orchestra pit. *Someone* then should have reported the Fourth Amended Complaint to Liberty, but that did not happen until mid-way through the next, the fourth, policy period, on June 13, 2007, on the eve of trial. Because it was not reported within the same period in which it was made, the Fourth Amended Complaint, like the Third Amended Complaint, did not trigger any Liberty policy.

This court had occasion to consider a "claims made and reported" policy in *Pacific Ins. Co. v. Eckland Consultants*, 2001 U.S. Dist. LEXIS 18369 (N.D. Ill. 2001) (Kennelly, J.), where the underlying claim against the insured was made within the policy period but was not reported to the insurance company until several months after the end of the policy period. The court distinguished "claims made and reported" insurance coverage from conventional "occurrence" based coverage, stating:

> By way of background, conventional liability insurance policies or "occurrence" policies "insure against a negligent or other liability-causing act or omission that occurs during the policy period regardless of when a legal claim arising out of the act or omission is made against the insured." *National Union Fire Insurance Company of Pittsburgh v. Baker & McKenzie*, 997 F.2d 305, 306 (7th Cir. 1993). Because an occurrence policy can expose an insurance company to indefinite

> future liability, companies often also offer a less expensive option known as a "claims-made" policy, which generally limits liability to claims made and reported during the policy period.

*Id*. at *8-9. The court then enforced the claim reporting precondition to coverage under the policy and rejected the insured's argument that it was necessary for the insurance company to establish prejudice due to the insured's late notice. See 2001 U.S. Dist. LEXIS 18369 at *9-12.

Numerous other cases also have strictly enforced the claim reporting prerequisite of "claims made and reported" policies, treating the reporting of the claim within the period as an elemental policy requirement before either the duty to defend or the duty to indemnify can arise. See *Home Ins. Co. v. Adco Oil Co.*, 154 F.3d 739, 742 (7th Cir. 1998); *Cont'l Cas. Co. v. Cuda*, 306 Ill. App. 3d 340 (1st Dist. 1999); *Old Republic Ins. Co. v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 2006 U.S. Dist. LEXIS 900 (N.D. Ill. 2006); *Exec. Risk Indem., Inc. v. Chtd. Benefit Servs.*, 2005 U.S. Dist. LEXIS 15411 (N.D. Ill. 2005); *Am. Nat'l Fire Ins. Co. v. Harold Abrams, P.C.*, 2002 U.S. Dist. LEXIS 2577 (N.D. Ill. 2002); *St. Paul Reinsurance Co. v. Williams & Montgomery, LTD*, 2001 U.S. Dist. LEXIS 16871 (N.D. Ill. 2001); *National Union Fire Ins. Co. v. Bauman*, 1991 U.S. Dist. LEXIS 18668 (N.D. Ill. 1991).

Liberty has no obligation to VOA, nor to USF&G, with respect to the *Madden* case under any of its policies, neither a duty to defend nor a duty to indemnify. There simply was no claim both made and reported during the same policy period under any of Liberty's policies. There is no genuine issue of material fact, and Liberty is entitled to summary judgment on Counts III through VII of the Amended Complaint.

**Prejudice**

It was the eve of trial when Madden's Fourth Amended Complaint was finally provided to Liberty on June 13, 2007. How could anyone realistically expect Liberty to take over or even participate in VOA's defense at that point? Liberty had been deprived of any opportunity for

meaningful input into VOA's defense, including but not limited to selection of defense counsel, motion practice, settlement negotiations, expert witness selection, or trial strategy. Deposition of Benjamin Brindley, pp. 22-23, 26-27, and 33-40 (Liberty Appendix, Ex. 14). If Liberty had any duty under its policies, which is denied, it must be outweighed and negated as a matter of law by the prejudice to Liberty in the reporting of a claim on the eve of trial. See *Guaranty Bank v. Chubb Corp.*, 538 F.3d 587, 591 (7th Cir. 2008) (prejudice to insurer due to momentum from preliminary injunction in underlying case prior to notice); *Alliance Gen. Ins. Co. v. Covington Enters.*, 2000 U.S. App. LEXIS 16266 (7th Cir. 2000) (prejudice to insurer deprived of opportunity to settle claim for lower amount); *Highlands Ins. Co. v. Lewis Rail Serv. Co.*, 10 F.3d 1247, 1250 (7th Cir. 1993) (prejudice to insurer notified six weeks prior to trial, after pretrial discovery and preliminary settlement negotiations had already taken place*)*; *Imperial Casualty & Indem. Co. v. Chicago Housing Authority*, 987 F.2d 459, 463 (7th Cir. 1993) (prejudice to insurer unable to investigate); *Casualty Indem. Exchange v. Chicago*, 651 F. Supp. 467, 474 (N.D. Ill. 1985) (prejudice to insurer unable to investigate; no obligation to prove that it could have uncovered useful information; mere possibility of harm sufficient); *Kerr v. Illinois Cent. R.R.*, 283 Ill. App. 3d 574, 585 (1st Dist. 1996) (prejudice to insurers unable to encourage settlement ); *American States Ins. Co. v. National Cycle*, 260 Ill. App. 3d 299, 312 (1st Dist. 1994) (prejudice to insurer unable to participate in insured's defense and object to co-defendant's settlement which precluded insured from seeking contribution); *Twin City Fire Ins. Co. v. Old World Trading Co.*, 266 Ill. App. 3d 1, 9 (1st Dist. 1993) (prejudice to insurer by stipulation entered into by insured and by loss of right to control defense and settlement).

**Conclusion**

Liberty respectfully requests the court to find that it has no duty to defend or indemnify VOA in the *Madden* case, nor any obligation to reimburse USF&G for any amounts that it has expended, and to enter judgment in its favor on Counts III through VII of the Amended Complaint.

Respectfully submitted,
Liberty Insurance Underwriters, Inc.

By: /s/ James T. Nyeste
    Its Attorney

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on April 8, 2009, he electronically filed the foregoing *Defendant Liberty's Memorandum of Law in Support of its Motion for Summary Judgment on Counts III through VII of Plaintiff's Amended Complaint* with the Clerk of the Court using the CMF/ECF filing system, which sent notice of such filing to those counsel who are CMF/ECF users, and that as to the below-listed counsel,

Kevin W. O'Connor
Collison & O'Connor, Ltd.
19 South LaSalle Street
Chicago, IL 60603

he deposited said document in the U.S. mail, proper postage pre-paid.

/s/ James T. Nyeste

Attorney at Law
1 N. LaSalle Street, Suite 2100
Chicago, IL 60602
Tel: 312-750-1814
IL ARDC# 3125383

Dated:  April 8, 2009