THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 0862 |
| | ) | |
| VOA ASSOCIATES, INC., LIBERTY INTERNATIONAL UNDERWRITERS, MICHAEL J. MADDEN and JEAN MADDEN, | ) ) ) | Judge Kennelly Magistrate Judge Brown |
| | ) | |
| Defendants. | ) | |

**Appendix of Evidentiary Materials in Support of
Defendant Liberty's Motion for Summary Judgment
on Counts III through VII of Plaintiff's Amended Complaint**

Defendant Liberty Insurance Underwriters, Inc. (incorrectly sued as "Liberty International Underwriters"), hereinafter "Liberty," submits the following evidentiary material in support of its Motion for Summary Judgment. Please take note, however, that Exhibits 8-12 and 20-25 are separately filed under seal pursuant to the Protective Order entered July 15, 2008 and the court's order of April 3, 2009.

<u>Ex.</u>   <u>Description</u>

1.   Liberty Insurance Underwriters Inc.'s Answers and Objections to Interrogatories from USF&G

2.   Liberty policy No. AEE196887-0103, 12/5/2003 to 12/5/2004

3.   Liberty policy No. AEE196887-0104, 12/5/2004 to 12/5/2005

4.   Liberty policy No. AEE196887-0105, 12/5/2005 to 12/5/2006

5.   Liberty policy No. AEE196887-0106, 12/5/2006 to 12/5/2007

6.   Liberty policy No. AEE196887-0107, 12/5/2007 to 12/5/2008

7.   December 8, 2005 fax from HRH/AVA to Liberty, with handwritten notes by George Ammon, and attaching *Madden* Third Amended Complaint and Summons directed to VOA

8.   August 30, 2004 e-mail from Paul Lurie with handwritten note by Jennifer Klomans **(filed under seal)**

9.   Deposition of Jennifer Klomans, Assistant Controller of VOA **(filed under seal)**

10.  Deposition of Daniel Buelow of HRH/AVA **(filed under seal)**

11.  August 31, 2004 fax from Klomans to Rachel Buelow at HRH/AVA **(filed under seal)**

12.  August 31, 2004 fax from Rachel Buelow to St. Paul Claims (USF&G) **(filed under seal)**

13.  Deposition of George Ammon, Liberty claim adjuster

14.  Deposition of Benjamin Brindley, Liberty Assistant V.P.

15.  June 7, 2007 letter from Kurt Beranek to Liberty with handwritten notes by Benjamin Brindley

16.  June 13, 2007 e-mail from Marin Christensen to Ammon with *Madden* Fourth Amended Complaint (LIUI 193)

17.  VOA's Answers to Plaintiff's Interrogatories

18.  June 21, 2007 letter from Ammon to Paul Hansen at VOA

19.  June 27, 2007 judgment

20.  Deposition of Paul Hansen, VOA Principal **(filed under seal)**

21.  October 14, 2005 letter from Elrabadi to Dillon at St. Paul Travelers with cc to Hansen at VOA **(filed under seal)**

22.  December 8, 2006 e-mail from Elrabadi to Hansen **(filed under seal)**

23.  January 9, 2007 e-mail from Hansen to Elrabadi **(filed under seal)**

24.  August 17, 2006 letter from Elrabadi to Debbie Morano, claims adjuster for St. Paul Travelers (USF&G) **(filed under seal)**

25.  September 1, 2006 letter from Elrabadi to Morano **(filed under seal)**

26.     Transcript of Proceedings, January 22, 2009


Respectfully submitted,
Liberty Insurance Underwriters, Inc.

By: /s/ James T. Nyeste
        Its Attorney


James T. Nyeste
Attorney at Law
1 N. LaSalle Street, Suite 2100
Chicago, IL 60602
Tel: 312-750-1814
IL ARDC# 3125383

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 8, 2009, he electronically filed the foregoing *Appendix of Evidentiary Materials in Support of Defendant Liberty's Motion for Summary Judgment* with the Clerk of the Court using the CMF/ECF filing system, which sent notice of such filing to those counsel who are CMF/ECF users, and that as to the below-listed counsel,

Kevin W. O'Connor
Collison & O'Connor, Ltd.
19 South LaSalle Street
Chicago, IL 60603


he deposited said document in the U.S. mail, proper postage pre-paid.

/s/ James T. Nyeste
Attorney for Liberty Insurance Underwriters, Inc.
Dated: April 8, 2009

EX. 1

**In the United States District Court
for the Northern District of Illinois, Eastern Division**

| | | |
|---|---|---|
| United States Fidelity And | ) | |
| Guaranty Company, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 0862 |
| | ) | |
| VOA Associates, Inc., Liberty | ) | Judge Kennelly |
| Insurance Underwriters Inc., | ) | Magistrate Judge Brown |
| Michael J. Madden and Jean Madden, | ) | |
| | ) | |
| Defendants. | ) | |

**Liberty Insurance Underwriters Inc.'s Answers and Objections to
Interrogatories from USF&G**

Defendant Liberty Insurance Underwriters Inc., hereinafter "LIUI," answers

or objects to the Interrogatories from plaintiff United States Fidelity and Guaranty

Company as follows:

1.     Identify the person(s) answering these Interrogatories.

**Answer:**     Benjamin S. Brindley
Assistant Vice President
Liberty International Underwriters
55 Water Street, 18th Floor
New York, NY 10041-0004

2.     Identify each person who provided information or otherwise aided in

the preparation of Your answers to these Interrogatories.

**Answer:**     Mr. Brindley and the undersigned counsel.

3.     Identify policies of insurance provided by You to VOA with a policy

period between 2002 and 2006.

**Answer:**     No. AEE196887-0103 (12/5/03 to 12/5/04)
No. AEE196887-0104 (12/5/04 to 12/5/05)
No. AEE196887-0105 (12/5/05 to 12/5/06)

No. AEE196887-0106 (12/5/06 to 12/5/07)

4.      Identify all persons with knowledge of the Incident.

**Answer:**    Michael Madden would have knowledge, and it is LIUI's understanding that there were no other witnesses to the Incident.

5.      Identify all persons with knowledge of the Underlying Lawsuit.

**Objection:**  LIUI objects to the interrogatory as overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in that numerous persons, easily dozens, have knowledge of the Underlying Lawsuit.

6.      Identify any and all communications between You and any other person or entity relating to: (1) the Incident; and (2) the Underlying Lawsuit.

**Objection and Answer:**  LIUI objects to the interrogatory as overly broad and unduly burdensome in that LIUI has been party to numerous communications relating to the Incident or the Underlying Lawsuit. In addition to copies of its policies and copies of VOA's applications, LIUI has produced some 471 pages of documents in pdf format (LIUI 1 – 471), most of which constitute faxes, letters, e-mails, or notes of telephone conversations relating to the Incident or the Underlying Lawsuit. Pursuant to Rule 33(d) the Federal Rules of Civil Procedure, LIUI refers Plaintiff to these records to ascertain the answer to this interrogatory.

7.      State the date You first became aware of the Incident and how You became aware.

**Answer:**     December 8, 2005, fax from Rachel Buelow of HRH AVA Insurance Agency.

8.     State the date You first became aware of the Underlying Lawsuit and how You became aware.

**Answer:**     December 8, 2005, fax from Rachel Buelow of HRH AVA Insurance Agency.

9.     Identify all persons with knowledge about Liberty's handling of any and all claims related to the Incident.

**Objection and Answer:** LIUI objects to the interrogatory as vague in its use of the words "handling" and "claim." As USF&G is aware, Liberty has taken the position that there was no "claim," as defined by Liberty's policies, that was both first made and reported to Liberty within any policy period, and thus no claim to "handle" under Liberty's "claims made and reported" policies. Liberty further objects to the Interrogatory as overly broad and unduly burdensome in that numerous persons, easily dozens, have some measure of knowledge relating to Liberty's position concerning the Incident and the Underlying Lawsuit.

10.     Identify any and all documents regarding or relating to notification of Liberty of the Incident by any person or entity.

**Answer:**     The documents providing the first notice to LIUI of the Incident are LIUI 1 – 21 and AVA 2743 – 2767. There was no further notice to LIUI of the Incident until June 2007.

11.    Identify any and all documents regarding or relating to notification of Liberty of the Underlying Lawsuit by any person or entity.

**Answer:**    The documents providing the first notice to Liberty of the Underlying Lawsuit are LIUI 1 – 21 and AVA 2743 – 2767. There was no further notice to LIUI of the Underlying Lawsuit until June 2007.

12.    Identify all persons with knowledge of the damages alleged and claims made in the Underlying Lawsuit.

**Objection and Answer:** LIUI objects to the interrogatory as overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence in that numerous persons, easily dozens, have knowledge of what was claimed or alleged in the Underlying Lawsuit. Without waiving these objections, Liberty believes that Michael Madden and Jean Madden would have the most knowledge of their damages.

13.    Identify all statements relating to VOA's tender or claim for coverage under any policy of insurance with respect to the Underlying Lawsuit.

**Answer:**    LIUI is not aware of any tender or claim for coverage by VOA under any LIUI policy of insurance with respect to the Underlying Lawsuit. See VOA's Answer and Affirmative Defenses to USF&G's Complaint for Declaratory Judgment (Answer at Paragraphs 33 and 34). It is LIUI's understanding that VOA made a tender or claim for coverage under USF&G's policy instead. See VOA's Answer and Affirmative Defenses to USF&G's Complaint for Declaratory Judgment

(First Affirmative Defense at Paragraph 2). See also documents AVA 2745, VOA-C 000047, VOA-C 000052, and AVA 2641.

14.     Identify all documents relating to VOA's tender or claim for coverage under any policy of insurance with respect to the Underlying Lawsuit.

**Answer:**     See answer to No. 13.

15.     Identify all persons with knowledge regarding any claim for coverage for the Underlying Lawsuit to any insurance company.

**Answer:**     Knowledge that no tender or claim for coverage was made to LIUI:

Benjamin S. Brindley                  George A. Ammon
Assistant Vice President              Claims Specialist
Liberty International Underwriters     Swiss Re
55 Water Street, 18th Floor           175 King Street
New York, NY 10041-0004               Armonk, NY 10504

The following persons may have knowledge of the tender to USF&G:

Ted Schnell                           Paul M. Lurie
Jennifer Klomans                      Schiff Hardin LLP
VOA Associates, Inc.                  6600 Sears Tower
224 S. Michigan Ave., Ste. 1400       Chicago, IL 60606
Chicago, IL 60604

Rachel Buelow
HRH/AVA Insurance Agency
425 N. Martingale Rd., Ste. 1100
Schaumburg, IL 60173

16.   State all facts relating to Your contention that You owed no duties to VOA with respect to the Underlying Lawsuit.

**Answer:**   VOA has been defended in Michael Madden's lawsuit by USF&G, its general liability insurer, since 2004 and continues to be defended under USF&G's policy to this date. LIUI is VOA's professional liability insurer. LIUI has issued professional liability policies to VOA for the following five consecutive policy periods:

December 5, 2003 to December 5, 2004
December 5, 2004 to December 5, 2005
December 5, 2005 to December 5, 2006
December 5, 2006 to December 5, 2007
December 5, 2007 to December 5, 2008

These policies were substantially identical, written on the same policy form, with a per claim limit of $2,000,000, and a per claim deductible of $200,000. Each policy was written on a "claims made and reported" basis, meaning that the policy covers a professional liability "claim" (a defined term) that is both first made against the insured (VOA) within the policy period and first reported to the company (LIUI) within that policy period or within sixty days thereafter. With respect to Michael Madden's injuries, no professional liability "claim" was both first made and reported within any of the foregoing policy periods (or reported within the sixty-day extension). Thus, LIUI does not owe any duties with respect to the Underlying Lawsuit.

17.   Identify all persons with knowledge about the Incident that occurred on August 19, 2002 at the Project that gave rise to the Underlying Lawsuit.

