**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.:  1:08-cv-00862 |
| VOA ASSOCIATES INC., LIBERTY INTERNATIONAL UNDERWRITERS, MICHAEL J. MADDEN and JEAN MADDEN, | ) ) ) ) | Honorable Matthew F. Kennelly  Magistrate Judge Geraldine Soat Brown |
| Defendants. | ) ) | |

## <u>UNITED STATES FIDELITY AND GUARANTY COMPANY'S LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

Plaintiff, UNITED STATES FIDELITY AND GUARANTY COMPANY ("USF&G"), by and through its attorneys, Karbal, Cohen, Economou, Silk & Dunne, LLC, states that there is no genuine issue as to the following material facts:

### <u>Parties, Jurisdiction and Venue</u>

1.      Plaintiff, United States Fidelity and Guaranty Company, is a Maryland corporation with its principal place of business in St. Paul, Minnesota.

**Source:**      Amended Complaint at ¶ 5; Docket No. 55

2.      Defendant, VOA Associates, Inc. ("VOA"), is a Delaware corporation with its principal place of business located in Chicago, Illinois.

**Source:**      Amended Complaint at ¶ 5; Docket No. 55.
              VOA Answer at ¶ 6; Docket No. 59.

3.      Defendant, Liberty International Underwriters, Inc. ("Liberty"), is a New York corporation with its principal place of business located in New York, New York.

**Source:**      USF&G's Amended Complaint at ¶ 9; Docket No. 55.
              Liberty's Answer to Amended Complaint at ¶ 9; Docket No. 60.

4.      Defendant, Michael Madden, is an Illinois resident.

**Source:**      Amended Complaint at ¶ 7; Docket No. 55.

5.      Defendant, Jean Madden, is an Illinois resident.

**Source:**      Amended Complaint at ¶ 8; Docket No. 55.

6.      Jurisdiction is proper in this Court, pursuant to 28 U.S.C. §1332(a), because the plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**Source:**      Amended Complaint at ¶ 10; Docket No. 55.
             VOA's Answer at ¶ 10; Docket No. 59.
             Liberty's Answer at ¶ 10; Docket No. 60.

7.      Venue is proper in this District, pursuant to 28 U.S.C. §1391(a)(2), because the events giving rise Plaintiff's Complaint occurred in this District.

**Source:**      Amended complaint at ¶ 11; Docket No. 55.
             VOA's Answer at ¶ 11; Docket No. 59.
             Liberty's Answer at ¶ 11; Docket No. 60.

## A.      The USF&G Policy

8.      USF&G issued policy No. BK01116165 to VOA, which was in effect May 1, 2002-2003 ("the USF&G Policy").

**Source:**      A complete copy of the USF&G Policy is attached to USF&G's Complaint at Exhibit A; Docket No. 2.

9.      The primary general liability coverage part of the USF&G Policy has limits of liability of $1,000,000/accident and $2,000,000/aggregate.

**Source:**      A true and accurate copy of the CGL portion of the USF&G is attached hereto at **Exhibit 1** for the Court's convenience.

10.      The USF&G Policy contains a professional services exclusion endorsement in the primary coverage which provides in pertinent part, that the insurance does not apply to:

I.      Professional Services

"Bodily injury," "property damage," "personal injury," or "advertising injury" due to rendering or failure to render any professional service by or on behalf of any insured. Professional service includes:

                                            ***

    (2)     Architect, engineer, surveyor, construction contractor or construction management service, including:

        (a)     Preparing, approving, or failing to prepare or approve any map, drawing, opinion, report, survey, change order, design, specification, recommendation, permit application, payment request, manual, instruction, computer program for design systems, or selection of a contractor or sub-contractor;
        (b)     Any supervisory, inspection, or quality control service;
        (c)     Any study, survey, assessment, evaluation, consultation, observation, scheduling, sequencing, training, or inspection, including those for job safety; and
        (d)     Any monitoring, testing, or sampling service necessary to perform any of the services including in exclusion I.2(a), (b), or (c) above.

**Source:**     A true and accurate copy of the Professional Services Exclusion Endorsement of the USF&G is attached hereto at **Exhibit 2** for the Court's convenience.

