# EXHIBIT 4

_VOA Contract_

## AGREEMENT BETWEEN OWNER AND ARCHITECT

### AGREEMENT

made as of the      29      day of June in the year of Nineteen Hundred and
Ninety-Eight

BETWEEN the Owner:        Consolidated High School District Number 230
                                 15100 South 94th Avenue
                                 Orland Park, Illinois 60462

and the Architect:           VOA
                                 224 S. Michigan Avenue
                                 Suite 1400
                                 Chicago, Illinois 60604-2595

For the following Project:

     For additions to and remodeling and repairs of furnishings, fixtures, and
equipment for, the three existing high schools of the Owner known respectively
as Amos Alonzo Stagg High School, Carl Sandburg High School and Victor J.
Andrew High School, all in accordance with a referendum to be held to obtain
voter approval of such project and the financing thereof.

The Owner and Architect agree as set forth below.


EXHIBIT

2

---

TERMS AND CONDITIONS OF AGREEMENT BETWEEN OWNER AND ARCHITECT

---

## ARTICLE 1

### ARCHITECT'S RESPONSIBILITIES

### 1.1        ARCHITECT'S SERVICES

**1.1.1**   The Architect's services consist of those services performed by the Architect, Architect's employees and Architect's consultants as enumerated in Articles 2 and 3 of this Agreement and any other services included in Article 12.

**1.1.2**   The Architect's services shall be performed as expeditiously as is consistent with professional skill and care and the orderly progress of the Work. Upon request of the Owner, the Architect shall submit for the Owner's approval a schedule for the performance of the Architect's services which may be adjusted as the Project proceeds, and shall include allowances for periods of time required for the Owner's review and for approval of submissions by authorities having jurisdiction over the Project. Time limits established by this schedule approved by the Owner shall not, except for reasonable cause, be exceeded by the Architect or Owner.

**1.1.3**   The services covered by this Agreement are subject to the time limitations contained in Subparagraph 12.5.1.

## ARTICLE 2

### SCOPE OF ARCHITECT'S BASIC SERVICES

### 2.1        DEFINITION

**2.1.1**   The Architect's Basic Services consist of those described in Paragraphs 2.2 through 2.6 and any other services identified in Article 13 as part of Basic Services, and include normal structural, mechanical and electrical engineering services.

### 2.2        SCHEMATIC DESIGN PHASE

**2.2.1**   The Architect shall review the program furnished by the Owner to ascertain the requirements of the Project and shall arrive at a mutual understanding of such requirements with the Owner.

**2.2.2**   The Architect shall provide a preliminary evaluation of the Owner's program, schedule and construction budget requirements, each in terms of the other, subject to the limitations set forth in Subparagraph 5.2.1.

**2.2.3**   The Architect shall review with the Owner alternative approaches to design and construction of the Project.

**2.2.4**   Based on the mutually agreed-upon program, schedule and construction budget requirements, the Architect shall prepare, for approval by the Owner, Schematic Design Documents consisting of drawings and other documents illustrating the scale and relationship of Project components.

**2.2.5**   The Architect shall submit to the Owner for Owner's approval a preliminary estimate of Construction Cost based on current area, volume or other unit costs.

**2.3**        DESIGN DEVELOPMENT PHASE

**2.3.1**   Based on the approved Schematic Design Documents and any adjustments authorized by the Owner in the program, schedule or construction budget, the Architect shall prepare, for approval by the Owner, Design Development Documents consisting of drawings and other documents to fix and describe the size and character of the Project as to architectural, structural, mechanical and electrical systems, materials and such other elements as may be appropriate. The Architect must take into full consideration the existence of asbestos products in each of the buildings. The Architect shall not specify or recommend any product containing asbestos nor any hazardous materials or any toxic substances. After final completion Architect must certify to Owner that no toxic substances, hazardous materials, lead-based paints, refrigerants, or materials containing asbestos were installed at any of the sites to the best of their knowledge.

**2.3.2**   The Architect shall advise the Owner of any adjustments to the preliminary estimate of Construction Cost and obtain Owner's approval.

**2.4**        CONSTRUCTION DOCUMENTS PHASE

**2.4.1**   Based on the approved Design Development Documents and any further adjustments in the scope or quality of the Project or in the construction budget authorized by the Owner, the Architect shall prepare, for approval by the Owner, Construction Documents consisting of Drawings and Specifications setting forth in detail the requirements for the construction of the Project. The Construction Documents must be submitted to the Owner for its review at least seven (7) days prior to being released to any potential contractors/bidders.

**2.4.2**   The Architect shall assist the Owner in preparation of the necessary bidding information, bidding forms, the Conditions of the Contract, and the form of Agreement between the Owner and Contractor.

**2.4.3**   The Architect shall advise the Owner of any adjustments to previous preliminary estimates of Construction Cost indicated by changes in requirements or general market conditions.

**2.4.4**   The Architect shall assist the Owner in connection with the Owner's responsibility for filing documents required for the approval of governmental authorities having jurisdiction over the Project.

**2.5**        **BIDDING OR NEGOTIATION PHASE**

**2.5.1**   The Architect, following the Owner's approval of the Design Development Documents and of the latest approved preliminary estimate of Construction Cost, shall assist the Owner in obtaining bids or negotiated proposals and assist in awarding and preparing contracts for construction.

The Architect shall recommend in writing to the Owner, the Contractor or Contractors to whom contracts should be let, shall investigate the qualifications of such Contractors and indicate to the Owner that those Contractors whom the Architect recommends appear qualified to accomplish the Project.  The Architect shall not have any responsibility for reviewing financial statements as a part of the investigation contemplated by this paragraph.

**2.6**        **CONSTRUCTION PHASE - ADMINISTRATION
               OF THE CONSTRUCTION CONTRACT**

**2.6.1**   The Architect's responsibility to provide Basic Services for the Construction Phase under this Agreement commences with the award of the Contract for Construction and terminates at the earlier of the issuance to the Owner of the final Certificate for Payment or 60 days after the date of Substantial Completion of the Work, unless extended under the terms of Subparagraph 11.3.3.

**2.6.2**   The Architect shall provide administration of the Contract for Construction as set forth in this Agreement and in the Contract for Construction.

