## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

UNITED STATES FIDELITY AND
GUARANTY COMPANY,

        Plaintiff,

    v.

VOA ASSOCIATES INC., LIBERTY
INTERNATIONAL UNDERWRITERS,
MICHAEL J.MADDEN and JEAN
MADDEN,

        Defendants.

Case No. 08 C 0862

Judge Kennelly

## VOA ASSOCIATES, INC.'S REDACTED MEMORANDUM IN OPPOSITION TO USF&G'S MOTION FOR SUMMARY JUDGMENT

Defendant, VOA ASSOCIATES, INC. ("VOA"), for its Redacted Memorandum in Opposition to United States Fidelity & Guaranty Company's ("USF&G") Motion for Summary Judgment Filed Under Seal states as follows:

### INTRODUCTION

This claim was brought by VOA's general liability insurance carrier who seeks to disavow itself of its duty to defend or indemnify VOA, its insured, in a bodily injury action brought by Michael and Jean Madden. After defending VOA for over three years without properly reserving its rights, and waiting until after VOA was hit with a $1.6 million judgment at the hands of defense counsel hired by USF&G to file a declaratory judgment action, USF&G now moves for summary judgment on the ground that it "no longer" owes a defense or indemnity coverage to VOA. (USF&G's Memorandum in Support of its Motion for Summary Judgment at 1). USF&G further requests this Court to find that there is no coverage available to VOA due to late notice of the occurrence, despite the fact that it never informed VOA that its notice was deficient. Apparently, USF&G takes the position that because its Assigned Defense Counsel, who was representing VOA pursuant to an undisclosed conflict of interest, was able to whittle down the case at trial to one of professional negligence through a motion for summary judgment, the professional services exclusion relieves USF&G of its duty to defend (and by extension,

indemnify) VOA.  USF&G's position is based on a fundamental misapplication of the duty to defend under Illinois law – USF&G's motion misconstrues how the duty to defend is triggered, what the duty to defend entails, and what circumstances terminate it.

In short, USF&G's Motion for Summary Judgment ignores the threshold issues before the Court: (1) Was USF&G's duty to defend triggered by the Third Amended Complaint?; (2) If so, did USF&G breach the duty to defend so as to estop it from raising coverage defenses, including policy exclusions and late notice?; and (3) Even if USF&G was not estopped from raising coverage defenses, does USF&G's duty to defend VOA continue through the trial and the appeal of the Madden Lawsuit?  As set forth below and in VOA's Memorandum in Support of its Motion for Summary Judgment, the answers to all of these questions is undeniably yes.  As such, USF&G's Motion for Summary Judgment must be denied, and VOA respectfully requests that this Court deny USF&G's Motion for Summary Judgment and grant VOA's Motion for Summary Judgment on Counts I and II.

## FACTUAL BACKGROUND

In June 1998, VOA contracted with Consolidated High School District 230 to provide architectural services in connection with, among other things, the design and construction of Amos Alonzo Stagg High School in Palos Hills, Illinois. (VOA's Statement of Additional Facts at ¶ 1).  On August 26, 2004, VOA was served with a Summons and Third Amended Complaint in a lawsuit entitled *Michael J. Madden and Jean Madden v. F.H. Paschen, et. al.*, Case No. 03 L 000433, in the Circuit Court of Cook County, Illinois ("Madden Lawsuit"). (VOA's Statement of Additional Facts at ¶ 2).  The Third Amended Complaint alleged that on August 19, 2002, Michael Madden was an employee of Amos Alonzo Stagg High School and was injured while working when he fell into an orchestra pit and/or hole in the floor. (VOA's Statement of Additional Facts at ¶ 3).  The Third Amended Complaint did not allege that VOA's design of the orchestra pit was negligent, but made general allegations against VOA related to construction site safety, including failure to warn, failure to erect signs, failure to barricade or failure to properly inspect. (VOA's Statement of Additional Facts at ¶ 4).  VOA tendered the defense of the Third Amended Complaint to its General Liability carrier, USF&G, on August 31, 2004. (VOA's Statement of Additional Facts at ¶ 11).  USF&G reviewed the allegations of the Third Amended Complaint when it received it. (VOA's Statement of Additional Facts at ¶ 12).  On or

about December 8, 2004, USF&G retained the law firm of Fratterigo, Beranek, Feiereisel & Kasbohm ("Assigned Defense Counsel" or "Beranek") to represent the interests of VOA. (VOA's Statement of Additional Facts at ¶ 13).  On December 16, 2004, Beranek filed an Appearance and Answer on behalf of VOA, and between December 2004 and May 2005, engaged in discovery and filed a Motion for Summary Judgment. (VOA's Statement of Additional Facts at ¶ 14).

