**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY,<br><br>             Plaintiff,<br><br>     v.<br><br>VOA ASSOCIATES INC., LIBERTY INTERNATIONAL UNDERWRITERS, MICHAEL J. MADDEN and JEAN MADDEN,<br><br>             Defendants. | Case No. 08 C 0862<br><br>Judge Kennelly |

**VOA'S MEMORANDUM IN OPPOSITION IN RESPONSE TO LIBERTY'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT**

Defendant VOA Associates Inc. ("VOA"), for its Memorandum In Opposition to Defendant Liberty International Underwriters Inc.'s Motion for Summary Judgment and Memorandum in Support thereof, states as follows:

**INTRODUCTION**

VOA is stuck in the middle of the present coverage dispute—a dispute in which both United States Fidelity and Guaranty Fund ("USF&G") and Liberty International Underwriters Inc. ("Liberty") are now playing a game of "hot potato" with the $1.6 million verdict against VOA and the costs incurred in the defense. Recognizing the estoppel issues inherent to USF&G's decision to control VOA's defense despite its conflict of interest, Liberty initially pursued coverage from USF&G on VOA's behalf; however, as evidenced by its Motion for Summary Judgment, Liberty apparently decided to retreat from that offensive against USF&G and instead focus its efforts against VOA. Not only is Liberty's change of position a surprise, it

is also a disappointment, given that the notice arguments in Liberty's brief are baseless, misdirected, and cause VOA to fight a two-front war to protect its coverage rights.

In its Motion for Summary Judgment, Liberty disclaims its coverage obligations to VOA on the ground that the design-related claims against VOA (*i.e.*, "Design Claims"), first made in the Fourth Amended Complaint in the underlying action entitled *Michael J. Madden and Jean Madden v. F.H. Paschen, et. al.*, Case No. 03 L 000433, in the Circuit Court of Cook County, Illinois ("Madden action"), were not "made" and "reported" during the same policy year. (Motion at pp. 5-6.) This argument is flawed on several levels. *First*, Liberty misrepresents the threshold issue, namely, that the Design Claims must be "made" and "reported" in the same Policy Year. Liberty's argument ignores the provision in the policy that gives VOA the right to give Liberty notice of circumstances that could reasonably give rise to a covered claim against VOA, and guarantees that any subsequent claim is deemed "to be a Claim made during the Policy Year" in which the circumstances were reported. *Second*, irrespective of VOA's timely reporting of circumstances under the policy, a genuine issue of material fact nonetheless exists with respect to Liberty's contention that the Design Claims were not "made" and "reported" during the same policy year.

Liberty's alternative argument—that its duties to VOA under the policies are "outweighed and negated as a matter of law by the prejudice to Liberty in the reporting of a claim on the eve of trial"—similarly fails because of the genuine issues of material fact inherent to the resolution of this defense. (*Id.* at pp. 6-7.)

## FACTUAL BACKGROUND

**A.     THE *MADDEN* ACTION**

  **1.     *VOA is named as a defendant in the Third Amended Complaint and USF&G assumes control of VOA's defense in the Madden action.***

On August 26, 2004, VOA was served with a Summons and Third Amended Complaint in the *Madden* action. (Liberty's Rule 56.1 Statement ¶ 10.) In the Third Amended Complaint, Michael and Jean Madden ("Madden") named VOA as a defendant for the first time and included general allegations against VOA relating to construction site safety, including VOA's alleged failure to warn, failure to erect signs, failure to barricade, or failure to properly inspect. (*See* VOA's Rule 56.1(b)(3)(C) Statement of Additional Facts ("VOA's Statement of Additional Facts") ¶ 1.) Because the Third Amended Complaint contained construction-related allegations, as opposed to design-related allegations, VOA appropriately tendered the defense of the Third Amended Complaint to its General Liability insurer, USF&G, on August 31, 2004. (*Id.*¶ 2.) On November 4, 2004, USF&G accepted the tender of defense, and, on December 8, 2004, USF&G's selected the law firm of Fratterigo, Beranek, Feiereisel & Kasbohm ("USF&G Defense Counsel" or "Beranek"), agreed to appear for and defend VOA against the *Madden* action. (*Id.* ¶ 3.)

