# EXHIBIT 11

#9960 T

COPY



# Standard Form of Agreement Between Architect and Consultant

RECEIVED

DEC 1 6 1999

SCHULER & SHOOK, INC

## AIA Document C141 - Electronic Format

THIS DOCUMENT HAS IMPORTANT LEGAL CONSEQUENCES; CONSULTATION WITH AN ATTORNEY IS ENCOURAGED WITH RESPECT TO ITS COMPLETION OR MODIFICATION. AUTHENTICATION OF THIS ELECTRONICALLY DRAFTED AIA DOCUMENT MAY BE MADE BY USING AIA DOCUMENT D401.

Recommended for use with current editions of standard AIA agreement forms and documents.

Copyright 1963, 1967, 1970, 1974, 1979, 1987 by The American Institute of Architects, 1735 New York Avenue N.W., Washington D.C., 20006-5292. Reproduction of the material herein or substantial quotation of its provisions without written permission of the AIA violates the copyright laws of the U.S. and will be subject to legal prosecution.

## AGREEMENT

made as of the Twenty-seventh day of July in the year of Nineteen Hundred and Ninety-nine .

**BETWEEN** the Architect:
*(Name and address)*
VOA Associates, Incorporated
224 South Michigan Avenue
Chicago, Illinois 60604

and the Consultant:
*(Name and address)*
Schuler & Shook
213 Institute Place
Chicago, Illinois 60610

Consultant's Discipline or Services:
Theatre Consultant

The Architect has made an agreement dated June 29, 1998 with the Owner:
Consolidated High School District Number 230
15100 South 94th Avenue
Orland Park, Illinois 60462

For the following Project:
*(Include detailed description of Project, location, address and scope.)*
For Additions to and Remodeling and Repairs of the District's three existing High Schools known respectively as:

| | |
|---|---|
| J. Andrew High School | Amos Alono Stagg High School |
| 9001 West 171st Street | 8015 West 111th Street |
| Tinley Park, Illinois 60477 | Palos Hills, Illinois 60465 |

Carl Sandburg High School
13300 South LaGrange Road
Orland Park, Illinois 60462

AIA DOCUMENT C141- ARCHITECT-CONSULTANT AGREEMENT - SIXTH EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING; Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format C141-1987

FBFK 13032
PRIVILEGED - SUBJECT
TO PROTECTIVE ORDER

which agreement is hereinafter referred to as the Prime Agreement and which provides for furnishing professional services in connection with the Project described therein. A copy of the Prime Agreement (from which compensation amounts may be deleted) is attached, made a part hereof and marked Exhibit A.

The Architect and the Consultant agree as set forth below.

I.    THE CONSULTANT shall provide for the Architect, in accordance with the Terms and Conditions of this Agreement, the following professional services, which the Architect is required to provide for the Owner under the attached copy of the Prime Agreement:
*(Describe the type of consulting services)*
Two new 700 Seat Performing Arts Theatres and One new 500 Seat Performing Arts Theatre inclusive of all usual and customary ancillary spaces.

The part of the Project for which the Consultant is to provide such services is hereinafter called This Part of the Project.

The Consultant is an independent contractor for This Part of the Project, responsible for methods and means used in performing the Consultant's services under this Agreement, and is not an employee, agent or partner of the Architect.

II.    THE ARCHITECT shall be the general administrator of the professional services for the Project, and shall facilitate the exchange of information among the consultants retained by the Architect for the Project as necessary for the coordination of This Part of the Project.

Except as authorized by the Architect, all communication between the Consultant and the Owner, Contractor or other consultants for the Project shall be forwarded through the Architect.

AIA DOCUMENT C141- ARCHITECT-CONSULTANT AGREEMENT - SIXTH EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING; Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format  C141-1987
ser Document: SCHULLERCNTRCT.DOCi -- 10/6/1999. AIA License Number 100500, which expires on 12/1/1999 -- Page #2

FBFK 13033
PRIVILEGED - SUBJECT
TO PROTECTIVE ORDER

---

## Terms and Conditions of Agreement Between Architect and Consultant

---

### ARTICLE 1
### CONSULTANT'S RESPONSIBILITIES

**1.1   CONSULTANT'S SERVICES**

**1.1.1**   The Consultant's services consist of those services performed by the Consultant and Consultant's employees as enumerated in Articles 2 and 3 of this Agreement and any other services included in Article 12.

**1.1.2**   The Consultant's services shall be performed according to this Agreement with the Architect in the same manner and to the same extent that the Architect is bound by the attached Prime Agreement to perform such services for the Owner.   Except as set forth herein, the Consultant shall not have any duties or responsibilities for any other part of the Project.

**1.1.3**   The Consultant shall designate, when necessary, a representative authorized to act in the Consultant's behalf with respect to This Part of the Project.

**1.1.4**   The Consultant's services shall be performed in manner, sequence and timing so that they will be coordinated with those of the Architect and other consultants for the Project.

**1.1.5**   The Consultant shall recommend to the Architect that appropriate investigations, surveys, tests, analyses and reports be obtained as necessary for the proper execution of the Consultant's services.

**1.1.6**   The Consultant shall provide progress copies of drawings, reports, specifications and other necessary information to the Architect and other consultants for coordination and review.  All aspects of the Work designed by the Consultant shall be coordinated by the Consultant, and the Consultant shall also become familiar with the Work designed by the Architect and other consultants as necessary for the proper coordination of This Part of the Project.

**1.1.7**   The Consultant shall cooperate with the Architect in determining the proper share of the construction budget to be allocated to This Part of the Project.

**1.1.8**   The Consultant shall not be responsible for the acts or omissions of the Architect, Architect's other consultants, Contractor, Subcontractors, their agents or employees, or other persons performing any of the Work.

**1.1.9**   The Consultant's services shall be performed as expeditiously as is consistent with professional skill and care and the orderly progress of the Work.  Upon request of the Architect, the Consultant shall submit for the Architect's approval a schedule for the performance of the Consultant's services which may be adjusted as the Project proceeds, and shall include allowances for periods of time required for the Owner's and Architect's review and for approval of submissions by authorities having jurisdiction over the Project.   Time limits established by this schedule and approved by the Architect shall not, except for reasonable cause, be exceeded by the Consultant or Architect.  The Consultant shall not be responsible for delays beyond the Consultant's control.

