## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

UNITED STATES FIDELITY AND
GUARANTY COMPANY,

        Plaintiff,

    v.

VOA ASSOCIATES INC., LIBERTY
INTERNATIONAL UNDERWRITERS,
MICHAEL J.MADDEN and JEAN
MADDEN,

        Defendants.

Case No. 08 C 0862

Judge Kennelly

## VOA ASSOCIATES, INC.'S REDACTED REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

USF&G is unable to dispute that it never sent VOA any notification that it was reserving its rights to deny coverage for design allegations raised for the first time in the Fourth Amended Complaint until 10 days before trial. USF&G now seeks to rely on a reservation of rights letter allegedly mailed to VOA over one year before the Fourth Amended Complaint was filed – a letter that VOA never received and USF&G did not even know existed until discovery commenced in this case, and one which is so inaccurate and misleading that it does not even quote the right policy or policy limits. USF&G then peppers its response to VOA's Motion for Summary Judgment with references to irrelevant and disputed facts in an attempt to blame the victim of its incompetence- its insured, VOA. We respectfully request that this Court order USF&G to do what USF&G should have done years ago, and that is to take responsibility for indemnifying VOA against the terrible damage its actions have wreaked upon it.

## ARGUMENT

### I. THE THIRD AND FOURTH AMENDED COMPLAINTS TRIGGERED USF&G'S DUTY TO DEFEND THROUGH THE APPEAL.

USF&G concedes, as it must, that it had a defense obligation with respect to the Third and Fourth Amended Complaints in the Underlying Litigation. (USF&G Response at 1). Illinois law is clear that an insurer's duty to defend arises if some of the allegations, or some of the

theories presented by plaintiff, are within the potential coverage of the policy. See General
Agents Ins. Co. v. Midwest Sporting Goods Co., 215 Ill.2d 146, 155, 828 N.E.2d 1092, 1098 (Ill.
2005). Illinois law is equally clear that once triggered, an insurer's duty to defend extends
through the appeal of the underlying litigation as long as any potential for coverage remains. See
Illinois Founders Ins. Co. v. Guidish, 248 Ill. App. 3d 116, 121, 618 N.E.2d 436, 441 (1st Dist.
1993) (obligation of good faith and fair dealing obligates insurer to prosecute a reasonable appeal
on behalf of an insured); Valley Forge Insurance Co. v. Swiderski Electronics, Inc., 359 Ill App.
3d 872, 891, 834 N.E.2d 562, 577 (2d Dist. 2005) (an insurer remains obligated to defend an
insured so long as there remains *any question* as to whether the underlying claims are covered by
the policy) (emphasis in original) *citing* General Agents Ins. Co. v. Midwest Sporting Goods Co.,
215 Ill.2d 146, 828 N.E.2d 1092 (Ill. 2005). As a result, USF&G must continue to defend VOA
until there is no longer any potential for coverage.

   USF&G totally ignores Illinois law relating to the determination of the duty to defend by
seeking to rely on facts that are being adjudicated in the underlying suit as the basis to terminate
its obligation to defend. The fundamental point first articulated by the supreme court in
Maryland Cas. Co. v. Peppers, 64 Ill.2d 187, 197, 355 N.E.2d 24, 30 (Ill. 1976), is that an issue
of ultimate fact upon which recovery would be based in a suit for damages should not be
adjudicated in a declaratory judgment regarding insurance coverage. The facts supporting
USF&G's contention that the "professional services" exclusion applies entirely overlap with the
facts that are yet to be determined un the Underlying Lawsuit, including whether VOA is liable
for performing professional services.

