**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES FIDELITY AND GUARANTY COMPANY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 08 C 862** |
| ) | |
| **VOA ASSOCIATES, INC., LIBERTY INTERNATIONAL UNDERWRITERS, MICHAEL J. MADDEN and JEAN MADDEN,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY,  District Judge:

United States Fidelity and Guaranty Company (USF&G) has sued VOA Associates, Inc. (VOA) and Liberty International Underwriters (Liberty) for a declaration that it no longer has a duty to defend VOA in a state court lawsuit and partial reimbursement of costs it has already expended in defense of VOA.  USF&G, VOA, and Liberty have moved this Court for summary judgment.  For the following reasons, the Court denies the motions.

**Facts**

USF&G issued a general commercial liability insurance policy to VOA, with a liability limit of $1,000,000 per accident and $2,00,000 in the aggregate.  The USF&G policy contains a professional services exclusion endorsement in the primary coverage. The exclusion provides that coverage under the policy does not apply to bodily injury

"due to rendering or failure to render any professional service by or on behalf of any insured."  USF&G Mot., Ex. 2.  Professional service, as defined in the policy, includes architectural and design work.  The USF&G policy also included umbrella coverage of up to $5,000,000, which likewise contains a professional services exclusion.  In addition, the policy provides that the insured "must see to it that [USF&G is] notified as soon as practicable of an 'occurrence' or an offense which may result in a claim."  *Id.*, Ex. 1 at 17.

Liberty issued a series of one-year professional liability policies to VOA between 2003 and 2007.  They were "claims made and reported" policies, requiring as a prerequisite to coverage that VOA report a claim to Liberty within the same policy year as the claim was made to VOA.  The Liberty policies also allow VOA to report circumstances which it believes may give rise to a claim.  If a claim arising from those circumstances is subsequently made, it will be deemed to have been reported within the year the circumstances were reported to Liberty.  Each of the policies provides that any such notification of circumstances must be made in writing and include the reasons for anticipating the claim, the nature of the damages, the names of the potential claimants, and the manner in which the insured became aware of the circumstances.

In 1998, VOA entered into a contract with Consolidated High School District No. 230 to perform architectural and design services for several schools, including Alonzo Stagg High School.  The contract stated that VOA would not be responsible for "construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's responsibility."  USF&G Mot., Ex. 4 at 5.

2

On August 19, 2002, Michael Madden, an employee of the school district, allegedly fell into an orchestra pit designed by VOA at Alonzo Stagg High School.  Al Mignon, a VOA employee, was informed of the accident sometime afterwards but did not report it to anyone else at VOA.  In January 2003, Madden filed suit in the Circuit Court of Cook County but did not name VOA as a defendant.  On August 19, 2004, Madden filed his third amended complaint, in which he named VOA as a defendant.  Madden alleged that VOA was the architect that designed the orchestra pit but asserted negligence claims relating to construction, not design.

Immediately after it was served with the third amended complaint, VOA submitted the complaint to its insurance broker and then to USF&G.  In December 2004, USF&G hired attorney Kurt Beranek to defend VOA in the Madden action.

In May 2005, Beranek received via fax a reservation of rights letter from USF&G, addressed to VOA.  Iris Robinson, a USF&G employee, testified during her deposition that she addressed the letter to VOA and placed it in the outgoing mail bin.  She testified during a prior deposition that she did not recall sending the letter.  VOA had no record of receiving the letter, and USF&G had no copy of the May 2005 letter.

Although it misquoted VOA's policy and liability limitations, the May 2005 letter stated that USF&G was reserving its rights to deny coverage based on the professional services exclusion.  The letter also disclosed that Beranek had represented USF&G on other matters.

USF&G's claim log indicates that there was some confusion regarding the sending of a reservation of rights letter.  An entry on December 7, 2004, captioned

"Management Review" states "send me a copy of the ROR letter you sent to [VOA]." *Id.*

Ex. 30 at 34.  Other entries include

- January 4, 2005—"where is . . . ror letter that was suppose [sic] to be sent for review?" *Id.*
- January 24, 2004—"no ROR letter to insd is in the file?  Did you keep a copy?" *Id.*
- January 26, 2004—"The file will be back soon, I will get the ROR letter out." *Id.*
- February 24, 2005—"ror will go out." *Id.*

There was no entry during May 2005 indicating that a letter was sent to VOA or faxed to Beranek.  Furthermore, an entry detailing which employees had been assigned to the matter indicates that Robinson was no longer assigned to work on the VOA matter as of April 28, 2005.

On December 8, 2005, an employee of VOA's insurance broker contacted Liberty.  He faxed a copy of Madden's third amended complaint and stated that USF&G had just suggested that there were coverage issues and might soon issue a reservation of rights letter based on the professional services exclusion.  Liberty opened a file on this issue after this exchange.

