**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 1:08-cv-00862 |
| VOA ASSOCIATES INC., LIBERTY INTERNATIONAL UNDERWRITERS, MICHAEL J. MADDEN and JEAN MADDEN, | ) ) ) ) | Honorable Matthew F. Kennelly Magistrate Judge Geraldine Soat Brown |
| Defendants. | ) ) | |

**VOA ASSOCIATES, INC.'S RESPONSE TO USF&G'S MOTION FOR
RECONSIDERATION OF THE COURT'S AUGUST 27, 2009 MEMORANDUM
OPINION AND ORDER**

USF&G's Motion for Reconsideration entirely misses the mark because USF&G fails to recognize a simple and basic premise of insurance law – at all times that USF&G and its Assigned Defense Counsel defended VOA, USF&G entirely controlled VOA's defense as matter of law, and did so for at least five months, before the alleged reservation of rights letter was sent. See, e.g. Stoneridge Development Co. v. Essex Ins. Co., 383 Ill. App. 3d 731, 742, 888 N.E.2d 633, 644 (2d Dist. 2008). As a result, if USF&G took any action that adversely affected VOA while defending VOA, USF&G is estopped from asserting coverage defenses under both its primary and umbrella policies. See Willis Corroon Corp. v. The Home Ins. Co., 203 F.2d 449, 452 (7th Cir. 2000) (insurer can be estopped from asserting coverage defenses under primary and umbrella policies if its defense causes some prejudice to the insured, even in cases where the insurer has properly reserved its rights).

**I. VOA's Actions Or Knowledge Related to Settlement Are Irrelevant Because
USF&G Controlled The Case, Not VOA.**

Since USF&G accepted the defense under a reservation of rights, it maintained an exclusive right to settle. VOA's alleged knowledge of a settlement demand prior to trial is not relevant to the prejudice issue because it was USF&G's case to settle, not VOA's. Thus,

USF&G's contention that VOA cannot claim prejudice because VOA was harmed by its own failure to demand that USF&G settle the case for $1 million fails as a matter of law.[1]

Because VOA's alleged knowledge of and actions related to settlement are irrelevant, the issue of prejudice related to the settlement offer will be determined entirely based on USF&G's actions. This Court has found that it is undisputed that USF&G rejected Madden's offer to settle for $1 million prior to trial. (See Memorandum and Order at p. 9). As this Court pointed out in its Memorandum and Order, USF&G rejected the settlement offer because the only claims remaining in the lawsuit at the time were claims USF&G contended were excluded by its policy. (Id.) As found by this Court, a reasonable fact finder could conclude that VOA was prejudiced by USF&G's decision to reject the settlement because the offer was for less than the verdict. (Id.) This is especially true here because USF&G's decision to reject the settlement offer was based entirely on what served USF&G's (undisclosed) interest and not in VOA's best interests.

Moreover, while USF&G's Motion unsuccessfully attempts to address perhaps the most egregious and straightforward incident of prejudice suffered by VOA – USF&G's rejection of a settlement demand for less than the verdict prior to trial –USF&G's control of VOA's defense prejudiced VOA on numerous other occasions. Importantly, some of the actions taken by USF&G that prejudiced VOA were taken during the five months it defended VOA when it is *undisputed* that USF&G had not reserved its rights. The prejudice suffered by VOA during the five months it was being defended by USF&G pursuant to an undisclosed conflict of interest results in estoppel against USF&G regardless of whether or not USF&G is able to prove at trial that it sent the purported May 4, 2005 Reservation of Rights Letter to VOA.

## II.     VOA Was Prejudiced By USF&G's Defense Prior To USF&G's Attempt To Reserve Its Rights In May 2005

It is *undisputed* that USF&G controlled VOA's defense from December 8, 2004, when it assigned Kurt Beranek ("Beranek" or "Assigned Defense Counsel") as VOA's counsel, until May 4, 2005, the date that USF&G contends it attempted to reserve its rights under the professional services exclusion. Because it is *undisputed* that USF&G controlled VOA's defense during this time period, any prejudice suffered by VOA as a result of USF&G's actions results in estoppel- *regardless of whether or not USF&G is able to prove that it sent the May 4, 2005*

---

[1] Unlike VOA's professional liability insurance policy with Liberty, the USF&G Policy does not contain a provision requiring an insured's consent to settle a claim.

*letter*. This Court was silent on the issue of whether or not VOA was prejudiced by USF&G's defense during this time period. If the Court were going to entertain any motion to reconsider, VOA contends that it is entitled to Summary Judgment on this issue alone.