**Answer:**   Michael Madden would have knowledge, and it is LIUI's understanding that there were no other witnesses to the Incident.

18.   Identify any and all documents comprising, reflecting or relating to any and all coverage positions taken by Liberty with respect to the Incident and the Underlying Lawsuit.

**Answer:**   LIUI 64 – 65, LIUI 178 – 180.

19.   Identify any and all persons with knowledge about any and all coverage positions taken by Liberty with respect to the Incident and/or the Underlying Lawsuit.

**Answer:**

| | |
|---|---|
| Benjamin S. Brindley | George A. Ammon |
| Assistant Vice President | Claims Specialist |
| Liberty International Underwriters | Swiss Re |
| 55 Water Street, 18th Floor | 175 King Street |
| New York, NY 10041-0004 | Armonk, NY 10504 |

20.   Identify any and all reservation of rights and/or declinations of coverage issued by You to VOA with respect to the Underlying Lawsuit.

**Answer:**   LIUI 64 – 65.

21.   Identify every witness You will call to testify at trial together with the subject of the testimony of each witness.

**Answer:**   LIUI expects that it will call Mr. Brindley or Mr. Ammon, or both, to testify concerning LIUI's policies. LIUI has not yet determined what other witnesses may be called at trial.

22.     Identify each and every document or tangible thing that You will introduce into evidence or at trial in this Lawsuit.

**Answer:**     Liberty will introduce its policies issued to VOA (LIUI 575 – 598, 599 – 624, 625 – 651, 652 – 676, and 677 - 702), the Third and Fourth Amended Complaints in the Underlying Lawsuit (LIUI 2 – 21, 38 – 61), and documents evidencing when those complaints were received by LIUI (LIUI 1, 64 - 65). LIUI has not yet determined what other documents might be introduced at trial.

23.     Please identify any opinion witness You will call to testify at trial and include as part of Your answer:

    a.  The subject matter on which the opinion witness is expected to testify;

    b.  The conclusions and opinions of the opinion witness and the basis therefor; and

    c.  The qualifications of the opinion witness; and provide all reports of the opinion witness.

**Answer:**     Presently, LIUI does not anticipate that the trial will require any opinion witnesses but reserves the right to call same.

By: _____

    Attorney for Liberty Insurance
    Underwriters Inc.

James T. Nyeste
Attorney at Law
1 N. LaSalle Street, Suite 2100
Chicago, IL 60602
Tel: 312-750-1814
IL ARDC# 3125383

## **Verification**

I, Benjamin S. Brindley, Assistant Vice President of Liberty International

Underwriters, being duly sworn on oath, state that the foregoing answers are true

and complete to the best of my knowledge.


Benjamin S. Brindley

Sworn to and signed before me this ___ day of September 2008


Notary Public

EDMUND R. PAPAZIAN
Notary Public, State of New York
No. 4806732
Qualified in Westchester County
Commission Expires 1/3/2010

## Certificate of Service

I hereby certify that I caused a copy of *Liberty Insurance Underwriters Inc.'s Answers to Interrogatories from USF&G* to be served on the following:

Roderick T. Dunne
Linda J. Carwile
rdunne@karballaw.com
lcarwile@karballaw.com
Karbal, Cohen, Economou, Silk & Dunne
200 S. Michigan Ave., 20th Floor
Chicago, IL 60604

Kevin W. O'Connor
koconnor@co-injurylaw.com
Collison & O'Connor, Ltd.
19 S. LaSalle Street, 15th Floor
Chicago, IL 60603

Paul M. Lurie
Amy R. Skaggs
plurie@schiffhardin.com
skaggs@schiffhardin.com
Schiff Hardin LLP
6600 Sears Tower
Chicago, IL 60606

by e-mail on September 9, 2008 at approximately 3:30 p.m.

James T. Nyeste

EX. 2



Liberty
Insurance
Underwriters Inc.

NOTICE: THIS IS A CLAIMS MADE AND REPORTED POLICY. COVERAGE APPLIES TO CLAIMS THAT ARE FIRST MADE AGAINST YOU DURING A POLICY YEAR WITHIN THE POLICY PERIOD, AND FIRST REPORTED TO US WITHIN THAT POLICY YEAR, OR WITHIN SIXTY (60) DAYS AFTER EXPIRATION OR TERMINATION OF THIS POLICY FOR A WRONGFUL ACT COMMITTED ON OR AFTER THE RETROACTIVE DATE, IF APPLICABLE, AND BEFORE THE END OF THE POLICY YEAR. PLEASE READ THE POLICY CAREFULLY.

## Architects, Engineers & Environmental Services
## Professional Liability Insurance Policy

| **Company** | Liberty Insurance Underwriters Inc. <br> 55 Water Street, 18th Floor <br> New York, NY 10041 | **Producer** | Hobbs Group/AVA Insurance Agency, Inc. <br> 425 North Martingale Road, Suite 1100 <br> Schaumburg, IL 60173 |
|---|---|---|---|
| **Policy No.** | AEE196887-0103 | **Renewal of** | NEW |

## DECLARATIONS

**Item 1.** Named Insured and Mailing Address:

VOA Associates Incorporated
224 South Michigan Avenue
Chicago, IL 60604

**Item 2.** **Policy Period**: 12/05/03   to   12/05/04

(at 12:01 AM local time at the address of the Named Insured as stated in Item 1 above)

**Item 3.** **Limits of Liability** (inclusive of **Claims Expenses**):

   A.  $2,000,000   **Each Claim**

   B.  $4,000,000   **Policy Year** Aggregate

**Item 4.** **Deductible** (inclusive of **Claims Expenses**):

   A.  $200,000   **Each Claim**

   B.  Not Applicable   **Policy Year** Aggregate

**Item 5.** **Premium**:   **Surch/Tax**   0.00   **Total**:

**Item 6.** **Retroactive Date** (if applicable): 01/01/1969

**Item 7.** **Knowledge Date**: 12/05/03

**Item 8.** **Claims** notification:  Arrowhead Claims Management

99 Pacific Street, Suite155F, Monterey, CA  93940 Telephone:(800) 887-7811

**Item 9.** Endorsements attached at Policy effective date:

AEE008 (05/2002), AEE033 (05/2002), AEE066 (05/2002), AEE067 (05/2002), AEE127 (06/2002), AEE129 (06/2002), AEE001 (05/2002), AEE002 (05/2002)

*Coverage for Acts of Terrorism- See attached TRIA FORM C

This Declarations page together with the Architects, Engineers & Environmental Services Professional Liability Insurance Policy shall constitute the contract between the Named Insured and the Company.

DATE:   01/02/04
   Mo. Day. Yr.

AUTHORIZED REPRESENTATIVE

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

LIUI  575



VOA Associates Incorporated
224 South Michigan Avenue
Chicago, IL 60604


Policy Number : <u>AEE196887-0103</u>      Effective Date : 12/05/03

## THIS NOTICE CONTAINS IMPORTANT INFORMATION ABOUT THE TERRORISM RISK INSURANCE ACT OF 2002. PLEASE READ IT CAREFULLY.

<u>THE TERRORISM RISK INSURANCE ACT OF 2002</u>

On November 26, 2002, President Bush signed into law the Terrorism Risk Insurance Act of 2002. The Act establishes a temporary program to spread the risk of catastrophic losses from an act of terrorism between insurers and the federal government. The stated purpose of the Act is "to protect consumers by addressing market disruptions and ensure the continued widespread availability and affordability of property and casualty insurance for terrorism risk."

The Act requires insurers to pay losses from an act of terrorism up to an amount equal to a percentage of its direct earned premium. This amount is called the "insurer deductible." If an individual insurer's losses exceed this amount, the federal "Terrorism Insurance Program" will reimburse the insurer for 90% of losses paid in excess of the insurer deductible. An insurer that has met its insurer deductible is not liable for any portion of losses in excess of $100 billion per year. Similarly, the federal government is not liable for any losses covered by the Act that exceed this amount.

<u>MANDATORY OFFER OF COVERAGE FOR AN ACT OF TERRORISM AND DISCLOSURE OF PREMIUM</u>

Under the Act, insurers must make coverage available for any loss that results from an act of terrorism <u>AND</u> that is otherwise covered under the policy.

The Act also requires insurers to provide notice to policyholders of the premium charge for losses that result from an act of terrorism and are therefore covered under the Federal Insurance Program.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER      LIUI  576

An "act of terrorism" means:

[A]ny act that is certified by the Secretary [of the Treasury], in concurrence with the Secretary of State, and the Attorney General of the United States

(i) to be an act of terrorism;

(ii) to be a violent act or an act that is dangerous to –

(I) human life;

(II) property; or

(III) infrastructure;

(iii) to have resulted in damage within the United States, or outside of the United States in the case of –

(I) an air carrier (as defined in section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States); or

(II) the premises of a United States mission; and

(iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

## PREMIUM DISCLOSURE STATEMENT

The policy does not contain an exclusion for losses resulting from an act of terrorism. Coverage for such losses is still subject to all of the terms, definitions, exclusions and conditions in the policy, as well as the terms, definitions, exclusions and conditions of the primary and underlying excess policies.

THE PREMIUM CHARGE FOR LOSSES ARISING FROM AN ACT OF TERRORISM IS $ 0.

THE SUMMARY OF THE ACT AND THE COVERAGE UNDER THE POLICY CONTAINED IN THIS NOTICE IS NECESSARILY GENERAL IN NATURE. THE POLICY CONTAINS SPECIFIC TERMS, DEFINITIONS, EXCLUSIONS AND CONDITIONS. IN CASE OF ANY CONFLICT, THE POLICY LANGUAGE WILL CONTROL THE RESOLUTION OF ALL COVERAGE QUESTIONS. PLEASE READ THE POLICY CAREFULLY.

TRIA FORM C (ed. 1/05/03)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

LIUI 577

Liberty Insurance Underwriters, Inc.

EXCLUDED ENTITIES ENDORSEMENT

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/03 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: AEE196887-0103 as Endorsement No.: 1 Issued to: VOA Associates Incorporated

It is agreed VI. EXCLUSIONS, is amended by adding the following:

This Policy does not apply to and we shall not be liable for **Damages** and/or **Claims Expenses** resulting from any **Claim** or **Circumstance** made against you for, based upon, or arising from **Professional Services** performed by the following entities:

Studio A
Marcos Leite Bastos, Sao Paulo, Brazil

Accepted by:_____   Date:_____
         Authorized Representative of the Named Insured

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

_____
AUTHORIZED REPRESENTATIVE

Form No. AEE008 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER      LIUI  578

Liberty Insurance Underwriters, Inc.

## NAMED INSURED/MAILING ADDRESS ENDORSEMENT

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/03 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: AEE196887-0103 as Endorsement No.: 2 Issued to: VOA Associates Incorporated

by the Company shown above is changed as follows:

It is agreed the Declarations, Item 1., is amended as follows:

Named Insured to include:

VOA Associates Incorporated
VOA International Services
VOA Nevada LLC
VOA Associates, Inc. DBA: Lynn Wilson International but only for services performed subsequent to 9/1/96 and prior to 12/15/97
Vickrey/Ovresat/Awsumb Associates, Inc.
Vickrey/Powell Incorporated
Vickrey/Klein and Kikuchi, Inc.
Vickrey/Wines Associates Incorporated
VOA Associates
VOA/LB S/C LTDA
Logic Facilities Management, but only for professional services performed subsequent to 11/18/00
Vickrey/Ovresat/Awsumb Associates, Incorporated

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

AUTHORIZED REPRESENTATIVE
Form No. AEE033 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER      LIUI  579

Liberty Insurance Underwriters, Inc.

EXTENDED REPORTING PERIOD OPTION ENDORSEMENT – ILLINOIS

This Endorsement changes the Policy. Please read it carefully.