11.     The umbrella coverage of the USF&G Policy part has liability limits of $5,000,000.

**Source:**     A true and accurate copy of the Umbrella portion of the CGL Policy is attached hereto at **Exhibit 3** for the Court's convenience.

12.     The USF&G umbrella coverage also contains a professional services exclusion.

**Source:**     Id. at pp. 26, 32.

13.     The USF&G Policy also includes the following conditions:

**2.  Duties In The Event Of Occurrence, Offense, Claim or "Suit"**

(a)     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  Notice should include:

(1)    How, when and where the "occurrence" or offense took place;

(2)    The names and addresses of any injured persons and witnesses; and

(3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.

(c)    You and any other involved insured must:

(3)    Cooperate with us in the investigation, settlement or defense of the claim or "suit";

**Source:**    Ex. 1 – USF&G's CGL Policy at pp. 17-18.

## B.    The Liberty Professional Liability Policies

14.    Liberty issued a series of Architects, Engineers and Environmental Services Professional Liability Insurance Policies to VOA (the "Liberty Professional Liability Policies").

**Source:**    True and accurate copies of the Liberty Professional Liability Policies are attached to the Amended Complaint at Exhibits 3, 4 and 5; Docket No. 55.

15.    The Liberty Professional Liability Policies are identified as follows: Policy No. AEE196887-0103 (12/5/03-12/5/04); Policy No. AEE196887-0104 (12/5/04-12/05/05); Policy No. AEE196887-0105 (12/5/05-12/5/06); and Policy No. AEE196887-0106 (12/5/06-12/5/07).

**Source:**    Id.

16.    Each Liberty Policy has a limit of $2,000,000 per claim and $4,000,000 per year in the aggregate with a $200,000 per claim deductible.

**Source:**    Id.

17.    The Liberty Professional Liability Policies are "claims made and reported" policies.

**Source:**    Id.

**C.**     **VOA's Professional Services Agreement with District 230**

18.     On or about June 29, 1998, VOA entered into a contract titled "Agreement Between Owner And Architect" (the "Professional Services Agreement") with Consolidated High School District No. 230 ("Owner" or "District 230"), for the performance of architectural and design services for the Alonzo Staag High School, among others ("the Project").

>    **Source:**     A copy of the Agreement Between Owner and Architect is attached hereto at **Exhibit 4**.

19.     The Professional Services Agreement expressly limits VOA's work on the Project to the provision of architectural and design services.

>    **Source:**     Id.

20.     The Professional Services Exclusion in the USF&G Policy states:  "The Architect shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's responsibility under the Contract for Construction."

>    **Source:**     Id. at p. 5, Section 2-66.

21.     The Professional Services Agreement defines and limits VOA's duties as follows:

ARTICLE 2

SCOPE OF ARCHITECT'S BASIC SERVICES

2.1     DEFINITION

2.1.1   The Architect's Basic Services consist of those described in Paragraphs 2.2 through 2.6 and any other services identified in Article 13 as part of Basic Services, and include normal structural, mechanical and electrical engineering services.

***

2.2     SCHEMATIC DESIGN PHASE

2.2.1   The Architect shall review the program furnished by the Owner to ascertain the requirement of the Project and shall arrive at a mutual understanding of such requirements with the Owner.

2.3     DESIGN DEVELOPMENT PHASE

2.3.1   Based on the approved Schematic Design Documents . . . , the Architect shall prepare, for approval by the Owner, Design Development Documents consisting of drawings and other documents to fix and describe the size and character of the Project as to architectural, structural, mechanical and electrical systems, materials and such other elements as may be appropriate.

2.4     CONSTRUCTION DOCUMENTS PHASE

2.4.1   Based on the approved Design Development Documents . . . , the Architect shall prepare, for approval by the Owner, Construction Documents consisting of Drawings and Specifications setting forth in detail the requirements for the construction of the Project.

**Source:**      Id. at pp. 2-3.

22.     At all relevant times, Paul Hansen was and is a principal at VOA Associates, Inc. and he was the principal in charge of the Project.