**2.6.3**   The duties, responsibilities and limitations of authority of the Architect as set forth herein shall not be restricted, modified or extended without written agreement of the Owner and Architect.

**2.6.4**   The Architect shall be a representative of and shall advise and consult with the Owner (1) during construction until final payment to the Contractor is due, and (2) as an Additional Service at the Owner's direction from time to time during the correction period described in the Contract for Construction.  The Architect shall have authority to act on behalf of the Owner only to the extent provided in this Agreement unless otherwise modified by written instrument.

**2.6.5**   The Architect shall visit the site at intervals appropriate to the stage of construction or as otherwise agreed by the Architect in writing to observe the progress and quality of the work and to determine, on the basis of such observation if the work is proceeding in accordance with the Contract Documents. For a minimum of 12 hours per week at each site the Architect shall visit each site and make observations of the progress and quality of the work, including determining if the work is

proceeding in accordance with the Construction Documents and construction schedules. The Architect will inform the Contractor, the Owner and Owner's designated parties of any failure of which the Architect should become aware in carrying out the construction work in accordance with the Contract Documents. The foregoing shall not be construed as a guarantee or warranty of the Contractor's Work made by the Architect, and the Architect's responsibilities as to construction shall be as recited herein and in Section 2.6.6 below. The Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. On the basis of on-site observations as an Architect, the Architect shall keep the Owner informed of the progress and quality of the Work and shall endeavor to guard the Owner against defects and deficiencies in the Work. During all such visits, and on the basis of observations on the site, the Architect will keep the Owner informed of the progress of the work. The Architect will endeavor to protect the Owner against defects and deficiencies in the Work of the Contractors. Field observation reports will be submitted to the Owner in writing at least weekly and at such other reasonable times as requested by the Owner. Based on such observations and the Contractors' Applications for Payment, the Architect and Owner will determine the amounts owing to the Contractor and will issue Certificates for Payment in such amounts. These Certificates will constitute a representation to the Owner that, in the judgment of the Architect, the work has progressed to the point indicated on the Certificates, the work has been performed in accordance with the Contract Documents, and the quality of the work is in conformance with the Contract Documents. The Architect will conduct field reviews to determine the dates of substantial and final completion and issue a final Certificate for payment.

**2.6.6**   The Architect shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's responsibility under the Contract for Construction. The Architect shall not be responsible for the Contractors' schedules or failure to carry out the Work in accordance with the Contract Documents. The Architect shall not have control over or charge of acts or omissions of the Contractor, Subcontractors, or their agents or employees or of any other persons performing portions of the Work.

Nothing contained in this paragraph shall relieve the Architect from responsibility or liability to the Owner for any failure of Architect to perform in accordance with the terms of this Agreement or by standards of professional care.

**2.6.7**   The Architect shall at all times have access to the Work wherever it is in preparation or progress.

**2.6.8**   Except as may otherwise be provided in the Contract Documents or when direct communications have been specially authorized the Owner and Contractor shall communicate through the Architect. Communications by and with the Architect's consultants shall be through the Architect.

**2.6.9**   The Architect shall obtain and transmit to the Owner all Contractors' mechanics lien waivers and sworn statements listing subcontractors and materialmen before issuing Payment Certificates, and if such waivers or sworn statements have not been provided or the lien waivers are not sufficient, then

the Architect's Certificates shall be conditioned upon the receipt of such waivers or sworn statements. The Architect shall be entitled to rely on the Contractors' sworn statements.

**2.6.10** The Architect's certification for payment shall constitute a representation to the Owner, based on the Architect's observations at the site as provided in Subparagraph 2.6.5 and on the data comprising the Contractor's Application for Payment, that the Work has progressed to the point indicated and that, to the best of the Architect's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents.  The foregoing representations are subject to an evaluation of the Work for conformance with the Contract Documents upon Substantial Completion, to results of subsequent tests and inspections, to minor deviations from the Contract Documents correctable prior to completion and to specific qualifications expressed by the Architect. The issuance of a Certificate for Payment shall further constitute a representation that the Contractor is entitled to payment in the amount certified.  However, the issuance of a Certificate for Payment shall not be a representation that the Architect has (1) made exhaustive or continuous on site inspections to check the quality or quantity of the Work, (2) reviewed construction means, methods, techniques, sequences or procedures, (3) reviewed copies of requisitions received from Subcontractors and material suppliers and other data requested by the Owner to substantiate the Contractor's right to payment or (4) ascertained how or for what purpose the Contractor has used money previously paid on account of the Contract Sum.

**2.6.11** The Architect shall have authority and duty to reject Work which does not conform to the Contract Documents of which the Architect is or should be aware per the standard of care set out in Section 13.9 herein.  Whenever the Architect considers it necessary or advisable for implementation of the intent of the Contract Documents, the Architect will have authority to require additional inspection or testing of the Work in accordance with the provisions of the Contract Documents, whether or not such Work is fabricated, installed or completed.  However, neither this authority of the Architect nor a decision made in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of the Architect to the Contractor, Subcontractors, material and equipment suppliers, their agents or employees or other persons performing portions of the Work.  Any work rejected by the Architect shall be promptly reported in writing to the Owner.  No testing or inspection under this paragraph not of an emergency nature, costing in excess of $5,000 to the Owner shall be required by the Architect without the written consent of Owner.  Architect shall review with the Owner any such testing or inspections as soon as practicable.

**2.6.12** The Architect shall review and approve or take other appropriate action upon Contractor's submittals such as Shop Drawings, Product Data and Samples, but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents.  The Architect's action shall be taken with such reasonable promptness as to cause no delay in the Work or in the construction of the Owner or of separate contractors, while allowing sufficient time in the Architect's professional judgment to permit adequate review.  However, the Architect shall review all shop drawings which are submitted to the Architect and either approve, reject or approve with revisions such shop drawings and return them to the applicable contractor within 15 calendar days of receipt of the same, it being understood that timely progress is essential; provided, however, in the event that such shop drawings (because of complexity or volume) are not

reasonably capable of being reviewed within said 15 day period, Architect shall so notify the Owner and applicable contractor by phone and in writing immediately upon receipt of the shop drawings. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities or for substantiating instructions for installation or performance of equipment or systems designed by the Contractor, all of which remain the responsibility of the Contractor to the extent required by the Contract Documents. The Architect's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Architect, of construction means, methods, techniques, sequences or procedures. The Architect's approval of a specific item shall not indicate approval of an assembly of which the item is a component. When professional certification of performance characteristics of materials, systems or equipment is required by the Contract Documents, the Architect shall be entitled to rely upon such certification to establish that the materials, systems or equipment will meet the performance criteria required by the Contract Documents.