USF&G claims that it sent a Reservation of Rights letter to VOA on May 4, 2005, and attaches a letter produced by Assigned Defense Counsel in this litigation in support of its claim ("May 2005 ROR Letter"). (VOA's Statement of Additional Facts at ¶ 15).  The May 2005 ROR states that USF&G is reserving its rights to deny coverage based on the Professional Services Exclusion in the USF&G Policy. (VOA's Statement of Additional Facts at ¶ 15).  VOA never received the May 2005 ROR Letter. (VOA's Statement of Additional Facts at ¶ 16)  Moreover, the May 2005 ROR Letter refers to policy language and exclusions not contained in the USF&G Policy and inaccurate information related to policy limits. (VOA's Statement of Additional Facts at ¶¶ 18-20).

On August 16, 2006, a Fourth Amended Complaint ("Fourth Amended Complaint") was filed by Plaintiff in the Madden Lawsuit. (VOA's Statement of Additional Facts at ¶ 21).  For the first time, Plaintiff alleged that VOA "failed to design the orchestra pit with a permanent or temporary cover" and permitted the school district to use the orchestra pit when it was not safe to do so without a cover. (Id.)  Assigned Defense Counsel advised USF&G on September 1, 2006 that Plaintiff filed a Fourth Amended Complaint raising new allegations of negligent design. (VOA's Statement of Additional Facts at ¶ 22).  **REDACTED.**

Following the filing of the Fourth Amended Complaint, Assigned Defense Counsel filed a Motion for Summary Judgment, and on March 6, 2007, successfully dismissed all of the general allegations, which were the acknowledged covered claims, leaving only allegations of professional negligence related to design.  (VOA's Statement of Additional Facts at ¶¶ 24-25). USF&G never attempted to reserve its rights related to the allegations of negligent design of the pit cover contained in the Fourth Amended Complaint until June 5, 2007 ("June 5, 2007 Letter"). (VOA's Statement of Additional Facts at ¶ 26).  The June 5, 2007 Letter did not disclose any conflict of interest, failed to advise VOA of its right to independent counsel, and failed to adequately inform VOA of the potential impact of the reservation of rights. (Id.).

The Madden Lawsuit went to trial in June 2007 on the design claims against VOA contained in the Fourth Amended Complaint. (VOA's Statement of Additional Facts at ¶ 27).   A verdict was returned against VOA on June 27, 2007 in the amount of $1,606,000.00.

Following the verdict, Assigned Defense Counsel filed a Post Trial Motion on behalf of VOA wherein he argued unsuccessfully for a new trial, contending that notwithstanding the trial court's March 6, 2006 Order, the case Madden actually prosecuted against VOA at trial was a construction negligence case, and that Madden was permitted to present evidence regarding construction site safety and construction codes at trial. (VOA's Statement of Additional Facts at ¶ 29).   USF&G is currently funding the appeal of the Madden Judgment, but VOA is now being represented by its choice of counsel. (VOA's Statement of Additional Facts at ¶ 30).

## ARGUMENT

In USF&G's Memorandum of Law in Support of its Motion for Summary Judgment, USF&G requests this Court to turn the analysis of whether USF&G has a duty to defend VOA in the Madden Lawsuit on its head.   Without any apparent sense of irony, USF&G does not acknowledge any possibility of estoppel, and instead argues that this Court should look to extrinsic evidence of USF&G's compromised defense of VOA to find that USF&G's does not have a duty to defend VOA.   It is not clear whether USF&G is arguing that its duty to defend VOA terminated at the time that its Assigned Defense Counsel obtained the ruling on VOA's motion for summary judgment in the underlying case dismissing the general negligence claims, or whether it is arguing that the ruling on summary judgment is proof that USF&G never had a duty to defend VOA in the first place.   As set forth below, neither position has legal support because it requires the court to look beyond the complaints to decide an issue still in controversy in the underlying litigation – namely, whether an architect can held liable in general negligence for duties outside of its professional services agreement.