> 2. ***VOA becomes aware of circumstances that could reasonably be expected to give rise to a claim against VOA and immediately reports the circumstances to Liberty.***

On December 8, 2005, a USF&G adjuster advised VOA's insurance broker, Mark Blankenship, that USF&G might be reserving its rights to deny coverage for the *Madden* action because of possible design-related activities by VOA. (Liberty 56.1 Statement ¶ 16.) Mr. Blankenship forwarded the Third Amended Complaint to Liberty and, during a December 9, 2005 telephone conversation with Liberty's adjuster, George Ammon, he provided further details to Mr. Ammon regarding USF&G's contention that USF&G might issue a reservation of rights letter for some potential design-related claims against VOA in the *Madden* action. (*Id.* ¶¶ 14, 16)

> 3. ***After determining that the Third Amended Complaint did not constitute a claim under the Liberty policies, Liberty took no further steps to investigate the VOA's December 8, 2005 reporting of circumstances.***

After receiving VOA's notice of circumstances and reviewing the accompanying Third Amended Complaint, Mr. Ammon determined that the complaint only alleged construction or general liability claims against VOA, as opposed to professional liability allegations. (*Id.* ¶ 15.) In other words, Liberty concluded that the Third Amended Complaint did not constitute a "Claim" under the Liberty policies. (*Id.*) Liberty opened a claim file for the *Madden* action, and—from December 8, 2005 until June 8, 2007—Liberty neither requested information from VOA about the status of the *Madden* action nor requested additional information from VOA about the reported circumstance nor reserved its rights with respect to the reported circumstance and the potential design claim. (¶ VOA's Statement of Additional Facts ¶ 4.) In sum, Liberty did nothing but wait. (*Id.* ¶ 4.)

> 4. ***USF&G's Defense Counsel fails to advise VOA of the filing of the Fourth Amended Complaint, the addition of the Design Claims, or other developments in the Madden action.***

On August 16, 2006, Madden filed his Fourth Amended Complaint and, for the first time, included design-related allegations against VOA, alleging that VOA "failed to design the orchestra pit with a permanent or temporary cover" and permitted the school district to use the orchestra pit when it was not safe to do so without a cover. (*Id.* ¶¶ 5-6.) USF&G's Defense Counsel not only failed to forward or advise VOA of the Fourth Amended Complaint, he filed an Answer to the Fourth Amended Complaint without VOA's knowledge or review. (*Id.* ¶ 7.) USF&G's Defense Counsel then moved for summary judgment on the claims against VOA and, on March 6, 2007, the trial court granted the motion with respect to the construction-related claims, but denied the motion with respect to the design-related claims. (*Id.* ¶ 10.)

Because USF&G's Assigned Defense Counsel shared little, if any, information about the proceedings in the *Madden* action with VOA, VOA only became aware that the Fourth Amended

Complaint had been filed when it received a May 2007 trial report from USF&G's defense counsel only weeks before trial. (*Id.* ¶ 8.)

The *Madden* action proceeded to trial in June 2007 and a verdict was returned against VOA on June 27, 2007 in the amount of $1,606,000.00. (Liberty 56.1 Statement ¶ 24.) The verdict in the *Madden* action is currently being appealed. (*Id.* ¶ 25.)

**B.     THE LIBERTY POLICIES**

Liberty issued five, consecutive claims-made professional liability policies to VOA, with effective dates of December 5, 2003-December 5, 2004 ("2003 Policy"), December 5, 2004-December 5, 2005 ("2004 Policy"), December 5, 2005-December 5, 2006 ("2005 Policy"), December 5, 2006-December 5, 2007 ("2006 Policy"), and December 5, 2007-December 5, 2008 ("2007 Policy"). (Liberty 56.1 Statement ¶¶ 7-9.)