### ARTICLE 2
### SCOPE OF CQNSULTANT'S BASIC SERVICES

**2.1   DEFINITION**

**2.1.1**   The Consultant's Basic Services consist of those services described in Paragraphs 2.2 through 2.6 and other services identified in Article 12 as part of Basic Services.

**2.2   SCHEMATIC DESIGN PHASE**

**2.2.1**   The Consultant shall ascertain the requirements for This Part of the Project and shall confirm such requirements to the Architect.

**2.2.2**   The Consultant shall review alternative systems with the Architect, attend necessary conferences, prepare necessary analyses, drawings and other documents, be available for general consultation, and make recommendations regarding basic systems for This Part of the Project.  When necessary, the Consultant shall consult with public agencies and other organizations concerning utility services and requirements.

**2.2.3**   The Consultant shall prepare and submit to the Architect a preliminary estimate of Construction Cost of This Part of the Project based on current area, volume or other unit costs, as directed by the Architect.

**2.3   DESIGN DEVELOPMENT PHASE**

**2.3.1**   When authorized by the Architect, the Consultant shall prepare Design Development Documents from the Schematic Design Studies approved by the Owner and confirmed by the Architect.  The Design Development

---

AIA DOCUMENT C141- ARCHITECT-CONSULTANT AGREEMENT - SIXTH EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format C141-1987

ument: SCHULLERCNTRCT.DOCI -- 10/6/1999. AIA License Number 100500, which expires on 12/1/1999 -- Page #3

FBFK 13034
PRIVILEGED - SUBJECT
TO PROTECTIVE ORDER

Documents shall consist of drawings and other documents to fix and describe This Part of the Project, including materials, equipment, component systems and types of construction as may be appropriate, all of which are to be approved by the Owner and Architect.

**2.3.2** The Consultant shall advise the Architect of adjustments to the preliminary estimate of Construction Cost for This Part of the Project.

## 2.4   CONSTRUCTION DOCUMENTS PHASE

**2.4.1** When authorized by the Architect, the Consultant shall prepare, from the Design Development Documents approved by the Owner and confirmed by the Architect, Drawings and Specifications setting forth in detail the requirements for the construction of This Part of the Project, all of which are to be approved by the Owner and Architect. The Consultant shall prepare the Drawings and Specifications in such format as the Architect may reasonably require.

**2.4.2** The Consultant shall advise the Architect of adjustments to previous preliminary estimates of Construction Cost for This Part of the Project indicated by changes in requirements or general market conditions.

**2.4.3** The Consultant shall assist the Architect as necessary in connection with the Owner's responsibility for filing the documents concerning This Part of the Project required for the approval of governmental authorities having jurisdiction over the Project.

## 2.5   BIDDING OR NEGOTIATION PHASE

**2.5.1** If required by the Architect, the Consultant shall assist the Architect and Owner in obtaining and evaluating bids or negotiated proposals, and assist in awarding and preparing contracts for construction.

## 2.6   CONSTRUCTION PHASE-ADMINISTRATION OF THE CONSTRUCTION CONTRACT

**2.6.1** The Consultant's responsibility to provide Basic Services for the Construction Phase under this Agreement commences with the award of the Contract for Construction and terminates at the earlier of the issuance to the Owner of the final Certificate for Payment or 60 days after the date of Substantial Completion of the Work, unless extended under terms of Subparagraph 10.3.4.

**2.6.2** The Consultant shall assist the Architect in the administration of the Contract for Construction with respect to This Part of the Project, as set forth below and in the edition of AIA Document A201, General Conditions of the Contract for Construction, identified in the Prime Agreement,

unless otherwise provided in this Agreement.

**2.6.3** The Consultant shall visit the site at intervals appropriate to the stage of construction for This Part of the Project, or as otherwise agreed with the Architect in writing, to become generally familiar with the progress and quality of the Work completed for This Part of the Project and to determine in general if the Work is being performed in a manner indicating that the Work, when completed, will be in accordance with the Contract Documents. However, the Consultant shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work for This Part of the Project. On the basis of such on-site observations as a consultant, the Consultant shall keep the Architect informed of the progress of the Work for This Part of the Project and shall endeavor to guard the Owner against defects and deficiencies in such Work. *(More extensive site representation may be agreed to as an Additional Service, as described in Paragraph 3.2.)*

**2.6.4** The Consultant shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work for This Part of the Project, since these are solely the Contractor's responsibility under the Contract for Construction. The Consultant shall not be responsible for the Contractor's or a Subcontractor's schedule or failure to carry out the Work in accordance with the Contract Documents. The Consultant shall not have control over or charge of acts or omissions of the Contractor, Subcontractors, their agents or employees or other persons performing portions of the Work.

**2.6.5** The Consultant shall at all times have access to the Work for This Part of the Project, wherever it is in preparation or progress.

**2.6.6** Based on the Consultant's observations and evaluations of the Contractor's Applications for Payment, the Consultant shall assist the Architect in determining the amounts due the Contractor for This Part of the Project and shall certify such amounts to the Architect in writing.

**2.6.7** Certification for payment by the Consultant to the Architect of the amounts due the Contractor shall constitute a representation to the Architect based on the Consultant's observations at the site as provided in Subparagraph 2.6.3 and on the data comprising the Contractor's Application for Payment, that the Work for This Part of the Project has progressed to the point indicated and that, to the best of the Consultant's knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents. The foregoing representations are subject to an evaluation of such Work for conformance with the Contract Documents upon

AIA DOCUMENT C141- ARCHITECT-CONSULTANT AGREEMENT - SIXTH EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

FBFK 13035
PRIVILEGED - SUBJECT
TO PROTECTIVE ORDER

Substantial Completion, to results of subsequent tests and inspections, to minor deviations from the Contract Documents correctable prior to completion, and to specific qualifications expressed by the Consultant.

**2.6.8**   Upon written request of the Architect, the Consultant shall furnish to the Architect, with reasonable promptness, in writing or in the form of drawings, interpretations of the Contract Documents prepared by the Consultant, if, in the opinion of the Architect, such interpretations are necessary for the proper execution or progress of the Work.

**2.6.9**   The Consultant shall within a reasonable time render written recommendations on claims, disputes and other matters in question between the Owner and Contractor relating to the execution or progress of This Part of the Project as provided by the Contract Documents.