   Apparently, USF&G is taking the position that there is no longer any potential for
coverage under the USF&G Policy for two reasons: First, USF&G argues that the general
negligence allegations (which USF&G refers to as "potentially covered claims") against VOA
were dismissed pursuant to a Motion for Summary Judgment filed by its Assigned Defense
Counsel. This contention is entirely without merit -- the dismissal of the general negligence
claims is irrelevant because the judgment was not final. The Madden case is on appeal and the
entire judgment is subject to being vacated, as acknowledged by USF&G in USF&G's Response
to Liberty's Motion for Summary Judgment. (USF&G's Response To Liberty's Motion for
Summary Judgment at p. 6 (Docket No. 97)). Moreover, as set forth in VOA's Memorandum in
Opposition to USF&G's Motion for Summary Judgment at p.10 (Docket No. 99) and fully

2

incorporated here, the case Madden actually prosecuted against VOA at trial was based upon evidence regarding construction site safety and construction codes, which are not be subject to the professional services exclusion in the policy.  As a result, there remains a very strong potential that the USF&G Policy will have to ultimately indemnify VOA, even if USF&G is not estopped from asserting policy defense as set forth below.

Second, USF&G argues that VOA's contract "demonstrates" that there are no potentially covered claims since VOA's duties were limited to architecture and design. (USF&G Response at 2).  By making this argument, USF&G is asking this Court to interpret VOA's contract and the record in the Underlying Litigation to find as a matter of law that the actual facts supporting the judgment against VOA fall completely within the professional services exclusion, before that judgment is final.  Such a finding would impermissibly impact Madden's case.   It is not permissible for a court in a declaratory judgment action to determine an ultimate fact in the underlying action. See Maryland Casualty, 64 Ill.2d at 197, 355 N.E.2d at 30 ( ruling in a declaratory judgment action which estops the plaintiff from raising one of his theories of relief in the underlying case improper); Bonnie Owen Realty Inc. v. Cincinnati Ins.Co., 283 Ill App. 3d 812, 819, 670 N.E.2d 1182, 1187 (5th Dist. 1996); Thornton v. Paul, 74 Ill.2d 132,159, 384 N.E.2d 335, 346 (Ill. 1979)(inappropriate for court to determine a crucial issue in an ancillary proceeding with the plaintiff and the defendant in the underlying action aligned on the same side as defendants in the declaratory judgment action).

Thus, USF&G cannot demonstrate that it no longer has a duty to defend VOA unless and until the judgment in the Underlying Litigation is final, and the facts supporting a judgment have been resolved.

## II.   USF&G IS ESTOPPED FROM CONTESTING COVERAGE FOR THE MADDEN JUDGMENT BY UNDERTAKING THE DEFENSE OF THE THIRD AND FOURTH AMENDED COMPLAINTS WITHOUT A TIMELY OR ADEQUATE RESERVATION OF RIGHTS.

USF&G is estopped from asserting coverage defenses because it failed to properly reserve it rights, while undertaking VOA's defense.  USF&G controlled the defense of VOA for 5 months without any reservation of rights, during which time VOA was prejudiced by surrendering control over its defense.  USF&G attempted to reserve its rights pursuant to a letter drafted in May 2005, but USF&G cannot meet its burden to show that the letter was sent, and it

3

was legally deficient because it contained gross inaccuracies regarding the USF&G Policy. Even if USG&G could overcome these failings, USF&G did not attempt to reserve its rights as to the design allegations contained in the Fourth Amended Complaint until 10 days before trial, and after USF&G had defended VOA without an effective reservation of rights for 10 months. Finally, even the much belated June 5, 2007 letter sent immediately before trial was legally deficient. USF&G is estopped from asserting any coverage defenses.

**A.** **USF&G Does Not Dispute That It Defended VOA Against The Third Amended Complaint For Five Months Before It Even Attempted to Reserve Its Rights.**

As set forth in VOA's Memorandum in Support of its Motion for Summary Judgment and below, VOA strongly disputes that USF&G can meet its burden to show that it reserved its right to decline coverage for the Madden Judgment by the purported May 2005 Reservation of Rights Letter because the evidence shows that the letter was never received by VOA, and more likely than not, never mailed to VOA. However, even if the May 2005 Letter had been mailed by USF&G and actually received by VOA, it does not reserve USF&G's rights to decline coverage for the Madden Judgment because the purported letter's untimeliness was inexcusable and, as explained in section C, it came too late to avoid prejudice to VOA.