On August 16, 2006, Madden filed a fourth amended complaint, alleging negligent design for the first time.  The complaint was served on Beranek.  He testified during his deposition that he thought VOA was verbally informed of the complaint.

Beranek moved for summary judgment on behalf of VOA.  On March 6, 2007, the court granted the motion as to the construction claims but denied the motion with respect to the negligent design claims.  Shortly after this ruling, Beranek sent VOA a report on the status of the lawsuit.  VOA contends that this was the first time it learned

of the existence of the fourth amended complaint and the professional negligence allegations.

In March 2007, Madden submitted a settlement demand of $1 million to Beranek, which he reported to USF&G.  None of the parties responded to the settlement offer. Subsequently, on June 5, 2007, USF&G sent to VOA a letter purporting to reserve its rights to decline coverage under the professional services exclusion for damages arising from VOA's design of the orchestra pit.

On June 7, 2007, Beranek sent a letter to Liberty informing it that the issues in the case had been narrowed to allegations of negligent design and that USF&G had issued a reservation of rights letter.  A few days later, Liberty received a copy of the fourth amended complaint for the first time.

On June 27, 2007, a jury returned a verdict for Madden, awarding him $1,606,415 in damages.  VOA has appealed the verdict, and Madden has appealed the dismissal of other defendants on summary judgment.

## Discussion

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).  A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury

5

could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  Because

the parties have filed cross-motions for summary judgment, the Court "construe[s] the

evidence and all reasonable inferences in favor of the party against whom the motion

under consideration is made." *Crews v. City of Mt. Vernon*, 567 F.3d 860, 864 (7th Cir.

2009) (citing *Calvin v. Home Loan Ctr. Inc.*, 531 F.3d 526, 528 (7th Cir. 2008)).

## A.      Reservation of rights

USF&G asks this Court to declare that it has no further duty to defend and no

duty to indemnify VOA.  Under Illinois law, an insurer's duty to defend is determined by

comparing the language of the allegations of the underlying complaint to the language

of the insurance policy.  *Utica Mut. Ins. Co. v. David Agency Ins., Inc.*, 327 F. Supp. 2d

922, 926 (N.D. Ill. 2004).  A court "must construe the allegations in the underlying

complaint liberally in favor of the insured, especially with regard to exclusionary clauses,

to determine if the allegations fall within, or potentially within, the scope of coverage

under the policy."  *Id.*

Madden's third amended complaint alleged that VOA negligently placed the pit in

a dangerous location, failed to provide adequate warnings, and failed to barricade or to

take other safety measures.  USF&G Mot., Ex. 6 at 16-17.  Although it alleged that VOA

served as the architect on the project, the complaint did not allege negligent design.  As

a result, the complaint, construed liberally in VOA's favor, fell within the scope of

coverage under USF&G's general liability policy.

USF&G contends that VOA's contract with the school district demonstrates that

its duties on the project were limited to design and architectural services.  As a result,

USF&G argues the third amended complaint fell within the professional services

exclusion.  Although the contract limited VOA's duties with respect to any construction

projects, it did not rule out the possibility that VOA undertook other construction-related

activities during the project for which it could incur liability.  The contract does not,

therefore, preclude USF&G's duty to defend.

Once the duty to defend is triggered, the insurer is obligated to provide an

adequate defense to the insured against all claims.  *Utica Mut.*, 327 F. Supp. 2d at 927.

When an insurer believes that the potential liability is not covered by its insurance

policy, it has two options:  "(1) defend the lawsuit under a proper reservation of rights,

or (2) secure a declaratory judgment about its obligations under the policy prior to trial."

*Id.* at 927-28.  "If the insurer fails to take either of these steps and is later found to have

wrongfully denied coverage, the insurer is estopped from raising policy defenses to

coverage."  *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150-

151, 708 N.E.2d 1122, 1135 (1999).  VOA seeks summary judgment on the ground that

USF&G is estopped from asserting the professional services exclusion because both

the May 2005 letter and the June 2007 letter were ineffective.

To be effective, a reservation of rights must "adequately inform the insured of the

rights which the insurer intends to reserve, 'for it is only when the insured is adequately

informed of the potential policy defense that he can intelligently choose between

retaining his own counsel or accepting tender of defense counsel from the insurer.'"