The evidence is undisputed that VOA was induced into surrendering control of its defense through a request by USF&G's Assigned Defense Counsel to VOA's General Counsel, Paul Lurie, to withdraw as counsel. (USF&G's Response to VOA's Rule 56.1 Statement at ¶ 29). This request to withdraw was accompanied by a USF&G Litigation Referral Form sent by Assigned Defense Counsel that redacted the portion of the form which stated that USF&G intended to defend VOA under a reservation of rights. (Id.) This undisputed fact alone is enough to support a finding for Summary Judgment for VOA. See Home Ins. Co. v. Three I Truck Line, Inc., 95 F. Supp.2d 901, 908 (N.D. Ill. 2000) (where there is no factual dispute regarding the insured's surrendering of control of its own defense, a finding of estoppel on a motion for summary judgment is appropriate).

In addition, during the five months that it is undisputed that USF&G defended VOA without reserving its rights, Assigned Defense Counsel engaged in substantive motion practice, filed pleadings on VOA's behalf and engaged in discovery, as fully set forth in VOA's Memorandum in Support of its Motion for Summary Judgment at pp. 6-7 and Reply Memorandum at pp. 6-9. These actions involved matters of substance which did, or could have, impacted VOA's ability to avoid a potential conflict of interest. See Mobil Oil Corp.v. Maryland Cas. Ins. Co., 288 Ill. App. 3d 743, 755, 681 NE.2d 552, 560 (1st. Dist. 1997) ("By failing to inform [insured] promptly of the coverage dispute, [insurer] deprived [insured] of the opportunity to obtain its own counsel at the outset of litigation and avoid the potential conflict of interest").

**III.   VOA Was Further Prejudiced By USF&G'S Defense After USF&G Unsuccessfully Attempted to Reserve Its Rights On May 4, 2005.**

As this Court found in its Memorandum and Order, the only way that USF&G can avoid the possibility of estoppel in this case is if it can meet its burden to show that the May 4, 2005 was sent to VOA, because without that letter, the June 2007 letter was likely ineffective as a reservation of rights. (Memorandum and Order at p. 8).[2]  VOA acknowledges that this is a trial

---

[2] As this Court further found, USF&G also has the burden to show that even if sent, the May 4, 2005 was adequate to reserve USF&G's rights as to the allegations contained in the Fourth Amended

issue, but as this Court pointed out in the Memorandum and Order, the only evidence that USF&G has that the May 4, 2005 Letter was sent to VOA – the testimony of Iris Robinson – was "somewhat contradictory and does not point clearly to a particular conclusion." (Memorandum and Order at 8).  If USF&G is not able to meet its burden to show that the May 4, 2005 Letter was sent, VOA will have no problem demonstrating prejudice in this case.  In addition to the prejudice VOA suffered related to the rejected settlement demand outlined above, which may be enough to show prejudice to VOA even with a reservation of rights letter (see Willis Corroon Corp.), USF&G's defense prejudiced VOA throughout the Madden litigation, as set forth in VOA's Reply Memorandum in Support of Its Motion for Summary Judgment at pp. 6-9, 11, 13-14 and fully incorporated here.

**IV.     If USF&G Is Found To Be Estopped From Asserting Coverage Defenses, It Will Be Required To Indemnify VOA For Any Judgment Up To $6 Million, The Limits Of The Primary And Umbrella Coverage Under The USF&G Policy, Plus Interest.**

While not yet final, the Madden Judgment currently stands as $1,606,415, plus approximately $323,219.50 in interest accruing at 9% per annum.  The current action brought by USF&G seeks a declaration under the USF&G Policy that it has no duty to defend or indemnify VOA.  The USF&G Policy is defined by USF&G in this action as a general commercial liability policy issued to VOA containing primary coverage of $1 million, and umbrella coverage of up to $5 million. (Amended Compl. at ¶ 13 (Docket 55)).  In addition, the USF&G Policy contains a "Supplementary Payment" provision which provides that the USF&G Policy will pay for the full amount of interest on any judgment, and that the interest is not subject to the policy limits. (Amended Compl. at ¶ 18; Hartford Acc. & Indem. Co. v. Aetna Ins. Co., 132 Ill.2d 79, 547 N.E. 2d 114, 138 Ill.Dec. 145 (Ill. 1989) (Supplementary payments clause obligated insurer to pay post-judgment interest on the entire amount of the judgment, even if it exceeded the policy limits)).  The current action seeks relief under both  the primary and umbrella policies as defined as the USF&G Policy, and the Amended Complaint cites to the Professional Services Exclusion in both  policies. (Amended Compl. ¶¶ 15-16).  The May 4, 2005 Letter upon which USF&G bases its reservation of right to  assert the Professional Services Exclusion cites to both the primary and the umbrella policies.  Furthermore, in the reference to the umbrella coverage,

---

Complaint, which was filed 15 months after the May 4, 2005 Letter was purportedly sent. (Memorandum and Order at p. 10).