This Endorsement, effective on 12/05/03 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number:AEE196887-0103 as Endorsement No.: 3 Issued to: VOA Associates Incorporated

In the event of "termination" of your Policy, you may elect one twelve (12) month Extended Reporting Period subject to the following provisions:

1.  Coverage afforded under this Extended Reporting Period option will apply to **Claims** resulting from your **Professional Services** performed prior to termination of this Policy, provided the **Claim** is made against you and reported to us during the Extended Reporting Period.

2.  If you elect this Extended Reporting Period option, you must elect this option in writing within thirty (30) days of the termination of this Policy or within fifteen (15) days of our coverage offer, whichever is latest, and pay the additional premium at that time.

3.  An Endorsement will be issued showing the term of the Extended Reporting Period and the amount of premium.

4.  The premium for the Extended Reporting Period Option will be calculated according to the Company's rating plan in effect at the time this Policy was issued.  The premium for this option will be200% of the last annual Policy premium.

5.  This option is not available if you obtain other insurance to cover the claims which would otherwise be covered by this option.

6.  Upon electing this option, the premium is fully earned by us and the Extended Reporting Period cannot be canceled.

"Termination" includes cancellation, non-renewal, expiration, or reduction in coverage of the Policy.

IF YOU DO NOT ELECT THIS OPTION,
YOU WILL NOT BE INSURED BY US AFTER THE TERMINATION OF THIS POLICY.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

AUTHORIZED REPRESENTATIVE

Form No. AEE066 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER     LIUI  580

Liberty Insurance Underwriters, Inc.

CANCELLATION / NON-RENEWAL CONDITION ENDORSEMENT – ILLINOIS

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/03 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: AEE196887-0103 as Endorsement No.: 4 Issued to: VOA Associates Incorporated

It is agreed that VII. CONDITIONS, G. Notice of Cancellation, is deleted and the following substituted:

G.   Notice of Cancellation

This Policy may be canceled by the first Named Insured, identified in the Declarations, by surrender of this Policy to us or our authorized representative or by giving us written notice stating when thereafter such cancellation shall be effective.
After this insurance has been in effect for sixty (60) days or more, we will not cancel this Policy except for one or more of the following reasons:

(a) Nonpayment of premium;

(b) The Policy was obtained through a material misrepresentation;

(b) Any insured violated any of the terms and conditions of the Policy;

(c) The risk originally accepted has measurably increased;

(d) Certification to the Director of the loss of reinsurance by the insurer which provided coverage to the insurer for all or a substantial part of the underlying risk insured; or

(e) A determination by the Director that the continuation of the Policy could place the insurer in violation of the insurance laws of this State.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

AUTHORIZED REPRESENTATIVE

Form No. AEE067 (05/2002)

Page 1 of 2

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER       LIUI  581

Liberty Insurance Underwriters, Inc.

## CANCELLATION / NON-RENEWAL CONDITION ENDORSEMENT – ILLINOIS

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/03 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: AEE196887-0103  as Endorsement No.: 4 Issued to: VOA Associates Incorporated

If we cancel this policy, we will mail to the first Named Insured, on behalf of all **Insureds**, written notice of cancellation.  We will provide at least thirty (30) days notice before the effective date of cancellation if we cancel for non-payment of premium.  If we cancel for any other reason we will provide at least sixty (60) days notice before the effective date of cancellation.

If this policy is canceled, we will send the first Named Insured any premium refund due. The refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

We will give you written notice sixty (60) days prior to the expiration of this policy if we do not intend to renew this insurance subject to any state requirements. The notice will include our reason for non-renewal.

If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

AUTHORIZED REPRESENTATIVE

Form No. AEE067 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER      LIUI  582

Liberty Insurance Underwriters, Inc.

## OTHER INSURANCE ENDORSEMENT – ILLINOIS

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/03 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: AEE196887-0103 as Endorsement No.: 5 Issued to: VOA Associates Incorporated

It is agreed that VII. CONDITIONS, H. Other Insurance is deleted and the following substituted:

H.    Other Insurance

If other valid or collectible professional liability insurance is available to any **Insured** for any **Claim** we cover, our obligations are limited as follows:

1.    Primary Insurance

This insurance is primary except when 2. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all other insurance by the method described in 3. below.

2.    Excess Insurance

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, but specific exclusions in the policy shall apply.  When this insurance is excess, we will not defend any claim or suit that any other insurer has a duty to defend.  If no other insurer defends, we will undertake to do so, but we will be entitled to the Insured's rights against all other insurers.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

_____
AUTHORIZED REPRESENTATIVE

Form No. AEE127 (06/2002)

Page 1 of 2

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER      LIUI  583

Liberty Insurance Underwriters, Inc.

OTHER INSURANCE ENDORSEMENT – ILLINOIS

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/03 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: AEE196887-0103  as Endorsement No.: 5 Issued to: VOA Associates Incorporated

> When this insurance is excess over other insurance, we will pay only our share of the amount of the damages and allocated claims expenses, if any, that exceeds the sum of:
>
> a.    the total amount that all such other insurance would pay for the loss in the absence of this insurance; and
>
> b.    the total of all deductible and self-insured amounts under all the other insurance.
>
> We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations.

3.    Method of Sharing

> If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
>
> If any of the other insurance does not permit contribution by equal share, we will contributed by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

AUTHORIZED REPRESENTATIVE

Form No. AEE127 (06/2002)

Page 2 of 2

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER      LIUI  584

Liberty Insurance Underwriters, Inc.

## DEFINITION OF DAMAGES - ILLINOIS

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/03 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number:AEE196887-0103 as Endorsement No.: 6 Issued to: VOA Associates Incorporated

It is agreed V. DEFINITIONS, F. **"Damages"** is deleted and the following substituted:

F.   "Damages" means compensatory monetary amounts for which you may be held legally liable including judgment (inclusive of any post-judgment interest), awards, or settlements negotiated with our approval.  **Damages** do not include any return, withdrawal or reduction of professional fees, profits or other charges, or fines, sanctions, taxes, penalties or awards deemed uninsurable pursuant to any applicable law. **Damages** include punitive or exemplary damages or the multiple portion of any multiplied damage award unless such **Damages** are uninsurable pursuant to applicable law.  Punitive damages are only payable due to vicarious liability in the State of Illinois.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

AUTHORIZED REPRESENTATIVE

Form No. AEE129 (06/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER      LIUI  585

Liberty Insurance Underwriters, Inc.

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 04/16/04 at 12:01 A.M. standard time at the address of the
Named Insured forms a part of Policy Number: AEE196887-0103 as Endorsement No.: 7
Issued to: VOA Associates Incorporated

It is hereby agreed Policy III.  EXTENSION OF COVERAGE, Paragraph A. is amended to
include your participation in Kennedy King Architects, L.L.C., but only for your legal liability
arising out of **Professional Services** performed by Kennedy King Architects, L.L.C.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

AUTHORIZED REPRESENTATIVE

Form No. AEE012 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Liberty Insurance Underwriters, Inc.

SPECIFIC PROJECT EXCESS ENDORSEMENT

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/03 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: AEE196887-0103 as Endorsement No.: 8 Issued to: VOA Associates Incorporated

In consideration of additional premium paid, Declarations, Item 3. Limits of Liability, is amended by adding the following Specific Project Excess Limits:

| Specific Project Excess | Each Claim | Aggregate |
|---|---|---|
| | $3,000,000 | $1,000,000 |

The Specific Project Excess Limits shall apply only in the event that the respective Limits of Liability stated in Declarations, Item 3., with reference to Professional Liability have been exhausted by payments either for the specific named project or for any other covered **Claim**.

Specific Project: Illinois State University Normal
                 Normal, IL - new 117,000 sf building for offices and classrooms

Premium Due:  $

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

_____
AUTHORIZED REPRESENTATIVE

Form No. AEE016 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER          LIUI  587

Liberty Insurance Underwriters, Inc.

## NOTICE OF CANCELLATION TO OTHER PARTIES ENDORSEMENT

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/03 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: AEE196887-0103 as Endorsement No.: 9 Issued to: VOA Associates Incorporated

It is agreed that VII. CONDITIONS. G. Notice of Cancellation, is amended by adding the following provision:

> In the event this Policy is to be canceled by you or by us, we agree to give 30 days prior notice to the party(s) listed below.

> This provision does not apply if cancellation is due to non-payment of premiums to us or to a finance company authorized to cancel this Policy.

> Notice to:

> Brevard County Parks & Recreation Administration
> Attn: Cathy Lively
> 2725 Judge Fran Jamieson Way
> Viera, FL 32940

> Northwestern Memorial Hospital
> Attn: Contract Specialist
> 240 East Ontario Street
> Chicago, IL 60611

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

_____
AUTHORIZED REPRESENTATIVE

Form No. AEE035 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER     LIUI  588

Liberty Insurance Underwriters, Inc.

## NAMED INSURED/MAILING ADDRESS ENDORSEMENT

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 7/01/04 at 12:01 A.M. standard time at the address of the
Named Insured forms a part of Policy Number: <u>AEE196887-0103</u> as Endorsement No.: <u>10</u>
Issued to: <u>VOA Associates Incorporated</u>

by the Company shown above is changed as follows:

It is agreed the Declarations, Item 1., Named Insured is amended as follows:

VOA Associates Incorporated
VOA International Services
VOA Nevada LLC
VOA Associates, Inc. DBA: Lynn Wilson International but only for services performed
subsequent to 9/1/96 and prior to 12/15/97
Vickrey/Ovresat/Awsumb Associates, Inc.
Vickrey/Powell Incorporated
Vickrey/Klein and Kikuchi, Inc.
Vickrey/Wines Associates Incorporated
VOA Associates
VOA/LB S/C LTDA
Logic Facilities Management, but only for professional services performed subsequent to
11/18/00
Vickrey/Ovresat/Awsumb Associates, Incorporated
VOA, Ohio, LLC

It is also agreed that Endorsement No.:  2  is deleted and replaced by this endorsement.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Authorized Agent

Form No. AEE033 (05/2002)

## LIBERTY INSURANCE UNDERWRITERS, INC.

## ARCHITECTS, ENGINEERS & ENVIRONMENTAL SERVICES
## PROFESSIONAL LIABILITY INSURANCE POLICY

This is a **Claims Made and Reported** Policy.  Please Read it Carefully.

All words that are in bold face type have special meaning set forth in Section V., DEFINITIONS, of this Policy.

Throughout this Policy, the words, *you* and *your* refer to the Named Insured shown in the Declarations and any other individual or entity qualifying as an **Insured** under this Policy.  The words *we, us* and *our* refer to the Company providing this insurance as shown in the Declarations.

I.   **INSURING AGREEMENTS**

We will pay on your behalf all sums in excess of the Deductible and up to the Limits of Liability stated in the Declarations which you become legally obligated to pay as **Damages** and **Claims Expenses** resulting from **Claims** first made against you during the **Policy Year**, as a result of a **Wrongful Act** or a **Pollution Incident** provided that:

A.   Such **Wrongful Act** was committed, or **Pollution Incident** took place, on or after the Retroactive Date stated in the Declarations and before the end of the **Policy Year**; and

B.   Prior to the **Knowledge Date** stated in the Declarations of this Policy, none of your directors, officers, principals, partners or insurance managers knew or could have reasonably expected that such **Wrongful Act** or **Pollution Incident** might give rise to a **Claim**.

As a condition precedent to coverage, you shall report all **Claims** in writing to us as soon as practicable, but in no event later than 60 days after expiration or termination of this Policy.

II.   **TERRITORY AND DEFENSE**

A.   The coverage afforded by this Policy applies worldwide.

B.   We have the right and duty to defend any **Claim** made against you.  Defense counsel may be designated by us, or at our option, designated by you with our written consent and subject to our guidelines.