**Source:**      Deposition of Paul Hansen at p. 5, a copy of which is attached hereto at **Exhibit 5** (filed under seal).
See also Deposition of Michael Toolis at p. 37 (lines 11-19), which is attached hereto at **Exhibit 9**.

23.     VOA does not dispute that its services for the Project were, in fact, limited to architectural and design work.

**Source:**      Ex. 4 – Agreement Between Owner and Architect.
Ex. 5 – Deposition of Paul Hansen at p. 7 (lines 20-23) and p. 8 (lines 7-13).

**D.**     **Madden's Alleged Injury And The Underlying Litigation**

24.     On or about August 19, 2002, Michael J. Madden ("Madden"), an employee of District 230, was allegedly seriously injured when he fell into an orchestra pit designed by VOA at the Alonzo Staag High School.

> **Source:**     See Maddens' Third Amended Complaint, a copy of which is attached hereto at **Exhibit 6**.

25.     Shortly after Madden's alleged fall, VOA's project manager, Al Migon, was told of Madden's fall by Bob Hughes, the Owner's representative.

> **Source:**     Deposition of Albert Migon, dated February 7, 2006 at p. 74 (lines 18-24), a copy of which is attached hereto at **Exhibit 7**.
> Deposition of Albert Migon, dated January 28, 2009, at pp. 16-17, 26-27, a copy of which is attached hereto at **Exhibit 8** (filed under seal).

26.     At all relevant times, Michael Toolis held the position of Chief Executive Officer of VOA.

> **Source:**     Deposition of Michael Toolis at p. 10 (lines 10-20), a copy of which is attached hereto at **Exhibit 9** (filed under seal).

27.     VOA had no procedure for reporting accidents at job sites.

> **Source:**     Ex. 9 – Deposition of Michael Toolis at pp. 35-36.
> Ex. 8 – Deposition of Albert Migon, dated January 28, 2009, at p. 10 (lines 21-23),

28.     Migon did nothing with this information and VOA did not report the Madden occurrence to USF&G.

> **Source:**     Ex. 8 – Deposition of Albert Migon, dated January 28, 2009, at p. 17 (lines 14 to 24); pp. 27-28.

29.     On or about January 13, 2003, Madden filed suit in the Circuit Court of Cook County styled Michael J. Madden, et al. v. P.H. Paschen, et al., No. 03 L 000433 (the "Underlying Litigation").

> **Source:**     See Docket Sheet from the Circuit Court of Cook County, attached hereto at **Exhibit 10** (in relevant part).

30.     Madden's initial Complaint did not name VOA as a defendant.

> **Source:**     See Summons attached to Ex. 6 – Madden's Third Amended Complaint.

31.    A year and a half later, on or about August 19, 2004, Madden filed a Third

Amended Complaint, which for the first time named VOA as a defendant.

> **Source:**        Ex. 6 – Summons and Madden's Third Amended Complaint.
> <u>See also</u> VOA's Answer to Amended Complaint at ¶ 24; Docket No. 59.

32.    VOA was served with the Third Amended Complaint on August 26, 2004.

> **Source:**        <u>Id.</u>
> <u>See also</u> VOA's Answer to Amended Complaint at ¶ 23; Docket No. 59.

33.    The Maddens' Third Amended Complaint alleged that VOA was the architect for

the Project.

> **Source:**        Ex. 6 – Madden's Third Amended Complaint at p. 14, Count VII, ¶ 2.

34.    Pursuant to reservation of rights, USF&G asked Kurt Beranek, Esq. ("Beranek")

to defend VOA.

> **Source:**        Deposition of Kurt Beranek at pp. 7-9, a copy of which is attached hereto
> at **Exhibit 11** (filed under seal).
> St. Paul Travelers' Litigation Referral Form, a copy of which is attached
> hereto at **Exhibit 12** (filed under seal).
> Correspondence from K. Beranek to I. Robinson (USF&G), dated
> December 8, 2004, a copy of which is attached hereto at **Exhibit 13** (filed
> under seal).
> Correspondence from I. Robinson (USF&G) to VOA, dated May 4, 2005,
> a copy of which is attached hereto at **Exhibit 14**.