2.6.13 The Architect shall prepare Change Orders and Construction Change Directives, with supporting documentation and data if deemed necessary by the Architect and approved by the Owner as provided in Subparagraphs 3.1.1 and 3.3.3, for the Owner's approval and may authorize minor changes in the Work not involving an adjustment in the Contract Sum or an extension of the Contract Time which are not inconsistent with the intent of the Contract Documents. Any extension of Contract Time by the Architect under this paragraph shall be granted only after the written approval of the Owner. Change orders requesting some delays or additive change orders may be within the scope of the Criminal Bidding Act (720 ILCS 5/33E-9). The Architect shall process all change orders to which the statute applies in compliance with that Act. Any minor change in the Work ordered by the Architect under this paragraph shall be noted by the Architect and reported in writing to the Owner with the weekly field observation reports.

2.6.14 The Architect shall forward to the Owner all warranties and related documents received by the Architect and shall review such warranties and related documents and render a recommendation to the Owner as to whether they comply with the Contract Documents. Further, based upon submittals from the contractors, after completion of the Project the Architect shall review and transmit to the Owner record drawings required of the Contractor by the Owner. The Architect's review will be for accuracy and also for significant changes in the Work made during construction of which the Architect is or should be aware.

2.6.15 The Architect shall interpret and decide matters concerning performance of the Contractor under the requirements of the Contract Documents on written request of the Owner. The Architect's response to such requests shall be made with reasonable promptness and within any time limits agreed upon.

2.6.16 Architect shall make interpretations and decisions which are consistent with the intent of and reasonably inferable under the construction contract.

**2.6.17** The Architect's opinions on matters relating to aesthetic effect shall be reviewed with the Owner and the Owner's decision shall be final if consistent with the intent expressed in the Contract Documents.

**2.6.18** The Architect shall render written decisions within a reasonable time on all claims, disputes or other matters in question between the Owner and Contractor relating to the execution or progress of the Work as provided in the Contract Documents.

**2.6.19** The Architect's decisions on claims, disputes or other matters, including those in question between the Owner and Contractor, except for those relating to aesthetic effect as provided in Subparagraph 2.6.17, shall be subject to arbitration as provided in this Agreement and in the Contract Documents.

## ARTICLE 3

## ADDITIONAL SERVICES

### 3.1    GENERAL

**3.1.1**    The services described in this Article 3 are not included in Basic Services unless so identified in Article 13, and they shall be paid for by the Owner as provided in this Agreement, in addition to the compensation for Basic Services.  The services described under Paragraphs 3.2 and 3.4 shall only be provided if authorized or confirmed in writing by the Owner.  If services described under Contingent Additional Services in Paragraph 3.3 are required due to circumstances beyond the Architect's control, the Architect shall notify the Owner prior to commencing such services.  If the Owner deems that such services described under Paragraph 3.3 are not required, the Owner shall give prompt written notice to the Architect.  If the Owner indicates in writing that all or part of such Contingent Additional Services are not required, the Owner shall give prompt written notice to the Architect.  If the Owner indicates in writing that all or part of such Contingent Additional Services are not required, the Architect shall not provide such services.

### 3.2    PROJECT REPRESENTATION BEYOND BASIC SERVICES

**3.2.1**    If more extensive representation at the site than is described in Subparagraph 2.6.5 is required, the Architect shall provide one or more Project Representatives to assist in carrying out such additional on-site responsibilities.

**3.2.2**    Project Representatives shall be selected, employed and directed by the Architect, and the Architect shall be compensated therefor as agreed by the Owner and Architect.  The duties, responsibilities and limitations of authority of Project Representatives shall be as described in the edition of AIA Document B352 current as of the date of this Agreement, unless otherwise agreed.

**3.2.3**   Through the observations by such Project Representatives, the Architect shall provide further protection for the Owner against defects and deficiencies in the Work, but the furnishing of such Project Representatives shall not modify the duties, rights, responsibilities or obligations of the Architect as described elsewhere in this Agreement.

**3.3**          <u>CONTINGENT ADDITIONAL SERVICES</u>

**3.3.1**   Making revisions in Drawings, Specifications or other documents when such revisions are:

> **.1**      inconsistent with approvals or instructions previously given by the Owner, including revisions made necessary by adjustments in the Owner's program or Project budget;

> **.2**      required by the enactment or revision of codes, laws or regulations subsequent to the preparation of such documents; or

> **.3**      due to changes required as a result of the Owner's failure to render decisions in a timely manner.

**3.3.2**   Providing services required because of significant changes in the Project including, but not limited to, size, quality, complexity, the Owner's schedule, or the method of bidding or negotiating and contracting for construction, except for services required under Subparagraph 5.2.5, but not including services required to bring the project within the approved construction budget if the construction bids exceed the budget by more than ten percent (10%).

**3.3.3**   Preparing Drawings, Specifications and similar documentation and supporting data in connection with Change Orders and Construction Change Directives.

**3.3.4**   Providing services in connection with evaluating substitutions proposed by the Contractor and making subsequent revisions to Drawings, Specifications and other documentation resulting therefrom.

**3.3.5**   Providing consultation concerning replacement of Work damaged by fire or other cause during construction, and furnishing services required in connection with the replacement of such Work.

**3.3.6**   Providing services made necessary by the default of the Contractor, or by major defects or deficiencies in the Work of the Contractor that were not able to be prevented by the Architect in the reasonable performance of his duties hereunder, or by failure of performance of either the Owner or Contractor under the Contract for Construction, that was not able to be prevented by the Architect in the reasonable performance of his duties hereunder.

**3.3.7**   Providing services in evaluating an extensive number of claims submitted by the Contractor or others in connection with the Work.