In Utica Mutual Ins. Co. v. David Agency Ins, Inc., 327 F. Supp.2d 922, 926-27 (N.D. Ill. 2004), this Court set forth the guiding principles for whether or not USF&G has a duty to defend VOA in the Madden Lawsuit.   In that case, this Court cited to long standing Illinois law regarding an insurer's duty to defend, and stated that the "court must compare the allegations of the underlying complaint to the language of the insurance policy … [and] construe the allegations … liberally in favor of the insured, *especially with regard to exclusionary clauses, …*

4

[in order] …to determine if the allegations fall within, or potentially within, the scope of coverage under the policy." (emphasis added). In <u>Utica Mutual,</u> this Court further reiterated that, once triggered, "an 'insurer's duty to defend ... is so fundamental an obligation that a breach of that duty constitutes a repudiation of the [insurance]contract'" and bars the insurer from raising policy defenses to coverage. <u>Id.</u> at 928 *quoting* <u>Employers Ins. Of Wausau v. Ehlco Liquidating Trust</u>, 186 Ill.2d 127, 150, 708 N.E.2d 1122, 1135 (Ill. 1999)

Moreover, an insurer's duty to defend extends through the appeal of the underlying litigation as long as any potential for coverage remains. <u>See Illinois Founders Ins. Co. v. Guidash</u>, 248 Ill. App. 3d 116, 121, 618 N.E.2d 436, 441 (1st Dist. 1993) (obligation of good faith and fair dealing obligates insurer to prosecute a reasonable appeal on behalf of an insured); <u>Valley Forge Insurance Co. v. Swiderski Electronics, Inc.</u>, 359 Ill App. 3d 872, 891, 834 N.E.2d 562, 577 (2d Dist. 2005) (an insurer remains obligated to defend an insured so long as there remains *any question* as to whether the underlying claims are covered by the policy) (emphasis in original) *citing* <u>General Agents Ins. Co. v. Midwest Sporting Goods Co.</u>, 215 Ill.2d 146, 828 N.E.2d 1092 (Ill. 2005). Importantly, once an insurer undertakes a defense, the duty to defend continues throughout the litigation until final judgment, and an insurer is not entitled to rely upon extrinsic evidence of a matter which is still at issue in the underlying litigation to demonstrate that it does not have a duty to defend. <u>See Maryland Casualty v. Peppers</u>, 64 Ill.2d 187, 197, 355 N.E.2d 24, 30, (Ill. 1976); <u>Bonnie Owen Realty Inc. v. Cincinnati Ins. Co.</u>, 283 Ill App. 3d 812, 819, 670 N.E.2d 1182, 1187 (5th Dist.1996); <u>Thornton v. Paul</u>, 74 Ill.2d 132, 159, 384 N.E.2d 335, 346 (Ill. 1979).

USF&G'S further contention that no coverage is available to VOA for the Madden Lawsuit because it gave USF&G late notice of the occurrence also fails. USF&G breached its duty to defend VOA and is therefore estopped from raising any coverage defenses. Even if USF&G had not breached its duty to defend VOA, it never reserved its right to deny coverage based on late notice and has therefore waived it. <u>See Willis Corroon Corp. v. The Home Insurance Co.</u>, 203 F.3d 449, 453 (7th Cir. 2000); <u>Allstate Ins. Co. v. Keller</u>, 17 Ill.App.2d 44, 50, 149 N.E.2d 482, 485 (1st Dist. 1958). Finally, even if the coverage defense of late notice was not subject to both estoppel and waiver, the record in this case establishes that VOA's notice to USF&G was in fact reasonable; or, at the very least, there is sufficient evidence in the record to raise a fact question requiring a denial of USF&G's Motion for Summary Judgment.

5

I.    **THE THIRD AMENDED COMPLAINT TRIGGERED USF&G'S DUTY TO DEFEND VOA AND USF&G BREACHED THAT DUTY SO AS TO ESTOP IT FROM RAISING COVERAGE DEFENSES.**

There can be no doubt here that USF&G's duty to defend VOA was triggered by the Third Amended Complaint because it alleged general negligence covered by the USF&G policy. (VOA's Statement of Additional Facts at ¶¶ 3-4).   Because the duty to defend VOA was triggered by the Third Amended Complaint, Illinois law is clear that any breach by USF&G's of its duty to defend VOA estops it from raising any defenses to coverage, including policy exclusions or late notice.