**LEGAL ARGUMENT**

**A.     LIBERTY'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED BECAUSE THE DESIGN CLAIMS AGAINST VOA ARE DEEMED MADE DURING THE 2005 POLICY IN LIGHT OF VOA'S TIMELY REPORTING OF CIRCUMSTANCES TO LIBERTY.**

In an attempt to misdirect the Court and avoid the operative issue in this coverage dispute, Liberty focuses its arguments on whether VOA "reported" the *Madden* Design Claims to Liberty during the same policy year that those claims were "made" against VOA. But this argument ignores the fact that, on December 8, 2005, VOA exercised its rights under the 2005 Policy and reported circumstances to Liberty that could reasonably be expected to give rise to future covered claims against VOA. Because the *Madden* Design Claims subsequently arose from the circumstances reported to Liberty on December 8, 2005, the 2005 Policy deems the Design Claims "to be a Claim made during the [2005] Policy Year." (2005 Policy at p. 5.) For this reason, Liberty's Motion for Summary Judgment must be denied.

One of the obvious risks of claims-made insurance is that an insured may become aware of a potential claim during a policy period, but the claimant does not assert the claim until after the expiration of the claims-made policy when the insured may no longer have coverage. The policies written by Liberty provide some relief to VOA from this risk by including the following provision in the 2005 Policy:

> A.   Reporting of **Circumstances** That May Give Rise To A **Claim**
>
> If during the **Policy Year** you become aware of a **Circumstance** that may reasonably be expected to give rise to a **Claim** against you, and if you report such **Circumstance** to us during the **Policy Year** in writing, then any **Claim** subsequently arising from such **Circumstance** duly reported in accordance with this paragraph shall be deemed under this Policy to be a **Claim** made during the **Policy Year**.

(2005 Policy at p. 5.) In other words, this provision allows VOA to notify Liberty of any circumstances which may give rise to a covered claim not yet asserted, and guarantee that any such covered claim subsequently brought against it after the expiration of the policy will still be covered by that policy. *See*, *generally*, Ostrager & Newman § 4.02[b] (10th ed. 2000) (discussing reasons why claims-made policies permit the reporting of circumstances that could reasonably be expected to result in a covered claim against the insured).

The uncontroverted facts before the Court establish that on December 8, 2005, VOA exercised its right to report certain circumstances that could reasonably be expected to give rise to a covered claim under the Liberty policies. The uncontroverted evidence establishes that on December 8, 2005, USF&G notified Mark Blankenship, VOA's insurance agent, that USF&G might issue a reservation of rights letter with respect to potential design-related claims against VOA in the *Madden* action. As permitted by the 2005 Policy, VOA, through Mr. Blankenship, immediately forwarded a copy of the Third Amended Complaint to Liberty. Mr. Blankenship then telephoned Liberty's adjustor, George Ammon, and advised Mr. Ammon of the

circumstances that could possibly give rise to a covered claim against VOA at some time in the future. In response, Liberty opened a claim file and assigned a claim number to the *Madden* action. Liberty never requested additional information from VOA regarding the reported circumstances.

These uncontroverted facts demonstrate that VOA properly exercised its rights under the Reporting of Circumstances provision. The record establishes that VOA learned of and immediately reported circumstances to Liberty during the 2005 Policy that could "reasonably be expected to give rise to a Claim against [VOA]" and that the subsequent *Madden* Design Claims arose from these reported circumstances. Accordingly, the *Madden* Design Claims "shall be deemed made under the [2005] Policy to be a Claim made during the Policy Year," (Policy at p. 5), and Liberty' Motion for Summary Judgment—a motion in which Liberty ignores the application of the Reporting of Circumstances provision to the Design Claims—must be denied.

Although purposefully silent on the issue in its Motion for Summary Judgment,[1] Liberty's counsel previously advised VOA's counsel that Liberty does not deem the Design Claims to be claims made under the 2005 Policy. Liberty contends that in order to exercise its rights under the Reporting of Circumstances provision, VOA was *obligated* to report notice of the Third Amended Complaint during the 2003 Policy (*i.e.*, during the policy in effect at the time of the August 26, 2004 service of the Third Amended Complaint on VOA). Liberty completely ignores the discretionary nature of the Reporting of Circumstances.