**2.6.10**   The Consultant shall assist the Architect in determining whether the Architect shall reject Work for This Part of the Project which does not conform to the Contract Documents or whether additional inspection or testing is required.

**2.6.11**   The Consultant shall review and approve, or take other appropriate action upon and forward to the Architect for final disposition, Contractor's submittals such as Shop Drawings, Product Data and Samples with respect to This Part of the Project; but only for the limited purpose of checking for conformance with information given and the design concept expressed in the Contract Documents. The Consultant's action will be taken with such reasonable promptness as to cause no delay in the construction of the Owner or of separate contractors, while allowing sufficient time in the Consultant's professional judgment to permit adequate review. Review of such submittals is not conducted for the purpose of determining the accuracy and completeness of other details such as dimensions and quantities , or for substantiating instructions for installation or performance of equipment or systems designed by the Contractor, all of which remain the responsibility of the Contractor, to the extent required for This Part of the Project by the Contract Documents. The Consultant's review shall not constitute approval of safety precautions or, unless otherwise specifically stated by the Consultant, of construction means, methods, techniques, sequences or procedures. The Consultant's approval of a specific item shall not indicate approval of an assembly of which the item is a component. When professional certification of performance characteristics of materials, systems or equipment is required by the Contract Documents, the Consultant shall be entitled to rely upon such certifications to establish that the materials, systems or equipment will meet the performance criteria required by the Contract Documents.

**2.6.12**   The Consultant shall assist the Architect in preparing Change Orders for This Part of the Project for the Owner's approval and execution in accordance with the Contract Documents, including those pursuant to Construction Change Directives, and may recommend to the Architect minor changes in the Work not involving an adjustment in the Contract Sum or an extension of the Contract Time which are not inconsistent with the intent of the Contract Documents.

**2.6.13**   The Consultant shall assist the Architect in conducting inspections, with respect to This Part of the Project, to determine the date or dates of Substantial Completion and the date of final completion, and shall review and approve, or take other appropriate action on, the Contractor's list of items to be completed or corrected, and shall forward the list to the Architect for final disposition. The Consultant shall assist the Architect in receiving and forwarding to the Owner for the Owner's review and records written warranties and related documents required by the Contract Documents assembled by the Contractor with respect to This Part of the Project.   If requested, the Consultant shall issue to the Architect a final certification in writing with respect to final payment for This Part of the Project.

## ARTICLE 3
## ADDITIONAL SERVICES

### 3.1   GENERAL

**3.1.1**   The services described in this Article 3 are not included in Basic Services unless identified in Article 12 and shall only be provided if authorized or confirmed in writing by the Architect.

### 3.2   PROJECT REPRESENTATION BEYOND BASIC SERVICES

**3.2.1**   If more extensive representation at the site than is described under Subparagraph 2.6.3 is required for This Part of the Project, the Consultant shall, if requested by the Architect, provide one or more Project Representatives to assist the Consultant in carrying out such additional on-site responsibilities.

**3.2.2**   Project Representatives shall be selected, employed and directed by the Consultant, and the Consultant shall be compensated therefor as agreed by the Architect and Consultant.   The duties, responsibilities and limitations of authority of Project Representatives shall be as described in an exhibit to this Agreement.

AIA DOCUMENT C141- ARCHITECT-CONSULTANT AGREEMENT - SIXTH EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

FBFK 13036
PRIVILEGED - SUBJECT
TO PROTECTIVE ORDER

**3.2.3** Through the observations by such Project Representatives, the Consultant shall endeavor to provide further protection for the Owner against defects and deficiencies in the Work for This Part of the Project, but the furnishing of such project representation shall not modify the rights, responsibilities or obligations of the Consultant as described elsewhere in this Agreement.

## 3.3   CONTINGENT ADDITIONAL SERVICES

**3.3.1** Making revisions in Drawings, Specifications or other documents when such revisions are:

  .1  inconsistent with approvals or instructions previously given by the Owner, including revisions made necessary by any adjustments in the program or Project budget;

  .2  required by the enactment or revision of codes, laws or regulations subsequent to the preparation of such documents; or

  .3  required as a result of the Owner's failure to render decisions in a timely manner.

**3.3.2** Providing services required because of significant changes for This Part of the Project including, but not limited to, changes in size, quality and complexity, Owner's schedule, method of bidding or negotiating and contracting for construction Work.

**3.3.3** Preparing Drawings, Specifications and other documentation and supporting data, and providing other services in connection with Change Orders and Construction Change Directives, other than those required as a result of negligent error or omission by the Consultant.

**3.3.4** Providing services in connection with evaluating substitutions proposed by the Contractor and making subsequent revisions to Drawings, Specifications and other documentation resulting therefrom.

**3.3.5** Providing consultation concerning replacement of Work damaged by fire or other cause during construction, and furnishing services required in connection with the replacement of such Work.

**3.3.6** Providing services made necessary by the default of the Contractor, or by major defects or deficiencies in the Work of the Contractor, or by failure of performance of either the Owner or Contractor under the Contract for Construction.

**3.3.7** Providing services in evaluating an extensive number of claims submitted by the Contractor or others in connection with the Work for This Part of the Project.

**3.3.8** Providing services in connection with a public hearing, arbitration proceeding or legal proceeding.

## 3.4   OPTIONAL ADDITIONAL SERVICES

**3.4.1** Providing analyses of the Owner's needs, and programming the requirements for This Part of the Project.

**3.4.2** Providing financial feasibility or other special studies.

**3.4.3** Providing planning surveys, site evaluations or comparative studies of prospective sites.

**3.4.4** Providing special surveys, environmental studies and submissions required for approvals of governmental authorities or others having jurisdiction over the Project.

**3.4.5** Providing services relative to future facilities, systems and equipment.

**3.4.6** Providing services to investigate existing conditions or facilities, or to make measured drawings thereof.

**3.4.7** Providing services to verify the accuracy of drawings or other information furnished by the Architect.

**3.4.8** Providing coordination of construction performed by separate contractors or by the Owner's own forces and coordination of services required in connection with construction performed and equipment supplied by the Owner.

**3.4.9** Providing services in connection with the work of a construction manager or separate consultants retained by the Owner.