**REDACTED.** VOA disputes this version of events (VOA's Response to USF&G's Rule 56.1 Statement at ¶¶ 54-59, 64), but these "facts" are entirely irrelevant to the issue at hand, and amount to nothing more than a poorly disguised attempt to blame the victim of USF&G's incompetence. **REDACTED.** In any event, USF&G offers no explanation whatsoever for why it waited 5 months after it finally assigned defense counsel in early December 2004 to attempt to reserve its rights as to the Third Amended Complaint. Unfortunately for VOA, during those five months that USF&G inexplicably waited to inform VOA that it might not be covered for the Madden Lawsuit and that the defense counsel it assigned VOA would have a serious conflict of interest once USF&G decided to raise the "professional services" exclusion, VOA was induced to give up control of its own defense and prejudiced by the actions of Assigned Defense Counsel, as set forth below.

**B.** **Once USF&G Undertook VOA's Defense To The Third Amended Complaint, USF&G Cannot Reasonably Dispute That It Controlled VOA's Defense During The Five Month Period It Defended VOA Against The Third Amended Complaint Without Attempting To Reserve Its Rights.**

4

Under Illinois law, an insurer's duty to defend also includes the right to control the defense so that an insurer may protect its financial interest in the litigation's outcome and minimize unwarranted liability claims. See, e.g. Stoneridge Development Co. v. Essex Ins. Co., 383 Ill. App. 3d 731, 742, 888 N.E.2d 633, 644, (2d Dist. 2008). Thus, as a matter of law, USF&G controlled VOA's defense at the time it undertook it in December 2004. Although USF&G does acknowledge this basic element of Illinois insurance law in its argument that USF&G did not "control" Beranek, USF&G appears to argue that while it may have had the "right" to control Beranek, it did not actively exercise that right so as to create an estoppel.

In support of its contention, USF&G acknowledges that an insurer controls an insured's defense when it selects, supervises and pays the attorney assigned to defend the insured. (USF&G Response at 6). See Taco Bell Corp. v. Cont'l Cas. Co., 388 F.3d 1069, 1076 (7th Cir. 2004). Using this definition of "control," USF&G argues that nothing in this record establishes that USF&G controlled Assigned Defense Counsel. However, the purported May 2005 letter, quoted at length in USF&G's response at p.5, establishes that USF&G selected and paid for Mr. Beranek's services. The purported May 2005 letter stated, as quoted by USF&G in its Response: "St. Paul Travelers has retained Fraterrigo, Beranek, Feiereisel & Kasbohm to defend VOA in this matter[]" and went on to state that "..Mr. Beranek and his firm have an ongoing business relationship with St. Paul Traveler's (sic) and his services will be paid for by us."

Despite the language in the purported letter, which establishes under any reasonable standard that USF&G controlled Mr. Beranek, USF&G argues that it did not control Mr. Beranek because there is no evidence in the record that USF&G supervised him or attempted to direct his litigation strategy. (USF&G Response at 6). USF&G's contention is ironic, because rather than show that USF&G was not controlling Beranek, the fact that USF&G failed to supervise the attorney it hired to defend VOA only serves to demonstrate the depth of the breach of its duty to defend VOA.[1] If USF&G was not supervising the attorney it retained and paid to defend VOA, then no one was, and that fact might explain why VOA ended up being hit with a $1.6 million judgment. Indeed, the real question is not whether USF&G actually acted to direct the litigation strategy of Mr. Beranek, but that USF&G *could* have directed Beranek by virtue of the fact that he was hired by USF&G and USF&G paid his bills. USF&G apparently chose not

---

[1] **REDACTED**

5

to spend the time and resources needed to manage and monitor Mr. Beranek properly, and now wants to use that fact to argue that it did not "control" him and should not be responsible for the outcome his undirected services produced.[2]  USF&G contention fails as a matter of law, logic, and any standard of fairness.