*Royal Ins. Co. v. Process Design Assocs., Inc.*, 221 Ill. App. 3d 966, 973, 582 N.E.2d

1234, 1239 (1991) (quoting *Cowan v. Ins. Co. of N. America*, 22 Ill. App. 3d 883, 896,

318 N.E.2d 315, 326 (1974)).  If there is a conflict of interest—meaning that the

insurer's interest would have been served equally by a finding of liability as by a finding

of no liability with respect to a given claim—"an insurer is generally estopped to assert a

defense of noncoverage where the insurer undertakes to defend its insured in the

underlying suit without reserving its rights." *Id.* at 975, 582 N.E.2d at 1240.  The

insured must prove that it was prejudiced by such a defense with "clear, concise, and

unequivocal evidence." *Id.*

      Both USF&G's and VOA's motions for summary judgment depend on whether

USF&G sent the May 2005 reservation of rights letter to VOA.  Without that letter,

USF&G's June 2007 letter was likely ineffective as a reservation of rights.  The June

2007 letter was sent just days before trial and was therefore too late to allow VOA to

make an intelligent choice between Beranek or seeking its own counsel.  *See Royal*

*Ins.*, 221 Ill. App. 3d at 973, 582 N.E.2d at 1239.  If, on the other hand, the May 2005

letter was sent to VOA, VOA's arguments for the application of estoppel fail, because a

proper reservation of rights prevents the operation of estoppel.  *Id.*

      USF&G's evidence that the May 2005 letter was actually sent to VOA is

insufficient to entitle it to summary judgment.  The evidence regarding Robinson's

actions was somewhat contradictory and does not point clearly to a particular

conclusion.  She testified in February 2009 that she vaguely remembered composing

and signing the letter but did not have a specific recollection that she mailed the letter.

In March 2009, however, Robinson testified that she had a definite recollection that the

letter was faxed and mailed out.  Furthermore, Robinson initially testified that she was

unsure whether she was working out of the Chicago office or the Naperville office in

May 2005 but later testified that she was sure she was in the Chicago office in May

8

2005 and that the letter was mailed out of that office.  The claim log maintained by USF&G indicates, however, that Robinson was not assigned to the VOA matter in May 2005.  Finally, Robinson could not explain why there was no entry in the claim log to reflect that the reservation of rights letter had been sent to VOA or faxed to Beranek. Indeed, she testified that her manager "kept a tight diary" and that "there should have been an entry."  USF&G Mot., Ex. 34 at 145.  When viewed in the light most favorable to VOA, a reasonable fact finder could conclude that USF&G failed to send the May 2005 reservation of rights letter to VOA.

USF&G contends that even if the May 2005 letter was ineffective, VOA cannot show that it was prejudiced by USF&G's defense.  It is undisputed, however, that Beranek received a settlement offer from Madden for $1 million and rejected it.  VOA contends that it was not informed of this offer.  USF&G's claim log indicates that it communicated to Beranek that it would not agree to that settlement because the only claims remaining in the lawsuit at the time were the non-covered design claims.  From this evidence, a reasonable fact finder could conclude that VOA was prejudiced by Beranek's representation funded by USF&G, because the verdict won by Madden exceeded this settlement offer.

On the other hand, a reasonable fact finder could conclude that USF&G sent the May 2005 letter to VOA and, therefore, properly reserved its rights to assert the professional services exclusion as a defense to coverage.  As a result, VOA's arguments for summary judgment based upon the application of estoppel arising USF&G's alleged failure to send the May 2005 letter also fail.

9

VOA also contends that even if the May 2005 letter was sent, it cannot serve as a reservation of rights with respect to the fourth amended complaint.  VOA fails to cite any authority for the proposition that a reservation of rights automatically becomes ineffective if the complaint in the underlying lawsuit is later amended.  That said, VOA has a viable argument that the May 2005 letter was ineffective as a reservation of rights.  Assuming that letter was sent, all that was on the table at that point was the third amended complaint, which referred to VOA's design work but did not accuse it of negligent design.  VOA arguably did not learn of the fourth amended complaint, in which negligent design was first alleged, until March 2007, just three months before trial.  This combination of circumstances, as well as the fact that VOA essentially would have had to put two and two together to figure out the implications of the May 2005 reservation in light of the new negligent design allegations, legitimately puts in question the effectiveness of the May 2005 letter as a reservation of rights.  On the other hand, VOA is not entitled to summary judgment regarding its contention that the May 2005 letter was ineffective.  A reasonable argument can be made that under the circumstances, the insurer properly reserved its rights even though the triggering event – notification to VOA of the fourth amended complaint's allegations – came later.[1]

---

[1]VOA also contends that the May 2005 letter was ineffective as a reservation of rights because it provided an incorrect description of VOA's policy and inaccurate quotes of the policy limits.  There is no requirement that a reservation of rights letter give the insured a perfectly accurate description of its policy.  Rather, the requirement is that the insurer must "adequately inform the insured of the rights which the insurer intends to reserve."  *Royal Ins.*, 221 Ill. App. 3d at 973, 582 N.E.2d at 1239.  Although the letter may have misquoted the policy, it is undisputed that the letter raised the professional services exclusion as the basis for USF&G's potential denial of coverage.