USF&G inaccurately represented to VOA that it had $2 million in coverage under the primary portion of the Policy. (Amended Compl. at Exhibit 2, footnote 1)(Docket 55-3)). As a result, if USF&G is unable to meet its burden to show that it reserved its rights by the May 4, 2005 Letter, USF&G will be liable to pay any judgment up to the limits of both the primary and umbrella coverage, or $6 million, plus interest. See Willis Corroon Corp., 203 F.2d at 453 (affirmed finding that insurer who issued general liability policy with $1 million primary limit and a $7 million umbrella policy was estopped from asserting professional services exclusions contained in both policies and was therefore liable for $2 million judgment).

## CONCLUSION

For the reasons set forth above related to the prejudice VOA suffered prior to USF&G's attempt to reserve its rights on May 4, 2005, VOA is entitled to judgment as a matter of law, even if USF&G is able to prove that it sent the May 4, 2005 Letter. Furthermore, even if VOA did not suffer prejudice prior to May 4, 2005, VOA was prejudiced by USF&G's defense throughout the Madden Litigation, including but not limited to, USF&G's refusal to settle the Madden claim prior to trial for less than the eventual verdict due entirely to its own (undisclosed) interest, and not VOA's interest, which would have been served by a settlement of $1 million prior to trial. As a result, USF&G may be estopped from asserting coverage defenses even if it reserved its rights. It will most definitely be estopped from asserting coverage defenses unless it is able to meet its burden to show that it sent the May 4, 2005 Letter, and that the May 4, 2005 Letter was adequate to reserve its rights as to the allegations contained in the Fourth Amended Complaint. It seems extremely unlikely that USF&G will be able to overcome the litany of evidence in the record indicating that that May 4, 2005 Letter was not sent to VOA, much of which was already pointed out by this Court in its Memorandum and Order, and prove by a preponderance of the evidence that the May 4, 2005 Letter was sent to VOA.

Moreover, as set forth above in section IV, the result of USF&G's failure to send any reservation of rights letter for five months and its likely failure to prove at trial that it sent the May 4, 2005 Letter will be that USF&G will be required to pay any judgment up to $6 million, plus all post-judgment interest, under the USF&G Policy – the first $1 million, plus interest, would be paid under the primary coverage of the USF&G Policy, and any judgment over $1 million would be paid under the umbrella coverage of the USF&G Policy.

WHEREFORE, VOA Associates, Inc. respectfully requests that this Court deny USF&G's Motion to Reconsider and Modify its Order dated August 27, 2009 and enter an order finding that USF&G is estopped from asserting any coverage defenses for the $1.6 million Madden Judgment and will be fully responsible for any liability that VOA is ultimately found to owe the Madden plaintiffs up to $6 million, plus prejudgment interest.

Dated: September 21, 2009

VOA ASSOCIATES, INC.

By: _____
One of Its Attorneys

Paul M. Lurie
Amy R. Skaggs
SCHIFF HARDIN LLP
233 S. Wacker Dr., Suite 6600
Chicago, IL 60606-6473
(312) 258-5500
Firm ID #90219

CH2\7912073.1

## CERTIFICATE OF SERVICE

I, Amy R. Skaggs, an attorney of record in this matter, hereby state that on September 21, 2009, I electronically filed the foregoing **VOA Associates, Inc.'s Response to USF&G's Motion for Reconsideration of the Court's August 27, 2009 Memorandum Opinion and Order** using the CM/ECF SYSTEM, which will send notification to all attorneys of record before the hour of 5:00 p.m. on this 21st day of September, 2009, and by mailing a copy to the entity listed below at the indicated address by depositing the same in the U.S. Mail at 6600 Sears Tower, Chicago, Illinois at or before the hour of 5:00 p.m. on September 21, 2009, with proper postage prepaid:

> Kevin W. O'Connor
> Collison & O'Connor, Ltd.
> 19 South LaSalle Street
> Chicago, Illinois 60603

Amy R. Skaggs

CH2\7912843.1