III.   **EXTENSION OF COVERAGE**

Subject to all other terms and conditions, this Policy covers **Damages** and **Claims Expenses** that you become legally obligated to pay as a result of **Claims** arising out of:

A.   Your participation in a joint venture, but only for your legal liability arising out of **Professional Services** performed by the joint venture.

B.   Your unintentional disclosure of confidential or proprietary information.  This Extension of Coverage applies only if your disclosure of such information is made in conjunction with your performance of **Professional Services**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

IV.   SUPPLEMENTAL PAYMENTS

Payments made under this section are our costs, are not subject to the Deductible and are in addition to the Limits of Liability shown in the Declarations.

A.    Free Loss Prevention Assistance

If during the **Policy Year** you report a specific **Circumstance** in accordance with CONDITIONS A of this Policy, we will pay for all costs or expenses we incur, at our sole discretion, until the date a **Claim** is made, as a result of investigating such **Circumstance**.

B.    Disciplinary Proceedings

If a **Disciplinary Proceeding** is commenced against you and reported to us during the **Policy Year**, we will reimburse you for reasonable attorney's fees incurred in responding to such **Disciplinary Proceeding**.  Our maximum payment pursuant to this Supplemental Payment shall be $10,000 for each **Policy Year** regardless of the number of **Disciplinary Proceedings**.  We shall not pay **Damages** pursuant to this provision.

C.    Reimbursement of Expenses

If you are requested by us to attend hearings, depositions and trials relative to the defense of a **Claim**, we shall reimburse your actual loss of earnings and reasonable expenses due to such attendance up to $300 per day.  The maximum payment we will make pursuant to this Supplemental Payment shall be $7,500 for each **Policy Year**.

D.    A.D.A., F.F.H.A and O.S.H.A Expense Reimbursement

If as the result of a **Wrongful Act**, a regulatory or administrative action under the Americans with Disabilities Act of 1990 (A.D.A), the Federal Fair Housing Act (F.F.H.A.) or the Occupational Safety and Health Act (O.S.H.A.) is commenced directly against you and reported to us during the **Policy Year**, we will reimburse you for reasonable attorney's fees incurred in responding to such actions.  The maximum we will pay pursuant to this Supplemental Payment shall be $10,000 for each **Policy Year**.  We shall not pay **Damages** pursuant to this provision.

V.   DEFINITIONS

A.    "**Circumstance**" means an event reported during the **Policy Year** from which you reasonably expect a **Claim** may be made.

B.    "**Claim**" means a demand for money or services, naming you and alleging a **Wrongful Act** or **Pollution Incident**.

C.    "**Claims Expenses**" mean:

1.    Reasonable and necessary fees charged by an attorney(s) designated by us, or designated by you with our written consent, to defend a **Claim**; and

2.    All other fees, costs and charges, resulting from the investigation, adjustment, defense, and appeal of a **Claim**, if incurred by us, or by you with our written consent, including premiums on appeal bonds, provided that we shall not be obligated to apply for or furnish such appeal bonds.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Our determination of **Claims Expenses** shall be conclusive. **Claims Expenses** do not include your or our salary charges, wages or expenses of partners, principals, officers, directors, members or employees.

D.   **"Claims Made and Reported"** coverage applies to **Claims** that are first made against you during a **Policy Year** within the **Policy Period** shown in the Declarations and first reported to us within that **Policy Year**, or within 60 days after the end of that **Policy Year**.

E.   **"Contract"** means any agreement, whether express or implied, in fact or in law, written or oral, including, but not limited to, hold harmless and indemnity clauses, warranties, guarantees, certifications, or penalty clauses;

F.   **"Damages"** means compensatory monetary amounts for which you may be held legally liable including judgement (inclusive of any pre- or post- judgment interest), awards, or settlements negotiated with our approval. **Damages** do not include any return, withdrawal or reduction of professional fees, profits or other charges, or fines, sanctions, taxes, penalties or awards deemed uninsurable pursuant to any applicable law. **Damages** include punitive or exemplary damages or the multiple portion of any multiplied damage award unless such **Damages** are uninsurable pursuant to applicable law.

G.   **"Disciplinary Proceeding"** means any proceeding by a regulatory or disciplinary official, board or agency, to investigate charges of professional misconduct in the performance of **Professional Services**.

H.   **"Insured"** means the following

   1.   The Named Insured designated in Item 1 of the Declarations, or by Endorsement to this Policy;

   2.   Any person who is, was, or hereafter becomes a partner, principal, officer, director, member, or employee of the Named Insured, but only for **Professional Services** performed in such capacity on behalf of the Named Insured;

   3.   Any temporary or leased personnel, but only for **Professional Services** performed while acting under the direct supervision and on behalf of the Named Insured;

   4.   Your estate, heirs, executors, administrators, and legal representatives, in the event of your death, disability, incapacity, insolvency, or bankruptcy, but only to the extent you would have otherwise been provided coverage under this Policy.

   5.   Your lawful spouse solely by reason of spousal status, or a spouse's ownership interest in property or assets that are sought as recovery. This shall not apply to the extent a **Claim** alleges any Wrongful Act by such spouse.

I.   **"Knowledge Date"** means the effective date of the first Architects, Engineers & Environmental Services Professional Liability Insurance Policy issued by us to the Named Insured and continuously renewed and maintained in effect to the inception of this **Policy Period**.

J.   **"Mediation"** means a non-binding process in which a neutral panel or individual assists the parties in reaching their own settlement.

K.   **"Personal Injury"** means false arrest, detention or imprisonment, or malicious prosecution; the publication or utterance of a libel or slander or other defamatory or disparaging material; a publication or utterance in violation of an individual's right of privacy; wrongful entry or eviction; or the invasion of the right of private occupancy.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

L.   **"Policy Period"** means the period specified in Item 2 of the Declarations, or any shorter period that may occur as a result of a cancellation or termination of this Policy.

M.   **"Policy Year"** means each consecutive twelve (12) months beginning on the effective date of the **Policy Period** shown in the Declarations.  However, if a **Policy Year** within a **Policy Period** is modified by an endorsement, then that modified period will be deemed a **Policy Year** for the purpose of determining the aggregate limit and any aggregate deductible.

N.   **"Pollution Incident"** means the actual or alleged discharge, dispersal, seepage, migration, release or escape of "pollutants" into or upon land, the atmosphere or any watercourse or body of water, which results in bodily injury or property damage arising from the performance of **Professional Services**.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.  Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" does not mean heat, smoke, vapor, soot or fumes from a hostile fire or explosion.

O.   **"Professional Services"** means those services that you perform for others in your practice as an architect, engineer, land surveyor, interior designer, landscape architect, construction manager, scientist, technical consultant or as otherwise defined by endorsement to this Policy.

P.   **"Wrongful Act"** means any actual or alleged act, error or omission, or **Personal Injury**, in the performance of **Professional Services** by you or by any entity or person for whom you are legally liable.

## VI.   EXCLUSIONS

This Policy does not apply to and we shall not be liable for **Damages** and/or **Claims Expenses** resulting from any **Claim** or **Circumstance** made against you:

A.   for, based upon, or arising from your actual dishonest, criminal, malicious or fraudulent act or omission; however, this Exclusion shall not apply to **Claims Expenses** or our duty to defend any such **Claim** unless or until a judgment or a final adjudication adverse to you establishes that you committed such dishonest, fraudulent, criminal or malicious act or omission.  This exclusion shall not apply to you if you did not commit, participate in, or have knowledge of any dishonest, fraudulent, criminal or malicious act or omission;

B.   by or on behalf of or with the assistance of:

1.   Any other **Insured**; or

2.   Entity (or its subrogees or assignees) that:

a.   wholly or partly owns, operates, manages or controls you; or

b.   that you operate, manage or control; or

c.   that you have an ownership interest of greater than 49%;

C.   for, based upon, or arising from your actual or alleged discrimination, humiliation, harassment, or misconduct because of race, creed, color, age, gender, sex, sexual

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

preference or orientation, national origin, religion, disability, handicap, or marital status; however, this exclusion shall not apply to Americans with Disabilities Act (ADA) claims;

D.   for, based upon, or arising from liability assumed by you under any **Contract**. This exclusion does not apply if you would have been liable in the absence of that **Contract**.

E.   for, based upon, or arising from actual construction performed by you, your agent, or your subcontractor, including, but not limited to, performing construction, erection, fabrication, installation, assembly, manufacture, demolition, dismantling, drilling, excavation, dredging, remediation, or supplying any materials, parts, or equipment, except for supplying furnishings as a part of interior design services.

This exclusion does not apply to drilling, excavation, or other sampling or testing procedures necessary to perform your **Professional Services** or to a **Pollution Incident** that is caused by construction, remediation or operational activities performed by you, your agent, or your subcontractor;

F.   for, based upon, or arising from any product developed by you for multiple sale or mass distribution, including, but not limited to, computer programs and software;

G.   for, based upon, or arising from your employees' **Personal Injury**, bodily injury, sickness, disease, emotional distress, mental anguish, outrage, humiliation or death arising out of and in the course of his or her employment by you; or any obligation for which you or any carrier as your insurer may be liable under any Workers' Compensation, Unemployment Compensation, Employer's Liability, Disability Benefits or any similar law;

H.   for, based upon, or arising from the actual, alleged, or threatened exposure to nuclear source material, nuclear by-product materials, nuclear waste activities, nuclear incident, or extraordinary nuclear occurrence, as defined in the Atomic Energy Act of 1954 or as amended;

I.   for, based upon, or arising from the failure to maintain, obtain, recommend, or require any form of insurance, suretyship, or bond, either with respect to an **Insured** or others;

J.   for, based upon, or arising from your ownership, rental, or leasing of any real property or personal property. Personal property includes, but is not limited to, automobiles, aircraft, watercraft, and other kinds of conveyances.

## VII. CONDITIONS

A.   Reporting of **Circumstances** That May Give Rise To A **Claim**

If during the **Policy Year** you become aware of a **Circumstance** that may reasonably be expected to give rise to a **Claim** against you, and if you report such **Circumstance** to us during the **Policy Year** in writing, then any **Claim** subsequently arising from such **Circumstance** duly reported in accordance with this paragraph shall be deemed under this Policy to be a **Claim** made during the **Policy Year**. Such written notice to us shall include:

1.   particulars as to the reasons for anticipating such a **Claim**; and

2.   the nature and dates of the alleged **Circumstance**; and

3.   the alleged injuries or **Damages** sustained; and

4.   the names of potential claimants, if available; and

Form No. AEE002 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

5.   the manner in which you first became aware of the specific **Circumstance.**

B.   Notice

In the event of a **Claim,** you shall:

1.   Promptly notify us pursuant to Item 8 of the Declarations in writing of any **Claim**.

2.   Immediately forward to us every demand, notice, summons or other process including institution of arbitration proceedings that you receive.

3.   Provide particulars sufficient to identify you and the claimant and full information with respect to the time, place and circumstances of the event complained of, and the names and addresses of the injured, and of available witnesses to us as soon as practicable.

C.   Cooperation and Settlement

You shall fully cooperate with us or our designee in the defense of a **Circumstance** or **Claim**, including but not limited to assisting us in the conduct of suits or other proceedings, settlement negotiations, and the enforcement of any right of contribution or indemnity against another who may be liable to you.  You shall attend hearings and trials and assist in securing evidence and obtaining the attendance of witnesses. If after a **Circumstance** or **Claim** is made against you and reported to us, and you have the right under any **Contract** to either reject or demand arbitration or other alternative dispute resolution process, you shall only do so with our written consent.

We will not settle any **Claim** without the written consent of the first Named Insured shown in Item 1 of the Declarations.  If, however, consent to any settlement recommended by us is withheld and you elect to contest or to continue to contest that **Claim,** then our liability for that **Claim** will not exceed the amount for which that **Claim** could have been settled plus **Claims Expenses** up to the date consent was withheld.