35.    On or about August 16, 2006, Madden filed his Fourth Amended Complaint,

which again alleged that VOA was the architect for the Project, this time referencing the contract

between VOA and the Owner and alleging negligent design of the orchestra pit in which Madden

fell.

> **Source:**        Maddens' Fourth Amended Complaint at pp. 14-18, a copy of which is
> attached hereto at **Exhibit 15**.
> <u>See also</u> VOA's Answer to Amended Complaint at ¶ 7; Docket No. 59.

36.    A copy of the Fourth Amended Complaint was served on Beranek.

**Source:**   Ex. 11 – Deposition of Kurt Beranek at pp. 45-45.
Ex. 15 – Fourth Amended Complaint at top fax line showing date of transmission of August 15, 2006 from Harman Fedick & O' Connor, counsel for the Maddens.

37.   VOA filed a motion for summary judgment in the Underlying Litigation, arguing that it had no responsibility for safety on the job site, that it had no duty to supervise or control Madden's work and that it designed the Project according to the owner's specifications, which did not include an orchestra pit cover.

**Source:**   A copy of VOA's Second Amended Motion For Summary Judgment is attached hereto at **Exhibit 16**.
<u>See also</u> VOA's Answer to Amended Complaint at ¶ 30; Docket No. 59.

38.   On or about March 6, 2007, the trial court granted VOA's motion for summary judgment as to any construction means or methods claims but denied the motion as to claims of negligent design.

**Source:**   A copy of the March 6, 2007 Order granting VOA's motion for summary judgment in the Underlying Litigation is attached hereto at **Exhibit 17**.
<u>See also</u> VOA's Answer to Amended Complaint at ¶ 31; Docket No. 59.

39.   The Order of March 6, 2007 stated in pertinent part:

This matter coming on to be heard on VOA's motion for summary judgment, due notice having been given and the court being fully advised in the premises,

IT IS HEREBY ORDERED:

For the reasons stated in the record:

1)   VOA's motion for summary judgment is granted as to §343 & §414 liability and its allegations set forth in the complaint, and

2)   VOA's motion for summary judgment is denied as to the plaintiff's allegations of negligent design/code violations.

**Source:**   <u>Id.</u>
<u>See also</u> VOA's Answer to Amended Complaint at ¶ 31; Docket No. 59.

40.     On or about March 6, 2007, the court also granted summary judgment in favor of all defendants other than VOA (i.e., construction defendants).

**Source:**     A copy of the March 6, 2007 Order in the Underlying Litigation granting summary judgment in favor of construction defendants is attached hereto at **Exhibit 18**.

41.     After March 6, 2007, there were no claims pending against VOA with the exception of negligent design/code violations.

**Source:**     Ex. 17 – March 6, 2007 Order, VOA's summary judgment
Ex. 18 – March 6, 2007 Order, construction defendants' summary judgment

42.     On June 20, 2007, the trial of the underlying claim commenced and on June 27, 2007, the jury was provided with the following relevant instructions:

"Professional Negligence" by an architect is the failure to do something that a reasonably careful architect would do, or the doing of something that a reasonably careful architect would not do, under circumstances similar to those shown by the evidence.

To determine what the standard of care required in this case, you must rely upon opinion testimony from qualified witnesses, and evidence of professional standards. The law does not say how a reasonably careful architect would act under these circumstances. That is for you to decide.

Plaintiff's Jury Instruction No. 9.

The plaintiff claims that he was injured and sustained damage, and that the defendant was professionally negligent in one or more of the following respects:

1)  Failed to design the stage with a pit cover or other fall protection;
2)  Signed a certificate of substantial completion when it was not safe to do so.

Plaintiff's Jury Instruction No. 10 (in relevant part).

**Source:**     A copy of the jury instructions in the Underlying Litigation is attached hereto at **Exhibit 19**.

43.     The jury returned a verdict finding VOA "professionally negligent" and awarded $1.6 Million against VOA.

**Source:**          A true and accurate copy of the judgment entered in the Underlying Litigation is attached hereto at **Exhibit 20**.