**3.3.8**   Providing services in connection with public hearings other than meetings held by the school board, an arbitration proceeding or legal proceeding except where the Architect is party thereto.

**3.3.9**   Preparing documents for alternate, separate or sequential bids or providing services in connection with bidding, negotiation or construction prior to the completion of the Construction Documents Phase.

**3.3.10** Nothing contained in this Article shall release the Architect of responsibilities for furnishing services, without extra cost to the Owner, when such services are necessary due to Architect's error and do not result in benefit to the Owner.

**3.4**        **OPTIONAL ADDITIONAL SERVICES**

**3.4.1**   Providing analyses of the Owner's needs and programming the requirements of the Project.

**3.4.2**   Providing financial feasibility or other special studies.

**3.4.3**   Providing planning surveys, site evaluations or comparative studies of prospective sites.

**3.4.4**   Providing special surveys, environmental studies and submissions required for approvals of governmental authorities or others having jurisdiction over the Project.

**3.4.5**   Providing services relative to future facilities, systems and equipment.

**3.4.6**   Providing services to verify the accuracy of drawings or other information furnished by the Owner.

**3.4.7**   Providing coordination of construction performed by separate contractors or by the Owner's own forces and coordination of services required in connection with construction performed and equipment supplied by the Owner.

**3.4.8**   Providing services in connection with the work of a construction manager or separate consultants retained by the Owner.

**3.4.9**   Providing detailed estimates of Construction Cost.

**3.4.10** Providing detailed quantity surveys or inventories of material, equipment and labor.

**3.4.11** Providing analyses of owning and operating costs.

3.4.12 Providing interior design and other similar services required for or in connection with the selection, procurement or installation of furniture, furnishings and related equipment.

3.4.13 Providing services for planning tenant or rental spaces.

3.4.14 Making investigations, inventories of materials or equipment, or valuations and detailed appraisals of existing facilities.

3.4.15 Preparing a set of reproducible record drawings showing significant changes in the Work made during construction based on marked-up prints, drawings and other data furnished by the Contractor to the Architect. *As - Builds*

3.4.16 Providing assistance in the utilization of equipment or systems, preparation of operation and maintenance manuals, training personnel for operation and maintenance, and consultation during operation.

3.4.17 Providing services after issuance to the Owner of the final Certificate for Payment, or in the absence of a final Certificate for Payment, more than 60 days after the date of Substantial Completion of the Work.

3.4.18 Providing services of consultants for other than architectural, structural, mechanical and electrical engineering portions of the Project provided as a part of Basic Services.

3.4.19 Providing services not customarily furnished in accordance with generally accepted architectural practice unless otherwise provided for in this Agreement.

3.4.20 Architect will provide assistance to Owner as needed in connection with Owner's referendum to finance the project.

## ARTICLE 4

### OWNER'S RESPONSIBILITIES

4.1 To the best of its ability, the Owner shall provide full information regarding requirements for the Project, including a program which shall set forth the Owner's objectives, schedule, constraints and criteria, including space requirements and relationships, flexibility, expendability, special equipment, systems and site requirements.

4.2 With the assistance of the Architect, the Owner shall establish and update an overall budget for the Project, including the Construction Cost, the Owner's other costs and reasonable contingencies related to all of these costs.

- 11 -

4.3     The Owner shall designate a representative authorized to act on the Owner's behalf with respect to the Project. The Owner or such authorized representative shall render decisions in a timely manner pertaining to documents submitted by the Architect in order to avoid unreasonable delay in the orderly and sequential progress of the Architect's services.

4.4     The Owner shall furnish surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a written legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and necessary data pertaining to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All the information on the survey shall be referenced to a project benchmark. The documents referred to in this paragraph shall be provided only after receipt of the Architect's determination that such documents and tests are necessary.

4.5     The Owner shall furnish the services of geotechnical engineers when such services are requested by the Architect and approved in writing by the Owner. Such services may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, ground corrosion and resistivity tests, including necessary operations for anticipating subsoil conditions with reports and appropriate professional recommendations.

4.5.1   The Owner shall furnish the services of other consultants when such services are reasonably required by the scope of the Project and are requested by the Architect and approved by Owner.

4.6     The Owner shall furnish structural, mechanical, chemical, air and water pollution tests, tests for hazardous materials, and other laboratory and environmental tests, inspections and reports required by law or the Contract Documents.

4.7     The Owner shall furnish all legal, accounting and insurance counseling services that the Owner determines may be necessary at any time for the Project, including auditing services the Owner may require to verify the Contractor's Applications for Payment or to ascertain how or for what purposes the Contractor has used the money paid by or on behalf of the Owner; provided, however, nothing herein shall be construed to relieve Architect of its duties hereunder relating to such payments.

4.8     The services, information, surveys and reports required by Paragraphs 4.5 through 4.8 shall be furnished at the Owner's expense, and the Architect shall be entitled to rely upon the accuracy and completeness thereof.

4.9     Prompt written notice shall be given by the Owner to the Architect if the Owner becomes aware of any fault or defect in the Project or nonconformance with the Contract Documents.

Architect shall promptly notify the Owner of any like fault, defect or nonconformance by the Contractor of which he becomes aware.

4.10    The proposed language of certificates or certifications requested of the Architect and Architect's consultants shall, if requested, be submitted to the Architect for review and approval at least five (5) days prior to execution.  The Owner shall not request certifications that would require knowledge or services beyond the scope of this Agreement.

## ARTICLE 5

## CONSTRUCTION COST

5.1        **DEFINITION**

5.1.1    The Construction Cost shall be the Architect's latest estimated cost of construction or if a construction contract is executed the total price in the construction contract, as modified by any change orders.

5.1.2    The Construction Cost shall include the cost at current market rates of labor and materials furnished by the Owner and equipment designed, specified, selected or specially provided for by the Architect, plus a reasonable allowance for the Contractor's overhead and profit.  In addition, a reasonable allowance for contingencies shall be included for market conditions at the time of bidding and for changes in the Work during construction.

5.1.3    Construction Cost does not include the compensation of the Architect and Architect's consultants, the costs of the land, rights-of-way, financing or other costs which are the responsibility of the Owner as provided in Article 4.