A.    **The Third Amended Complaint Triggered USF&G's Duty to Defend Because It Sought Damages For Injury That Were Allegedly Caused By VOA's General Negligence And Not By Acts Undertaken Pursuant to the Professional Services Agreement.**

There is no dispute that at the time that VOA tendered the defense of the Madden Lawsuit to USF&G, and USF&G undertook the defense of VOA, the operative complaint in the Madden Lawsuit was the Third Amended Complaint. (VOA's Statement of Additional Facts at ¶¶ 2-3, 11-13).   USF&G acknowledges that the Third Amended Complaint sought damages for physical injuries the plaintiff sustained when he fell into the orchestra pit. (VOA's Statement of Additional Facts at ¶ 3).   As such, the Madden Lawsuit sought damages from VOA for "bodily injury" as the term is defined in the USF&G Policy.

While it is true that the USF&G Policy contains an exclusion for injuries which are "due to rendering or failure to render any professional service" (USF&G's Rule 56.1 Statement at ¶ 10), the Third Amended Complaint did not allege that plaintiff's injuries were due to VOA acting in its professional capacity as the architect. (VOA's Statement of Additional Facts at ¶ 5). The Third Amended Complaint does not allege that VOA negligently designed the pit where plaintiff fell, and did not even contain an allegation that VOA designed the orchestra pit. (VOA's Statement of Additional Facts at ¶ 6).   The Third Amended Complaint made general allegations against VOA related to construction site safety– allegations that, if true, would not be the result of VOA providing professional services because construction site safety obligations were excluded from its Professional Services Agreement. (USF&G's Rule 56.1 Statement at ¶ 20). Instead, allegations related to construction site safety would be the result of general negligence,

6

which is not excluded by the professional services exclusion of the USF&G Policy. Even if some of the general allegations could potentially be interpreted to include professional services, Illinois law is clear that an insurer's duty to defend arises even if only some of the allegations, or some of the theories presented by plaintiff, are within the potential coverage of the policy. <u>See</u> <u>General Agents Ins. Co.</u>, 215 Ill.2d at 155, 828 N.E.2d at 1098.

USF&G cannot reasonably deny that at the time it undertook VOA's defense, at least some of the allegations contained in the Third Amended Complaint were potentially covered by the USF&G Policy. Thus, there is no dispute that the Third Amended Complaint triggered USF&G's duty to defend VOA.

**B.     USF&G Breached Its Duty To Defend VOA And Is Estopped From Raising Coverage Defenses.**

Once the duty to defend VOA was triggered by the Third Amended Complaint, USF&G was obligated to provide an adequate defense to VOA against all claims; or, if it believed that one or more claims made against VOA were not covered by the USF&G Policy and it wished to preserve its right to deny coverage, it had two choices: (1) defend the lawsuit under a proper reservation of rights, or (2) deny coverage and secure a declaratory judgment about its obligations under the policy prior to trial. A failure to do either bars the insurer from asserting its right to deny coverage. <u>See</u> <u>Employers Ins. Of Wausau v. Ehlco Liquidating Trust</u>, 186 Ill.2d 127, 150, 708 N.E.2d 1122, 1134-35 (Ill. 1999).

In order to be a proper reservation of rights, the reservation must be timely. <u>See</u> <u>Mobil</u> <u>Oil Corp.</u>, 288 Ill App. 3d at 755, 681 N.E.2d at 560 (insurer was estopped from denying coverage after it failed to make specific reference to a conflict of interest to its insured in its initial reservation of rights letter at the outset of litigation and waited until the middle of pre-trial litigation). The reservation of rights letter must also inform the insured of the potential policy defense which might preclude coverage and/or any conflict of interest raised by the insurer's assumption of the insured's defense and how the conflict might impact that defense. <u>See</u> <u>Utica</u> <u>Mutual Ins. Co.</u>, 327 F. Supp.2d at 930 ("Bare notice of a reservation of rights is insufficient unless it makes specific reference to the policy defense ...  and to the potential conflict of interest.").

As set forth fully in VOA's Memorandum in Support of Its Motion for Summary Judgment and fully incorporated here (Docket No. 85), USF&G breached its duty to defend

VOA in the Madden Lawsuit because it did not properly reserve its rights to deny coverage as to either the Third Amended Complaint or the Fourth Amended Complaint.  It is undisputed that USF&G controlled the defense with its choice of counsel for 5 months before it even attempted to inform VOA that it was reserving its rights under the Professional Services Exclusion to deny coverage for damages arising from the Third Amended Complaint. (VOA's Statement of Additional Facts at ¶¶ 13-15).  The belated reservation of rights as to the Third Amended Complaint upon which USF&G relies was never received by VOA and no record of it is contained in USF&G's file. (VOA's Statement of Additional Facts at ¶¶ 15-17).  In any case, the only copy of the letter found in the file of defense counsel assigned by USF&G, is riddled with inaccuracies, and at some points, gibberish. (VOA's Statement of Additional Facts at ¶¶ 15, 18-20).  Thus, USF&G's attempt to reserve its rights as to the Third Amended Complaint was neither adequate nor timely.