While some claims-made policies mandate that the insured must provide a notice of circumstances to the insurer as soon as the insured becomes aware of such circumstances or facts, *see*, *e.g.*, *National Union Fire Ins. Co. v. Willis*, 296 F.3d 336 (5th Cir. 2002) (reviewing a

---

[1] Although Liberty does not expressly address VOA's reporting of circumstances in its opening Memorandum in Support of its Motion for Summary Judgment, Liberty clearly anticipates the argument, as evidenced by the inclusion of several facts in its 56.1 Statement that

reporting provision that stated the insured "shall give written notice" of circumstances), no such requirement exists in the 2005 Policy. Nothing about the 2005 Policy's Reporting of Circumstances provision can be read as a requirement that VOA immediately notify Liberty of any and all circumstances that could reasonably be expected to give rise to a covered claim. Rather, this notice provision *permits* but does not *require* VOA to give notice of any circumstances which might reasonably be expected to give rise to a covered claim against it.

In sum, on December 8, 2005, VOA—which was under no obligation to report any circumstances to Liberty—became aware of a "circumstance" that could reasonably be expected to give rise to a covered claim under the Liberty Policies, namely, USF&G's representation that it might issue a reservation of rights letter with respect to potential design-related claims against VOA in the *Madden* action. On the same day that it became aware of this circumstance, VOA reported the circumstance to Liberty. Liberty never asked for additional information about the reported circumstances nor advised VOA that its notice of circumstances was deficient in any way.[2] Because VOA properly reported circumstances to Liberty during the 2005 Policy and the *Madden* Design Claims arose from these circumstances, the Design Claims are deemed "to be a Claim made during the [2005] Policy Year," thereby eliminating Liberty's notice defense as a matter of law.

---

[2] To the extent that Liberty now attempts to argue that VOA's original notice of circumstances was defective, the argument has been waived. *See*, *e.g.*, *Federal Savings & Loan Ins. Corp. v. Burdette*, 718 F. Supp. 649 (E.D. Tenn. 1989) ("If notice provided to an insurer is considered by the insurer to be defective, good faith requires the insurer to notify the insured of its objections within a reasonable time, and if the insurer fails to do so or proceeds to act as though notice was satisfactory, it has waived any right to assert notice as a defense at a later date."); *St. Paul Fire and Maine Ins. Co. v. Metropolitan Urology Clinic, P.A.*, 537 N.W.2d 297, 300 (Minn. Ct. App. 1995) (same); *St. Paul Fire & Marine Ins. Co. v. Tinney*, 920 F.2d 861, 863 (11th Cir. 1991) (same).

B.  **LIBERTY'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED BECAUSE, IRRESPECTIVE OF THE POLICY'S TREATMENT OF THE *MADDEN* DESIGN CLAIMS AS CLAIMS MADE DURING THE 2005 POLICY, THERE IS A GENUINE ISSUE OF MATERIAL FACT REGARDING WHETHER THE *MADDEN* DESIGN CLAIMS WERE "MADE" AND "REPORTED" DURING THE 2006 POLICY PERIOD.**

The main argument advanced by Liberty in support of its Motion for Summary Judgment is that VOA is not entitled to coverage for the *Madden* Design Claims because these claims were not "made" and "reported" to Liberty during the same policy year. (Motion at p. 4-6.) Irrespective of the fact that the claims are deemed to be made under the 2005 Policy, Liberty's argument fails because the record establishes, *at best*, the existence of a genuine issue of material fact regarding when the *Madden* Design Claims were "made" or, *more likely*, that Liberty's argument fails as a matter of law. For this reason, summary judgment must be denied.

VOA does not dispute that a "Claims Made and Reported" policy limits coverage to only those claims "made" and "reported" during the policy year. The pertinent question for the present motion, however, is when a claim is "made" against an insured. Unlike other "claims made and reported" policies, the 2006 Policy does not define when a claim is "made." Thus, it is up to the Court to determine the meaning of this term.