**3.4.10** Providing detailed estimates of Construction Cost.

**3.4.11** Providing detailed quantity surveys or inventories of material, equipment and labor.

**3.4.12** Providing analyses of owning and operating costs.

**3.4.13** Providing services or special consultants related to interior design services and other similar services required for, or in connection with, the selection, procurement or installation of furniture, furnishings and related equipment.

**3.4.14** Providing services for planning tenant or rental spaces.

**3.4.15** Making investigations, inventories of materials or

AIA DOCUMENT C141- ARCHITECT-CONSULTANT AGREEMENT - SIXTH EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING; Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format C141-1987

FBFK 13037
PRIVILEGED - SUBJECT
TO PROTECTIVE ORDER

equipment or valuations, and detailed appraisals of existing facilities.

**3.4.16** Preparing a set of reproducible record drawings showing significant changes in the Work for This Part of the Project made during construction, based on marked-up prints, drawings and other data furnished by the Contractor to the Architect.

**3.4.17** Providing assistance in the utilization of equipment or systems, such as initial start-up or testing, adjusting and balancing, preparation of operation and maintenance manuals, training personnel for operation and maintenance, and consultation during operation.

**3.4.18** Providing services after issuance to the Owner of the final Certificate for Payment, or in the absence of a final Certificate for Payment, more than 60 days after the date of Substantial Completion of the Work for This Part of the Project.

**3.4.19** Providing services of subconsultants for other than the normal consulting services for This Part of the Project provided as part of Basic Services.

**3.4.20** Providing coordination of Work in connection with equipment supplied by the Owner.

**3.4.21** Providing any other services not otherwise included in this Agreement or not customarily furnished in accordance with generally accepted consulting practice for This Part of the Project.

## ARTICLE 4
## ARCHITECT'S RESPONSIBILITIES

**4.1** The Architect shall, with reasonable promptness, provide available information regarding requirements for This Part of the Project.

**4.2** The Architect may designate a representative authorized to act on the Architect's behalf with respect to This Part of the Project. The Architect or such authorized representative shall render decisions in a timely manner pertaining to documents submitted by the Consultant in order to avoid unreasonable delay in the orderly and sequential progress of the Consultant's services.

**4.3** If the Consultant considers it necessary for This Part of the Project, the Architect shall request that the Owner furnish the services of other consultants when such services are reasonably required by the scope of the Project, including surveys describing physical characteristics, legal limitations and utility locations for the site of the Project and a written

legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and necessary data pertaining to existing buildings, other improvements and trees; and information concerning available utility services and lines both public and private, above and below grade, including inverts and depths. All information on the survey shall be referenced to a project benchmark.

**4.4** On the Consultant's request for This Part of the Project, the Architect shall furnish to the Consultant, with reasonable promptness, (1) detailed layouts showing the location of connections, and (2) tabulations giving sizes and loads of equipment designed, specified or furnished by others for incorporation into other parts of the Project.

**4.5** On the Consultant's request for This Part of the Project, the Architect shall request the Owner to furnish, with reasonable promptness, the services of geotechnical engineers. Such services may include, but are not limited to, test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, ground corrosion and resistivity tests, including necessary operations for anticipating sub-soil conditions, with reports and appropriate professional recommendations.

**4.6** On the Consultant's request for This Part of the Project, the Architect shall request the Owner to furnish structural, mechanical, chemical, air and water pollution tests, tests for hazardous materials and other laboratory and environmental tests, inspections and reports required by law or the Contract Documents.

**4.7** The services, information, surveys and reports required by Paragraphs 4.3 through 4.6 shall be furnished at no expense to the Consultant, who shall be entitled to rely upon the accuracy and completeness thereof.

**4.8** Prompt written notice shall be given by the Architect to the Consultant if the Architect becomes aware of any fault or defect with respect to This Part of the Project or nonconformance with the Contract Documents.

**4.9** The Architect shall confer with the Consultant before issuing interpretations or clarifications of documents prepared by the Consultant and shall request the recommendation of the Consultant before providing interpretations or clarifications of Shop Drawings, Product Data, Samples or other submissions of the Contractor, or of Change Orders and Construction Change Directives affecting This Part of the

AIA DOCUMENT C141- ARCHITECT-CONSULTANT AGREEMENT - SIXTH EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING; Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format  C141-1987

FBFK 13038
PRIVILEGED - SUBJECT
TO PROTECTIVE ORDER

Project.

**4.10** The Architect shall furnish to the Consultant a copy of preliminary estimates of Construction Cost or detailed estimates of Construction Cost as submitted to the Owner, bidding documents, bid tabulations, negotiated proposals and Contract Documents, including Change Orders and Construction Change Directives as issued, to the extent that they pertain to This Part of the Project.

**4.11** The Architect shall advise the Consultant of the identity of other consultants participating in the Project and the scope of their services.

**4.12** The Architect shall review the Consultant's work for compliance with the Owner's program and for overall coordination with the architectural and engineering requirements.

### ARTICLE 5
### CONSTRUCTION COST

**5.1    DEFINITION**

**5.1.1** The Construction Cost shall be the total cost or estimated cost to the Owner of all elements of the Project designed or specified by the Architect or the Architect's consultants. The Construction Cost of This Part of the Project shall be the total cost or estimated cost to the Owner of all elements of the Project designed or specified by the Consultant.

**5.1.2** The Construction Cost or the Construction Cost of This Part of the Project shall include the cost at current market rates of labor and materials furnished by the Owner and equipment designed, specified, selected or specially provided for by the Architect or Consultant, plus a reasonable allowance for the Contractor's overhead and profit. In addition, a reasonable allowance for contingencies shall be included for market conditions at the time of bidding and for changes in the Work during construction.

**5.1.3** Construction Cost does not include the compensation of the Architect and Architect's consultants, the costs of the land, rights-of-way and financing, or other costs which are the responsibility of the Architect as provided in Article 4 of this Agreement, or which are the responsibility of the Owner as defined in the Prime Agreement.