**REDACTED.**

**C.    VOA Was Prejudiced By USF&G's Control of VOA's Defense During The Five Month Period It Defended VOA Against The Third Amended Complaint Without Attempting To Reserve Its Rights Because VOA Was Induced To Surrender Control of Its Defense.**

It is true that under Illinois law, VOA has the burden of establishing that it was prejudiced by USF&G's assumption of its defense, a burden that VOA had no problem demonstrating in this case.  While prejudice will not be conclusively presumed by the mere entry of an appearance and assumption of a defense, "if, however, by the insurer's assumption of the defense the insured has been induced to surrender his right to control his own defense, he has suffered prejudice which will support a finding that the insurer is estopped to deny coverage." Maryland Cas. Co., 64 Ill.2d at 196, 355 N.E.2d at 29.  While the issue of prejudice can be a question a fact, where, as here, there is no factual dispute regarding the insured's surrendering of control of its own defense, a finding of estoppel on a motion for summary judgment is appropriate. See Home Ins. Co. v. Three I Truck Line, Inc., 95 F. Supp.2d 901, 908 (N.D. Ill. 2000).

**REDACTED.**

Moreover, VOA was induced into surrendering control of the defense during the months prior to USF&G's attempted reservation of rights to its own detriment.  During those five months, Assigned Defense Counsel engaged in substantive motion practice, filed pleadings on VOA's behalf and engaged in discovery, as fully set forth in VOA's Memorandum in Support of its Motion for Summary Judgment at pp. 6-7.  Despite USF&G's attempt to downplay these

---

[2] Typically an insurer who fails to supervise and monitor an attorney it has hired does so at its own risk because if the attorney boggles the case, the insurer must pay the judgment.  Here, USF&G admits that it was not monitoring or properly managing VOA's defense, but wants this court to find that VOA should pay for a judgment which is likely due in part to USF&G's lack of oversight over its assigned counsel.

actions by Beranek as "routine," they involved matters of substance which did, or could have, impacted VOA's ability to avoid a potential conflict of interest. See Mobil Oil Corp.v. Maryland Cas. Ins. Co., 288 Ill. App. 3d 743, 755, 681 NE.2d 552, 560 (1st. Dist. 1997) ("By failing to inform [insured] promptly of the coverage dispute, [insurer] deprived [insured] of the opportunity to obtain its own counsel at the outset of litigation and avoid the potential conflict of interest").

USF&G responds by engaging in a two-page defense of Beranek's actions and stating that VOA has failed to show prejudice because it has not proven that it would have conducted its defense differently – a contention that entirely misses the mark. In Three I Truck Line, Inc., the court applied Illinois law to find on a Motion for Summary Judgment that an insurer's assumption and retention of absolute control of an underlying action justified estoppel. 95 F. Supp.2d at 908. In so ruling, the court held that the factual inquiry is not whether the insured could somehow manage to prove that its defense caused a less favorable outcome for the insured because it would not be possible to make such a demonstration after the fact, but rather whether the insurer usurped control of the defense from the insured. Id. at 906. There is no question here that USF&G's assumption of VOA's defense caused VOA to confer control of its defense to USF&G.

**REDACTED.**

As a result, even if there were no dispute that USF&G had sent the May 2005 Reservation of Rights Letter, or if there were any evidence that VOA had actually received it, the letter was simply too late to avoid prejudicing VOA. By May 2005, VOA had already been induced to surrender control of its defense, and the actions taken by Assigned Defense Counsel in the underlying case had been so substantive that USF&G cannot claim that VOA was not harmed by the undisclosed conflict of interest. See Kenilworth Ins. Co. v. McDougal, 20 Ill. Appl. 3d 615, 620, 313 N.E.2d 673, 677 (2d Dist. 1974) (regardless of the stage of proceedings, an insurer may waive its right to assert nonliability if its actions have prejudiced the insured).

### D.    USF&G Cannot Meet Its Burden To Show That It Reserved Its Rights As To The Third Amended Complaint in May 2005.