A reasonable fact finder could conclude that the May 2005 letter adequately informed VOA of the possibility that USF&G would use the professional services exclusion as a basis for denying coverage.

**B.    Notice to USF&G**

USF&G argues that it is entitled to deny indemnity to VOA based on VOA's failure to notify USF&G of Madden's fall in 2004.  VOA contends that USF&G has waived that defense.

Although the concepts of waiver and estoppel are related, they are two distinct inquiries.  The question of "[w]aiver focuses exclusively on the conduct of the insurer, while estoppel focuses on the conduct of the insured in response to representations made by the insurer." *Lumbermen's Mut. Ins. Cas. Co. v. Sykes*, 384 Ill. App. 3d 207, 218 (2008).  No detrimental reliance on the part of the insured is required to establish waiver by the insurer. *Western Cas. & Sur. Co. v. Brochu*, 105 Ill. 2d 486, 499, 475 N.E.2d 872, 877 (1985).  Waiver can be either express or implied, and may be inferred when "conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it." *Home Ins. Co. v. Cincinnati Ins. Co.,* 213 Ill. 2d 307, 326, 821 N.E.2d 269, 283 (2004).

VOA's insurance policy provides that VOA must provide notice of an occurrence "as soon as practicable."  USF&G Mot., Ex. 1.  VOA notified USF&G of Madden's August 19, 2002 fall on August 31, 2004, a few days after VOA was served with Madden's third amended complaint.  During the course of discovery in that case, it was uncovered that Albert Mignon, VOA's project manager in charge of that particular site,

was informed of the fall sometime in 2004.  Beranek reported this to USF&G in March

2006.  At that time, the general construction negligence claims were still part of the

lawsuit.  After receiving this information, USF&G continued to fund VOA's defense

through trial, without informing VOA of this possible coverage defense.  It was not until

USF&G filed this action that it first asserted VOA's failure to notify as a ground for

denying coverage.

A reasonable fact finder could conclude that USF&G's continued funding of

VOA's defense—including a summary judgment motion and trial preparation—after it

learned of a potential ground for denying coverage amounted to a waiver of that

defense.

## C.    Liberty

Liberty contends that it has no obligation to defend or indemnify VOA because

Madden's claim was not properly reported.  Liberty issued a series of term professional

liability insurance policies.  Each of these provided two ways in which claims could be

reported so as to trigger coverage by Liberty.  For the first, a claim had to be made to

VOA and reported to Liberty within the same policy year.  For the second, VOA could

report the circumstances giving rise to the claim to Liberty so that any subsequent claim

based on those circumstances would be deemed to have been made and reported with

in the year in which the underlying circumstances were reported.  *See Nat'l Union Fire*

*Ins. Co. of Pittsburgh v. Baker & McKenzie*, 997 F.2d 305, 306 (7th Cir. 1993)

(explaining the operation of claims-made policies and the effect of reporting

circumstances).

VOA contends that its broker's communication to Liberty on December 8, 2005 qualifies as the reporting of circumstances giving rise to the claim.  Liberty contends that the communication was not a reporting of circumstances because the policy required VOA to report the circumstance during the policy year in which it first became aware of that circumstance.  Because VOA first became aware of Madden's fall as early as 2002 but no later than 2004, Liberty argues, VOA's awareness did not coincide with the policy year during which it reported the lawsuit to Liberty—December 5, 2005 through December 4, 2006.

A reasonable fact finder could conclude, however, that on December 8, 2005, VOA had just become aware of the possibility that design-related claims might be asserted.  Although this was not the incident that gave rise to the lawsuit, this development arguably was the first indication that VOA might be subjected to liability for professional negligence claims.  As such, the December 8, 2005 communication may qualify as the reporting of a circumstance, which would mean that the claim was both made and reported within that policy year.  As a result, a reasonable fact finder could conclude that Liberty does, in fact, have a coverage obligation.

Liberty contends that it has no obligation with respect to the Madden suit because it received notice of the fourth amended complaint so late that it would be unduly prejudicial to force Liberty to indemnify VOA.  If it is found, however, that VOA properly reported circumstances in December 2005, Liberty would have had notice of the potential claim well before the filing of the fourth amended complaint.  As a result, Liberty's prejudice argument depends upon the resolution of the reporting of circumstances issue.

13

**Conclusion**

For the reasons stated above, the Court denies USF&G's, VOA's, and Liberty's motions for summary judgment [docket nos. 76, 80, and 84].  The case is set for a status hearing on September 10, 2009 at 9:30 a.m. for the purpose of setting a trial date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 27, 2009