D.   Limits of Liability

1.   The Limits of Liability, shown in Item 3 of the Declarations, and described below, are the most we will pay regardless of the number of **Insureds, Claims**, individuals or entities making **Claims**.

2.   The Limits of Liability shown in Item 3 of the Declarations, will apply as follows:

a.   The limit for each **Claim** shown in Item 3A of the Declarations, is the most we will pay for the sum of all **Damages** and **Claims Expenses** arising out of any single **Claim**.

b.   The aggregate limit shown in Item 3B of the Declarations is the most we will pay for the sum of all **Damages** and **Claims Expenses** for all **Claims Made and Reported** during each **Policy Year**.

The payment of **Damages** and / or **Claims Expenses** will reduce the Limits of Liability available to pay **Claims**.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

3.  Two or more **Claims** alleging, based upon, arising out of or attributable to the same or related **Wrongful Act(s)** or **Pollution Incident(s)**, shall be considered and treated as a single **Claim** regardless of whether made against one or more than one **Insured**.  This Policy shall only apply if the first or earliest **Claim** arising from such **Wrongful Act(s)** or **Pollution Incident(s)** is made during the **Policy Year**.

All **Claims** arising out of the same or related **Wrongful Act(s)** or **Pollution Incident(s)** shall be considered first made within the **Policy Year** in which the earliest of such **Claims** was first made, or deemed to be made pursuant to CONDITIONS A of this Policy, and all such **Claims** shall be subject to one such Limit of Liability as set forth in Item 3A of the Declarations.

4.  The Limits of Liability shown in Item 3A of the Declarations apply in excess of the Deductible described in E below.

E.  Deductible

As stated in Item 4 of the Declarations, you must pay the Deductible obligation for **Damages** and **Claims Expenses** before we are obligated to pay.  You must pay the Deductible obligation upon written request.  We will determine the reasonableness of **Claims Expenses** that qualify in satisfaction of the Deductible.

The Deductible applies separately to each **Claim** whether this insurance is primary or excess.  The Deductible for each **Claim** shown in Item 4A of the Declarations is the most you must pay as a Deductible of all **Damages** and **Claims Expenses** arising out of any single **Claim**.  The Aggregate Deductible shown in Item 4B of the Declarations is the most you must pay as a Deductible for the sum of all **Damages** and **Claims Expenses** for all **Claims Made and Reported** during each **Policy Year**.

F.  Mediation of Claims Deductible Credit

If you and the Company agree to use **Mediation** and the **Claim** is fully and finally resolved by **Mediation**, the Named Insured's Deductible obligation will be reduced by 50% subject to a maximum reduction of $15,000.

G.  Notice of Cancellation

This Policy may be canceled by the first Named Insured identified in the Declarations, by surrender of this Policy to us or our authorized representative or by giving us written notice stating when thereafter such cancellation shall be effective.

We will not cancel this Policy except for non-payment of premium, fraud or material misrepresentation in procuring this insurance or in relation to any **Claim**, or changes in law affecting this Policy.  If we cancel this Policy, we will mail or deliver to the first Named Insured, on behalf of all **Insureds**, written notice of cancellation.  We will provide at least ten (10) days notice before the effective date of cancellation if we cancel for non-payment of premium.  If we cancel for any other reason we will provide at least sixty (60) days notice before the effective date of cancellation.

If this Policy is canceled, we will send the first Named Insured any premium refund due.  The refund will be pro rata.  The cancellation will be effective even if we have not made or offered a refund.

Form No. AEE002 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 37

LIUI 596

We will give you written notice sixty (60) days prior to the expiration of this Policy if we do not intend to renew this insurance subject to any state requirements. The notice will include our reason for non-renewal.

If notice is mailed, proof of mailing will be sufficient proof of notice.

H.    Other Insurance

If there is other collectible insurance, including but not limited to project specific insurance, that applies to a **Claim** covered by this Policy, the other insurance must pay first and this Policy is excess over the other insurance. This Policy applies to the amount of the **Claim** that exceeds the available limits of liability and any deductibles or retention amounts of the other insurance.

I.    Subrogation

In the event of any payment under this Policy, we shall be subrogated to all of your rights of recovery against any person or organization, and you shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. You shall do nothing after a **Claim** is made to prejudice such rights. We hereby waive our subrogation rights against a client of yours to the extent that you had, prior to a **Claim**, or **Circumstance**, entered into a written agreement to waive such rights.

Any amount recovered upon the exercise of such rights of subrogation shall first be applied to the repayment of expenses incurred by us toward subrogation, second toward reimbursement of any payments made by you pursuant to your Deductible, and any remaining balance shall be ours.

J.    Alteration and Assignment

No change in, modification of, or assignment of interest under this Policy, shall be effective except when made by written Endorsement or signed by our authorized representative.

K.    First Named Insured As Sole Agent

The first Named Insured shall be the sole agent of all **Insureds** hereunder for the purpose of effecting or accepting any amendments to or cancellation of this Policy, for the purpose of receiving such notices as may be required by law and/or any provision(s) of this Policy, for the completing of any Application and the making of any representations, for the payment of any premium and the receipt of any return premium that may become due under this Policy, for the payment of any Deductible obligations that may become due under this Policy, and the exercising or declining to exercise any right under this Policy.

L.    You or your estate's bankruptcy or insolvency will not relieve us of our obligations under this Policy.

M.    Legal Action Against Us

No individual or entity has a right under this Policy to join us as a party or otherwise bring us into a suit seeking **Damages** from you, or to sue us unless all of the terms of this Policy have been met.

Form No. AEE002 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

LRU 597

N.     Liberalization

If we file with the appropriate regulator, general revisions to the terms and conditions of this policy form to provide more coverage without an additional premium charge, then your Policy will automatically provide this additional coverage as of the date the filed revision is effective in the state shown in the mailing address of the first Named Insured.

IN WITNESS WHEREOF, we have caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned on the Declarations page by our duly authorized representative.

President

Secretary

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER          LIU1  598

EX. 3



Liberty
Insurance
Underwriters Inc.

...THE CLAIMS MADE AGAINST YOU POLICY.   COVERAGE
APPLIES TO CLAIMS THAT _____ FIRST MADE AGAINST YOU DURING A POLICY
YEAR WITHIN THE POLICY PERIOD, AND FIRST REPORTED TO US WITHIN
THAT POLICY YEAR, OR WITHIN SIXTY (60) DAYS AFTER EXPIRATION OR
TERMINATION OF THIS POLICY FOR A WRONGFUL ACT COMMITTED ON OR
AFTER THE RETROACTIVE DATE, IF APPLICABLE, AND BEFORE THE END OF
THE POLICY YEAR.  PLEASE READ THE POLICY CAREFULLY.

## Architects, Engineers & Environmental Services
## Professional Liability Insurance Policy

| Company | Liberty Insurance Underwriters Inc. 55 Water Street, 18th Floor New York, NY 10041 | Producer | Hobbs Group/AVA Insurance Agency, Inc. 425 North Martingale Road, Suite 1100 Schaumburg, IL 60173 |
|---|---|---|---|
| Policy No. | AEE196887-0104 | Renewal of | AEE196887-0103 |

## DECLARATIONS

| Item 1. | Named Insured and Mailing Address: VOA Associates Incorporated 224 South Michigan Avenue Chicago, IL 60604 |
|---|---|
| Item 2. | **Policy Period:** 12/05/04　　　to　　　　　12/05/05 (at 12:01 AM local time at the address of the Named Insured as stated in Item 1 above) |
| Item 3. | **Limits of Liability** (inclusive of **Claims Expenses**): A.　$2,000,000　　Each **Claim** B.　$4,000,000　　**Policy Year** Aggregate |
| Item 4. | **Deductible** (inclusive of **Claims Expenses**): A. $200,000　　Each **Claim** B. Not Applicable　**Policy Year** Aggregate |
| Item 5. | **Premium:** |
| Item 6. | **Retroactive Date** (if applicable):01/01/69 |
| Item 7. | **Knowledge Date:** 12/05/03 |
| Item 8. | **Claims** and/or **Underwriting Notification:** Liberty International Underwriters, 55 Water Street, 18th Floor, New York, NY  10041 Attn:  A&E Claims Department Telephone: (800) 677 9163  Fax: (212) 208-4290 |
| Item 9. | Endorsements attached at Policy effective date: |

AEE001 (05/2002), AEE002 (05/2002), AEE008 (05/2002), AEE033 (05/2002), AEE066 (05/2002),
AEE067 (05/2002), AEE127 (06/2002), AEE129 (06/2002), AEE035 (05/2002), AEE016 (05/2002),
AEE012 (05/2002), AEE024 (05/2002)

*Coverage for Acts of Terrorism- See attached TRIA FORM C

This Declarations page together with the Architects, Engineers & Environmental Services Professional Liability Insurance Policy shall
constitute the contract between the Named Insured and the Company.

DATE:　　　4/20/05

　　　Mo./Day/Yr.

AUTHORIZED REPRESENTATIVE

Form No. AEE001 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER　　　LIUI  599



VOA Associates Incorporated
224 South Michigan Avenue
Chicago, IL 60604

Policy No.: AEE196887-0104                    Effective: 12/05/04

THIS NOTICE CONTAINS IMPORTANT INFORMATION ABOUT
THE TERRORISM RISK INSURANCE ACT OF 2002. PLEASE READ IT
CAREFULLY.

THE TERRORISM RISK INSURANCE ACT OF 2002

On November 26, 2002, President Bush signed into law the Terrorism Risk Insurance Act of
2002. The Act establishes a temporary program to spread the risk of catastrophic losses
from an act of terrorism between insurers and the federal government. The stated purpose
of the Act is "to protect consumers by addressing market disruptions and ensure the
continued widespread availability and affordability of property and casualty insurance for
terrorism risk."

The Act requires insurers to pay losses from an act of terrorism up to an amount equal to a
percentage of its direct earned premium. This amount is called the "insurer deductible." If
an individual insurer's losses exceed this amount, the federal "Terrorism Insurance Program"
will reimburse the insurer for 90% of losses paid in excess of the insurer deductible. An
insurer that has met its insurer deductible is not liable for any portion of losses in excess of
$100 billion per year. Similarly, the federal government is not liable for any losses covered
by the Act that exceed this amount.

MANDATORY OFFER OF COVERAGE FOR AN ACT OF TERRORISM AND
DISCLOSURE OF PREMIUM

Under the Act, insurers must make coverage available for any loss that results from an act of
terrorism AND that is otherwise covered under your policy.

The Act also requires insurers to provide notice to policyholders of the premium charge for
losses that result from an act of terrorism and are therefore covered under the Federal
Insurance Program.

An "act of terrorism" means:

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER        LIUI 600

[A]ny act that is certified by the Secretary [of the Treasury], in concurrence with the Secretary of State, and the Attorney General of the United States

(i) to be an act of terrorism;

(ii) to be a violent act or an act that is dangerous to –

    (I) human life;

    (II) property; or

    (III) infrastructure;

(iii) to have resulted in damage within the United States, or outside of the United States in the case of –

    (I) an air carrier (as defined in section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States); or

    (II) the premises of a United States mission; and

(iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

## PREMIUM DISCLOSURE STATEMENT

Your policy does not contain an exclusion for losses resulting from an act of terrorism. Coverage for such losses is still subject to all of the terms, definitions, exclusions and conditions in your policy, as well as the terms, definitions, exclusions and conditions of the primary and underlying excess policies.

THE PREMIUM CHARGE FOR LOSSES ARISING FROM AN ACT OF TERRORISM IS $0.