44.     VOA has appealed the verdict and judgment against it.

**Source:**          A copy of VOA's Notice of Appeal is attached hereto at **Exhibit 21**.

45.     The Maddens also appealed the summary judgment order dismissing all construction defendants.

**Source:**          A copy of the Maddens' Notice of Appeal is attached hereto at **Exhibit 22**.

**E.     VOA's Reporting of the Underlying Litigation To Its Insurers**

46.     VOA was served with Madden's Third Amended Complaint on August 26, 2004.

**Source:**          Ex. 6 – Summons and Third Amended Complaint.

47.     VOA forwarded a copy of the Third Amended Complaint to VOA's external general counsel, Schiff Hardin, LLP.

**Source:**          Correspondence from P. Lurie, Esq. of Schiff Hardin to Theodore Schnell of VOA, dated August 30, 2004, a copy of which is attached hereto at **Exhibit 23** (filed under seal).
Ex. 9 – Deposition of Michael Toolis at p. 60 (lines 15-24).

48.     Paul Lurie of Schiff Hardin advised VOA to tender the Third Amended Complaint to VOA's professional liability insurer, Liberty.

**Source:**          Ex. 23 – Correspondence from P. Lurie, Esq. of Schiff Hardin to Theodore Schnell of VOA, dated August 30, 2004.
Ex. 9 – Deposition of Michael Toolis at pp. 41-45.

49.     On or about August 31, 2004, VOA reported the Third Amended Complaint to its insurance broker, HRH AVA Insurance Agency now known as Willis HRH ("AVA").

**Source:**          A copy of the facsimile from Jennifer Klomans of VOA to Rachel Buelow of AVA, dated August 31, 2004, is attached hereto at **Exhibit 24**.

Deposition of Jennifer Klomans at pp. 32-34, a copy of which is attached hereto at **Exhibit 25**.
Deposition of Rachel Buelow at pp. 14-16, a copy of which is attached hereto at **Exhibit 26** (filed under seal).
VOA's Answer to Amended Complaint at ¶ 44; Docket No. 59.

50.    AVA had been VOA's insurance broker for up to twenty years.

**Source:**       Ex. 9 – Deposition of Michael Toolis at pp. 19-20.

51.    Theodore Schnell, VOA's Chief Financial Officer, advised AVA that he deemed the Third Amended Complaint to be a general liability claim but asked AVA for its advice as to which carrier to tender the lawsuit.

**Source:**       Deposition of Daniel Buelow of AVA at pp. 24-25, a copy of which is attached hereto at **Exhibit 27** (filed under seal).
Deposition of Theodore Schnell at pp. 79-80, a copy of which is attached hereto at **Exhibit 28** (filed under seal).

52.    AVA agreed with VOA's characterization of the Third Amended Complaint as involving only general liability and reported the Madden Lawsuit only to USF&G.

**Source:**       Ex. 27 – Deposition of D. Buelow at p. 25 (lines 8-16); p. 25 (lines 23-24); p. 26 (line 1).

53.    As a matter of custom and practice, VOA relied on AVA to report claims and suits against VOA to VOA's insurance carriers.

**Source:**       Ex. 9 – Deposition of Michael Toolis. at pp. 84-85.
Ex. 28 – Deposition of Theodore Schnell at p. 14 (lines 9-13); pp. 22-24; pp. 102-105.
Ex. 27 – Deposition of D. Buelow at p. 30.
Correspondence from P. Lurie, Esq. to Daniel Buelow, dated April 15, 2008, a copy of which is attached hereto at **Exhibit 29** (filed under seal).
VOA's Answer to Amended Complaint at ¶ 53; Docket No. 59.

54.    In October and November of 2004, several discussions took place between USF&G's claim representative, Iris Robinson, and several VOA employees, including Jennifer Klomans and Theodore Schnell.

| | |
|---|---|
| **Source:** | A copy of USF&G's Claim Notes are attached hereto at **Exhibit 30** (filed under seal).  <u>See</u> pp. 34-37. |
| | Deposition of Iris Robinson, dated February 17, 2009, at pp. 37, a copy of which is attached hereto at **Exhibit 31.** |

55.     In the first discussion, on September 17, 2004, Mr. Schnell advised Ms. Robinson that VOA already had an attorney on the Madden case and VOA should be dismissed.