5.2        **RESPONSIBILITY FOR CONSTRUCTION COSTS**

5.2.1    Evaluations of the Owner's Project budget, preliminary estimates of Construction Cost and detailed estimates of Construction Cost, if any, prepared by the Architect, represent the Architect's best judgment as a design professional familiar with the construction industry.  It is recognized, however, that neither the Architect nor the Owner has control over the cost of labor, materials or equipment, over the Contractor's methods of determining bid prices, or over competitive bidding, market or negotiating conditions.  Accordingly, the Architect cannot and does not warrant or represent that bids or negotiated prices will not vary from the Owner's Project budget or from any estimate of Construction Cost or evaluation prepared or agreed to by the Architect; provided, however, the Architect shall provide, at no additional cost to Owner, such services as are necessary to bring the projects within the approved construction budgets if the low bid(s) exceed the approved budgets by more than ten percent (10%).

5.2.2   No fixed limit of Construction Cost shall be established as a condition of this Agreement by the furnishing, proposal or establishment of a Project budget, unless such fixed limit has been agreed upon in writing and signed by the parties hereto.  If such a fixed limit has been established, the Architect shall be permitted to include contingencies for design, bidding and price escalation, to determine what materials, equipment, component systems and types of construction are to be included in the scope of the Project and to include in the Contract Documents· alternate bids to adjust the Construction Cost to the fixed limit.  Fixed limits, if any, shall be increased in the amount of an increase in the Contract Sum occurring after execution of the Contract for Construction.

5.2.3.   If the Bidding or Negotiation Phase has not commenced within 90 days after the Architect submits the Construction Documents to the Owner, any Project budget or fixed limit of Construction Cost shall be adjusted to reflect changes in the general level of prices in the construction industry between the date of submission of the Construction Documents to the Owner and the date on which proposals are sought.

5.2.4   If a fixed limit of Construction Cost (adjusted as provided in Subparagraph 5.2.3) is exceeded by the lowest bona fide bid or negotiated proposal, the Owner shall:

   .1     give written approval of an increase in such fixed limit;

   .2     authorize rebidding or renegotiating of the Project within a reasonable time;

   .3     if the Project is abandoned, terminate in accordance with Paragraph 8.3; or

   .4·    cooperate in revising the Project scope and quality as required to reduce the Construction Cost.

5.2.5   If the Owner chooses to proceed under Clause 5.2.4.4, the Architect, without additional charge, shall modify the Contract Documents as necessary to comply with the fixed limit, if established as a condition of this Agreement.  The modification of Contract Documents shall be the limit of the Architect's responsibility arising out of the establishment of a fixed limit.  The Architect shall be entitled to compensation in accordance with this Agreement for all services performed whether or not the Construction Phase is commenced.

## ARTICLE 6

### USE OF ARCHITECT'S DRAWINGS,
### SPECIFICATIONS AND OTHER DOCUMENTS

6.1   The Drawings, Specifications and other documents prepared by the Architect for this Project are instruments of the Architect's service for use solely with respect to this Project and, unless

otherwise provided, the Architect shall be deemed the author of these documents and shall retain all common law, statutory and other reserved rights, including the copyright. The Owner shall be permitted to retain copies, including reproducible copies, of the Architect's Drawings, Specifications and other documents for information and reference in connection with the Owner's use and occupancy of the Project. The Architect's Drawings, Specifications or other documents shall not be used by the Owner or others on other projects, for additions to this Project or for completion of this Project by others, unless the Architect is adjudged to be in default under this Agreement, except by agreement in writing and with appropriate compensation to the Architect.

**6.2**     Submission or distribution of documents to meet official regulatory requirements or for similar purposes in connection with the Project is not to be construed as publication in derogation of the Architect's reserved rights.

## ARTICLE 7

## ARBITRATION

**7.1**     Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or breach thereof may be subject to and decided by arbitration at the option of the parties and as set forth below. Arbitration under this agreement shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect, except that arbitration shall be used only where: 1) the parties mutually agree to arbitrate; and 2) the parties agree on a submission to arbitration which sets forth the precise nature of the dispute and the limits on the powers of the arbitrator. If the parties can not reach a mutually satisfactory agreement on the issues stated above, then disputes may be litigated subject to the all applicable rules of Illinois law and procedure.

**7.2**     Demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statutes of limitations.

**7.3**     No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner, an additional person or entity not a party to this Agreement, except by written consent containing a specific reference to this Agreement signed by the Owner, Architect, and any other person or entity sought to be joined. Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by the parties to this Agreement shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.

7.4    The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 8

## TERMINATION, SUSPENSION OR ABANDONMENT

8.1    This Agreement may be terminated by either party upon not less than seven (7) days' written notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.

8.2    If the Project is suspended by the Owner for more than thirty (30) consecutive days, the Architect shall be compensated for services performed prior to notice of such suspension.  If the Project is resumed, the Architect's compensation shall be equitably adjusted to provide for expenses authorized by Owner and incurred in the interruption and resumption of the Architect's services.

8.3    This Agreement may be terminated by the Owner upon not less than seven (7) days' written notice to the Architect in the event that the Project is permanently abandoned.

8.4    Failure of the Owner to make payments to the Architect in accordance with this Agreement shall be considered substantial nonperformance and cause for termination.

8.5    If the Owner fails to make payment when due to the Architect for services and expenses, the Architect may, upon seven (7) days' written notice to the Owner, suspend performance of services under this Agreement.  Unless payment in full is received by the Architect within seven (7) days of the date of service of the notice, the suspension shall take effect without further notice.  In the event of a proper suspension of services, the Architect shall have no liability to the Owner for delay or damage caused the Owner because of such suspension of services.  The Architect shall have the right to retain the documents and materials prepared by the Architect until payment in full is received.