USF&G's attempted reservation of rights as to the design allegations raised for the first time in the Fourth Amended Complaint fared no better.  **REDACTED.** USF&G did not inform VOA that it was reserving its rights under the Professional Services Exclusion to deny coverage for damages arising from the additional allegations contained in the Fourth Amended Complaint until 10 days before trial, and *after its assigned defense counsel successfully dismissed all of the allegations of general negligence*, which were the only acknowledged covered claims, on a motion for summary judgment. (VOA's Statement of Additional Facts at ¶¶ 24-27).  This belated reservation of rights as to the Fourth Amended Complaint failed to explain how USF&G's reservation of rights might impact trial strategy, and did not inform VOA that it was entitled to independent counsel paid for by USF&G. (VOA's Statement of Additional Facts at ¶¶ 26).

Because USF&G defended VOA without issuing a proper reservation of rights as to the allegations contained in the Third or Fourth Amended Complaint, it is barred from asserting its right to deny coverage in this action.  Thus, USF&G's arguments that its duty to defend or indemnify VOA is precluded due to the professional services exclusion or late notice must fail, and do not even need to be considered by this Court.

## II.   USF&G'S DUTY TO DEFEND CONTINUES THROUGH THE APPEAL AND CANNOT BE DISPUTED BY EXTRINSIC EVIDENCE OF MATTERS STILL AT ISSUE IN THE UNDERLYING LITIGATION.

Irrespective of any estoppel created by USF&G's breach of its duty to defend, the allegations potentially covered by the USF&G Policy are still at issue so that USF&G has a continuing duty to defend VOA through appeal of the judgment in the Madden Lawsuit. Incredibly, USF&G does not acknowledge that the construction claims, which are covered by the USF&G Policy, are still at issue, or even potentially at issue.  In support of its argument that it has no duty to defend, USF&G asks this Court to base its decision on whether USF&G has a duty to defend on extrinsic evidence that is still being hotly contested in the underlying action. USF&G's position is entirely unsupportable, as even it acknowledges that extrinsic evidence that is offered to prove an issue crucial to the determination of the underlying suit may not be considered when making a determination concerning whether an insurer has a duty to defend.

A.     **USF&G's Duty To Defend VOA Continues Through The Appeal Because The Construction Claims Are Still At Issue.**

A critical legal principle never acknowledged by USF&G in its motion for summary judgment is that an insurer's duty to defend continues through final judgment so long as there is any possibility that some of the claims in the complaint might be covered.  See Illinois Founders Ins. Co.. 248 Ill. App.3d at121, 618 N.E.2d at 441; Valley Forge Insurance Co., 359 Ill App. 3d at 891, 834 N.E.2d at 577.  There are two reasons why it would be absolutely absurd for USF&G to argue that the potentially covered claims in the Madden Lawsuit, which are the general negligence claims that USF&G refers to in its motion for summary judgment as "construction counts" (USF&G's Motion for Summary Judgment at 12), are no longer at issue in this case so as to alleviate its duty to defend VOA.

First, the "construction counts" were contained in both the Third and the Fourth Amended Complaints. (VOA's Statement of Additional Facts at ¶ 21).  The Fourth Amended Complaint added allegations of negligent design, but it did not delete the construction claims, and the addition of the design claims certainly did not preclude the construction claims.  Both allegations could logically be true -- VOA could have negligently designed the orchestra pit pursuant to its Professional Services Agreement, and also committed general negligence by creating unsafe conditions at the construction site.  Of course, the question of whether both theories of recovery are supported by the evidence in the underlying case, including the Professional Services Agreement, is another matter, but the court does not consider the strength of the underlying case against an insured in assessing the duty to defend, only the allegations

themselves. See General Agents Ins. Co. of America, inc. v. Midwest Sporting Goods Co., 215 Ill.2d 146, 155, 828 N.E.2d 1092, 1098 (Ill. 2005) ("If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent"). Thus, the construction counts remain in the suit, and USF&G has a duty to defend VOA through the appeal.