Construing the "claims made" provision of the 2006 policy to effectuate the reasonable expectations of the insured, *Nicor, Inc. v. Assoc. Elec. & Gas Ins. Servs. Ltd.,* 223 Ill. 2d 407, 860 N.E.2d 280, 285-286 (2006), it is clear that a claim cannot be "made" on VOA unless VOA has knowledge of the claim. An insured can only give notice of a claim of which it is aware and a claim can only thus be "made" against an insured when it becomes aware of the claim. *Maryland Cas. Co. v. Budzisz*, 203 Wis.2d 411, 553 N.W.2d 535 (Ct. App. Wis. 1995) (a common sense reading of a claims made policy leads to only one conclusion, namely, that an insured must have knowledge of a claim or demand for the claim to be "made"); *see also*

*Fremont Indem. Co., Inc. v. California Nat'l Physician's Ins. Co.*, 954 F. Supp. 1399 (C.D. Cal. 1997) ("A claim is made upon an insured when the insured receives it or has notice of it."); *Safeco Surplus Lines Co. v. Employer's Reinsurance Corp.*, 11 Cal. App. 4th 1403, 15 Cal. Rptr. 2d 58 (Cal. Ct. App. 1992) (claim is not "made" until the insured has knowledge of the claim). To have a reporting requirement under the 2006 Policy for something that VOA is not aware would make the condition precedent to coverage impossible to perform, thereby rendering coverage illusory. The only reasonable and internally consistent interpretation of the 2006 Policy is that a claim is not "made" against the insured until the insured is aware of the claim.

In this instance, the *Madden* Design Claims were not "made" until VOA received notice of the claims. The uncontroverted evidence demonstrates that the *Madden* Design Claims were not "made" against VOA until, at the earliest, it received the trial report from USF&G's Defense Counsel in May 2007. These Design Claims were "reported" to Liberty shortly thereafter. Put another way, the uncontroverted record establishes that the Design Claims were both "made" and "reported" during the 2006 Policy Period.

Even if the Court determines that the record does not support a finding that the Design Claims were both "made" and "reported" during the 2006 Policy, the evidence before the Court, *at worst*, establishes the existence of a genuine issue of material fact regarding the time at which the Design Claims were "made" against VOA. In its Rule 56.1 Statement, Liberty candidly admits the existence of a genuine issue of material fact as to when VOA was aware of the filing of the Fourth Amended Complaint and the claims asserted therein, (Liberty's 56.1 Statement ¶ 26), and a review of the parties' competing Rule 56.1 Statements of Fact confirms Liberty's candid admission. The existence of a genuine issue of material fact regarding when the Design Claims were "made" against VOA precludes summary judgment.

In sum, regardless of whether the Court finds that the evidence establishes that the Design Claims were "made" during the 2006 Policy or whether the Court finds a genuine issue of material fact regarding the time at which the Design Claims were "made," the record before the Court mandates denial of Liberty's Motion for Summary Judgment.

C.   **LIBERTY'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED BECAUSE, AT A MINIMUM, THERE IS A GENUINE ISSUE OF MATERIAL FACT REGARDING THE REASONABLENESS OF VOA'S NOTICE OF THE *MADDEN* DESIGN CLAIMS TO LIBERTY**

The final argument advanced by Liberty in support of its Motion for Summary Judgment is that the late notice of the *Madden* Design Claims eliminates coverage for those claims under the Liberty Policies. (Motion at p. 6-8.) But similar to its earlier argument, Liberty fails to carry its burden to establish the absence of any genuine issues of material fact with respect to this argument. Because the resolution of this argument requires the Court to decide disputed issues of fact regarding when VOA received notice of the *Madden* Design Claims and the reasonableness of VOA's conduct once it obtained this knowledge, the Motion for Summary Judgment must be denied.

It is well settled under Illinois law that the mere passage of time does not render notice to an insurer unreasonable. *Commercial Underwriters Ins. Co. v. Aires Environmental Services, Ltd.*, 259 F.3d 792, 795-96 (7th Cir. 2001). As recognized by the Court in *Aires Environmental*, a lengthy passage of time is not a bar to coverage provided that the insured has a reasonable excuse for the delay. *Id.* The reasonableness of an insured's notice to the insurer is determined by reviewing the facts and circumstances of each case. *Northern Ins. Co. of N.Y. v. City of Chicago*, 325 Ill.App.3d 1086, 1091, 759 N.E.2d 144, 149 (1st Dist. 2001).