**5.2    RESPONSIBILITY FOR CONSTRUCTION COST**

**5.2.1** Evaluations of the Owner's Project budget, preliminary estimates of Construction Cost and detailed estimates of Construction Cost, if any, prepared by the

Consultant for This Part of the Project, represent the Consultant's best judgment as a professional familiar with the construction industry. It is recognized, however, that neither the Consultant nor Architect has control over the cost of labor, materials or equipment, over the Contractor's methods of determining bid prices, or over competitive bidding, market or negotiating conditions. Accordingly, the Consultant cannot and does not warrant or represent that bids or negotiated prices for This Part of the Project will not vary from the Owner's Project budget or from any estimate of Construction Cost or evaluation prepared or agreed to by the Consultant.

**5.2.2** The Architect and Consultant shall establish, if practicable, a fixed limit of Construction Cost for This Part of the Project, which may be fixed independently of the limit, if any established in the Prime Agreement. If such a fixed limit has been established, the Consultant, after conferring with the Architect, shall be permitted to include contingencies for design, bidding and price escalation, to determine what materials, equipment, component systems and types of construction are to be included in the Contract Documents with respect to This Part of the Project, to make reasonable adjustments in the scope of This Part of the Project and to include in the Contract Documents alternate bids to adjust the Construction Cost to the fixed limit for This Part of the Project. Such fixed limit shall be increased in the amount of any increase in the Contract Sum related to This Part of the Project Occurring after execution of the Contract for Construction.

**5.2.3** If the Bidding or Negotiation Phase for This Part of the Project has not commenced within 90 days after the Architect submits the Construction Documents to the Owner, any Project budget or fixed limit of Construction Cost for This Part of the Project established as a condition of this Agreement shall be adjusted to reflect changes in the general level of prices in the construction industry between the date of submission of the Construction Documents to the Owner and the date on which bids or proposals are sought.

**5.2.4** If a fixed limit of Construction Cost for This Part of the Project (adjusted as provided in Subparagraph 5.2.3) is exceeded by the lowest bona fide bid or negotiated proposal, the Architect may require the Consultant, without additional charge, to modify the Consultant's Drawings, Specifications and other documents for This Part of the Project as necessary to bring the Construction Cost thereof within such fixed limit for This Part of the Project. If it was not practicable to establish a fixed limit of Construction Cost for This Part of the Project, and if the lowest bona fide bid or negotiated proposal, the detailed estimate of Construction Cost or the preliminary estimate of Construction Cost established for the entire Project (including the bidding contingency) exceeds the

AIA DOCUMENT C141- ARCHITECT-CONSULTANT AGREEMENT - SIXTH EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING; Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format  C141-1987

FBFK 13039
PRIVILEGED - SUBJECT
TO PROTECTIVE ORDER

fixed limit of Construction Cost of the entire Project and the budget for This Part of the Project is exceeded, the Architect may require that the Drawings, Specifications and other documents prepared by the Consultant be modified without additional compensation to the Consultant, so that the Consultant may bear a reasonable portion of the burden of reducing the Construction Cost of This Part of the Project so that the fixed limit of Construction Cost for the entire Project is not exceeded. The providing of such service shall be the limit of the Consultant's responsibility in this regard, and having done so, the Consultant shall be entitled to compensation for all services performed in accordance with this Agreement.

## ARTICLE 6
## USE OF CONSULTANT'S DRAWINGS, SPECIFICATIONS AND OTHER DOCUMENTS

**6.1** Except for reference and coordination purposes in connection with future additions or alterations to the Work, Drawings, Specifications and other documents prepared by the Consultant are instruments of the Consultant's service for use solely with respect to this Project and, unless otherwise provided, the Consultant shall be deemed the author of these documents and shall retain all common law, statutory and other reserved rights, including the copyright. The Architect and Owner shall be permitted to retain copies, including reproducible copies, of the Consultant's Drawings, Specifications and other documents for information and reference. The Consultant's Drawings, Specifications or other documents shall not be used by the Architect or others on other projects, or for completion of this Project by others, unless the Consultant is adjudged to be in default under this Agreement, except by agreement in writing and with appropriate compensation to the Consultant.

**6.2** The Architect and Consultant shall not make changes in each other's Drawings, Specifications and other documents without written permission of the other party.

**6.3** The Consultant shall maintain on file and make available to the Architect design calculations for This Part of the Project, and shall furnish copies thereof to the Architect on request.

**6.4** Submission or distribution of Consultant's documents to meet official regulatory requirements or for similar purposes in connection with This Part of the Project is not to be construed as publication in derogation of the Consultant's reserved rights.

## ARTICLE 7
## ARBITRATION

**7.1** Claims, disputes or other matters in question between the parties to this Agreement arising out of or relating to this Agreement or the breach thereof, shall be subject to and decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agree otherwise.

**7.2** Demand for arbitration shall be filed in writing with the other party to this Agreement and with the American Arbitration Association. A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen. In no event shall the demand for arbitration be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statutes of limitations.

**7.3** No arbitration arising out of or relating to this Agreement shall include, by consolidation, joinder or in any other manner, an additional person or entity not a party to this Agreement except by written consent containing a specific reference to this Agreement and signed by the Architect, Consultant and any other person or entity sought to be joined.
Consent to arbitration involving an additional person or entity shall not constitute consent to arbitration of any claim, dispute or other matter in question not described in the written consent or with a person or entity not named or described therein. The foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by the parties to this Agreement shall be specifically enforceable in accordance with applicable law in any court having jurisdiction thereof.

**7.4** The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

## ARTICLE 8
## TERMINATION, SUSPENSION OR ABANDONMENT

**8.1** This Agreement may be terminated at such time as the Prime Agreement is terminated. The Architect shall promptly notify the Consultant of such termination.

**8.2** If the Project is suspended for more than 30 consecutive days, for reasons other than the fault of the Consultant, the Consultant shall be compensated for services performed prior to notice of such suspension. When the Project is resumed, the Consultant's compensation shall be equitably adjusted to provide for expenses incurred in the interruption and resumption of the Consultant's services.

AIA DOCUMENT C141- ARCHITECT-CONSULTANT AGREEMENT - SIXTH EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format  C141-1987

FBFK 13040
PRIVILEGED - SUBJECT
TO PROTECTIVE ORDER

**8.3** If the Project is abandoned by the Architect because of the Owner's abandonment of the Project for more than 90 consecutive days, the Consultant may terminate this Agreement by giving written notice.

**8.4** This Agreement may be terminated by either party upon not less than seven days' written notice should the other party fail substantially to perform in accordance with the terms of this Agreement through no fault of the party initiating the termination.