Because USF&G undertook VOA's defense, USF&G has the burden to show that it reserved its rights as to the Third Amended Complaint. See Utica Mutual Ins. Co., 327 F. Supp.2d at 928. USF&G claims that it did so in a May 2005 letter to VOA, but as set forth in

7

VOA's Memorandum in Support of Its Motion for Summary Judgment at 7-8, USF&G must overcome a litany of undisputed facts which point to the conclusion that the letter was never sent to VOA, including: (1) VOA never received the purported May 2005 reservation of rights letter (VOA's Rule 56.1 Statement at ¶ 23); (2) The May 2005 letter is not contained in USF&G's files (VOA's Rule 56.1 Statement at ¶¶ 21-22) despite the fact that it was USF&G's practice to keep copies of reservation of rights letters. (VOA's Rule 56.1 Statement at ¶ 24); (3) There is no document contained in USF&G's file evidencing that the letter was sent- no fax cover sheet, and no written confirmation of delivery (VOA's Rule 56.1 Statement at ¶ 25); (4) There is no entry in the claims log on or around May 4, 2005 related to the sending of a reservation of rights letter, despite entries about every aspect of the handing of the Madden Lawsuit. (VOA's Rule 56.1 Statement at ¶ 26) and there is no explanation for why this was not done. (VOA's Rule 56.1 Statement at ¶ 27).

USF&G points to the testimony of Iris Robinson in support of its contention that the May 2005 was sent to VOA, but Ms. Robinson's testimony was both confused and contradictory, and fails to overcome the significant evidence outlined above which indicates the letter was not sent to VOA. USF&G attempts to undermine VOA's unequivocal testimony that it did not receive the letter by insinuating that VOA did not keep complete records of the Madden litigation. USF&G contends that if its files were complete, VOA would have produced more documents to USF&G in this case. (USF&G Response at 11). **REDACTED/**

Finally, USF&G rather audaciously argues that VOA received constructive notice of the May 2005 when it was faxed to Assigned Defense Counsel. USF&G cites no support for its contention that an insurer adequately reserves its rights when it advises the counsel it hired that the insured is entitled to independent counsel. One can certainly surmise that such notice could never be adequate because the insurance counsel would always have an interest in not informing the insured of the reservation of rights for fear that the insured would choose to hire independent counsel, causing him to be essentially "fired" by the insurer. **REDACTED.**

### E.  Even If The May 2005 Letter Had Been Sent And Was Received By VOA, It Was Legally Deficient As A Matter of Law.

USF&G fails to acknowledge or address the fact that the May 2005 letter contained significant errors related to basic policy information and limits, quotes language not even contained in the USF&G Policy and contains unfinished, nonsensical sentences. (VOA's Rule

8

56.1 Statement at ¶¶ 33-35). USF&G fails to address how, given the gross (and undisputed) inaccuracies contained in the May 2005 letter, the May 2005 letter served to "fairly inform" VOA or allowed VOA to "choose intelligently" whether to waive the disclosed conflict of interest. USF&G cannot reasonably argue that the fact that an insurer has mislead its insured into believing that the insured has $2 million of coverage instead of $1 million makes no difference to an insured's ability to decide whether to waive the conflict, even if the insurer did manage to get most of the information about the policy defense it was asserting right. After all, if information related to policy limits was not relevant to a reservation of rights, USF&G would not have been included it in the first place. USF&G breached its duty to defend VOA by providing misleading and inaccurate information in its reservation of rights.

**F.**   **USF&G Does Not Dispute That It Did Not Send A Reservation of Rights Letter Following The Fourth Amended Complaint Until 10 Days Before Trial and It Cannot Rely On The May 2005 Letter To Reserve Its Rights As To The Fourth Amended Complaint.**

It is undisputed that Plaintiff in the Madden Lawsuit did not make allegations of professional negligence related to the design of the orchestra pit until the Fourth Amended Complaint was filed on August 16, 2006. (VOA's Rule 56.1 Statement at ¶ 36). The Fourth Amended Complaint is the pleading that went to trial, and these are the "design" allegations for which USF&G claims it owes VOA no indemnity. (VOA's Rule 56.1 Statement at ¶ 37).