THE SUMMARY OF THE ACT AND THE COVERAGE UNDER YOUR POLICY CONTAINED IN THIS NOTICE IS NECESSARILY GENERAL IN NATURE. YOUR POLICY CONTAINS SPECIFIC TERMS, DEFINITIONS, EXCLUSIONS AND CONDITIONS. IN CASE OF ANY CONFLICT, YOUR POLICY LANGUAGE WILL CONTROL THE RESOLUTION OF ALL COVERAGE QUESTIONS. PLEASE READ YOUR POLICY CAREFULLY.

TRIA FORM C (ed. 1/03/03)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER     LIUI 601

Liberty Insurance Underwriters, Inc.

## EXCLUDED ENTITIES ENDORSEMENT

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/04 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: <u>AEE196887-0104</u> as Endorsement No.:   <u>1</u>
Issued to: <u>VOA Associates Incorporated</u>


It is agreed VI. EXCLUSIONS, is amended by adding the following:

     This Policy does not apply to and we shall not be liable for **Damages** and/or **Claims Expenses** resulting from any **Claim** or **Circumstance** made against you for, based upon, or arising from **Professional Services** performed by the following entities:


     Studio A
     Marcos Leite Bastos, Sao Paulo, Brazil


Accepted by:_____ Date: _____
          Authorized Representative of the Named Insured


ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

_____
Authorized Agent

Form No. AEE008 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Liberty Insurance Underwriters, Inc.

## NAMED INSURED/MAILING ADDRESS ENDORSEMENT

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/04 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: <u>AEE196887-0104</u> as Endorsement No.: <u>2</u> Issued to: <u>VOA Associates Incorporated</u>

by the Company shown above is changed as follows:

It is agreed the Declarations, Item 1., is amended as follows:

Named Insured to include:

VOA Associates Incorporated
VOA International Services
VOA Nevada LLC
VOA Associates, Inc. DBA: Lynn Wilson International but only for services performed subsequent to 9/1/96 and prior to 12/15/97
Vickrey/Ovresat/Awsumb Associates, Inc.
Vickrey/Powell Incorporated
Vickrey/Klein and Kikuchi, Inc.
Vickrey/Wines Associates Incorporated
VOA Associates
VOA/LB S/C LTDA
Logic Facilities Management, but only for professional services performed subsequent to 11/18/00
Vickrey/Ovresat/Awsumb Associates, Incorporated
VOA, Ohio, LLC

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

_____
Authorized Agent

Form No. AEE033 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER      LIUI  603

Liberty Insurance Underwriters, Inc.

### EXTENDED REPORTING PERIOD OPTION ENDORSEMENT – ILLINOIS

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/04 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: AEE196887-0104 as Endorsement No.:    3

Issued to: VOA Associates Incorporated

In the event of "termination" of your Policy, you may elect one twelve (12) month Extended Reporting Period subject to the following provisions:

1. Coverage afforded under this Extended Reporting Period option will apply to **Claims** resulting from your **Professional Services** performed prior to termination of this Policy, provided the **Claim** is made against you and reported to us during the Extended Reporting Period.

2. If you elect this Extended Reporting Period option, you must elect this option in writing within thirty (30) days of the termination of this Policy or within fifteen (15) days of our coverage offer, whichever is latest, and pay the additional premium at that time.

3. An Endorsement will be issued showing the term of the Extended Reporting Period and the amount of premium.

4. The premium for the Extended Reporting Period Option will be calculated according to the Company's rating plan in effect at the time this Policy was issued.  The premium for this option will be 200% of the last annual Policy premium.

5. This option is not available if you obtain other insurance to cover the claims which would otherwise be covered by this option.

6. Upon electing this option, the premium is fully earned by us and the Extended Reporting Period cannot be canceled.

 "Termination" includes cancellation, non-renewal, expiration, or reduction in coverage of the Policy.

<u>IF YOU DO NOT ELECT THIS OPTION,
YOU WILL NOT BE INSURED BY US AFTER THE TERMINATION OF THIS POLICY.</u>

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

_____
Authorized Agent

Form No. AEE066 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER      LIUI  604

Liberty Insurance Underwriters, Inc.

## CANCELLATION / NON-RENEWAL CONDITION ENDORSEMENT – ILLINOIS

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/04 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: AEE196887-0104 as Endorsement No.:4

Issued to: VOA Associates Incorporated

It is agreed that VII. CONDITIONS, G. Notice of Cancellation, is deleted and the following substituted:

G.      Notice of Cancellation

This Policy may be canceled by the first Named Insured, identified in the Declarations, by surrender of this Policy to us or our authorized representative or by giving us written notice stating when thereafter such cancellation shall be effective.

After this insurance has been in effect for sixty (60) days or more, we will not cancel this Policy except for one or more of the following reasons:

(a) Nonpayment of premium;

(b) The Policy was obtained through a material misrepresentation;

(b) Any insured violated any of the terms and conditions of the Policy;

(c) The risk originally accepted has measurably increased;

(d) Certification to the Director of the loss of reinsurance by the insurer which provided coverage to the insurer for all or a substantial part of the underlying risk insured; or

(e) A determination by the Director that the continuation of the Policy could place the insurer in violation of the insurance laws of this State.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Authorized Agent

Form No. AEE067 (05/2002)                                                          Page 1 of 2

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER      LIUI  605

Liberty Insurance Underwriters, Inc.

CANCELLATION / NON-RENEWAL CONDITION ENDORSEMENT – ILLINOIS

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/04 at 12:01 A.M. standard time at the address of the
Named Insured forms a part of Policy Number: AEE196887-0104 as Endorsement No.:     4
Issued to: VOA Associates Incorporated

If we cancel this policy, we will mail to the first Named Insured, on behalf of all
**Insureds**, written notice of cancellation.  We will provide at least thirty (30) days
notice before the effective date of cancellation if we cancel for non-payment of
premium.  If we cancel for any other reason we will provide at least sixty (60)
days notice before the effective date of cancellation.

If this policy is canceled, we will send the first Named Insured any premium
refund due. The refund will be pro rata. The cancellation will be effective even if
we have not made or offered a refund.

We will give you written notice sixty (60) days prior to the expiration of this policy
if we do not intend to renew this insurance subject to any state requirements. The
notice will include our reason for non-renewal.

If notice is mailed, proof of mailing will be sufficient proof of notice.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Authorized Agent

Form No. AEE067 (05/2002)                                             Page 2 of 2

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER      LIUI  606

Liberty Insurance Underwriters, Inc.

## OTHER INSURANCE ENDORSEMENT  - ILLINOIS

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/04 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: AEE196887-0104 as Endorsement No.:5 Issued to: VOA Associates Incorporated

It is agreed that VII. Conditions, H. Other Insurance is deleted and the following substituted:

H.    Other Insurance

If other valid or collectible professional liability insurance is available to any **Insured** for any **Claim** we cover, our obligations are limited as follows:

1.    Primary Insurance

This insurance is primary except when 2. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all other insurance by the method described in 3 below.

2.    Excess Insurance

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, but specific exclusions in the policy shall apply.  When this insurance is excess, we will not defend any claim or suit that any other insurer has a duty to defend.  If no other insurer defends, we will undertake to do so, but we will be entitled to the Insured's rights against all other insurers.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Authorized Agent

Form No. AEE127 (06/2002)

Page 1 of 2

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER       LIUI  607

Liberty Insurance Underwriters, Inc.

## OTHER INSURANCE ENDORSEMENT - ILLINOIS

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/04 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: <u>AEE196887-0104</u> as Endorsement No.:   <u>5</u>

Issued to: <u>VOA Associates Incorporated</u>

When this insurance is excess over other insurance, we will pay only our share of the amount of the damages and allocated claims expenses, if any, that exceeds the sum of:

a.   the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

b.   the total of all deductible and self-insured amounts under all the other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations.

3.   Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal share, we will contributed by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

_____
Authorized Agent

Form No. AEE127 (06/2002)                                                Page 2 of 2

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER        LIUI  608

Liberty Insurance Underwriters, Inc.

DEFINITION OF DAMAGES - ILLINOIS

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/04 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: AEE196887-0104 as Endorsement No.:6 Issued to: VOA Associates Incorporated


It is agreed V. DEFINITIONS, F. **"Damages"** is deleted and the following substituted:

F.   **"Damages"** means compensatory monetary amounts for which you may be held legally liable including judgment (inclusive of any post-judgment interest), awards, or settlements negotiated with our approval.  **Damages** do not include any return, withdrawal or reduction of professional fees, profits or other charges, or fines, sanctions, taxes, penalties or awards deemed uninsurable pursuant to any applicable law. **Damages** include punitive or exemplary damages or the multiple portion of any multiplied damage award unless such **Damages** are uninsurable pursuant to applicable law.  Punitive damages are only payable due to vicarious liability in the State of Illinois.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

_____
Authorized Agent

Form No. AEE129 (06/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER        LIUI  609

Liberty Insurance Underwriters, Inc.

## SPECIFIC PROJECT EXCESS ENDORSEMENT

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/04 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: <u>AEE196887-0104</u> as Endorsement No.:   <u>7</u>
Issued to: <u>VOA Associates Incorporated</u>

In consideration of additional premium paid, it is agreed that Declarations, Item 3. Limits of Liability, is amended by adding the following Specific Project Excess Limits:

| Specific Project Excess | Each Claim | Aggregate |
|---|---|---|
| | $3,000,000 | $1,000,000 |

The Specific Project Excess Limits shall apply only in the event that the respective Limits of Liability stated in Declarations, Item 3., with reference to Professional Liability have been exhausted by payments either for the specific named project or for any other covered **Claim**.

Specific Project:  Illinois State University Normal
                   Normal, IL – new 117,000 sf building for offices and classrooms

Premium Due:

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

_____
Authorized Agent

Form No. AEE016 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER        LIUI  610

Liberty Insurance Underwriters, Inc.

## NOTICE OF CANCELLATION TO OTHER PARTIES ENDORSEMENT

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/04 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: <u>AEE196887-0104</u> as Endorsement No.:   <u>8</u>

Issued to: <u>VOA Associates Incorporated</u>

It is agreed that VII. CONDITIONS. G. Notice of Cancellation, is amended by adding the following provision:

> In the event this Policy is to be canceled by you or by us, we agree to give 30 days prior notice to the party(s) listed below.

> This provision does not apply if cancellation is due to non-payment of premiums to us or to a finance company authorized to cancel this Policy.

> Notice to:

> Brevard County Parks & Recreation Administration
> Attn: Cathy Lively
> 2725 Judge Fran Jamieson Way
> Viera, FL 32940

> Northwestern Memorial Hospital
> Attn: Contract Specialist
> 240 East Ontario Street
> Chicago, IL 60611

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

_____
Authorized Agent

Form No. AEE035 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER          LIUI 611

Liberty Insurance Underwriters, Inc.


Amendatory Endorsement


This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/04 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: <u>AEE196887-0104</u> as Endorsement No.:     <u>9</u>

Issued to: <u>VOA Associates Incorporated</u>


It is agreed that except for the project designated below, if there is other collectible insurance, including but not limited to project specific insurance, that applies to a **Claim** covered by this Policy, the other insurance must pay first and this Policy is excess over the other insurance. The Policy applies to the amount of the **Claim** that exceeds the available limits of liability and any deductibles or retention amounts of the other insurance.

In the event of a **Claim** on the project designated below, this Policy will be primary.


> Project:     McCormick Place


ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Authorized Agent

Form No. AEE012 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER     LIUI  612

Liberty Insurance Underwriters, Inc.

OTHER INSURANCE

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 12/05/04 at 12:01 A.M. standard time at the address of the
Named Insured forms a part of Policy Number: <u>AEE196887-0104</u> as Endorsement No.:      <u>10</u>
Issued to: <u>VOA Associates Incorporated</u>

It is agreed VI. EXCLUSIONS, is amended by adding the following:

> This Policy does not apply to and we shall not be liable for **Damages** and/or **Claims Expenses** resulting from any **Claim** or **Circumstance** made against you for which you are an insured on any other liability insurance policy that covers professional liability, including any project policy. This exclusion applies even if the **Claim** is not covered by that policy for any reason, including an exclusion or reduction or exhaustion of the limits of liability.