| | |
|---|---|
| **Source:** | Ex. 30 – Claim Note at p. 37, dated, September 17, 2004. |
| | Ex. 31 – Deposition of Iris Robinson, dated February 17, 2009, at pp. 37 (lines 5-10); p. 68 (lines 9-24); p. 71 (lines 9-15). |

56.     Schnell was to send Ms. Robinson the contracts for the Project.

| | |
|---|---|
| **Source:** | <u>Id.</u> |

57.     Schnell advised Ms. Robinson that he did not think there will be additional investigation.

| | |
|---|---|
| **Source:** | <u>Id.</u> |

58.     Ms. Robinson asked to take photographs and statements, but Mr. Schnell advised Ms. Robinson to wait.

| | |
|---|---|
| **Source:** | <u>Id.</u> |

59.     In a follow-up discussion between Ms. Robinson and Mr. Schnell on October 8, 2004, Mr. Schnell again advised Ms. Robinson that VOA had hired counsel and should be dismissed from the case.

| | |
|---|---|
| **Source:** | Ex. 30 – Claim Note Dated October 8, 2004 at p. 36. |

60.     On November 3, 2004, Ms. Robinson had a discussion with Jennifer Klomans of VOA.

| | |
|---|---|
| **Source:** | Ex. 30 – Claim Note Dated November 4, 2004 at p. 34. |
| | Ex. 31 – Deposition of Iris Robinson at pp. 76-77. |

61.     During the discussion, Ms. Robinson advised Klomans that there were coverage issues with respect to VOA's role as an architect on the Project as the USF&G Policy had a professional services exclusion.

**Source:**        Id.

62.     Ms. Robinson advised Klomans to tender the matter to VOA's professional liability carrier.

**Source:**        Id.
                   See also Ex. 31 – Deposition of Iris Robinson at p. 122 (lines 11-16).

63.     Ms. Robinson also advised Klomans that she was going to close here file since VOA had already hired its own counsel for the Madden case.

**Source:**        Id.

64.     Klomans responded that her superior (Schnell) was incorrect with that information and that VOA had received notice of default.

**Source:**        Id.

65.     Klomans also advised that VOA's broker, AVA, advised there was no coverage under the professional liability policy (Liberty) and that VOA's CGL policy (USF&G) should cover the loss.

**Source:**        Id.

66.     In light of Ms. Klomans' statement that VOA received notice of a default judgment, Ms. Robinson took action to appoint defense counsel to defend VOA under reservation of rights.

**Source:**        Ex. 30 – Claim Note Dated November 10, 2004 at p. 34.
                   Ex. 31 – Deposition of Iris Robinson at pp. 77-80.

67.     VOA had the right to select their own defense counsel at USF&G's expense.

**Source:**   Ex 14 – Correspondence from Iris Robinson (USF&G) to VOA, dated May 4, 2005.
      Ex. 31 – Deposition of Iris Robinson at p. 108.

68.  Beranek accepted the assignment to defend VOA under reservation of rights.

**Source:**   Ex. 11 – Deposition of Kurt Beranek at pp. 7-9.
      Ex. 12 – St. Paul Travelers Litigation Referral Form.
      Ex. 13 – Correspondence from K. Beranek to I. Robinson, dated December 8, 2004.
      Ex. 14 – Correspondence from I. Robinson (USF&G) to VOA, dated May 4, 2005.

69.  On January 11, 2005, Schiff Hardin advised VOA to tender VOA's defense to VOA's insurance carrier and request that Schiff Hardin be named as defense counsel.

**Source:**   E-Mail from Steven Welhouse, Esq. of Schiff Hardin to Karen Zwier[1] of VOA, a copy of which is attached hereto at **Exhibit 32** (filed under seal).

70.  On or about January 13, 2005, Schiff Hardin also briefly appeared as defense counsel for VOA in the Underlying Litigation and withdrew its appearance on or about March 2005.

**Source:**   A copy of the Appearance form for Paul Lurie, Esq. of Schiff Hardin, dated January 13, 2005, is attached hereto at **Exhibit 33**.
      See also VOA's Answer to Amended Complaint at ¶¶ 57-58/Docket No. 59.