8.6    This Section left blank.

8.7    Notwithstanding any other provisions of this Agreement, the Owner or Architect shall have the right to terminate this Agreement at any time, upon giving thirty (30) days' written notice of such termination to the other, for any reason deemed adequate in their sole discretion, and, in such event, the Architect is to be paid for his services in connection herewith an amount which bears the same ratio to the total fee otherwise payable under this Agreement as the services actually rendered hereunder by the Architect bear to the total services necessary for the full performance of this Agreement, and such payment, plus all reimbursable payments then due, shall be in full discharge of all rights of the Architect under this Agreement.  Without additional compensation, but provided the Owner has paid in full the total amount due the Architect described above, the Architect shall nevertheless after the termination make available for review and use by Owner and any Architect

subsequently retained by the Owner any drawings, plans, specifications and records which the Architect herein has prepared in connection with any Project. Owner shall indemnify and defend the Architect with respect to any claim against the Architect to the extent such claim arises out of the Owner's use of the drawings and specifications after termination of the Architect's services.

## ARTICLE 9

## MISCELLANEOUS PROVISIONS

**9.1**     Unless otherwise provided, this Agreement shall be governed by the law of the State of Illinois and any court proceeding filed on behalf of the Owner or Architect as a result of any allegation relating to or based on this contract shall be filed in the Circuit Court of Cook County, Illinois.

**9.2**     Terms in this Agreement shall have the same meaning as those in AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement.

**9.3**     Any notice, communication, request, reply, advice, report or designation (hereinafter severally and collectively called "notice") in this Agreement provided or permitted to be given, made or accepted by either party to the other must be in writing, unless otherwise specifically provided herein, and may be given or be served by depositing the same in the United States mail, addressed to the party to be notified, postage prepaid and registered or certified with return receipt requested, or by delivering the same in person to such party. Notice deposited in the mail in the manner hereinabove described shall be effective upon deposit in the United States mail as provided above. For purposes of notice, the addresses of the parties shall, until changed as hereinafter provided, be as follows:

> If to Owner:          Consolidated High School District 230
>                       15100 South 94th Avenue
>                       Orland Park, Illinois 60462
>                       Attn: Superintendent
>
> If to Architect:      VOA
>                       224 S. Michigan Avenue, Suite 1400
>                       Chicago, Illinois 60604-2595
>                       Attn: Paul Hansen

or at such other address as either party may have advised the others in writing in the manner set forth above.

**9.4 Waivers of Subrogation.**  If permitted by the Owner's and Architect's insurance companies, without penalties, the Owner and Architect waive all rights against (1) each other and any of their consultants, separate contractors, and agents and employees, each of the other; and (2) the Contractor and any of its subcontractors of any tier, their agents and employees, for damages caused

by fire or other perils to the extent covered by property insurance obtained pursuant to this Contract, the Owner/Contractor Agreement, or other property insurance applicable to the work, except such rights as they have to proceeds of such insurance held by the Owner as fiduciary. The Owner or Architect, as appropriate, shall require of the Contractor, subcontractors of any tier, agents and employees of any of them, by appropriate agreements, to execute similar waivers each in favor of the other parties enumerated herein. The policy shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity which would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

**9.5**   The Owner and Architect, respectively, bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such other party with respect to all covenants of this Agreement. Neither Owner nor Architect shall assign this Agreement without the written consent of the other.

**9.6**   This Agreement represents the entire and integrated agreement between the Owner and Architect and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Owner and Architect.

**9.7**   Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or Architect.

**9.8**   Unless otherwise provided in this Agreement, the Architect and Architect's consultants shall have no responsibility for the discovery, presence, handling, removal, or disposal of or exposure of persons to, hazardous materials in any form at the Project site, including but not limited to asbestos, asbestos products, lead based paint products, refrigerants, polychlorinated biphenyl (PCB) or other toxic substances. It is agreed and understood by the parties that conformance with the A.H.E.R.A. Regulations are not part of this Agreement. To the fullest extent permitted by law, the Owner shall indemnify and hold harmless the Architect, Architect's consultants and agents and employees of any of them from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, arising out of or resulting from performance of the Work in the affected area if in fact there is asbestos or polychlorinated biphenyl (PCB) that has not been rendered harmless, provided that such claim, damage, loss or expenses is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including loss of use resulting therefrom, but only to the extent caused in whole or in part by negligent acts or omissions of the Owner, anyone directly or indirectly employed by the Owner or anyone for whose acts the Owner may be liable.

**9.9**   The Architect shall have the right to include representations of the design of the Project, including photographs of the exterior and interior, among the Architect's promotional and professional materials. The Architect's materials shall not include the Owner's confidential or proprietary information if the Owner has previously advised the Architect in writing of the specific

information considered by the Owner to be confidential or proprietary. The Owner shall provide professional credit for the Architect on the construction sign and in the promotional materials for the Project.

**9.10**   The Architect shall include as part of the Bid and Contract Documents a certification for execution by each Bidder or Contractor that said Bidder or Contractor has a written sexual harassment policy in place in full compliance with 775 ILCS 5/2-105(A)(4).

**ARTICLE 10**

**INSURANCE**

**10.1**        **REQUIRED INSURANCE**

**10.1.2** Architect represents and warrants that it carries claims made basis Architect's Professional Liability Insurance which includes Errors and Omissions Insurance and Contractual Liability Insurance in the annual aggregate of $1,000,000.00 and will maintain Architect's Professional Liability Insurance which includes Errors and Omissions Insurance and Contractual Liability Insurance in the foregoing amount and in a form and with an insurance company reasonably acceptable to Owner. Such insurance shall be carried by the Architect throughout the duration of the contract.

**10.1.3** Before beginning service under this Agreement and at all times during which the foregoing insurance must be kept in force, Architect shall provide to the Owner, in a form approved by the Owner, a Certificate of Insurance evidencing the foregoing insurance. Each such Certificate shall expressly provide that the insurance evidenced by the Certificate shall not be canceled, non-renewed or modified without thirty (30) days' advance written notice by certified mail, returned receipt requested, to the Owner addressed as follows:

> Consolidated High School District 230
> 15100 South 94th Avenue
> Orland Park, Illinois 60462
> Attn: Superintendent

**10.2**        **INDEMNIFICATION**

**10.2.1** Architect further agrees to indemnify and hold harmless the School District, Owner and its members, employees, and agents, in their official and individual capacities, from any loss, including but not limited to, attorneys' fees and expenses of litigation, arising out, and to the extent, of any error, negligent act or omission or willful misconduct of the Architect in the performance of the Agreement.

Architect shall obtain additional insurance required by Owner provided such insurance is reasonably available and the premiums for such insurance are paid by Owner.