Second, notwithstanding the March 6, 2007 Order, the case Madden actually prosecuted against VOA at trial was a *construction negligence case*, as conceded by USF&G's assigned defense counsel, Kurt Beranek in his post trial motion. (VOA's Statement of Additional Facts at ¶ 29). At trial, Madden was permitted to present evidence regarding construction site safety and construction codes. (Id.) Thus, despite USF&G's and its assigned defense counsel's best efforts to limit the case against VOA to one of professional negligence (claims which USF&G conveniently argue are excluded by the USF&G Policy), Madden chose to prosecute his case against VOA at least in part as a construction negligence case, and *he won.* (VOA's Statement of Additional Facts at ¶¶ 28-29). USF&G not only has a continuing obligation to defend VOA, but might very well be obligated to indemnify VOA for the Madden Judgment, even if it is not estopped from asserting policy defenses.[1]

**B.    The Duty To Defend Cannot Be Disputed By Extrinsic Evidence of Matters Still at Issue in the Underlying Litigation.**

In support of its argument that it has no duty to defend VOA, USF&G argues that it is permissible for this court to consider two main pieces of "extrinsic evidence": (1) the trial court's March 6, 2007 Order granting summary judgment as to VOA's liability under (Restatement of Torts) §§ 343 and 414 (general negligence); and (2) VOA's Professional Services Agreement. USF&G asks this Court to consider this evidence and conclude that VOA's duties were limited to professional architectural services. It is not feasible for this Court to come to that conclusion without analyzing the Professional Services Agreement and deciding a critical issue in the underlying litigation- did VOA's Professional Services Agreement limit its duties on the job site so as to preclude claims against it based on general negligence? Apparently, Madden has a theory that the Professional Services Agreement does not preclude general negligence claims.

---

[1] Because the question related to what type of evidence and claims remain in the case against VOA has not been decided by the appellate court, the question of whether USF&G has a duty to indemnify VOA for the Madden Judgment irrespective of the estoppel is not yet ripe.

The March 6, 2007 Order dismissing claims brought under the Restatement of Torts crystallizes the fact that as of the Fourth Amended Complaint, Madden was proceeding against VOA in the underlying litigation under both general and professional negligence theories. (USF&G's Rule 56.1 Statement at ¶ 38). While at least some of the general negligence claims were ostensibly dismissed, the case Madden Lawsuit is still being adjudicated, so the viability of those claims is still at issue. (VOA's Statement of Additional Facts at ¶ 30).

In order for this Court to find that USF&G has no duty to defend VOA, it would have to find that the only claims that can be brought against VOA are those limited by the Professional Services Agreement which allegedly are excluded by the language of the USF&G professional services exclusion.[2] This finding would impermissible impact Madden's case, which relied in part on evidence related to construction site safety outside of VOA's scope of work set forth in its Professional Services Agreement (VOA's Statement of Additional Facts at ¶ 29). It is not permissible for a court in a declaratory judgment action to determine an ultimate fact in the underlying action. In Maryland Casualty, 64 Ill.2d at 197, 355 N.E.2d at 30, the court held that a ruling in a declaratory judgment action which estops the plaintiff from raising one of his theories of relief in the underlying case is improper. The same result is compelled here. See also Bonnie Owen Realty Inc., 283 Ill App. 3d at 819, 670 N.E.2d at 1187; Thornton v. Paul, 74 Ill.2d at 159, 384 N.E.2d at 346 (inappropriate for court to determine a crucial issue in an ancillary proceeding with the plaintiff and the defendant in the underlying action aligned on the same side as defendants in the declaratory judgment action).

### III.   EVEN IF USF&G WAS NOT ESTOPPED FROM RAISING THE COVERAGE DEFENSE OF LATE NOTICE, USF&G HAS WAIVED IT BY FAILING TO RESERVE ITS RIGHTS OR FILING A DECLARATORY JUDGMENT ACTION PRIOR TO JUDGMENT.

---

[2] It would likely not be proper for any court, especially a court ruling in a declaratory judgment action, to make such a determination based on the Professional Service Agreement alone. For instance, one can certainly imagine a scenario where an architect goes beyond the scope of a Professional Services Agreement like the one here and negligently removes a safety barricade while on site. Because this would be an action taken outside the scope of the architect's contract, it would be an act of general negligence, and would not be excluded under a professional services exclusion like the one at issue here, which excludes coverage for damages "due to the rendering or failure to render" professional services. (USF&G's Rule 56.1 Statement at ¶ 10).