When determining reasonableness of an insured's notice, a court should look to several factors, "includ[ing] the specific language of the policy's notice provision, the insured's

sophistication in commerce and insurance matters, the insured's awareness of an event which may trigger insurance coverage, and the insured's diligence in ascertaining whether policy coverage is available." *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 222 Ill. 2d 303, 856 N.E.2d 338, 344 (2006). The determination of reasonableness of an insured's notice to the insurer, including the determination of when an insured became aware of events or claims under a notice provision, is typically a question for the jury. *LaSalle Nat'l Trust v. Schaffner*, 818 F. Supp. 1161 (N.D. Ill. 1993) (summary judgment is inappropriate when there is a genuine issue of material fact regarding when the insured became aware of claims or circumstances under a notice provision); *see also Kenworthy v. Bituminous Cas. Corp.*, 28 Ill. App. 3d 546, 548, 328 N.E.2d 588, 590 (4th Dist. 1975) (reasonableness of insured's notice to insurer is typically question for the jury).

Liberty fails to bear its initial burden on summary judgment to demonstrate an absence of any genuine issues of material fact regarding the timeliness of VOA's case on the notice issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In support of its argument that Liberty's duties to VOA are "outweighed and negated as a matter of law by the prejudice to Liberty in the reporting of a claim on the eve of trial," Liberty offers only two items: testimony from the Liberty adjuster decrying the unfairness of the notice and its inability to participate in various aspects of the *Madden* litigation, and a page-long string citation—with no accompanying factual or legal analysis[3]—of a number of Illinois opinions addressing late notice. This, without more, is insufficient to carry Liberty's burden on summary judgment.

---

[3]   Liberty's failure to offer any meaningful legal analysis or factual support for its notice argument not only prevents Liberty from successfully carrying its initial burden of proof on summary judgment, it also effectively waives those arguments. *See United States v. Berkowitz*, 927 F.3d 1376, 1384 (7th Cir. 1991) (undeveloped arguments are waived); *see also Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) (same).

Moreover, for the same reasons that Liberty's earlier arguments fail, *i.e.*, the existence of a genuine issue of fact as to when VOA became aware of the Design Claims, Liberty's late notice argument similarly fails. Any analysis of the reasonableness of VOA's notice to Liberty necessarily requires the resolution of disputed issues of fact, namely, when VOA learned of the Fourth Amended Complaint and the Design Claims therein. For this reason, summary judgment must be denied.

## **CONCLUSION**

For the foregoing reasons, the Court should enter an order finding denying Liberty International Underwriter's Motion for Summary Judgment [Dkt. Ent.77] because the record before the Court establishes either that VOA Associates Inc. provided timely notice of the Design Claims to Liberty International Underwriters or that a genuine issue of material fact remains thereto.

Dated: May 11, 2009                                              Respectfully submitted,

                                                                 VOA ASSOCIATES INC.


                                                                 By: s/ Douglas M. DeWitt
                                                                 One of its attorneys

Jill B. Berkeley
Douglas M. DeWitt
HOWREY LLP
321 North Clark Street
Suite 3400
Chicago, Illinois 60654
(312) 595-1239
BerkeleyJ@howrey.com
DeWittD@howrey.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on May 11, 2009, he caused to be electronically filed the foregoing Memorandum In Opposition to Defendant Liberty International Underwriters' Motion for Summary Judgment and Memorandum in Support with the Clerk of the Court using the CMF/ECF filing system, notice of such filing to those counsel who are CMF/ECF users, and that as to the below-listed counsel,

<u>U.S. Mail, postage pre-paid</u>:

Kevin W. O'Connor
Collison & O'Connor, Ltd.
19 South LaSalle Street
Chicago, IL 60603


May 11, 2009                                By: s/ Douglas M. DeWitt
                                                   One of its attorneys