**8.5** If the Prime Agreement is terminated through no fault of the Consultant, the Consultant's compensation for This Part of the Project, for services performed and expenses incurred prior to the date of termination, and Termination Expenses, if any, shall be limited to a proportional share of payment received by the Architect.

## ARTICLE 9
## MISCELLANEOUS PROVISIONS

**9.1** Unless otherwise provided, this Agreement shall be governed by the law of the principal place of business of the Architect.

**9.2** Terms in this Agreement shall have the same meanings as those in AIA Document A201, General Conditions of the Contract for Construction, current as of the date identified in the Prime Agreement.

**9.3** Causes of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence to run not later than either the date of Substantial Completion for acts or failures to act occurring prior to Substantial Completion or the date of issuance of the final Certificate for Payment for acts or failures to act occurring after Substantial Completion.

**9.4** The Architect and Consultant waive all rights against each other and against the contractors, consultants, agents and employees of the other for damages, but only to the extent covered by property insurance during construction, except such rights as they may have to the proceeds of such insurance as set forth in the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date identified in the Prime Agreement. The Consultant and Architect shall require similar waivers from the Consultant's contractors, consultants and agents.

**9.5** The Architect and Consultant, respectively, bind themselves, their partners, successors, assigns and legal representatives to the other party to this Agreement and to the partners, successors, assigns and legal representatives of such other party with respect to all covenants of this Agreement. Neither Architect nor Consultant shall assign this Agreement without written consent of the other.

**9.6** This Agreement represents the entire and integrated agreement for This Part of the Project between the Architect and Consultant and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both Architect and Consultant.

**9.7** Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Architect or Consultant.

**9.8** Unless otherwise provided in this Agreement, the Architect and Consultant shall have no responsibility for the discovery, presence, handling, removal, or disposal of or exposure of persons to hazardous materials in any form at the Project site, including but not limited to asbestos, asbestos products, polychlorinated biphenyl (PCB) or other toxic substances.

## ARTICLE 10
## PAYMENTS TO THE CONSULTANT

**10.1  DIRECT PERSONNEL EXPENSE AND DIRECT SALARY EXPENSE**

**10.1.1** Direct Personnel Expense is defined as the direct salaries of the Consultant's personnel engaged on the Project, and the portion of the cost of their mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, pensions, and similar contributions and benefits.

**10.1.2** Direct Salary Expense is defined as the direct salaries of the Consultant's personnel engaged on the Project, but does not include the cost of related mandatory and customary contributions and benefits.

**10.2  REIMBURSABLE EXPENSES**

**10.2.1** Reimbursable Expenses are in addition to compensation for Basic and Additional Services and include expenses incurred by the Consultant and Consultant's employees and subconsultants in the interest of the Project, to the extent they are reimbursable by the Owner under the Prime Agreement, as identified in the following Clauses.

**10.2.1.1** Expense of transportation in connection with the Project; expenses in connection with authorized out-of-town travel; long-distance communications; and fees paid for

AIA DOCUMENT C141- ARCHITECT-CONSULTANT AGREEMENT - SIXTH EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

FBFK 13041
PRIVILEGED - SUBJECT
TO PROTECTIVE ORDER

securing approvals of authorities having jurisdiction over the Project.

**10.2.1.2**  Expense of reproductions, postage and handling of Drawings, Specifications and other documents.

**10.2.1.3**  If authorized in advance by the Architect, expense of overtime work requiring higher than regular rates.

**10.2.1.4**  Expense of renderings, models and mock-ups requested by the Architect.

**10.2.1.5**  Expense of additional insurance coverage or limits, including professional liability insurance in excess of the requirements of Paragraph 11.5.

**10.2.1.6**  Expense of computer-aided design and drafting equipment time when used in connection with This Part of the Project.

**10.3    PAYMENTS ON ACCOUNT OF SERVICES**

**10.3.1**  Payments for Basic Services, Additional Services and Reimbursable Expenses shall be made on the basis set forth in Article 11.

**10.3.2**  The Architect shall disclose to the Consultant, prior to the execution of this Agreement, contingent or other special provisions relative to compensation that are included in the Architect's understanding with the Owner or in the Prime Agreement.

**10.3.3**  The Consultant shall submit invoices for Basic Services, Additional Services and Reimbursable Expenses in accordance with the provisions of the Prime Agreement. The Architect shall review such invoices and, if they are considered incorrect or untimely, the Architect shall review the matter with the Consultant and confirm in writing to the Consultant within ten days from receipt of the Consultant's billing the Architect's understanding of the disposition of the issue.

**10.3.4**  If and to the extent that the time initially established in Subparagraph 11.4.1 of this Agreement is exceeded or extended through no fault of the Consultant, compensation for services rendered during the additional period of time shall be computed in the manner set forth in Paragraph 11.2.

**10.3.5**  When compensation is based on a percentage of Construction Cost, and portions of the Project are deleted or otherwise not constructed, compensation for those portions of the Project shall be payable to the extent services are performed on those portions, in accordance with the schedule set forth in Subparagraph 11.1.2, based on (1) the lowest

bona fide bid or negotiated proposal, or (2) if no such bid or proposal is received, the most recent preliminary estimate of Construction Cost or detailed estimate of Construction Cost for This Part of the Project.

**10.3.6**  Payments to the Consultant will be made promptly after the Architect is paid by the Owner under the Prime Agreement. The Architect shall exert reasonable and diligent efforts to collect prompt payment from the Owner. The Architect shall pay the Consultant in proportion to amounts received from the Owner which are attributable to the Consultant's services rendered.

**10.4    PAYMENTS WITHHELD**

**10.4.1**  No deductions shall be made from the Consultant's compensation on account of penalty, liquidated damages or other sums withheld from payments to contractors, or on account of the cost of changes in the Work other than those for which the Consultant has been found to be liable.

**10.5    CONSULTANT'S ACCOUNTING RECORDS**

**10.5.1**  Records of Reimbursable Expenses and expenses pertaining to Additional Services and services performed on the basis of a multiple of Direct Personnel Expense shall be available to the Architect or Architect's authorized representative at mutually convenient times.