**REDACTED.**

Despite the fact that USF&G was aware in September 2006 that there were new allegations which, for the first time, potentially triggered the Professional Services Exclusion of the USF&G Policy, USF&G did not attempt to reserve its rights related to the allegations of negligent design of the pit cover contained in the Fourth Amended Complaint until June 5, 2007 – 10 months after the Fourth Amended Complaint was filed and 10 days before trial. (VOA's Rule 56.1 Statement at ¶¶ 39, 45, 47). USF&G's utter lack of regard for the fact that VOA now faced allegations which might not be covered by the USF&G Policy is particularly troublesome given the fact that USF&G had no record in its file of having sent any reservation of rights letter to VOA. (VOA's Rule 56.1 Statement at ¶¶ 21-27).

Because USF&G cannot dispute that it did not attempt to issue a reservation of rights letter related to the Fourth Amended Complaint until 10 days before trial, USF&G now relies upon the purported May 2005 letter to argue that it reserved its rights as to the Fourth Amended

9

Complaint – a letter that USF&G did not even know existed until the parties found it in Beranek's file during discovery in this case. (VOA' Rule 56.1 Statement at ¶ 22). USF&G argues that the June 5, 2007 Reservation of Rights letter was an "supplement" or an "update" to the May 2005 letter, which generally reserved USF&G's rights as to "architectural services." (USF&G Response at 13).

Even if there were no dispute as to whether the May 2005 letter had been a sent by USF&G and USF&G actually had a copy of it in its file, USF&G cites no support for the proposition that an insurer can rely on general language contained in a reservation of rights letter referring to a different complaint, containing significantly different allegations, to deny coverage. As this Court stated in Utica Mutual Ins. Co., 327 F. Supp.2d at 930, "bare notice of a reservation of rights is insufficient."  In order to adequately inform VOA of the conflict of interest so that VOA could choose intelligently whether to waive the conflict or choose its own counsel, the reservation would need to make specific reference to the design allegations contained in the Fourth Amended Complaint and explain that if VOA is found liable for those allegations, the USF&G Policy would not cover that judgment.  At that point, VOA would have to assess the likelihood of being found liable on those claims, and whether it desired to be defended by an insurer who has no interest in investing resources defending claims for which it has no indemnity obligation (and face the very situation that it now confronts with a potentially uninsured judgment of $1.6 million, entered against it while being defended by the attorney selected by the insurer that is denying coverage).  **REDACTED**).[3]  As a result, even if VOA had received the May 2005 letter, and the May 2005 letter could be read to reserve USF&G's rights as to any and all allegations of professional services that might be asserted, VOA was not given the opportunity to put those two documents together and choose whether to allow USF&G to continue to defend it.  As a result, USF&G is not entitled to rely upon the May 2005 letter to reserve its rights as to the design allegations contained in the Fourth Amended Complaint.

G.     **VOA Was Prejudiced By USF&G's Control Of VOA's Defense During The Ten Month Period It Defended VOA Against The Fourth Amended Complaint Without Attempting To Reserve Its Rights.**

---

[3] **REDACTED.**

VOA was undeniably prejudiced by USF&G's control of VOA's defense for 10 months prior to USF&G's attempt to reserve its rights as to the design allegations right before trial. During those 10-months between August 2006 and June 2007, Assigned Defense Counsel filed an Amended Motion for Summary Judgment, and, according to USF&G, successfully dismissed all of the general negligence allegations, which were the acknowledged covered claims, leaving only allegations of professional negligence, which were the basis of USF&G's reservation of rights. (VOA's Rule 56.1 Statement at ¶¶41-42). This undisputed fact alone is sufficient to demonstrate that VOA was prejudiced by USF&G's failure to disclose the conflict of interest presented by the Fourth Amended Complaint. **REDACTED.** Three months after this demand was made and ignored by USF&G and its Assigned Defense Counsel, Plaintiff won a verdict against VOA for $1.6 million, an amount more than the offer to settle. (VOA's Rule 56.1 Statement at ¶¶ 43, 48). Without question, VOA suffered extreme prejudice as a result of USF&G's failure to inform VOA of its new reservation of rights and the conflict of interest it posed related to the design allegations at the time the Fourth Amended Complaint was filed. Even if the June 5, 2007 were legally sufficient – which it was not, as explained below – it came too late for VOA to avoid the prejudice it suffered as a result of VOA's control of the defense for 10 months under an undisclosed conflict of interest.