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

_____
Authorized Agent

Form No. AEE024 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER      LIUI 613

Liberty Insurance Underwriters, Inc.

## NOTICE OF CANCELLATION TO OTHER PARTIES ENDORSEMENT

This Endorsement changes the Policy.  Please read it carefully.

This Endorsement, effective on 01/11/05 at 12:01 A.M. standard time at the address of the Named Insured forms a part of Policy Number: AEE196887-0104 as Endorsement No.:    11
Issued to: VOA Associates Incorporated

It is agreed that VII. CONDITIONS. G. Notice of Cancellation, is amended by adding the following provision:

In the event this Policy is to be canceled by you or by us, we agree to give 30 days prior notice to the party(s) listed below.

This provision does not apply if cancellation is due to non-payment of premiums to us or to a finance company authorized to cancel this Policy.

Notice to:

Cadell Construction
Ken Sexton
P.O. Box 210099
Montgomery, AL 36121-0099

US Army Corps of Engineers
Ken Sexton
P.O. Box 889
Savannah, GA 31402-0889

ALL OTHER TERMS & CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Countersignature:

Authorized Agent

Form No. AEE035 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER        LIUI  614

## LIBERTY INSURANCE UNDERWRITERS, INC.

## ARCHITECTS, ENGINEERS & ENVIRONMENTAL SERVICES PROFESSIONAL LIABILITY INSURANCE POLICY

This is a **Claims Made and Reported** Policy.  Please Read it Carefully.

All words that are in bold face type have special meaning set forth in Section V., DEFINITIONS, of this Policy.

Throughout this Policy, the words, *you* and *your* refer to the Named Insured shown in the Declarations and any other individual or entity qualifying as an **Insured** under this Policy.  The words *we, us* and *our* refer to the Company providing this insurance as shown in the Declarations.

I.   **INSURING AGREEMENTS**

We will pay on your behalf all sums in excess of the Deductible and up to the Limits of Liability stated in the Declarations which you become legally obligated to pay as **Damages** and **Claims Expenses** resulting from **Claims** first made against you during the **Policy Year**, as a result of a **Wrongful Act** or a **Pollution Incident** provided that:

A.   Such **Wrongful Act** was committed, or **Pollution Incident** took place, on or after the Retroactive Date stated in the Declarations and before the end of the **Policy Year**; and

B.   Prior to the **Knowledge Date** stated in the Declarations of this Policy, none of your directors, officers, principals, partners or insurance managers knew or could have reasonably expected that such **Wrongful Act** or **Pollution Incident** might give rise to a **Claim**.

As a condition precedent to coverage, you shall report all **Claims** in writing to us as soon as practicable, but in no event later than 60 days after expiration or termination of this Policy.

II.   **TERRITORY AND DEFENSE**

A.   The coverage afforded by this Policy applies worldwide.

B.   We have the right and duty to defend any **Claim** made against you.  Defense counsel may be designated by us, or at our option, designated by you with our written consent and subject to our guidelines.

III.   **EXTENSION OF COVERAGE**

Subject to all other terms and conditions, this Policy covers **Damages** and **Claims Expenses** that you become legally obligated to pay as a result of **Claims** arising out of:

A.   Your participation in a joint venture, but only for your legal liability arising out of **Professional Services** performed by the joint venture.

B.   Your unintentional disclosure of confidential or proprietary information.  This Extension of Coverage applies only if your disclosure of such information is made in conjunction with your performance of **Professional Services**.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER   LIUI 615

IV .   SUPPLEMENTAL PAYMENTS

Payments made under this section are our costs, are not subject to the Deductible and are in addition to the Limits of Liability shown in the Declarations.

A.      Free Loss Prevention Assistance

If during the **Policy Year** you report a specific **Circumstance** in accordance with CONDITIONS A of this Policy, we will pay for all costs or expenses we incur, at our sole discretion, until the date a **Claim** is made, as a result of investigating such **Circumstance**.

B.      Disciplinary Proceedings

If a **Disciplinary Proceeding** is commenced against you and reported to us during the **Policy Year**, we will reimburse you for reasonable attorney's fees incurred in responding to such **Disciplinary Proceeding**. Our maximum payment pursuant to this Supplemental Payment shall be $10,000 for each **Policy Year** regardless of the number of **Disciplinary Proceedings**. We shall not pay **Damages** pursuant to this provision.

C.      Reimbursement of Expenses

If you are requested by us to attend hearings, depositions and trials relative to the defense of a **Claim**, we shall reimburse your actual loss of earnings and reasonable expenses due to such attendance up to $300 per day. The maximum payment we will make pursuant to this Supplemental Payment shall be $7,500 for each **Policy Year**.

D.      A.D.A., F.F.H.A and O.S.H.A Expense Reimbursement

If as the result of a **Wrongful Act**, a regulatory or administrative action under the Americans with Disabilities Act of 1990 (A.D.A), the Federal Fair Housing Act (F.F.H.A.) or the Occupational Safety and Health Act (O.S.H.A.) is commenced directly against you and reported to us during the **Policy Year**, we will reimburse you for reasonable attorney's fees incurred in responding to such actions. The maximum we will pay pursuant to this Supplemental Payment shall be $10,000 for each **Policy Year**. We shall not pay **Damages** pursuant to this provision.

V.      DEFINITIONS

A.      "**Circumstance**" means an event reported during the **Policy Year** from which you reasonably expect a **Claim** may be made.

B.      "**Claim**" means a demand for money or services, naming you and alleging a **Wrongful Act** or **Pollution Incident**.

C.      "**Claims Expenses**" mean:

1.    Reasonable and necessary fees charged by an attorney(s) designated by us, or designated by you with our written consent, to defend a **Claim**; and

2.    All other fees, costs and charges, resulting from the investigation, adjustment, defense, and appeal of a **Claim**, if incurred by us, or by you with our written consent, including premiums on appeal bonds, provided that we shall not be obligated to apply for or furnish such appeal bonds.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER     LIUI 616

Our determination of **Claims Expenses** shall be conclusive.  **Claims Expenses** do not include your or our salary charges, wages or expenses of partners, principals, officers, directors, members or employees.

D.    **"Claims Made and Reported"** coverage applies to **Claims** that are first made against you during a **Policy Year** within the **Policy Period** shown in the Declarations and first reported to us within that **Policy Year**, or within 60 days after the end of that **Policy Year**.

E.    **"Contract"** means any agreement, whether express or implied, in fact or in law, written or oral, including, but not limited to, hold harmless and indemnity clauses, warranties, guarantees, certifications, or penalty clauses;

F.    **"Damages"** means compensatory monetary amounts for which you may be held legally liable including judgement (inclusive of any pre- or post- judgment interest), awards, or settlements negotiated with our approval.  **Damages** do not include any return, withdrawal or reduction of professional fees, profits or other charges, or fines, sanctions, taxes, penalties or awards deemed uninsurable pursuant to any applicable law. **Damages** include punitive or exemplary damages or the multiple portion of any multiplied damage award unless such **Damages** are uninsurable pursuant to applicable law.

G.    **"Disciplinary Proceeding"** means any proceeding by a regulatory or disciplinary official, board or agency, to investigate charges of professional misconduct in the performance of **Professional Services**.

H.    **"Insured"** means the following

   1.   The Named Insured designated in Item 1 of the Declarations, or by Endorsement to this Policy;

   2.   Any person who is, was, or hereafter becomes a partner, principal, officer, director, member, or employee of the Named Insured, but only for **Professional Services** performed in such capacity on behalf of the Named Insured;

   3.   Any temporary or leased personnel, but only for **Professional Services** performed while acting under the direct supervision and on behalf of the Named Insured;

   4.   Your estate, heirs, executors, administrators, and legal representatives, in the event of your death, disability, incapacity, insolvency, or bankruptcy, but only to the extent you would have otherwise been provided coverage under this Policy.

   5.   Your lawful spouse solely by reason of spousal status, or a spouse's ownership interest in property or assets that are sought as recovery. This shall not apply to the extent a **Claim** alleges any Wrongful Act by such spouse.

I.    **"Knowledge Date"** means the effective date of the first Architects, Engineers & Environmental Services Professional Liability Insurance Policy issued by us to the Named Insured and continuously renewed and maintained in effect to the inception of this **Policy Period**.

J.    **"Mediation"** means a non-binding process in which a neutral panel or individual assists the parties in reaching their own settlement.

K.    **"Personal Injury"** means false arrest, detention or imprisonment, or malicious prosecution; the publication or utterance of a libel or slander or other defamatory or disparaging material; a publication or utterance in violation of an individual's right of privacy; wrongful entry or eviction; or the invasion of the right of private occupancy.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER     LIUI  617

L.  "**Policy Period**" means the period specified in Item 2 of the Declarations, or any shorter period that may occur as a result of a cancellation or termination of this Policy.

M.  "**Policy Year**" means each consecutive twelve (12) months beginning on the effective date of the **Policy Period** shown in the Declarations. However, if a **Policy Year** within a **Policy Period** is modified by an endorsement, then that modified period will be deemed a **Policy Year** for the purpose of determining the aggregate limit and any aggregate deductible.

N.  "**Pollution Incident**" means the actual or alleged discharge, dispersal, seepage, migration, release or escape of "pollutants" into or upon land, the atmosphere or any watercourse or body of water, which results in bodily injury or property damage arising from the performance of **Professional Services**.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Waste includes materials to be recycled, reconditioned or reclaimed. "Pollutants" does not mean heat, smoke, vapor, soot or fumes from a hostile fire or explosion.

O.  "**Professional Services**" means those services that you perform for others in your practice as an architect, engineer, land surveyor, interior designer, landscape architect, construction manager, scientist, technical consultant or as otherwise defined by endorsement to this Policy.

P.  "**Wrongful Act**" means any actual or alleged act, error or omission, or **Personal Injury**, in the performance of **Professional Services** by you or by any entity or person for whom you are legally liable.

## VI.   EXCLUSIONS

This Policy does not apply to and we shall not be liable for **Damages** and/or **Claims Expenses** resulting from any **Claim** or **Circumstance** made against you:

A.  for, based upon, or arising from your actual dishonest, criminal, malicious or fraudulent act or omission; however, this Exclusion shall not apply to **Claims Expenses** or our duty to defend any such **Claim** unless or until a judgment or a final adjudication adverse to you establishes that you committed such dishonest, fraudulent, criminal or malicious act or omission. This exclusion shall not apply to you if you did not commit, participate in, or have knowledge of any dishonest, fraudulent, criminal or malicious act or omission;

B.  by or on behalf of or with the assistance of:

1.  Any other **Insured**; or

2.  Entity (or its subrogees or assignees) that:

   a.  wholly or partly owns, operates, manages or controls you; or

   b.  that you operate, manage or control; or

   c.  that you have an ownership interest of greater than 49%;

C.  for, based upon, or arising from your actual or alleged discrimination, humiliation, harassment, or misconduct because of race, creed, color, age, gender, sex, sexual

preference or orientation, national origin, religion, disability, handicap, or marital status; however, this exclusion shall not apply to Americans with Disabilities Act (ADA) claims;

D.   for, based upon, or arising from liability assumed by you under any **Contract**. This exclusion does not apply if you would have been liable in the absence of that **Contract**.

E.   for, based upon, or arising from actual construction performed by you, your agent, or your subcontractor, including, but not limited to, performing construction, erection, fabrication, installation, assembly, manufacture, demolition, dismantling, drilling, excavation, dredging, remediation, or supplying any materials, parts, or equipment, except for supplying furnishings as a part of interior design services.