71.  At all times, Beranek defended VOA without direction from USF&G.

**Source:**   Ex. 11 – Deposition of Kurt Beranek at p. 35.

**F.**  **USF&G's Reservation of Rights Letters**

72.  By letter dated May 4, 2005, USF&G reserved its rights with respect to the Underlying Litigation based on the professional services exclusion in the USF&G Policy.

**Source:**   Ex. 14 – USF&G's Reservation of Rights Letter from Iris Robinson to VOA.

---

[1] Karen Zwier reported to Michael Toolis, CEO of VOA. **Source:** Ex. 9 - Deposition of Michael Toolis at p. 19 (lines 5-7).

73.     Iris Robinson prepared and signed the May 4, 2005 Reservation of Rights letter.

**Source:**     Ex. 31 – Deposition of Iris Robinson, dated February 17, 2009, at pp. 113-114.

74.     On May 4, 2005, Ms. Robinson put the Reservation of Rights letter into an envelope and placed it in the designated outgoing mail bin at the offices of St. Paul Travelers Chicago office.

**Source:**     Deposition of Iris Robinson, dated March 17, 2009, at p. 138, a copy of which is attached hereto at **Exhibit 3**4.

75.     St. Paul Travelers office services then processed all mail in the outgoing mail bin on May 4, 2005.

**Source:**     <u>Id.</u> at p. 143.
                <u>See also</u> Affidavit of Manuel Williford, a copy of which is attached hereto at **Exhibit 35**.

76.     In accordance with St. Paul Travelers policies and procedures, the May 4, 2005 reservation of rights letter was sealed, stamped and placed for pickup by the U. S. Post Office.

**Source:**     <u>Id.</u>

77.     On May 6, 2005, the May 4, 2005 reservation of rights letter from Iris Robinson to VOA was faxed to Kurt Beranek, defense counsel for VOA.

**Source:**     Ex 14 – May 4, 2005 reservation of rights letter bearing fax transmittal to Beranek's lawfirm on May 6, 2005.
                Ex. 34 – Deposition of Iris Robinson, dated March 17, 2009, at pp. 135-36.
                Ex. 11 – Deposition of Kurt Beranek at pp. 21-22.

78.     The May 4, 2005 reservation of rights letter advised VOA that the Underlying Litigation may seek damages that would be uncovered under the USF&G Policy.

**Source:**     <u>Id.</u>

KCESD_401241_1.DOC                    16

79.     The May 4, 2005 letter specifically reserved the right to deny any duty to indemnify VOA to the extent that VOA's liability is found to have arisen out of any architectural, engineering or inspection activity.

**Source:**        Id.

80.     With respect to the retention of Beranek, the reservation of rights letter expressly advised VOA of a potential conflict of interest and gave VOA its choice of defense counsel.

**Source:**        Id.

81.     There is no evidence that VOA ever advised USF&G that it wished to select its own counsel to represent it in the Madden litigation.

**Source:**        Ex. 9 – Deposition of Michael Toolis at pp. 82-83.

82.     By letter dated September 28, 2007, USF&G requested that VOA release USF&G from funding the defense of the Underlying Lawsuit based on the professional services exclusion in the USF&G policy.

**Source:**        Correspondence from Ken Hagedorn of Travelers to Paul Hansen of VOA, dated September 28, 2007, a copy of which is attached hereto at **Exhibit 36**.
See also VOA's Answer to Amended Complaint at ¶ 36; Docket No. 59.

83.     USF&G abandons it claims against Liberty for reimbursement of defense fees and expenses.

**Source:**        Affidavit of Rory Dunne, Esq., counsel for USF&G, a copy of which is attached hereto at **Exhibit 37**.

Date:    April 8, 2009

Respectfully submitted,

UNITED STATES FIDELITY AND
GUARANTY COMPANY

By:    s:/Linda J. Carwile

One of Its Attorneys

Rory T. Dunne
Linda J. Carwile
**KARBAL, COHEN, ECONOMOU,
SILK & DUNNE, LLC**
200 South Michigan, 20th Floor
Chicago, Illinois  60604
(312) 431-3700
(312) 431-3670 Fax
Firm ID No. 38100