~ 19 ~

ARTICLE 11

PAYMENTS TO THE ARCHITECT

**11.1**        **DIRECT PERSONNEL EXPENSE**

**11.1.1** Direct Personnel Expense is defined as the direct salaries of the Architect's personnel engaged on the Project and the portion of the cost of their mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, pensions and similar contributions and benefits.

**11.2**        **REIMBURSABLE EXPENSES**

**11.2.1** Reimbursable Expenses are in addition to compensation for Basic and Additional Services and include expenses incurred by the Architect and Architect's employees and consultants in the interest of the Project, as identified in the following Clauses.

**11.2.1.1**        Expense in connection with out-of-town travel authorized by the Owner; long distance communications; and fees paid for securing approval of authorities having jurisdiction over the Project.

**11.2.1.2**        Expense of reproductions, postage and handling of Drawings, Specifications and other documents.

**11.2.1.3**        If authorized in advance by the Owner, expense of overtime work requiring higher than regular rates.

**11.2.1.4**        Expense of renderings, models and mock-ups requested by the Owner.

**11.2.1.5**        Expense of additional insurance coverage or limits, including professional liability insurance, requested by the Owner in excess of that required by this Agreement.

**11.2.1.6**        Expense of computer-aided design and drafting equipment time when used in connection with the Project as authorized by the Owner.

**11.3**        **PAYMENTS ON ACCOUNT OF BASIC SERVICES**

**11.3.1** An initial payment as set forth in Paragraph 12.1 is the minimum payment under this Agreement.

**11.3.2** Subsequent payments for Basic Services shall be made monthly and, where applicable, shall be in proportion to services performed within each phase of service, on the basis set forth in Subparagraph 12.2.2. All statements of services rendered must be submitted no later than the tenth

]

day of the month following the month in which such services are rendered and shall specify, in such detail as required by Owner, the exact services rendered and expenses to be reimbursed and showing separate amounts for each of the three school buildings.

**11.3.3** If and to the extent that the time initially established in Subparagraph 12.5.1 of this Agreement is exceeded or extended through no fault of the Architect, compensation for any additional services rendered during the additional period of time (that otherwise would not have been required) shall be computed in the manner set forth in Subparagraph 12.3.2.

**11.3.4** If any portions of the Projects are deleted or otherwise not constructed, compensation for those portions of the Project shall be payable as provided in Subparagraph 12.2.2 for completed phases and to the extent services are performed on those uncompleted phases, in accordance with the schedule set forth in Subparagraph 12.3.2 upon proper documentation by the Architect.

**11.4**     <u>PAYMENTS ON ACCOUNT OF ADDITIONAL SERVICES</u>

**11.4.1** Payments on account of the Architect's Additional Services and for Reimbursable Expenses shall be made monthly upon presentation of the Architect's statement of services rendered or expenses incurred (with separate amounts for each of the three school buildings) and upon submission of proper documentation when required by the Owner. Any such amounts due shall be separately stated and shall be clearly marked as to the fact that they are for Additional Services and/or Reimbursable Expenses. If not clearly identified as such, Architect waives any right to payment for any such amounts not clearly identified.

**11.5**     <u>PAYMENTS WITHHELD</u>

**11.5.1** No deductions shall be made from the Architect's compensation on account of penalty, liquidated damages or other sums withheld from payments to Contractors, or on account of the cost of changes in the Work other than those for which the Architect is responsible and do not result in benefit to the Owner.

**11.6**     <u>ARCHITECT'S ACCOUNTING RECORDS</u>

**11.6.1** Records of Reimbursable Expenses and expenses pertaining to Additional Services and services performed on the basis of a multiple of Direct Personnel Expense shall be available to the Owner or the Owner's authorized representative at reasonable times.

<u>ARTICLE 12</u>

<u>BASIS OF COMPENSATION</u>

The Owner shall compensate the Architect as follows:

**12.1**        BASIC COMPENSATION

**12.1.1 FOR BASIC SERVICES,** as described in Article 2, and any other services included in Article 13 as part of Basic Services, Basic Compensation shall be computed as follows:

> An amount equal to Five and Seventeen One-Hundredths percent (5.17%) of the cost of construction based upon the bid(s) received and approved by Owner for the project.

(Insert basis of compensation, including stipulated sums, multiples or percentages, and identify phases to which particular methods of compensation apply, if necessary.)

**12.1.2** Where compensation is based on a stipulated sum or percentage of Construction Cost, progress payments for Basic Services in each phase shall total the following percentage of the total Basic Compensation payable:

| | |
|---|---|
| Schematic Design Phase: | fifteen percent (15%) |
| Design Development Phase: | twenty percent (20%) |
| Construction Documents Phase: | forty percent (40%) |
| Bidding or Negotiation Phase: | five percent (5%) |
| Construction Phase: | twenty percent (20%) |

Total Basic Compensation:                    one hundred percent (100%)

**12.2**        COMPENSATION FOR ADDITIONAL SERVICES

**12.2.1 FOR PROJECT REPRESENTATION BEYOND BASIC SERVICES,** as described in Paragraph 3.2, compensation shall be computed as follows:

> 2.25 x Direct Personnel Expense

**12.2.2 FOR ADDITIONAL SERVICES OF THE ARCHITECT,** as described in Articles 3 and 13, other than (1) Additional Project Representation, as described in Paragraph 3.2, and (2) services included in Article 13 as part of Additional Services, but excluding services of consultants, compensation shall be computed as follows:

| Fixed Rate for Principals: | Hourly Rate: |
|---|---|
| Paul Hansen | $175.00/Hour |

Nick Luzietti                          $175.00/Hour
Rebel Roberts                          $175.00/Hour
Maribeth Schwind                       $175.00/Hour

Hourly Rate for Employees:

2.75 x Direct Personnel Expense

(Insert basis of compensation, including rates and/or multiples of Direct Personnel Expense for Principals and employees, and identify Principals and classify employees, if required. (Identify specific services to which particular methods of compensation apply, if necessary.)

**12.2.3 FOR ADDITIONAL SERVICES OF CONSULTANTS,** including additional structural, mechanical and electrical engineering services and those provided under Subparagraph 3.4.19 or identified in Article 13 as part of Additional Services, a multiple of **one (1)** times the amounts billed to the Architect for such services.