As set forth above, USF&G's breach of its duty to defend VOA estops its from raising coverage defenses, including a defense of late notice. See Employers Ins. Of Wausau, 186 Ill.2d at 154, 708 N.E.2d at 1136 (no exception to the estoppel doctrine for late-notice defenses). Because USF&G is estopped from asserting coverage defenses, its late notice defense fails along with its policy exclusion defense.

Even if USF&G was not estopped from asserting late notice due to its breach of duty to defend VOA, USF&G waived the late notice defense by failing to either reserve its rights on that issue or to file a timely declaratory judgment action. See Employers Ins. Of Wausau, 186 Ill.2d at 150, 708 N.E.2d at 1135. USF&G contends that it sent two reservation of rights letters, but neither one of them reserved USF&G's rights to raise late notice as a coverage defense (VOA's Statement of Additional Facts at ¶¶ 15, 26), despite the fact that USF&G has known for years the facts upon which it relies to support its late notice defense. USF&G knew at the time it was sent the Third Amended Complaint in 2004 that Madden's accident allegedly occurred in 2002. (VOA's Statement of Additional Facts at ¶¶ 3, 12). USF&G also knew in February 2006 that VOA employee Al Migon was told about an accident at the orchestra pit sometime after it happened because Mr. Migon testified to that fact while represented by USF&G's Assigned Defense Counsel Kurt Beranek in the underlying case. (VOA's Statement of Additional Facts at ¶ 8). Beranek sent USF&G a summary of that deposition in March 2006. (Id.)

Despite the fact that USF&G had this information, USF&G never raised it, and VOA never had any reason to believe that USF&G would claim late notice as a defense to coverage until this declaratory judgment action was filed in February 2008, 8 months after the Madden trial. USF&G's failure to reserve its rights or file a declaratory judgment action prior to the Madden trial makes it untimely as a matter of law. See Willis Corroon Corp., 203 F.3d at 453 citing Employers Ins. Of Wausau, 186 Ill.2d at 154, 708 N.E.2d at 1138 (declaratory judgment action brought after the underlying action has been resolved by a judgment or settlement is untimely as a matter of law). At the very least, USF&G's failure to reserve its rights or file a declaratory action following the receipt of the same information it now relies upon to disclaim coverage constitutes a waiver of that defense. See Allstate Ins. Co. v. Keller, 17 Ill.App.2d at 50, 149 N.E.2d at 485.

IV. **EVEN IF USF&G HAD NOT WAIVED ITS DEFENSE OF LATE NOTICE, THE RECORD ESTABLISHES THAT VOA'S NOTICE TO USF&G WAS REASONABLE; OR, AT THE VERY LEAST, THERE EXISTS A FACT QUESTION PRECLUDING USF&G'S MOTION FOR SUMMARY JUDGMENT.**

In its rather half-hearted late notice argument, USF&G correctly cites Country Mutual Insurance Co. v. Livorsi Marine, Inc., 222 Ill.2d 303,312, 856 N.E.2d 338, 343 (Ill. 2006), for the proposition that a notice provision in an insurance policy requires an insured to provide reasonable notice, with reasonableness to be determined by the facts and circumstances of each case. USF&G further sets forth the factors that Illinois courts consider when assessing reasonableness of notice, including: (1) the language of the notice provision,; (2) the insured's level of sophistication in insurance matters; (3) the insured's awareness of an event that may trigger coverage; (4) the insured's diligence; and (5) and the presence or absence of prejudice to the insurer. Id. USF&G acknowledges that the test is whether a reasonably prudent person "would foresee a lawsuit" and contact his liability carrier. Twin City Fire Ins. Co. v. Old World Trading Co., 266 IllApp.3d 1, 7,639 N.E.2d 584, 588 (1st Dist. 1993).