**10.6    INSURANCE**

**10.6.1**  If required by the Architect, the Consultant shall obtain insurance covering claims arising out of the performance of professional services under this Agreement and caused by errors, omissions, or negligent acts for which the Consultant is legally liable. This insurance, if available, shall be maintained in force by the Consultant for a reasonable period after the date of Substantial Completion of the Project as agreed to by the Architect and Consultant.

**10.6.2**  Unless otherwise agreed, the Architect and Consultant shall each provide insurance to protect themselves from claims under workers' or workmen's compensation acts; from claims for damages because of bodily injury, including personal injury, sickness, disease, or death of any employees or of any other person; from claims for damages because of injury to or destruction of property including loss of use resulting therefrom; and from damage to or destruction of property including valuable papers and records coverage and including loss of use resulting therefrom.

**10.6.3**  The insurance required pursuant to Subparagraphs 10.6.1 and 10.6.2 shall be in not less than the minimum limits required by law or by Paragraph 11.5.

AIA DOCUMENT C141- ARCHITECT-CONSULTANT AGREEMENT - SIXTH EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format  C141-1987

FBFK 13042
PRIVILEGED - SUBJECT
TO PROTECTIVE ORDER

**10.6.4** The Consultant shall furnish to the Architect Certificates of Insurance evidencing the insurance required by Subparagraphs 10.6.1 and 10.6.2, including appropriate evidence that each type of insurance includes appropriate coverage for this specific Project. Certificates shall contain provisions that at least 30 days' prior written notice will be given to the Architect in the event of cancellation, reduction in or nonrenewal of the insurance.

## ARTICLE 11
## BASIS OF COMPENSATION

The Architect shall compensate the Consultant as follows:

### 11.1    BASIC COMPENSATION

**11.1.1** FOR BASIC SERVICES, as described in Paragraphs 2.2 through Subparagraph 2.6.13 and other services included in Article 12 as part of Basic Services, Basic Compensation shall be computed as follows:
*(Insert basis of compensation, including stipulated sums, multiples or percentages, and identify phases to which particular methods of compensation apply, if necessary.)*

**11.1.2** Where compensation is based on a stipulated sum or percentage of Construction Cost for This Part of the Project, progress payments for Basic Services in each phase shall total the following percentages of the total Basic Compensation payable:
*(Insert additional phases as appropriate.)*

| | |
|---|---|
| ~~Schematic Design Phase:~~ | ~~percent ( %)~~ |
| Design Development Phase: | percent ( %) |
| Construction Documents Phase: | percent ( %) |
| Bidding or Negotiation Phase: | percent ( %) |
| Construction Phase: | percent ( %) |
| ~~Total Basic Compensation~~ | ~~one-hundred percent (100%)~~ |

Insert A: See referenced Exhibit C for Progressive Payment Schedule.

### 11.2    COMPENSATION FOR ADDITIONAL SERVICES

**11.2.1** FOR PROJECT REPRESENTATION BEYOND BASIC SERVICES, as described in Paragraph 3.2, compensation shall be computed as follows:
2.25 X Direct Personnel Expense. Direct Personnel Expense shall be as defined in Article 11, Section 11.1 of the Owner/Architect Agreement.

**11.2.2** FOR ADDITIONAL SERVICES OF THE CONSULTANT, as described in Article 3, other than (1) Additional Project Representation described in Subparagraphs 3.2.1 through 3.2.3, (2) services required to meet a budget modified by the Owner and (3) services excluding services of subconsultants for other than the normal consulting services for This Part of the Project, compensation shall be computed as follows:
*(Insert basis of compensation, including rates and/or multiples of Direct Personnel Expense for Principals and employees, and identify Principals and classify employees, if required. Identify specific services to which particular methods of compensation apply, if necessary.)*
When possible the Architect shall solicit a lump sum proposal from the Consultant for all additional work.

When time does not allow for the consultant to prepare a lump sum proposal, the Architect and Consultant shall discuss and agree upon the additional required scope of work. The Consultant shall offer his best professional estimate of time based upon his understanding of the additional scope of work. The Consultant shall endeavor to manage his personnel and their efforts to adhere to the anticipated fee. The Consultant shall advise the Architect on a regular basis as to the Consultant's progress and cost of the work.

**11.2.3** FOR ADDITIONAL SERVICES OF SUBCONSULTANTS for other than normal consulting services for This Part of the Project, as provided under Subparagraph 11.2.2 or identified in Article 12 as Additional Services, a multiple of  ( 0 ) times the amounts billed to the Consultant for such services.
*(Identify specific types of subconsultants in Article 12, if required.)*

### 11.3    REIMBURSABLE EXPENSES

---

AIA DOCUMENT C141- ARCHITECT-CONSULTANT AGREEMENT - SIXTH EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING; Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format  C141-1987

FBFK 13043
PRIVILEGED - SUBJECT
TO PROTECTIVE ORDER

**11.3.1** FOR REIMBURSABLE EXPENSES, as described in Paragraph 10.2, a multiple of  ( 1.0 ) times the expenses incurred by the Consultant, Consultant's employees and subconsultants in the interest of This Part of the Project.

## 11.4   ADDITIONAL PROVISIONS

**11.4.1** IF BASIC SERVICES covered by this Agreement have not been completed within  ( 36 ) months of the date hereof, through no fault of the Consultant for This Part of the Project, extension of the Consultant's services beyond that time shall be considered Additional Services and the amounts of compensation set forth in this Agreement shall be equitably adjusted as provided in Subparagraph 11.2.2.

**11.4.2** The rates and multiples set forth for Additional Services shall be annually adjusted in accordance with normal salary review practices of the Consultant.

## 11.4.3   PAYMENT PROVISIONS
*(Insert provisions as to conditions, contingencies, times, manner and other particulars concerning payments, including any provisions for the payment of interest.)*
Consultant shall prepare and delivers invoices for services performed to date to the Architect no later than the 20th of each and every month.  Invoices shall be for labor and reimbursable costs incurred in support of the project, in accordance with the Consultants's schedule of services and shall be projected to month's end.