H.   **The June 5, 2007 Letter Was Not Adequate Because It Did Not Explain The Conflict Of Interest And Did Not Advise VOA That It Had The Right To Independent Counsel.**

In relying on its June 5, 2007 letter, USF&G argues that the letter was not required to disclose the potential conflict of interest or to inform VOA that it had a right to independent counsel paid for USF&G because that information had been disclosed in the May 2005 letter. Even if USF&G meets its burden to show that the May 2005 letter was sent to VOA and was a proper reservation of its rights, as discussed above, USF&G is not entitled to rely upon the May 2005 letter to reserve rights as to a subsequently filed complaint.

In addition, even if the June 5, 2007 Letter could be interpreted as an "update" to the May 2005 letter, the June 5, 2007 letter failed to explain the true nature of the conflict to VOA which was presented by the dismissal of the general negligence counts and the trial of the professional negligence counts. In order to be legally sufficient, the June 5, 2007 letter should have explained that USF&G was compelled to provide a defense to VOA at trial, despite the dismissal of the

11

general negligence claims, because the order dismissing the general negligence allegations was not final. However, due to the Professional Services Exclusion, USF&G potentially had no vested interest in the outcome of the trial on the professional negligence counts, except to ensure that the evidence in the case supported its coverage denial based on the "professional services" exclusion.

USF&G's glibly responds to VOA's assertion that the June 5, 2007 letter was deficient by stating that VOA should have sought the advice of its counsel if it did not understand the impact of the June 5, 2007 letter. USF&G's response utterly fails to recognize that *an insurer who undertakes the defense of an insured has the burden to explain the impact of its reservation of rights.* See Utica Mutual Ins. Co., 327 F. Supp.2d at 928. **REDACTED.**

### III.   USF&G IS NOT ENTITLED TO REIMBURSEMENT OF ITS DEFENSE COSTS.

In support of its Count against VOA for Unjust Enrichment, USF&G argues that General Agents Ins. Co., 215 Ill.2d 146, 828 N.E.2d 1092 stands for the limited proposition that an insurer may not be reimbursed for all defense fees expended where it was later decided in a declaratory judgment action that the insurer did not have a duty to defend. USF&G attempts to distinguish this case because here USF&G seeks only those fees and costs it expended after all of the potentially covered claims were dismissed.

General Agents clearly held that an insurer is not permitted to recover defense costs pursuant to a reservation of rights absent a provision allowing for such recovery in the insurance contract, period. 215 Ill.2d at 166, 828 N.E.2d at 1104. There is no support for USF&G's contention that this clear holding is limited to a situation where an insurer is attempting to recover all costs because it had not duty to defend a case at all. USF&G's argument is based on the same reasoning- that it is entitled to damages for fees and costs expended to defend uncovered claims pursuant to a reservation of rights. There is no provision in the USF&G Policy allowing for such recovery, so USF&G's claim clearly fails under General Agents.

Furthermore, even if USF&G's interpretation of the holding in General Agents passed muster, USF&G cannot demonstrate that its defense of VOA violated fundamental principles of justice and equity where USF&G continues to have defense obligation because judgment against VOA is not final and USF&G is not permitted to terminate its defense obligation until the conclusion of the Madden case. Under these circumstances, it does not violate fundamental principles of equity to insist that USF&G continue its defense of VOA.

12

## CONCLUSION

VOA respectfully requests that this Court enter an order finding: (1) The Madden Lawsuit triggered the duty to defend which extends through appeal; (2) USF&G is estopped from asserting any coverage defenses for the $1.6 million Madden Judgment and will be fully responsible for any liability that VOA is ultimately found to owe the Madden plaintiffs; and (3) USF&G is not entitled to reimbursement of any its defense costs and fees incurred in its defense of the Madden Lawsuit.

Dated: June 5, 2009                           VOA ASSOCIATES, INC.

                                              By: _____
                                                  One of Its Attorneys

Paul M. Lurie
Amy R. Skaggs
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL  60606-6473
(312) 258-5500
Firm ID #90219

CH2\7362157.1

DM_US:22192152_2