This exclusion does not apply to drilling, excavation, or other sampling or testing procedures necessary to perform your **Professional Services** or to a **Pollution Incident** that is caused by construction, remediation or operational activities performed by you, your agent, or your subcontractor;

F.   for, based upon, or arising from any product developed by you for multiple sale or mass distribution, including, but not limited to, computer programs and software;

G.   for, based upon, or arising from your employees' **Personal Injury**, bodily injury, sickness, disease, emotional distress, mental anguish, outrage, humiliation or death arising out of and in the course of his or her employment by you; or any obligation for which you or any carrier as your insurer may be liable under any Workers' Compensation, Unemployment Compensation, Employer's Liability, Disability Benefits or any similar law;

H.   for, based upon, or arising from the actual, alleged, or threatened exposure to nuclear source material, nuclear by-product materials, nuclear waste activities, nuclear incident, or extraordinary nuclear occurrence, as defined in the Atomic Energy Act of 1954 or as amended;

I.   for, based upon, or arising from the failure to maintain, obtain, recommend, or require any form of insurance, suretyship, or bond, either with respect to an **Insured** or others;

J.   for, based upon, or arising from your ownership, rental, or leasing of any real property or personal property. Personal property includes, but is not limited to, automobiles, aircraft, watercraft, and other kinds of conveyances.

## VII. CONDITIONS

A.   Reporting of **Circumstances** That May Give Rise To A **Claim**

If during the **Policy Year** you become aware of a **Circumstance** that may reasonably be expected to give rise to a **Claim** against you, and if you report such **Circumstance** to us during the **Policy Year** in writing, then any **Claim** subsequently arising from such **Circumstance** duly reported in accordance with this paragraph shall be deemed under this Policy to be a **Claim** made during the **Policy Year**. Such written notice to us shall include:

1.   particulars as to the reasons for anticipating such a **Claim**; and

2.   the nature and dates of the alleged **Circumstance**; and

3.   the alleged injuries or **Damages** sustained; and

4.   the names of potential claimants, if available; and

     5.   the manner in which you first became aware of the specific **Circumstance.**

B.     Notice

In the event of a **Claim,** you shall:

1.   Promptly notify us pursuant to Item 8 of the Declarations in writing of any **Claim**.

2.   Immediately forward to us every demand, notice, summons or other process including institution of arbitration proceedings that you receive.

3.   Provide particulars sufficient to identify you and the claimant and full information with respect to the time, place and circumstances of the event complained of, and the names and addresses of the injured, and of available witnesses to us as soon as practicable.

C.     Cooperation and Settlement

You shall fully cooperate with us or our designee in the defense of a **Circumstance** or **Claim**, including but not limited to assisting us in the conduct of suits or other proceedings, settlement negotiations, and the enforcement of any right of contribution or indemnity against another who may be liable to you. You shall attend hearings and trials and assist in securing evidence and obtaining the attendance of witnesses. If after a **Circumstance** or **Claim** is made against you and reported to us, and you have the right under any **Contract** to either reject or demand arbitration or other alternative dispute resolution process, you shall only do so with our written consent.

We will not settle any **Claim** without the written consent of the first Named Insured shown in Item 1 of the Declarations. If, however, consent to any settlement recommended by us is withheld and you elect to contest or to continue to contest that **Claim,** then our liability for that **Claim** will not exceed the amount for which that **Claim** could have been settled plus **Claims Expenses** up to the date consent was withheld.

D.     Limits of Liability

1.   The Limits of Liability, shown in Item 3 of the Declarations, and described below, are the most we will pay regardless of the number of **Insureds**, **Claims**, individuals or entities making **Claims**.

2.   The Limits of Liability shown in Item 3 of the Declarations, will apply as follows:

    a.   The limit for each **Claim** shown in Item 3A of the Declarations, is the most we will pay for the sum of all **Damages** and **Claims Expenses** arising out of any single **Claim**.

    b.   The aggregate limit shown in Item 3B of the Declarations is the most we will pay for the sum of all **Damages** and **Claims Expenses** for all **Claims Made and Reported** during each **Policy Year**.

The payment of **Damages** and / or **Claims Expenses** will reduce the Limits of Liability available to pay **Claims**.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER   LIUI  620

3.  Two or more **Claims** alleging, based upon, arising out of or attributable to the same or related **Wrongful Act(s)** or **Pollution Incident(s)**, shall be considered and treated as a single **Claim** regardless of whether made against one or more than one **Insured**. This Policy shall only apply if the first or earliest **Claim** arising from such **Wrongful Act(s)** or **Pollution Incident(s)** is made during the **Policy Year**.

All **Claims** arising out of the same or related **Wrongful Act(s)** or **Pollution Incident(s)** shall be considered first made within the **Policy Year** in which the earliest of such **Claims** was first made, or deemed to be made pursuant to CONDITIONS A of this Policy, and all such **Claims** shall be subject to one such Limit of Liability as set forth in Item 3A of the Declarations.

4.  The Limits of Liability shown in Item 3A of the Declarations apply in excess of the Deductible described in E below.

E.  Deductible

As stated in Item 4 of the Declarations, you must pay the Deductible obligation for **Damages** and **Claims Expenses** before we are obligated to pay. You must pay the Deductible obligation upon written request. We will determine the reasonableness of **Claims Expenses** that qualify in satisfaction of the Deductible.

The Deductible applies separately to each **Claim** whether this insurance is primary or excess. The Deductible for each **Claim** shown in Item 4A of the Declarations is the most you must pay as a Deductible of all **Damages** and **Claims Expenses** arising out of any single **Claim**. The Aggregate Deductible shown in Item 4B of the Declarations is the most you must pay as a Deductible for the sum of all **Damages** and **Claims Expenses** for all **Claims Made and Reported** during each **Policy Year**.

F.  Mediation of Claims Deductible Credit

If you and the Company agree to use **Mediation** and the **Claim** is fully and finally resolved by **Mediation**, the Named Insured's Deductible obligation will be reduced by 50% subject to a maximum reduction of $15,000.

G.  Notice of Cancellation

This Policy may be canceled by the first Named Insured identified in the Declarations, by surrender of this Policy to us or our authorized representative or by giving us written notice stating when thereafter such cancellation shall be effective.

We will not cancel this Policy except for non-payment of premium, fraud or material misrepresentation in procuring this insurance or in relation to any **Claim**, or changes in law affecting this Policy. If we cancel this Policy, we will mail or deliver to the first Named Insured, on behalf of all **Insureds**, written notice of cancellation. We will provide at least ten (10) days notice before the effective date of cancellation if we cancel for non-payment of premium. If we cancel for any other reason we will provide at least sixty (60) days notice before the effective date of cancellation.

If this Policy is canceled, we will send the first Named Insured any premium refund due. The refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER      LIUI 621

3. Two or more **Claims** alleging, based upon, arising out of or attributable to the same or related **Wrongful Act(s)** or **Pollution Incident(s)**, shall be considered and treated as a single **Claim** regardless of whether made against one or more than one **Insured**. This Policy shall only apply if the first or earliest **Claim** arising from such **Wrongful Act(s)** or **Pollution Incident(s)** is made during the **Policy Year**.

All **Claims** arising out of the same or related **Wrongful Act(s)** or **Pollution Incident(s)** shall be considered first made within the **Policy Year** in which the earliest of such **Claims** was first made, or deemed to be made pursuant to CONDITIONS A of this Policy, and all such **Claims** shall be subject to one such Limit of Liability as set forth in Item 3A of the Declarations.

4. The Limits of Liability shown in Item 3A of the Declarations apply in excess of the Deductible described in E below.

E.    Deductible

As stated in Item 4 of the Declarations, you must pay the Deductible obligation for **Damages** and **Claims Expenses** before we are obligated to pay. You must pay the Deductible obligation upon written request. We will determine the reasonableness of **Claims Expenses** that qualify in satisfaction of the Deductible.

The Deductible applies separately to each **Claim** whether this insurance is primary or excess. The Deductible for each **Claim** shown in Item 4A of the Declarations is the most you must pay as a Deductible of all **Damages** and **Claims Expenses** arising out of any single **Claim**. The Aggregate Deductible shown in Item 4B of the Declarations is the most you must pay as a Deductible for the sum of all **Damages** and **Claims Expenses** for all **Claims Made and Reported** during each **Policy Year**.

F.    Mediation of Claims Deductible Credit

If you and the Company agree to use **Mediation** and the **Claim** is fully and finally resolved by **Mediation**, the Named Insured's Deductible obligation will be reduced by 50% subject to a maximum reduction of $15,000.

G.    Notice of Cancellation

This Policy may be canceled by the first Named Insured identified in the Declarations, by surrender of this Policy to us or our authorized representative or by giving us written notice stating when thereafter such cancellation shall be effective.

We will not cancel this Policy except for non-payment of premium, fraud or material misrepresentation in procuring this insurance or in relation to any **Claim**, or changes in law affecting this Policy. If we cancel this Policy, we will mail or deliver to the first Named Insured, on behalf of all **Insureds**, written notice of cancellation. We will provide at least ten (10) days notice before the effective date of cancellation if we cancel for non-payment of premium. If we cancel for any other reason we will provide at least sixty (60) days notice before the effective date of cancellation.

If this Policy is canceled, we will send the first Named Insured any premium refund due. The refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

Form No. AEE002 (05/2002)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER      LIUI  622

We will give you written notice sixty (60) days prior to the expiration of this Policy if we do not intend to renew this insurance subject to any state requirements. The notice will include our reason for non-renewal.

If notice is mailed, proof of mailing will be sufficient proof of notice.

H.     Other Insurance

If there is other collectible insurance, including but not limited to project specific insurance, that applies to a **Claim** covered by this Policy, the other insurance must pay first and this Policy is excess over the other insurance.  This Policy applies to the amount of the **Claim** that exceeds the available limits of liability and any deductibles or retention amounts of the other insurance.

I.      Subrogation

In the event of any payment under this Policy, we shall be subrogated to all of your rights of recovery against any person or organization, and you shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  You shall do nothing after a **Claim** is made to prejudice such rights.  We hereby waive our subrogation rights against a client of yours to the extent that you had, prior to a **Claim**, or **Circumstance**, entered into a written agreement to waive such rights.

Any amount recovered upon the exercise of such rights of subrogation shall first be applied to the repayment of expenses incurred by us toward subrogation, second toward reimbursement of any payments made by you pursuant to your Deductible, and any remaining balance shall be ours.

J.      Alteration and Assignment

No change in, modification of, or assignment of interest under this Policy, shall be effective except when made by written Endorsement or signed by our authorized representative.

K.     First Named Insured As Sole Agent

The first Named Insured shall be the sole agent of all **Insureds** hereunder for the purpose of effecting or accepting any amendments to or cancellation of this Policy, for the purpose of receiving such notices as may be required by law and/or any provision(s) of this Policy, for the completing of any Application and the making of any representations, for the payment of any premium and the receipt of any return premium that may become due under this Policy, for the payment of any Deductible obligations that may become due under this Policy, and the exercising or declining to exercise any right under this Policy.

L.      You or your estate's bankruptcy or insolvency will not relieve us of our obligations under this Policy.

M.     Legal Action Against Us

No individual or entity has a right under this Policy to join us as a party or otherwise bring us into a suit seeking **Damages** from you, or to sue us unless all of the terms of this Policy have been met.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER     LIUI 623

N.      Liberalization

If we file with the appropriate regulator, general revisions to the terms and conditions of this policy form to provide more coverage without an additional premium charge, then your Policy will automatically provide this additional coverage as of the date the filed revision is effective in the state shown in the mailing address of the first Named Insured.

IN WITNESS WHEREOF, we have caused this Policy to be executed and attested, but this Policy shall not be valid unless countersigned on the Declarations page by our duly authorized representative.

President

Dexter R. Legg
Secretary

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER       LIUI  624