(Identify specific types of consultants in Article 13, if required.)

**12.3          REIMBURSABLE EXPENSES**

**12.3.1 FOR REIMBURSABLE EXPENSES,** as described in Paragraph 11.2, and any other items included in Article 13 as Reimbursable Expenses, a multiple of **1.05** times the expenses incurred by the Architect, the Architect's employees and consultants in the interest of the Project.

**12.4          ADDITIONAL PROVISIONS**

**12.4.1 IF THE BASIC SERVICES** covered by this Agreement have not been completed within 36 months of the date hereof, through no fault of the Architect, extension of the Architect's services beyond that time shall be compensated as provided in Subparagraphs 11.3.3 and 12.3.2.

**12.4.2** Payments are due and payable forty-five **(45)** days from the date of the Architect's invoice. Amounts unpaid **forty-five (45)** days after the invoice date shall bear interest at the legal rate authorized under the Local Government Prompt Payment Act.

**12.4.3** The rates and multiples set forth for Additional Services shall be annually adjusted in accordance with normal salary review practices of the Architect.

## ARTICLE 13

## OTHER CONDITIONS OR SERVICES

(Insert descriptions of other services, identify Additional Services included within Basic Compensation and modifications to the payment and compensation terms included in this Agreement.)

**13.1**   This Section left blank.

**13.2**   All designs are subject to approval of the Owner and all other parties required by law.

**13.3**   All directions, instructions, approvals and confirmations between the Owner and the Architect shall be in writing where they will result in a change in the Contract Sum.

**13.4**   The Architect shall conform the Drawings and Specifications with all applicable federal, state and local laws, statutes, ordinances, rules, regulations, orders or other legal requirements, including but not limited to all zoning, building, occupancy, environmental and land use laws, requirements, regulations and ordinances relating to the construction, use and occupancy of the Project (collectively "Governmental Requirements") existing at the time of preparation of the drawings and specifications. Architect shall use its best efforts to obtain at the earliest practicable time review of the Drawings and Specifications from any governmental agency having authority over the Project ("Code Authority"). Architect shall advise Owner of any aspect of the design of the Project where in the opinion of the Architect the Governmental Regulations are not clear and a definitive governmental interpretation cannot be obtained within a time period necessary for expeditious completion of construction documents. If after award of the building permit, modifications to the Drawings and Specifications are required because of an interpretation of the Code Authority, Architect shall make the required modifications, but the cost of such modifications shall be considered an Additional Service compensable under Paragraph 3.3.1; provided nothing contained herein shall relieve the Architect of its obligations to modify at its expense Plans and Specifications where the Architect has failed to prepare such in compliance with the existing applicable Governmental Requirements.

**13.5**   This Section left blank.

**13.6**   The Architect shall perform Basic and Additional Services as expeditiously as is consistent with professional skill and care and the orderly progress of the Work. Upon request of the Owner, the Architect shall submit for the Owner's approval a schedule for the performance of the Architect's services which shall be adjusted as required as the Project proceeds, and shall include allowances for periods of time required for the Owner's review and approval of submissions and for approvals of authorities having jurisdiction over the Project. This schedule, when approved by the Owner, shall not, except for reasonable cause beyond the control of the Architect, be exceeded by the Architect.

**13.7**   The Owner will name the Architect and its employees and consultants as named insureds under an Owner's Protective Policy. Owner will also require the Contractors responsible for

construction to purchase insurance to cover claims and expenses asserted against Architect, its employees and consultants for bodily injury, sickness, disease or death caused by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by them or anyone for whose acts any of them may be liable, including claims asserted under the Illinois Structural Work Act. Also, such insurance shall state that:

> "The coverage afforded the additional insureds shall be primary insurance for the additional insureds with respect to claims arising out of operations performed by or on behalf of the Contractor. If the additional insureds have other insurance which is applicable to the loss, such other insurance shall be on an excess or contingent basis. The amount of the company's liability under this insurance policy shall not be reduced by the existence of such other insurance."

Owner agrees that Architect shall insert provisions consistent with the requirements of this paragraph in the contract(s) for the project and failure of Architect to insert such provisions shall relieve Owner of any obligations or liability under this paragraph.

**13.8**   In order to minimize construction problems and change orders, Architect's standard practice requires the completion of detailed working drawings prior to bidding and entering into firm construction contracts. The Owner may authorize the Architect to accelerate the completion of the Work so that it is completed in a shorter time period than would normally be required. Owner understands that if construction or furnishings contracts are let prior to the completion of final working drawings and specifications, there may be increases in costs and change orders caused by the inability to coordinate Construction Documents, and the inability to make various decisions until after early bids are received and some construction undertaken. The Architect has no responsibility for these increases in costs or change orders.

**13.9**   Nothing contained in this Agreement shall require the Architect to exercise professional skill and judgment greater than that which can be reasonably expected from other Architects performing similar services to those required hereunder.

**13.10**   Additional projects may be added to this Standard Form of Agreement ("Basic Agreement") between Owner and Architect by a further written agreement between Owner and Architect. Such further agreements may contain specific modifications, deletions, or additions to the Basic Agreement which will be incorporated as modifications to the Basic Agreement for the additional Project only, unless otherwise specifically provided. Except to the extent of such specific modifications, deletions or additions, the Basic Agreement will govern the additional project.

**13.11**   By execution of this Agreement, Architect certifies that it has a written sexual harassment policy in place in full compliance with Section 2-105(A)(4) of the Illinois Human Rights Act, 775 ILCS 5/2-105(A)(4).

13.12   This Basic Agreement represents the full and complete understanding between the Owner and Architect and may be modified only by their mutual written agreement.

THIS AGREEMENT entered into as of the day and year first written above.

OWNER                                             ARCHITECT

_Sandra J. Jordan_                    _Michael J. Poole_
(Signature)                                       (Signature)

Sandra J. Jordan, President          MICHAEL A. TOOLS - PRESIDENT
Board of Education                        YOA ASSOCIATES INC.

(Printed name and title)                 (Printed name and title)

AJHA:SD230#6\ARCHITECT.CON