Inexplicably, USF&G does not analyze any of the factors it cites, but rather argues that "VOA's two –year delay in notifying USF&G was late as a matter of law, and there can be no reasonable excuse." (USF&G's Memorandum in Support of Motion for Summary Judgment at 14). However, it is well settled that a mere passage of time does not render a notice to an insurer unreasonable. See Commercial Underwriters Ins. v. Aires Environmental Services, Ltd., 259 F.3d 792, 795-96 (7th Cir. 2001) ("lengthy passage of time is not an absolute bar to coverage provided that the insured has a justifiable excuse for the delay") quoting Sonoco Bldgs, Inc. v. Am. Home Assurance Co., 877 F.2d 1350, 1356 (7th cir. 1989). See also Atlanta International Ins. Co. v. Checker Taxi Co., 214 Ill. App. 3d 440, 445, 574 N.E.2d 22, 26 (1st Dist. 1991) (two-year delay between the accident and notice to the excess insurance company was not unreasonable); Barrington Cons. High School v. The American Ins. Co., 58 Il..2d 278, 319 N.E.2d 25, 27-28 (Ill. 1974) (four year delay in notice where insured had no expectation of a suit was reasonable). USF&G's contention that VOA's notice was late as a matter of law fails and its motion for summary judgment due to late notice must be denied.

In fact, the record in this case establishes that VOA's notice to USF&G was reasonable because VOA had no reason to believe that it would be sued by Madden.  VOA employee Al

Migon testified at the time that Madden's accident occurred, he was attending the job site on a weekly basis only. (VOA's Statement of Additional Facts at ¶ 7). He testified that he first heard about Madden's fall at a meeting with the representative for the school district after it happened, but cannot recall the exact timing. (VOA's Statement of Additional Facts at ¶ 8). However, he did not inform anyone at VOA about the accident because he did not believe it was an issue that concerned VOA – the accident happened on school grounds. (VOA's Statement of Additional Facts at ¶ 9). No one at VOA was aware that a lawsuit had been filed by Madden against anyone prior to it being served with the Third Amended Complaint in August 2004. (VOA's Statement of Additional Facts at ¶ 10).

In American Country Ins. Co. v. Efficient Construction Corp., 225 Ill. App. 3d 177, 587 N.E.2d 1073 (1st Dist. 1992), the court found that notice was reasonable where an insured waited until after it was sued to give notice of an accident, even though it knew about the accident 8 months previously. In so finding, the court observed that on the date of the accident, the insured was not on the job site, and none of the insured employee's were involved. Id. at 181. The president of the insured's company was not informed of the accident when it occurred. Id. In finding that notice was reasonable, the court noted that "an insured is not required to report every injury it is aware of, it is only required to report those injuries which a reasonable person would understand is likely to lead to a claim, and this is especially so where, as here, the insured is not a direct participant in the injury." Id. at 181-82.

Similarly in Aires, 259 F.3d at 799, the court found that an insured acted reasonably in waiting to give notice to its insurer until a claim was filed against it, even though the insured was aware that a lawsuit had been filed against other parties two years previously. The court noted that the insured was not directly involved in the accident, and was not in charge of safety on the job site where the accident occurred, and as such, would not expect to be held responsible for each and every accident that occurred there. Id. at 797. Under these circumstances, and in addition to the fact that the insured gave prompt notice to the insurer as soon as suit was filed, the court found that notice was reasonable. Id. at 799.

The same result is compelled here. Like the insureds in Efficient Construction and Aires, VOA was not directly involved in Madden's accident, and it occurred on school grounds in an area where VOA was not in charge of safety. (VOA's Statement of Additional Facts at ¶¶ 8-9). It would not be reasonable to expect VOA to anticipate that it might be sued for every accident

14

that occurs on a client's property.  Unlike the insured in <u>Aires</u>, VOA did not even know that Madden had filed a lawsuit against anyone. (VOA's Statement of Additional Facts at ¶ 10). VOA notified USF&G promptly upon being served with the Third Amended Complaint (VOA's Statement of Additional Facts at ¶¶ 2, 11).  Under these circumstances, this Court should find that VOA's notice was reasonable as a matter of law.  At the very least, there is enough evidence in the record to raise a question of fact, requiring a denial of USF&G's Motion for Summary Judgment.

## <u>CONCLUSION</u>

VOA respectfully requests that this Court deny USF&G's Motion for Summary Judgment, and enter an order finding denying USF&G's Motion for Summary Judgment and finding: (1) The Madden Lawsuit triggered the duty to defend which extends through appeal; and (2) USF&G is estopped from asserting any coverage defenses for the $1.6 million Madden Judgment and will be fully responsible for any liability that VOA is ultimately found to owe the Madden plaintiffs.

Dated: May 11, 2009

VOA ASSOCIATES, INC.

By: _____
One of Its Attorneys

Paul M. Lurie
Amy R. Skaggs
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL  60606-6473
(312) 258-5500
Firm ID #90219

CH2\7281481.1