## 11.5   INSURANCE COVERAGES
*(After consultation with insurance counsel for the Architect and Consultant, insert the minimum limits of insurance required for each type of insurance required in Subparagraphs 10.6.1 and 10.6.2, and other coverages which may be necessary to protect them.  If insurance required is in excess of what the Consultant normally carries, the Consultant will be reimbursed if the Architect is reimbursed by the Owner.)*
**11.5.1**  Consultant represents and warrants that it carries claims made basis Contractor's Professional Liability Insurance which includes Errors and Omissions Insurance and Contractual Liability Insurance in the annual aggregate of $1,000,000.00 and will maintain Consultant's Professional Liability Insurance which includes Errors and Omissions and Contractual Liability Insurance in the foregoing amount and in a form and with an insurance company reasonably acceptable to Owner and the Architect.  Such insurance shall be carried by Consultant throughout the duration of the contract.

**11.5.2**  Before beginning service under this Agreement and at all times during which the foregoing insurance must be kept in force, Consultant shall provide to the Architect, in a form approved by the Owner and the Architect, a Certificate of Insurance evidencing the foregoing insurance.  Each such Certificate shall expressly provide that the insurance evidenced by the Certificate shall not be canceled, non-renewed or modified without thirty (30) days' advance written notice by certified mail, returned receipt requested, to the Architect addressed as follows:

VOA Associates, Incorporated
224 South Michigan Avenue
Chicago, Illinois 60604
Attn:  Mr. Timothy McGrath

**11.5.3**  Consultant represents and warrants that the coverage afforded the additional insureds shall be primary insurance for the additional insureds with respect to claims arising out of operations performed by or on behalf of the Contractor.  If the additional insureds have other insurance which is applicable to the loss, such other insurance shall be on excess or contingent basis.  The amount of the company's liability under this insurance policy shall not be reduced by the existence of such other insurance.

Consultant agrees that he shall carry insurance provisions consistant with the requirements of the above paragraph as part of his responsibilities as outlined under this Professional Services Agreement.

Reference Owner/Architect Agreement, Article 13.7.

## ARTICLE 12
## OTHER CONDITIONS OR SERVICES

*(Insert descriptions of other services, identify specific types of subconsultants, identify Additional Services included within Basic Compensation and modifications to the payment and compensation terms included in this Agreement.)*
Additional clarifications and definition of the Consultants Scope of Work required under this Professional Services agreement are articulated as follows:

AIA DOCUMENT C141- ARCHITECT-CONSULTANT AGREEMENT - SIXTH EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292.  WARNING; Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

FBFK 13044
PRIVILEGED - SUBJECT
TO PROTECTIVE ORDER

12.1 Exhibit A - Owner/Architect Agreement

12.2 Exhibit B - Schuler & Shook Professional Services proposal, dated March 16, 1999.

12.3   VOA letter dated July 12, 1999 - Clarification to Exhibit B, Section VI, Article C Alternate Bids of the Consultant's Professional Services proposal - the Consultant shall prepare alternate bid drawings and specifications as directed by the Architect. This service will only be considered as an additional service if the Theatre Design falls within the Owner's stated project budget and the Owner wishes to indentify additional measures to save construction cost.

The consultant understands and agrees to recommend and document Alternates as a means of meeting his fiduciary obligation to the Owner in providing Theatre Design Services that meet the Owner's stated and supported construction budget.

12.4 Exhibit C - Progressive Payment Schedule

12.5  Exhibit D - VOA letters of Clarification and Notice of Award dated July 12, 1999

12.6 Exhibit E - VOA's Project Checklist.

This Agreement entered into as of the day and year first written above.

ARCHITECT                                                    CONSULTANT

_____                          _____
(Signature)                                                    (Signature)
                                                                     ROBERT SHOOK, ASTC, PRESIDENT
Paul Hansen, Vice President
(Printed name and title)                                 (Printed name and title)

AIA DOCUMENT C141- ARCHITECT-CONSULTANT AGREEMENT - SIXTH EDITION - AIA - COPYRIGHT 1987 - THE AMERICAN INSTITUTE OF ARCHITECTS, 1735 NEW YORK AVENUE N.W., WASHINGTON, D.C. 20006-5292. WARNING: Unlicensed photocopying violates U.S. copyright laws and is subject to legal prosecution. This document was electronically produced with permission of the AIA and can be reproduced without violation until the date of expiration as noted below.

Electronic Format C141-1987

er Document: SCHULLERCNTRCT.DOCi -- 10/6/1999. AIA License Number 100500, which expires on 12/1/1999 -- Page #14

FBFK 13045
PRIVILEGED - SUBJECT
TO PROTECTIVE ORDER



**SCHULER & SHOOK, INC.**

THEATRE CONSULTING
ARCHITECTURAL LIGHTING DESIGN

15 April 2002

Mr. Al Migon, VOA Associates, 224 South Michigan Avenue, Suite 1400,
Chicago, Illinois, 60604-2595

Re: School District 230, Orland Park, Illinois

AL, We propose to perform additional theatre consulting services relative to the
orchestra pit infill platforms for Victor J Andrew, Carl Sandburg, and Alonzo
Stagg High Schools. Our scope of services for the three schools will be as
follows:

1. We will prepare complete contract drawings and details for the orchestra
   pit infill platform system. We will draw this information on the project
   drafting sheets. Review will be required by the project architect relative
   to the attachment and coordination of the orchestra pit infill platforms.

2. We will prepare complete specifications for the orchestra pit infill
   platforms. These specifications will be prepared as camera ready.
   Review will be required by the project architect to assure coordination
   with the project general requirements.

3. We will review contractor submittals and markup comments.

4. We will inspect the pit infill platforms installation.

Our additional fee for these services will be $2,500. This fee does not include any
out of town design meetings. This proposal assumes that all (3) platform systems
will be identical and provided by a single contractor, and that (1) set of shop
drawings will be issued for all three schools and all on site reviews will be
concurrent with the system checks of the base building. If installations occur
beyond the dates of system checkouts additional trips will be billed at our hourly
rates. All conditions of our existing contract remain in effect and govern this
work.

Al, please sign and return a copy to us.

SCHULER & SHOOK, INC.                    Accepted:

Todd Hensley, ASTC                       Paul Han        4/19/02
Principal Consultant                                     date

CHICAGO

MINNEAPOLIS

DALLAS-FT.WORTH

_0 NORTH ORLEANS
SUITE 400
CHICAGO, IL 60610
TEL 312-944-8230
FAX 312-944-8297
www.schulershook.com

FBFK 27550
PRIVILEGED - SUBJECT
TO PROTECTIVE ORDER